UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK SYFERT,

                                    Plaintiff,
                                                        6:17-cv-0578
v.                                                      (GTS/TWD)


CITY OF ROME,

                                    Defendant.
_____

APPEARANCES:

MARK SYFERT
Plaintiff, *pro se*
422 W. Embargo St. #2
Rome, NY 13440

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

The Clerk has sent to the Court for initial review the complaint in this 42 U.S.C. § 1983

civil rights action brought by *pro se* Plaintiff Mark Syfert against Defendant City of Rome (also

the "City" or "Rome"). (Dkt. No. 1.) Also before the Court is Plaintiff's application for leave to

proceed *in forma pauperis* ("IFP Application"). (Dkt. No. 2.)

**I.     PLAINTIFF'S IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP

Application, the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's IFP

Application (Dkt. No. 2) is granted.

## II.     LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. §

1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case

at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil

Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. PLAINTIFF'S COMPLAINT

Plaintiff brings this action against the City of Rome. (Dkt. No. 1.) Plaintiff alleges a history of retaliation, favoritism, and abuse of power by Rome employees, including Plumbing Inspector Mike Mondrick, Codes Officer Patrick Hethington, and Codes Director Mark Domenico. *Id*. at 2.[1] Plaintiff alleges the City engaged in acts designed to impede fair

---

[1] Inasmuch as Plaintiff has not sequentially numbered the paragraphs in his complaint, page references are to the page number assigned by the Court's CM/ECF electronic docketing system.

competition and to undermine the success of his plumbing business, a direct competitor of Mr. Mondrick's plumbing business. *Id.* Rome's alleged retaliatory acts culminated in a "malicious prosecution" in October 2013, based on false charges that Plaintiff violated City building codes at his property located at 422 West Embargo Street, located in Rome, New York (the "property" or "422 West Embargo Street"). *Id.* at 2.

### A.    Background

Plaintiff alleges the City of Rome has been retaliating against him for decades. *Id.* at 3. In 1984, Plaintiff purchased the property at issue, a three story house with an in-law apartment on the third floor by outbidding Ronnie Cardillo, who at that time was the Codes Director. *Id.* In 1991, Plaintiff outbid Mr. Cardillo on another house at a City tax auction.[2]  In 1993, Plaintiff successfully grieved the City's tax assessment of that house, causing Mr. Cardillo to consider Plaintiff "an enemy forever [and] passing that resentment on to his successor [Mr.] Domenico." *Id.*

In 1994, Plaintiff was "winning bids for contracts with the City" to replace furnaces as part of Rome's neighborhood improvement program. *Id.*  In 1995, Plaintiff became a licensed master plumber. *Id.*  From 1994 until 2006, Plaintiff "won" most of the advertised plumbing and heating bids for contracts with Rome. *Id.* at 3-4.

### B.    Mistreatment by Rome Employees

In 2007, Mr. Mondrick was appointed City Plumbing Inspector. *Id.* at 4.  At that time, Mr. Mondrick and other Rome city officials "changed the way plumbing contracts were bid [on]

---

The Court notes that Plaintiff's "Factual Background" section, consists of single paragraph spanning six typewritten pages.  (*See* Dkt. No. 1 at 3-9.)

[2]  Actually, Plaintiff outbid Mr. Cardillo's father because the City's Corporation Counsel told Mr. Cardillo that he could not bid on that house. *Id.*

in Rome." *Id*. Specifically, instead of bidding on plumbing jobs directly, plumbers were forced to bid through a contractor. *Id*. This policy change had a "negative" impact on Plaintiff's business and "fostered favoritism." *Id*.

In 2008, Plaintiff went to "get a plumbing permit" and Mr. Mondrick "happened to be behind the counter." *Id*. Plaintiff immediately recognized Mr. Mondrick as one of the individuals that "stole" lumber from his 10 acre plot of wooded land in Lee Center in 2005. *Id*. Plaintiff became "very angry." *Id*. Plaintiff expressed his concerns to City officials, including the mayor, that Mr. Mondrick "would abuse his position with the [C]ity to interfere with [his] business." However, Plaintiff's concerns were not taken seriously and he was "brushed" off. *Id*.

By letter dated July 16, 2009, Mr. Domenico falsely accused Plaintiff of "having an illegal third floor apartment with separate utility meters that was a city codes violation." *Id*. Plaintiff informed Mr. Domenico that the third floor apartment existed in 1984 when he purchased the property. *Id*. Plaintiff asked Mr. Domenico to "look up the minutes" from zoning board meetings in March and April of 1984, which would "prove" Plaintiff was innocent of code violations. *Id*. Mr. Domenico "apparently did not do this; or he did and willfully and maliciously pursued a criminal complaint against [Plaintiff] for code violations." *Id*.

In August 2009, Plaintiff obtained a plumbing permit for construction of a new house in Rome. *Id*. Mr. Mondrick inspected and passed Plaintiff's "rough work." *Id*. Plaintiff was to perform the second phase of the plumbing job in the spring of 2010. *Id*. However, in September 2010, Plaintiff learned that the second phase of the plumbing contract was completed by someone else, which Mr. Mondrick inspected and passed. *Id*. at 5. Plaintiff was "shocked" because his name was on the permit and "by law" Mr. Mondrick could not inspect a job without the named permit holder present. *Id*. As a result, Mr. Domenico issued an "illegal" certificate of

occupancy at this house, and Plaintiff was unable to collect his final payment for this contract. *Id*.

In October 2009, Mr. Mondrick "abused his authority and public trust" by discriminating against Plaintiff in requiring Plaintiff to perform a "water test" at a potential job, while not requiring another plumber, who happened to be Mr. Mondrick's friend, to perform the water test. *Id*.

On January 4, 2011, Plaintiff paid the fee for his Master Plumber's License. *Id*. at 6. However, on or before January 31, 2011, Plaintiff's name was removed "from the list prepared by the City of Rome," which includes all Rome Master Plumbers. *Id*. As a result, "[i]n the eyes of the public [Plaintiff] lost [his] Master Plumber's License." *Id*.

By letter dated March 1, 2011, Mr. Mondrick notified Plaintiff that he was revoking Plaintiff's Master Plumber's License and told Plaintiff that he would have to "re-test for the plumbing exam." *Id*. Plaintiff claims Mr. Mondrick had "no legal authority" to revoke his license because he had paid the fee. *Id*. By letter dated March 4, 2011, Plaintiff sent Mr. Mondrick a copy of his cancelled check proving that he had paid his Master Plumber fee. *Id*. By letter dated March 9, 2011, Mr. Domenico explained that Mr. Mondrick's March 1, 2011, letter merely informed Plaintiff that his insurance had expired. *Id*. However, according to Plaintiff, "[t]his is NOT what the letter stated." *Id*. (emphasis in original). From January 2011 to May 2014, Plaintiff's name was not included in Rome Master Plumber's list, thereby dramatically impacting his business and income. *Id*.

In 2012, Plaintiff learned that Mr. Mondrick passed final inspections for two plumbing contracts, even though Plaintiff was the plumber on each permit in violation of Rome Plumbing Code Article V, Sec. 14-310(e). According to Plaintiff, that section states: "Upon completion of

the entire plumbing installation, the plumber shall apply for the final inspection." *Id*. at 7. Thus, Mr. Domenico must have issued an illegal certificate of occupancy.

In February 2012, Plaintiff went to Rome's "corporation counsel's office requesting clarification of the Rome Plumbing Code," and was told that Mr. Mondrick, as the Plumbing Inspector, "could interpret the plumbing codes as he sees fit; even if the interpretation does not match the black letter of the law as it is written." *Id*.

### C. Building Code Violations and Criminal Charges at the Property

In March 2010, Plaintiff repaired the roof of 422 West Embargo Street. *Id*. at 6. Plaintiff did not obtain a permit because "you don't need a permit for repairs." *Id*. During this project the chimney collapsed and "left [a] huge hole." *Id*. Plaintiff "decided to the fill the area with a dorm window." *Id*. Plaintiff finished this project in September 2010. *Id*. Significantly, "[a]t no time did anyone from codes enforcement contact [Plaintiff] about the roof or the dorm window." *Id*.

In April 2012, Plaintiff began installing an air conditioning unit at 422 West Embargo Street. *Id*. at 7. In order to move the heavy unit up to the third floor, Plaintiff set up exterior scaffolding. *Id*.

On June 6, 2012, Plaintiff received a "stop work" order from Rome City Code Enforcement for "construction without a permit." *Id*. Plaintiff telephoned the number listed on the stop work order and spoke with the "code officer in charge of [his] neighborhood." *Id*. Plaintiff was informed that the scaffolding "was too high and needed to come down." *Id*. Plaintiff complied and took the scaffolding down "within a week without putting the AC unit on the roof." *Id*. Plaintiff "heard nothing more" from the City. *Id*.

Thereafter, on November 20, 2013, Plaintiff received Summons #13-232, from Defendant Rome, signed by Rome City Judge Daniel Wilson, Docket # 56462, which stated:

> An accusatory instrument having been filed with the Court,
> charging you with the offense of: Sect. NYSPMC-107.1.4
> UNLAWFUL STRUCTURE; and Sect. NYSPMC-304.2 EXTER
> SURFACE NOT MAINTAINED; you are directed to appear in the
> City Court of Rome . . . on 3 day of December, 2013 at 9:00 AM.
> Failure to will result in a warrant being issued for your arrest.
> Dated Nov. 20, 2013.

*Id*. As instructed, Plaintiff appeared on December 3, 2013, in Rome City Court before Judge

Wilson. *Id*. Because of Plaintiff's low income, his request for a court appointed attorney was

granted. *Id*. Plaintiff's attorney said that she would "have the case dismissed and told [him]

'these guys down in codes have way too much time on their hands.'" *Id*. at 7-8. Plaintiff's

attorney requested a trial. *Id*. at 8.

Over the course of the next several months, Plaintiff was in constant fear that he would

"be unjustly thrown in jail by Rome." *Id*. Plaintiff appeared for court hearings in January and

April 2014.[3] *Id*. In June 2014, the prosecutor and Plaintiff's court appointed attorney said they

were "ready for trial." *Id*. However, over a year went by and Plaintiff was not notified of his

trial date. *Id*. His court appointed attorney would not return his telephone calls. *Id*. In August

2015, Plaintiff called the Rome City Court Clerk to request a new court appointed attorney. *Id*.

### D.    First Civil Action against City of Rome and "Dismissal" of Criminal Action

On September 24, 2015, Plaintiff commenced a *pro se* civil rights action in the Northern

District of New York, No. 6:15-cv-01149 (LEK/ATB) ("*Syfert I*") against the City of Rome,

alleging: (1) violations of his rights to conduct a legal business without fear of retaliation; (2)

ongoing and never ending work related retaliation, revenge, harassment by Rome's Code

Department and Mr. Mondrick; (3) failure to conduct a speedy and fair trial; and (4) destruction

---

[3] According to Plaintiff, after Judge Wilson's retirement on January 1, 2014, Judge Gannon
presided over Plaintiff's criminal charges. (Dkt. No. 1 at 7.)

and tampering of evidence when Mr. Domenico erased city records "proving" Plaintiff's "total innocence" of the Class A Misdemeanor (false statements). *Syfert I*, Dkt. No.1 at 6.

On October 5, 2015, Magistrate Judge Andrew T. Baxter granted Plaintiff's IFP Application but recommended dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *Id*., Dkt. No. 4 at 20-21. As to the first and second causes of actions, Judge Baxter found that the following conduct, all of which occurred prior to September 24, 2012, was barred by the statute of limitations:

> Plaintiff claims that Mr. Mondrick issued plaintiff an "expired" license in 2008; the notice from the Code Department about plaintiff's grass was also in 2008; the letter from Mark Domenico regarding plaintiff's "three family" residence was in July of 2009; the alleged "illegal" occupancy was issued by Mr. Mondrick and Mr. Hetherington in October of 2009; Mr. Mondrick ordering plaintiff to perform a "water test" when another plumber was not required to do so was in October of 2009; Mr. Mondrick allegedly attempting to "remove" plaintiff's license, and the City of Rome charging plaintiff for its renewal for failure to pay the fee occurred in March of 2011; the allegation that plaintiff's name was thrown in the trash occurred in March of 2011; and the "stop work" order for plaintiff's air conditioning installation occurred on June 6, 2012.

*Id*. at 13. Judge Baxter found that Plaintiff's allegations did not amount to a continuing violation. *Id*. at 13-14. In addition, Judge Baxter noted that it "appears very unlikely that [Plaintiff] can state federal constitutional claims based upon the allegations that he has made in his complaint." *Id*. at 20. However, Judge Baxter recommended dismissal of Plaintiff's first and second causes of action without prejudice and with leave to file a proposed amended complaint that addressed the issue of why the statute of limitations should be equitably tolled. *Id*.

Plaintiff's third and fourth causes of action related to criminal charges. *Syfert I*, Dkt. No. 1 at 6. Specifically, Plaintiff alleged that he had been denied a speedy and fair trial, his right to be innocent until proven guilty had been violated, and Mr. Domenico erased a City record from

1984 that would prove Plaintiff's innocence of the charges. *Id.* Judge Baxter recommended dismissal as barred by *Younger v. Harris*, 401 U.S. 37, 43-54 (1971) and *Heck v. Humphrey*, 512 U.S. 477 (1944). *Id.* at 9-10. The court noted, however, that "[i]f Plaintiff obtains dismissal of the charges prior to trial and conviction, then he may bring an action raising any constitutional violations that may have preceded the charges." *Id.* at 11 n.11.

In this complaint in this action, Plaintiff claims that he brought a copy of Judge Baxter's October 5, 2015, Report and Recommendation to the November 2015, hearing before Judge Gannon, which, indicated that "the three year statute of limitations" had expired. (Dkt. No. 1 at 8.) Judge Gannon "agreed and decided to dismiss Rome's criminal complaint against [Plaintiff] because the third floor window dorm was in since before September 2010" and Rome filed the "code violation complaint in October 2013 AFTER the three year statute expired." *Id.* (unaltered text). However, when Plaintiff asked Judge Gannon for the dismissal in writing, he "got mad" at Plaintiff and told him not to return in front of him again. *Id.*

Thereafter, on November 5, 2015, the District Court approved and adopted Judge Baxter's October 5, 2015, Report-Recommendation in *Syfert I*, and ordered Plaintiff's complaint dismissed without prejudice and with leave to amend as to Plaintiff's first and second causes of action, but without leave to amend as to Plaintiff's third and fourth causes of action. *Syfert I*, Dkt. No. 5. Plaintiff was ordered to file an amended complaint within forty-five days if he wished to proceed with the action. *Id.*

However, because Rome "dropped" the criminal charges, Plaintiff did not see any reason to pursue *Syfert I*. (Dkt. No. 1 at 8.) On December 22, 2015, judgment in favor of the City of Rome was entered in *Syfert I*. *Id.*

### E.    "Revival" of the Criminal Action

In January 2016, Plaintiff's court appointed attorney telephoned Plaintiff to tell him that his criminal case was "not dismissed" because "[c]ode violations have NO statute of limitations." (Dkt. No. 1 at 8.)  Plaintiff was advised to "plead guilty" or "go to jail and . . . be fined." *Id*. Plaintiff stated that he wanted to go to trial. *Id*.

The Rome City Court Clerk told Plaintiff a hearing was scheduled for the first week in February 2016, and also told Plaintiff "to be there or Judge Gannon would put out an arrest warrant for me." *Id*.   During the February 2016, hearing, Judge Gannon told Plaintiff "to get a permit for the third floor dorm window only to satisfy the case against me." *Id*. at 8-9.

On February 17, 2016, Mr. Domenico denied Plaintiff's permit application. *Id*. at 9.   Mr. Domenico told Plaintiff that they needed "to do a whole house inspection" from the basement to the third floor. *Id*. at 9.  Plaintiff refused because "nothing legally warranted such an invasive inspection of [his] property and invasion of [his] privacy for a permit for a dorm window that had been installed in 2010." *Id*.

During the February 25, 2014, hearing, Plaintiff told Judge Gannon why Mr. Domenico would not issue the permit. *Id*.  Thereafter, the prosecuting attorney called Mr. Domenico. *Id*. "When she came back the judge told me to resubmit the application." *Id*.  Plaintiff resubmitted his application for the dorm window on February 29, 2016. *Id*.

On March 1, 2016, Mr. Domenico telephoned Plaintiff and told him about the City's "mistake made in 1989" that indicated Plaintiff's property was only two stories, instead of three

stories.  *Id*.  Mr. Domenico advised Plaintiff that he "fixed the mistake so this would never happen again."  *Id*.[4]

On March 4, 2016, Plaintiff was issued the permit, which indicated Plaintiff's property was "a 2.5 story house."  *Id*.  Later that day, Plaintiff brought a copy of the permit to his court hearing.  *Id*.  Plaintiff gave a copy of the permit to Judge Gannon.  *Id*.  Judge Gannon stated the case was "now satisfied" and told Plaintiff that if he "did not get into trouble for six months it was dismissed like it never happened."  *Id*.  Judge Gannon then "went on to compare [Plaintiff] to a wife beater.  This was humiliating."  *Id*.

Approximately one week later, a "codes officer came through and inspected only the third floor dorm window [and] it passed."  *Id*.

Based on the above, Plaintiff claims that Rome "did nothing to correct or restrain its employees from . . . egregious acts of retaliation made with intent to harm" Plaintiff, by ruining his reputation and destroying his business.  *Id*. at 2-3.  Plaintiff has "lost [his] health as a result of Rome's malicious prosecution."  *Id*. at 3.  Plaintiff has also endured "horrible mental suffering caused by nearly three years of fear that [he] would be unjustly imprisoned over these false claims of criminal code violations."  *Id*.

**F.      Causes of Action**

Plaintiff has organized his complaint into six causes of action: (1) Discrimination and Interference with Civil Rights; (2) Civil Action for Deprivation of Rights; (3) Rome Code

---

[4]  However, Mr. Domenico did not fix this error.  (Dkt. No. 1 at 9.)  Eventually, on March 1, 2017, the city assessor "fixed the error that was introduced by Rome employees in the description of Plaintiff's house and property for the August 1989 update that excluded the whole third floor from Plaintiff's house."  *Id*.  Finally, on March 21, 2017, Plaintiff "received the full historical legal description of [his house] and property going back to 1957.  The original legal description dated to 1957 clearly states that the third floor was 100% finished and existing before 1957."  *Id*.

Enforcement Policies and Procedurals are Unconstitutional; (4) Rome Plumbing and Plumber Licensing Policies and Procedures are Unconstitutional; (5) Defendant Denied of a Speedy Trial; and (6) Malicious Prosecution. *Id*. at 9-12. Plaintiff seeks significant compensatory and punitive monetary damages. *Id*. at 13.

## IV. DISCUSSION

Plaintiff brings this action against the City of Rome pursuant to 42 U.S.C. § 1983. "To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

The statute of limitations for a § 1983 action accruing in New York is three years. *See Shomo v. City of N. Y.*, 579 F.3d 176, 181 (2d Cir. 2009). The statute of limitations begins to run on the date that the plaintiff's claims accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Federal law governs the accrual date. *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know the injury which is the basis of his action." *Covington v. New York*, 171 F.3d 117, 121 (2d Cir. 1999) (quoting *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir. 1980)). That is so even if "the full extent of the injury is not then known or predictable." *Fahs Const. Group, Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam). State law tolling rules determine

whether the limitations period has been tolled. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

A claim for malicious prosecution accrues when there is a "favorable termination of criminal proceedings" against the plaintiff. *Norwood v. Salvatore*, No. 3:12-CV-1025 (MAD/DEP), 2013 WL 1499599, at *15 (Apr. 10, 2013[5]) (citations omitted). "Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion— typically at arrest—against the plaintiff." *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS/ATB), 2016 WL 4046780, at *16 (N.D.N.Y. July 27, 2016) (quoting *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.)).

Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert I*, Dkt. No. 5 (dismissing all claims barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

**A.     Time-Barred Claims**

1.     <u>Mistreatment by Rome</u>

Plaintiff commenced this action on May 24, 2017. (Dkt. No. 1.) Three years prior to the filing date is May 24, 2014. Any causes of action in Plaintiff's complaint that accrued prior to May 24, 2014, are likely barred by the statute of limitations. As was the case in *Syfert I*, the

---

[5] Copies of unpublished decisions will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Court assumes that events from 1984 through 2006 are merely an explanation of how the alleged animosity between Plaintiff and Mr. Mondrick began.

However, most of the incidents listed on Plaintiff's complaint occurred prior to May 24, 2014. Specifically, Plaintiff claims that (1) Mr. Mondrick was appointed Plumbing Inspector and changed the way contracts were bid on in Rome in 2007; (2) Mr. Domenico accused Plaintiff of having an "illegal" third floor apartment in 2009; (3) Mr. Mondrick ordered Plaintiff to perform a "water test" when another plumber was not required to do so in 2009; (4) Plaintiff's name was omitted from Rome's Master Plumber list in 2011, even though Plaintiff paid the annual renewal fee; (5) Mr. Mondrick sent a fraudulent letter telling Plaintiff he would have to "re-test for the plumbing exam" in 2011; (6) Code Enforcement issued a "stop work" order on his air conditioning installation in 2012; (7) Plaintiff learned that Mr. Mondrick passed final plumbing inspections on two permits issued to Plaintiff without his knowledge in 2012 and that Mr. Domenico issued "illegal" certificates of occupancy on those permits; (8) Rome's Corporation Counsel told Plaintiff that Mr. Mondrick could interpret the plumbing codes as "he sees fit" in 2012; (9) Plaintiff was served Summons # 13-232 on November 20, 2013, based on false criminal charges, and appeared in court on December 3, 2013.[6] All of the conduct occurring prior to May 24, 2014, is barred by the statute of limitations.

Plaintiff's allegations do not amount to a "continuing violation." The continuing violation doctrine, where applicable, is an "exception to the normal knew-or-should-have-known

---

[6] The Court liberally construes Plaintiff's claim based on service of the Summons as a claim for abuse of process. In New York, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (citation omitted). Malicious abuse of criminal process also supports liability under § 1983. *Id.* at 76-77 (citation omitted).

accrual date" if there is evidence of an ongoing discriminatory policy or practice. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999)). The continuing violation doctrine does not apply to "discrete acts," even where those discrete acts are a part of a "serial violation," but only to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). When the doctrine applies, the limitations period begins to run when the defendant has engaged in "enough activity to make out an actionable . . . claim," as long as the plaintiff has alleged some non-time-barred acts which contributed to the alleged violation. *Id.* (quoting *Morgan*, 536 U.S. at 117; *Harris*, 186 F.3d at 250) (internal quotations omitted). A continuing violation cannot "be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris*, 186 F.3d at 250.

The continuing violation doctrine is generally disfavored in this Circuit. *See Town of Ramopo v. Town of Clarkstown*, No. 16 Civ. 2004 (NSR), 2017 WL 782500, at *5 (S.D.N.Y. Feb. 27, 2017); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) ("Courts in the Second Circuit and elsewhere have been loath to apply the continuing violation doctrine absent a showing of compelling circumstances.") (internal citation, quotation marks, and brackets omitted).

Here, all of the above incidents occurred prior to May 24, 2014. Even assuming that Plaintiff was being targeted for mistreatment, each act is a discrete event, including facts resulting in Plaintiff's criminal charges. Most of the alleged conduct occurred many months, if not years, apart. The fact that Rome changed the way plumbers obtained permits in 2007, or that Plaintiff had to perform a water test in 2009, while another plumber did not, or that Plaintiff was

omitted from the Master Plumber list in 2011, or Plaintiff was issued a stop work order for the air conditioning installation in 2012, or that Plaintiff was issued a Summons based on false criminal charges in 2013, are all discreet acts, which if actionable at all, would have been actionable at the time they occurred. To be sure, Plaintiff seems to have issues with Mr. Mondrick and other employees of the City, but the Court finds no compelling circumstances present to warrant applying the continuing violation doctrine.

In addition, there is no indication at this time that this is one of those extraordinary cases in which equitable tolling should apply. Plaintiff has suspected for a long time that Mr. Mondrick and employees of the City do not like him, and there is no indication that Plaintiff was prevented from filing a lawsuit. As such, the Court finds equitable tolling does not apply.

Therefore, the Court recommends dismissing Plaintiff's claims based on the above time-barred events pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

2.      Code Enforcement and Procedures

By his third cause of action, Plaintiff challenges the constitutionality of Rome's code enforcement policies and procedures. (Dkt. No. 1 at 11.) Specifically, Plaintiff contends that the June 6, 2013, stop work order was "exceptionally vague." *Id*. Plaintiff claims that City employees "misinformed [him] over the phone that the problem was the scaffolding; when apparently it wasn't." *Id*. Plaintiff claims that "[n]o policy was in place to correctly and with specificity communicate exactly what violated the Rome City Codes; and exactly what I needed to do to fix the problem." *Id*. Nor was there a "follow-up procedure" in place to "make sure" Plaintiff knew what was expected of him. *Id*. Plaintiff alleges he "was given no opportunity to correct the problem . . . because it was never communicated to [him]." *Id*. According to

Plaintiff, it was not until December 3, 2013, when Plaintiff appeared in court that he learned removing the scaffolding did not resolve the issue. *Id*.

In addition, Plaintiff claims that Rome's "code enforcement policies and procedures open the door for Rome codes officials to arbitrarily and discriminatorily make accusations of code violations; and then to arbitrarily and discriminatorily enforce and prosecute those violations as they did with [Plaintiff]." *Id*. Plaintiff thus claims that "Rome's code enforcement policies and procedure (or lack thereof) encourage its employees and officials to abuse the authority of their offices of public trust to discriminate against the citizens of Rome based on their own biases." *Id*.

Here, Plaintiff's claim, if actionable at all, accrued on June 6, 2013, when Rome issued the stop work order or, at the very latest, on December 3, 2016, when Plaintiff appeared in court. Thus, Plaintiff's claim became timed-barred on December 3, 2016. The continuation violation doctrine and tolling are inapplicable to this claim for the same reasons discussed in Section IV.A.1. Therefore, without addressing the merits, the Court recommends dismissing Plaintiff's third cause of action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

3.    Rome's Plumbing and Plumber Licensing Policies and Procedure

Similarly, by his fourth cause of action Plaintiff claims that "Rome's policies and procedures regarding the licensing of plumbers, Rome's Master Plumber list and the methods and means used by Defendant Rome to bid and award plumbing contracts are unconstitutional." (Dkt. No. 1 at 12.)

As discussed above, Plaintiff claims Mr. Mondrick and other city officials "changed the way plumbing contracts were bid [on] in Rome" after Mr. Mondrick became the City's Plumbing Inspector in 2007. *Id*. at 4. As a result of this policy change, Plaintiff's business was negatively

impacted.  *Id.*  In 2008, Plaintiff expressed his concerns to City officials that Mr. Mondrick could "abuse his position with the [C]ity to interfere" with Plaintiff's livelihood.  *Id.*  In this instance, Plaintiff's claim, if actionable at all, accrued at the latest in 2008, when Plaintiff was aware that Rome's change in policy had a negative impact on his business.  As such, this claim became time-barred in 2011.

Plaintiff also claims he was omitted from Rome's Master Plumber list in 2011, even though he paid the renewal fee.  *Id*. at 6.  As such, Plaintiff's claim, if actionable at all, accrued on March 7, 2011, when he received Mr. Mondrick's letter dated March 1, 2011, stating that Plaintiff's plumbing license was being "revoked" for failure to pay the annual renewal fee.  *Id.* As such, this claim became timed-barred on March 7, 2014.

The Court finds the continuing violation doctrine and equitable tolling are inapplicable to this claim for the same reasons discussed in Section IV.A.1.  Therefore, the Court recommends dismissing Plaintiff's fourth cause of action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## B.    Malicious Prosecution and Speedy Trial Claims

By his fifth and sixth causes of action, Plaintiff claims that the "manner in which Defendant Rome prosecuted [him] was malicious and unconscionable."  *Id*. at 12.  Specifically, Plaintiff claims that he was caused "to suffer nearly three years of constant threats to [his] liberty."  *Id*.  Plaintiff "lived in fear and extreme mental anguish and distress throughout this period . . . [which] had a negative impact on [his] over-all health."  *Id*.  Plaintiff claims that he was "humiliated" and his "reputation has been dragged through the mud for no just cause."  *Id*. Plaintiff posits that "prosecution for a code violation that never actually occurred that extends beyond two years has got to be unconstitutional."  *Id*.

To state a §1983 claim for malicious prosecution, a plaintiff must allege the four elements of a malicious prosecution claim under New York law—"(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions"—as well as a violation of the plaintiff's rights under the Fourth Amendment. *Manganiello v. City of N.Y.*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations and quotation marks omitted).

As set forth above, a malicious prosecution claim accrues when there is a "favorable termination of criminal proceedings" against the plaintiff. *Norwood*, 2013 WL 1499599, at *15. According to Plaintiff, the criminal charges at issue were "dismissed" on March 4, 2016. (Dkt. No. 1 at 9.) Although not time-barred, the Court finds Plaintiff's malicious prosecution claim fails to state a claim upon which relief may be granted because Plaintiff did not receive "a favorable termination."

As discussed above, Plaintiff claims that in February 2016, Judge Gannon "told [Plaintiff] to get a permit for the third floor dorm window only to satisfy the case against [him]." (Dkt. No. 1 at 9.) On March 4, 2016, Plaintiff was issued a permit for the dorm window. *Id.* Later that day, Plaintiff brought a copy of the permit to Judge Gannon. *Id.* Judge Gannon told Plaintiff "the case was now satisfied and [that] if [he did not] get into trouble for six months it was dismissed like it never happened." *Id.* As such, Plaintiff apparently received an adjournment in contemplation of dismissal. *See* N.Y. Crim. Proc. Law § 170.55 (McKinney 2017).

However, "[i]t is black letter law that, under New York law, 'an adjournment in contemplation of dismissal is not considered to be a favorable termination.'" *Lopez v. City of*

*New York*, No. 15 Civ. 1650 (NRB), 2017 WL 213243, at *4 (S.D.N.Y. Jan. 10, 2017) (quoting

*Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001), *abrogated on other grounds by Florence v. Bd.*

*of Choses Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012)); *see also Smith-Hunter v.*

*Harvey*, 712 N.Y.S.2d 438, 442 (N.Y. 2000) ("[A]n adjournment in contemplation of

dismissal—a disposition that requires the consent of the prosecutor, the accused and the court—

does not qualify as a favorable termination.") (internal citation omitted).

Similarly, "in order to adequately plead a claim under § 1983 that he was tried and

convicted in violation of his Sixth Amendment right to a speedy trial, plaintiff must allege that

the criminal proceeding terminated in his favor." *Bussey v. Devane*, No. 13-CV-3660

(JS/WDW), 2013 WL 4459059, at *5-6 (E.D.N.Y. Aug. 16, 2013) (citing *Montane v. Pettie*, No.

10 Civ. 4404 (ARR), 2012 WL 1617713, at *3 (E.D.N.Y. May 8, 2012)); *see also Corley v.*

*Vance*, No. 15 Civ. 1800 (KPF), 2015 WL 4164377, at *3 (S.D.N.Y. June 22, 2015) ("As

pleaded, [the plaintiff's] speedy trial, false arrest, false imprisonment, and malicious prosecution

claims are barred because his criminal proceedings were not terminated in his favor.") (citing

*Heck*, 512 U.S. at 484-87); *Davis v. New York*, No. 90 Civ. 6170(MBM), 2003 WL 1787151, at

*1 (S.D.N.Y. Apr. 2, 2003) (dismissing speedy trial claim where the plaintiff could not show that

his conviction had been invalidated).

Plaintiff also claims that "Defendant Rome prosecuted me for a minor offense from

December 2013 until March 2016[,] well beyond the statutory time limits permitted for

prosecution" under New York Law. (Dkt. No. 1 at 12.) To support this allegation, Plaintiff

relies on Article 30 of New York Criminal Procedure, which provides, in relevant part, "a

prosecution for a misdemeanor must be commenced within two years after the commission

thereof; a prosecution for a petty offense must be commenced within one year after the

commission thereof." N.Y. Crim. Proc. Law §§ 30.10(2)(c)-(d). The Court finds this argument misplaced. First, based on the facts as pleaded, it appears that the prosecution was in fact *commenced* within the statutory period of time. In any event, a violation of New York Procedural Law "is not in itself a violation of the Constitution or federal law, an element of a [§] 1983 claim." *Fobbs v. City of N.Y.*, No. 15-cv-6736 (PKC), 2017 WL 2656207, at *3 (S.D.N.Y. June 19, 2017).

Therefore, the Court recommends dismissing Plaintiff's fifth and sixth causes of action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### C. Conspiracy Claims

By his first and second causes of action, Plaintiff alleges in conclusory fashion that "Defendant Rome and its employees engaged in a pattern of cooperative activities designed to interfere in the exercise of [his] civil rights and that these activities in fact did deprive [Plaintiff] of [his] civil rights under the United States Constitution[.]" *Id.* at 10; *see also id*. at 11.

The elements of a conspiracy claim under § 1983 are: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

To state a claim for a conspiracy under § 1985(3), a plaintiff must allege "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (summary order) (quoting *United Board of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983)).

Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554). Moreover, conspiracy claims under §§ 1983 and 1985 "fail[] as a matter of law where there is no underlying constitutional violation." *Tirse*, 2016 WL 4046780, at *18.

Here, inasmuch as the Court is recommending dismissal of the predicate claims, the Court also recommends dismissing Plaintiff's conspiracy claims under §§ 1983 and 1985. *See, e.g.*, *McGee v. Doe*, 568 F. App'x 32, 36, 39 (2d Cir. 2014) (affirming dismissal of malicious prosecution claim and conspiracy claim predicated upon malicious prosecution where the plaintiff did not receive a favorable termination); *LaRocco v. Jackson*, No. 10-CV-01651 (NGG)(LB), 2012 WL 947554, at *3 (E.D.N.Y. Mar. 19, 2012) ("Because [the plaintiff's] claim for false arrest and malicious prosecution are dismissed, his claim for conspiracy to commit those violations must be dismissed as well.") (citing *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Pugh v. New York City*, No. 01-CV-0129 (ILG), 2002 WL 398804, at *2 n.4 (E.D.N.Y. Jan. 15, 2002)).

Additionally, the Court finds that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy. Further, Plaintiff has not alleged any race or class based animus as required to support a § 1985 conspiracy claim. "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. N.Y.S. Dep't. of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted).

Moreover, even if Plaintiff's conspiracy claims were found to be more than conclusory and not time-barred, as pleaded, Plaintiff's claims would likely be barred by the "intra-agency conspiracy" doctrine. *See Griffin-Nolan v. Providence Washington Ins. Co.*, No. 5:04-CV-1453 (FJS/GJD), 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005); *see also Little v. City of N. Y.*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (citations omitted). Generally, that doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (citation omitted).

Therefore, the Court recommends dismissing Plaintiff's first and second causes of action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### D. Municipality Liability

Plaintiff seeks to hold the City of Rome liable for the above outlined events. However, his complaint fails to allege facts meeting the standard for establishing municipality liability as laid out in *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978). In order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing

*Monell*, 436 U.S. at 690-61); *see also Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.  Second, the plaintiff must establish a causal connection an 'affirmative link' between the policy and the deprivation of his constitutional rights.") (*citing Oklahoma v. Tuttle*, 471 U.S. 808, 824 n. 8 (1985)).  Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of *respondeat superior*." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

Here, even liberally construed, Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of the City of Rome with regard to any of his claims.  Therefore, the Court recommends that the action be dismissed against the City for failure to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B).  *See Plair*, 789 F. Supp. 2d at 469 ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard[.]"); *see also Meehan v. Kenville*, 555 F. App'x 116, 117 (2d Cir. 2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality"); *Irvine v. City of Syracuse*, No. 5:14-CV-1565 (TJM/DEP), 2015 WL 2401722, at * 6-7 (N.D.N.Y. May 19, 2015) (dismissing *Monell* claim pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim); *Santagata v. City of N.Y.*, No. 17-CV-3053 (PKC)(CLP), 2017 WL 2963453, at *2 (E.D.N.Y. July 11, 2017) (same).

## V.     OPPORTUNITY TO AMEND

Based on the foregoing, the Court recommends dismissal of Plaintiff's complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the plaintiff should be afforded the opportunity to amend at least once. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). However, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco*, 222 F.3d at 112 (citation omitted); *see Ruffolo*, 987 F.2d at 131 ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

For the reasons discussed is Section IV.A., all of Plaintiff's claims that accrued prior to May 24, 2014, are barred by the statute of limitations. Nonetheless, a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *See Abbas*, 480 F.3d at 640. Therefore, it is recommended that Plaintiff's time-barred claims be dismissed with leave to amend. Likewise, it is recommended that Plaintiff's conspiracy claims predicated upon his time-barred claims be dismissed with leave to amend. This by no means suggests that Plaintiff's time-barred claims are meritorious, as it appears very unlikely that Plaintiff can state federal constitutional claims based upon any of the time-barred claims in his complaint.

It is also recommended that Plaintiff's *Monell* claims be dismissed with leave to amend. *Cuoco*, 222 F.3d at 112. *See, e.g.*, *Lynch v. Claus*, No. 1:13-cv-830 (GLS/CFH), 2013 WL 4455625, at * (N.D.N.Y. Aug. 16, 2013) (affording *pro se* plaintiff an opportunity to amend potential *Monell* claims).

For the reasons set forth in Section IV.B., the problem with Plaintiff's malicious prosecution and speedy trial claims is substantive, such that better pleading will not cure it. *See Ruffolo*, 987 F.2d at 131. Therefore, it is recommended that Plaintiff's malicious prosecution and speedy trial claims be dismissed without leave to amend. *See, e.g.*, *LaRocco*, 2012 WL 947554, at *3-4 (dismissing malicious prosecution claim with prejudice where the plaintiff could not plead essential elements of the claim, including favorable discharge). Likewise, it is recommended that Plaintiff's conspiracy claims predicated upon his malicious prosecution and speedy trial claims be dismissed without leave to amend. *Id.* (dismissing conspiracy claim predicated on malicious prosecution with prejudice).

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim; and it is further

**RECOMMENDED** that Plaintiff's time-barred claims, claims for conspiracy based upon the same, and *Monell* claims be dismissed with leave to amend; and it is further

**RECOMMENDED** that Plaintiff's claims for malicious prosecution and speedy trial, and claims for conspiracy based upon the same, be dismissed without leave to amend; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decision cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: August 7, 2017
      Syracuse, New York

                                    Thérèse Wiley Dancks
                                      United States Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2013 WL 1499599
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Douglas NORWOOD, III, Leeann Norwood,
D.N., Minor Son of Plaintiffs Norwood, Paul
Orlowski, and Lena Orlowski, Plaintiffs,
v.
Michael SALVATORE, Individually and in his
capacity as Town of Hancock Code Enforcement
Officer and Town of Hancock, Defendants.

No. 3:12–CV–1025 (MAD/DEP).
|
April 10, 2013.

**Attorneys and Law Firms**

Office Of John V. Janusas, Esq., John V. Janusas, Esq., of
Counsel, Brooklyn, NY, for Plaintiffs.

Mackenzie, Hughes Law Firm, Jeffrey D. Brown, Esq., of
Counsel, Syracuse, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**INTRODUCTION**

**\*1** The within action was commenced by unrelated
property owners in the Town of Hancock who claim
that they applied for certificates of occupancy, building
permits and other certificates/permits from defendants.
Plaintiffs commenced this action pursuant to 42 U.S.C. §
1983 alleging that defendants violated of their Fourteenth
Amendment rights to substantive due process and equal
protection. The Norwood plaintiffs also assert a cause
of action for declaratory relief seeking a building permit
and certificate of occupancy. The Orlowski plaintiffs
also assert malicious prosecution claims. Presently before
the Court is defendants' motion to dismiss plaintiffs'
complaint pursuant to Fed.R.Civ.P. 12(b)(5) and 12(b)
(6). (Dkt. No. 8). Plaintiffs have opposed the motion.
(Dkt. No. 12).

**COMPLAINT** [1]

[1]    The background information is taken from plaintiffs'
       complaint and is presumed true for the purposes of
       this motion. These are not findings of fact by the
       Court.

**The Norwood Plaintiffs**

In 1988, plaintiffs Douglas Norwood, III, Leeann
Norwood and D.N. ("the Norwood plaintiffs") purchased
real property, with a home, in the Town of Hancock.
In May 2009, the Norwood plaintiffs' home on said
property was completely destroyed as a result of a fire.
In July 2009, the Norwood plaintiffs contacted defendant
Michael Salvatore ("Salvatore"), the Town of Hancock
Code Enforcement Officer ("CEO"), to apply for a
building permit on said property. Salvatore stated that he
would visit the premises and then advise the Norwood
plaintiffs how to proceed. During the visit, Salvatore
told the Norwood plaintiffs that they needed to perform
"prep" work before a building permit could be issued.
Salvatore demanded a set of plans for the proposed
work, an elevation certificate and engineering plans.
Salvatore also directed the Norwood plaintiffs to install
concrete footings and piers with steel reinforcements.
After the piers were installed, Norwood plaintiffs installed
the floor plan to stabilize the concrete piers. Salvatore
then insisted upon the installation of flooding vents,
which required alterations to some previous work. The
Norwood plaintiffs completed all the aforementioned
work pursuant to Salvatore's direction and repeatedly
asked for the building permit. Salvatore stated that the
permit would be issued when "prep" work was completed.

On September 15, 2009, Salvatore arrived at the property
for one of many inspections and issued additional
demands for "prep" work. The Norwood plaintiffs claim
that Salvatore raised his voice, in the presence of their
fourteen year old son, and allegedly stated, "you really
do not want to rebuild at this location, because Angelo
Valenti is going to have niggers and spics moving
across the street". The Norwood plaintiffs contend that
Salvatore also yelled, "niggers and spics will be using all
the units that Angelo Valenti was planning to install".

In September 2009, after all of the "prep" work was
complete, Salvatore told the Norwood plaintiffs to halt

construction and stated that he would not issue a building permit or certificate of occupancy.

**Orlowski Plaintiffs**

**\*2** In March 2009, Lena Orlowski contacted Salvatore, via telephone, about moving a manufactured home from one location on their property to another. The Orlowski plaintiffs initiated contact to determine whether a building permit from the Town of Hancock was necessary to relocate the home. Salvatore told Orlowski that if the home was being relocated without being re-occupied or connected to utilities then no building permit would be necessary. A few months later, the Orlowski plaintiffs relocated the home and Salvatore approved the new location.

In April 2010, the Orlowski plaintiffs received a letter from Salvatore warning that the relocation of the home violated the Town of Hancock Local Law # 1, Subdivision A, "Building without a Permit".[2] Salvatore allegedly threatened to fine the Orlowski plaintiffs $1,000.00 per day if the home was not moved. Upon receiving the correspondence, the Orlowski plaintiffs confronted Salvatore at the Town of Hancock Building Department and demanded an explanation. Salvatore responded by saying, "I don't remember speaking to you by phone" and asked "do you have anything in writing". The Orlowski plaintiffs indicated they did not and Salvatore responded, "then that's too bad".

[2]    The letter was not annexed to plaintiffs' complaint.

In April 2010, the Orlowski plaintiffs received an appearance ticket charging them with Building without a Permit. During a September 2010 court appearance, The Orlowski plaintiffs indicated to Salvatore that the same requirements did not apply to their neighbor, Joel May, who installed a manufactured home without a building permit in 2008, connected it to utilities and has occupied it ever since without a certificate of occupancy. Salvatore did not respond. The Orlowski plaintiffs refused to pay the $600 fine and requested a trial date. On October 25, 2010, the Orlowski plaintiffs were found not guilty after trial.

On November 16, 2010, Orlowski plaintiffs again received a letter from Salavatore stating that the relocation of the home constituted a violation of the Town of Hancock Local Law # 1 and threatened to fine Orlowski plaintiffs

up to $1,000.00 per day.[3] The Orlowski plaintiffs dismantled and disposed of the manufactured home.

[3]    The letter is not part of the record herein.

On June 22, 2012, plaintiffs filed the within action and asserted claims against Salvatore in both his individual and official capacities. On October 2, 2012, plaintiffs served the complaint on the Town Hall, Melody Oliver, at 661 West Main Street, in the Village of Hancock. On October 23, 2012, defendants filed the within motion to dismiss plaintiffs's complaint, in its entirety based upon insufficient service or, in the alternative, for failure to state a claim.

**DISCUSSION**

**I. DEFENDANTS' MOTION TO DISMISS UNDER 12(B)(5)**

When a defendant moves to dismiss the complaint under Rules 12(b) (5) and 12(b)(6), the court must address the issue of proper service before the alleged failure to state a claim. *Schwasnick v. Fields,* 2010 WL 2679935, at \*2 (E.D.N.Y.2010). In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, the court "must look to matters outside the complaint to determine whether it has jurisdiction." *Allen v. Nassau Cnty. Executive Office,* 2011 WL 1061019, at \*4 (E.D.N.Y.2011). "[W]hen a defendant moves to dismiss under rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Id.* (citations omitted).

**\*3** On June 22, 2012, plaintiffs filed the complaint in this Court. (Dkt. No. 1). On October 18, 2012, plaintiffs filed Proof of Service with this Court indicating that the summons for the Town of Hancock and Salvatore had been served upon Melody Oliver, Town Clerk for the Town of Hancock on October 2, 2012. (Dkt. No. 7). Defendants move to dismiss plaintiffs' complaint arguing that Salvatore and the Town of Hancock were not timely served within 60 days of the filing of the complaint, in accordance with this Court's Local Rules. In addition, defendant Salvatore argues that service was insufficient because he did not receive a mailed copy of the complaint. Plaintiffs do not offer any evidence or argument in opposition but request that, should the Court agree with defendants, that plaintiffs be granted additional time to re-serve defendants. *See* Dkt. No. 12, p. 5.

## A. Town of Hancock

Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b); *see also New York State Teamsters Council Health and Hosp. Fund v. C & D Specialized Transp., Inc., 1995 WL 79176, at \*1 (N.D.N.Y.1995)* (Local Rule 4.1(b) requires service of process preferably within 60 days from the date the complaint is filed with the clerk of the court, but in any case within the time allowed by Fed.R.Civ.P. 4).

Here, the Town of Hancock was served, via the Town Clerk, on October 2, 2012. While this was not within the 60 day time period set forth in Local Rule 4.1(b), service was effectuated within 120 days as provided in Fed.R.Civ.P. 4(m). Defendants do not claim that Melody Oliver was not authorized to accept service on behalf of the Town. While plaintiffs failed to complete service within 60 days after filing the complaint, in violation of the local rules, plaintiffs completed service within 120 days of when the complaint was filed and established personal jurisdiction over the Town of Hancock. *See Edsell v. Indep. Freightway, Inc., 1995 WL 375827, at \*3 (N.D.N.Y.1995)*. Accordingly, defendants' motion to dismiss the complaint against the Town of Hancock based upon insufficient service is denied.

## B. Salvatore [4]

[4] Defendant does not specify whether he seeks dismissal of all claims, in both his individual and official capacity, based upon lack of personal jurisdiction. However, the Court will assume the motion applies to all claims asserted against Salvatore.

### 1. Official Capacity

Service of process upon a municipal office is governed by Federal Rule of Civil Procedure 4(j)(2) which states that service may be completed by: "(A) delivering a copy of the summons and the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed.R.Civ.P. 4(j)(2).

**\*4** C.P.L.R. § 307(2), provides that:

> Personal service on a state officer sued solely in an official capacity or state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by 1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section.

Service on a town board or town supervisor is sufficient where the pleadings are left with the town clerk. *Schwasnick, 2010 WL 2679935, at \*3* (citing *Contento v. Veteran,* 1981 LEXIS 13478, at \*3 (S.D.N.Y.1981) (finding that serving the town clerk on behalf of town board members and the town supervisor in their personal capacities was only insufficient because the plaintiff did not mail a copy to the defendant after personal service)); *see also Wendell v. N.Y. State Ins. Dep't,* 2007 LEXIS 62314 \*10–12 (E.D.N.Y.2007) (sufficiency of service on Superintendent in his individual capacity determined

under Rule 4(e) and C.P.L. R. 308, in his official capacity under Rule 4(j)(2) and C.P.L.R. 307).

Based upon the record herein, service upon Melody Oliver, on behalf of Salvatore in his official capacity, is sufficient.

### 2. Individual Capacity

Service of process upon an individual within a judicial district of the United States is governed by Rule 4(e) which states that service may be completed by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e).

Pursuant to N.Y.C.P.L.R. § 308(2), service of process on an individual is sufficient where the summons is left with a "person of suitable age and discretion at the actual place of business" and mailing a copy to the same. Serving the Town Clerk on behalf of the Town Supervisor in his individual capacity is insufficient if the plaintiff does not mail copy after personal service. See Allen, 2011 WL 1061019, at *4 (collecting cases).

Without evidence indicating that the summons and complaint were also mailed to Salvatore, the claims against Salvatore, in his individual capacity, must be dismissed. The record contains no proof of service indicating that Salvatore was personally served the summons and complaint within the 120–day statutory window of Rule 4(m). Moreover, there is no proof of mailing. Therefore, plaintiffs claims against Salvatore, in his individual capacity, must be dismissed. See

Polite v. Town of Clarkstown, 60 F.Supp.2d 214, 216 (S.D.N.Y.1999).

### C. Request for Additional Time

**\*5** Good cause to excuse deficient service generally requires proof of "exceptional circumstances" that were "beyond [the plaintiff's] control." Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F.Supp.2d 585, 591 (S.D.N.Y.2006). In order to establish good cause for an extension of time for service a plaintiff must show "reasonably diligent efforts" to serve defendants within the allotted time frame. Forte v. Lutheran Augustana Extended Care and Rehab. Ctr., 2009 WL 4722325, at *3 (E.D.N.Y.2009) (citations omitted).

In this matter, plaintiffs have failed to establish set forth any argument to establish "good cause" with respect to the efforts to serve Salvatore as an individual. Plaintiffs allege that their agent was "told by Melody Oliver that she was authorized to accept service". There is no affidavit in the record from the process server attesting to this conversation. And even so, plaintiffs have not explained their failure to comply with § 308 or their failure to make additional efforts to serve Salvatore in his individual capacity. Thus, plaintiffs' request for an extension of time to re-serve Salvatore is denied.

## II. DEFENDANTS' MOTION TO DISMISS UNDER 12(B)(6)

### A. STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case. Global Network Commc'ns v. City of New York, 458 F.3d 150, 155 (2d Cir.2006); Patane v. Clark, 508 F.3d 106, 111–12 (2d Cir.2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable

opportunity to submit extrinsic evidence. *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Robinson v. Town of Kent, N.Y.,* No. 11 Civ. 2875, 2012 WL 3024766, at *3–4 (S.D.N.Y.2012) (citing *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed.R.Civ.P. 8(a) (2), with sufficient facts "to 'sho[w] that the pleader is entitled to relief[.]' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[.]" *Id.* at 570.

**\*6** The Second Circuit has held that, on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech. Inc.,* 987 F.2d 142, 150 (2d Cir.1993). The Second Circuit has clarified, however, that "[b]ecause this standard has been misinterpreted on occasion, we reiterate ... that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (citation and footnote omitted). [5]

5    At this early juncture, the Court declines to convert this motion to dismiss to one for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. *See, e.g., Global Network Commc'ns, Inc.,* 458 F.3d 150, 155 (2d Cir.2006) (holding that "[t]he conversion requirement of Rule 12(b) ... deters trial courts from engaging in factfinding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence [outside] the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it" (citations omitted)).

**B. Substantive Due Process Claims**

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to demonstrate a violation of either substantive or procedural due process rights, the plaintiff must first demonstrate the possession of a federally protected property right to the relief sought. *Puckett v. City of Glen Cove,* 631 F.Supp.2d 226, 236 (E.D.N.Y.2009) (citing *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir.1999)). To establish a substantive due process violation, a plaintiff must demonstrate that: (1) there is a valid property interest; and (2) defendants infringed on that property right in an arbitrary or irrational manner. *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 784 (2d Cir.2007).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding that the plaintiff must have more than a unilateral expectation; the plaintiff must have a legitimate claim of entitlement to the benefit). "In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the ... due process clause[,] a landowner must show a 'clear entitlement' to that benefit." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263–64 (2d Cir.1999). "This inquiry stems from the view that a property interest can sometimes exist in what is sought—in addition to the property interest that exists in what is owned—provided there is a 'legitimate claim of entitlement' to the benefit in question." *Zahra v. Town of Southold,* 48 F.3d 674, 679–80 (2d Cir.1995.

"[I]n order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *See id.* at 263 n. 1. "The analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision. *Zahra,* 48 F.3d at 679–80; *see also Walz v. Town of Smithtown,* 46 F.3d 162, 168 (2d Cir.1995) (homeowner had property interest in an excavation permit because superintendent of highways had no discretion to decline to issue it if the application stated the nature, location, extent and purpose of the proposed excavations).

**\*7** Defendants argue that the denial of an application for permission to develop property does not implicate a vested property interest if the government has the authority to grant or deny the application. Defendants claim that Local Law # 1 affords the Code Enforcement Officer discretion in deciding whether to issue building permits. Defendants further argue that even assuming plaintiffs properly plead a vested property interest, plaintiffs' substantive due process claims are subject to dismissal because the complaint does not allege egregious and arbitrary conduct. Defendants set forth different arguments in support of dismissal of Norwoods' and Orlowskis' portions of the complaint.

### 1. Local Law # 1

The relevant law in this matter is Local Law # 1 formally entitled, "A Local Law Providing for the Administration and Enforcement of the New York State Uniform Fire Prevention and Building Code". The relevant portions provide:

Section 3. Code Enforcement Officer and Inspectors

(a) The office of Code Enforcement Officer is hereby created. The Code Enforcement Officer shall administer and enforce all the provisions of the Uniform Code, the Energy Code and this local law. The Code Enforcement Officer shall have the following powers and duties:

(1) to receive, review and approve or disapprove applications for Building Permits [ ... ]

Section 4.

(a) Building Permits Required. Except as otherwise provided in subdivision (b) of this section, a Building Permit shall be required for any work which must conform to the Uniform Code and/or the Energy Code, including, but not limited to, the construction, enlargement, improvement, removal, relocation or demolition of any building or structure or any portion thereof, and the installation of a solid fuel burning heating appliance, chimney or flue in any dwelling unit. No person shall commence any work for which a Building Permit is required without first having obtained a Building Permit from the Code Enforcement Officer.

(f) Issuance of Building Permits. An application for a Building Permit shall be examined to ascertain whether the proposed work is in compliance with the applicable requirements of the Uniform Code and Energy Code. The Code Enforcement Officer shall issue a Building Permit if the proposed work is in compliance with the applicable requirements of the Uniform Code and Energy Code.

### 2. Norwood Plaintiffs

The Norwood plaintiffs argue that Salvatore directed them to expend monies before even accepting the application for the building permit. The Norwood plaintiffs argue that this demand is in contravention of Local Law # 1 because the CEO is not empowered with the authority to refuse to accept the application for a permit. In response, defendants argue that it is "indisputable that on November 24, 2008, plaintiffs Norwood submitted a signed building permit application to the Town and paid the required fee". [6] Defendants claim that upon receipt of that application, Salvatore had broad discretion to review and approve or disapprove the application.

[6]    Defendants annexed a copy of the alleged building permit application to the reply papers. The application has not been properly authenticated.

**\*8** In a case involving a similar code provision, the district court in the Eastern District, held that the plaintiff sufficiently plead a property interest in obtaining a building permit. In *Hampton Bays Connections, Inc. v. Duffy,* 127 F.Supp.2d 364, 378 (E.D.N.Y.2001), the plaintiffs claimed that the defendants deprived them

of their substantive due process rights by arbitrarily denying land use permits including an application for a building permit for the construction of a McDonald's. The applicable code provided, "[a]ny person wishing to construct a building must obtain a building permit from the Building Inspector". The Court cited to the relevant portions of the Town Code:

the Town Code does state that after receiving the application, the Building Inspector "shall examine the premises for which" the application has been received "for the purpose of ensuring compliance with laws, ordinances and regulations governing building construction", shall examine the application, as well as the plans, specifications and documents filed therewith, shall refer the application to the Town Director of Natural Resources, who will determine whether an additional permit is necessary for construction in a Wetlands area, and shall issue a building permit upon approval of the application. If the application, together with plans, specifications and other documents filed therewith, describes proposed work which does not conform to all of the requirements of the applicable building regulations, the building official shall disapprove the same.

*Id.* at 379 (internal citations omitted).

The Court found that, "[t]he Town Code does not explicitly set forth whether the Building Inspector must approve certain applications, whether he may deny an application, or the circumstances under which the Building Inspector will approve or deny an application." *Id.*

The Court held:

Given these provisions of the Town Code, the Court finds that the Building Inspector has very little discretion when deciding whether a permit should issue. Rather, the Town Code indicates that if the application meets all relevant regulations and ordinances, then the Building Inspector shall approve the application and issue the permit.

The Court acknowledge that, "later in the litigation, it may become clear that the Building Inspector does

exercise his discretion when he applies the relevant building ordinances and regulations to a particular application". *Id.* However, the Court concluded, "at this early stage in the litigation, without information regarding the types of ordinances and regulations that are applicable to this case and the manner in which they are examined, the Court finds that the Building Inspector does not retain sufficient discretion to defeat the plaintiffs' substantive due process claim." *Id.* (citing *inter alia RRI Realty Corp. v. Inc. Vill. of Southampton,* 870 F.2d 911, 918 (2d Cir.1985)).

Viewing the evidence in a light most favorable to plaintiff, as the Court must do on a motion to dismiss, the Court finds that the Local Law does not provide the CEO with the discretion to direct that "prep" work must be performed prior to the issuance of a building permit. Moreover, pursuant to Section 4(f), the CEO is not vested with broad discretionary authority to grant or deny a permit or application. Section (f) clearly provides that a permit shall be issued if the proposed work is in compliance with the applicable codes. Here, the record does not contain any information relevant to the issue of whether Norwood plaintiffs' application or proposed work complied with the Uniform or Energy Code.

**\*9** In cases where courts have found that the plaintiff does not possess a property interest in a permit, those cases involved distinguishable codes and regulations that provided the governmental body with broad discretion over whether a permit was granted. *See A.B. C. Home Furnishings, Inc. v. Town of East Hampton,* 947 F.Supp. 635, 645 (E.D.N.Y.1996) (both the Town Code, and the permit application expressly provide that the permit "may" be revoked under certain circumstances and according to the permit application signed by the plaintiff, without notice or a hearing, providing the defendants with sufficient discretion in the determination as to whether to revoke a permit to defeat ABC's claim of a property interest); *see also Application/Action of 89 JPS, L.L.C. v. Joint Vill. of Lake Placid and Town of N. Elba Review Bd.,* 2011 WL 4344020, at \*15 (N.D.N.Y.2011) (pursuant to the Land Use Code at issue, the defendant had the discretion to "approve, approve with stipulated conditions, modification or disapprove any application" presented); *see also Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester,* 2013 WL 135216, at \*11 (S.D.N.Y.2013) (the plain language of the statute gives discretion to the mayor or local licensing authority to

grant the license "as he shall deem proper," and to limit licenses to those who meet the standard of "good character."). In this matter, Local Law # 1 does not contain such broad discretionary language.

The Court has reviewed the cases cited by defendants in support of the motion to dismiss and notes that those cases involved motions for summary judgment or motions after a jury trial. *See RRI,* 870 F.2d 911; *see also Tomlins v. Vill. of Wappinger Falls,* 812 F.Supp.2d 357, 368 (S.D.N.Y.2001). Applying *Hampton Bay* to the facts at hand, at this stage of the litigation, the Norwood plaintiffs have adequately plead a property interest in the building permit.

To meet the second prong, plaintiff must establish that the government action transgresses "the outer limit" of legitimate government action and that the officials actions were "shocking, abusive, capricious or arbitrary". *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne,* 353 F.Supp.2d 375, 385 (E.D.N.Y.2005).

Here, plaintiffs allege that Salvatore willfully, maliciously, selectively, wrongfully and intentionally denied them the ability to rebuild their home. Plaintiffs assert that defendants acted "in an arbitrary and irrational manner" and issued "onerous and unreasonable demands" directing plaintiffs to "perform unnecessary work, which wrongfully depleted the funds that were available to plaintiffs to complete the reconstruction of their home". Plaintiffs contend that the demands were made for the purposes of "supporting a racist agenda and 'de facto' zoning scheme designed to exclude minorities from residing in the Town of Hancock".

Taking all of the plaintiffs' allegations together and viewing them in the light most favorable to the plaintiff, the Court finds that the Norwood plaintiffs have sufficiently stated an arbitrary denial and a substantive due process claim with respect to the denial of the building permit.

### 3. Orlowski Plaintiffs

**\*10** The Orlowski plaintiffs claim that they "clearly had a property interest in their manufactured home". Defendants argue that the issue is not whether they had a property interest in the manufactured home, but rather, whether they had a property interest in the location of the home.

While not discussed by either party, the ripeness doctrine precludes the Orlowski plaintiffs from seeking review in this Court. Land use challenges, whether pursued as a takings claim under the Fifth Amendment or as violations of equal protection or due process, are subject to the ripeness requirement articulated in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), which states that a land use challenge is not ripe for judicial review until the government entity charged with implementing the relevant regulations has reached a "final decision" regarding their application to the property at issue. *Lost Trail LLC v. Town of Weston,* 289 F. App'x 443, 444 (2d Cir.2008). Where there has been no final, definitive decision alleged either in the complaint or in plaintiffs' opposition papers that prohibited plaintiffs from developing and using the property, there is no constitutional violation. *See Grossi v. City of New York,* 2009 WL 4456307, at \*5 (E.D.N.Y.2009) (the plaintiff failed to complete the paperwork and file the application with the appropriate offices) (citing *Goldfine v. Kelly,* 80 F.Supp.2d 153, 160 (S.D.N.Y.2000) ("Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action.")).

In this matter, the Orlowski plaintiffs do not allege that they applied for a building permit to move their home, nor do they allege that they were denied the right to file any such application. At best, the Orlowski plaintiffs "informally" discussed whether they needed to apply for a permit with Salvatore. Defendants were not presented with an application and thus, made no decision regarding any building permit application. Consequently, the Orlowski plaintiffs claims are not ripe for review. *See Homefront Org., Inc. v. Motz,* 570 F.Supp.2d 398, 406–11 (E.D.N.Y.2008) (finding claims not ripe for review when "plaintiffs cannot even argue that they made, and were denied, a meaningful application"). [7] Defendants' motion to dismiss the Orlowski plaintiffs' substantive due process claims is granted.

[7]     As the Court has found that the Orlowski plaintiffs' substantive due process claims are not ripe for review, the Court takes no position on whether the Orlowski plaintiffs possessed a vested property right or whether defendants' actions were egregious and/or arbitrary.

### C. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To prevail on an equal protection claim based on a theory of selective enforcement, plaintiffs must show both (1) that they were treated differently from other similarly situated businesses and (2) that "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cine SK8, Inc.,* 507 F.3d at 790. Where plaintiffs merely alleged less favorable treatment than "similarly situated", plaintiffs fail to state viable equal protection claim. *Ruston v. Town Bd. for the Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010). In order to prevail, plaintiffs must allege facts plausibly indicating that the defendants would have enforced similar regulations when faced with the request of another resident whose situation was similar to the plaintiffs. *Nemeth v. Vill. of Hancock,* 2011 WL 56063, at *6 (N.D.N.Y.2011). At the motion to dismiss stage, a court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. Thus, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and][c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,* 815 F.Supp.2d 679, 698 (S.D.N.Y.2011).

### 1. Norwood plaintiffs

*\*11* Defendants argue that plaintiffs complaint fails to allege an equal protection claim because they failed to plead that they were treated differently from similarly situated individuals. Defendants claim that the Norwood plaintiffs failed to identify any such similarly situated individual and only identified Joel May in response to the within motion. Moreover, defendants claim that even assuming that plaintiffs' allegations are deemed true as to May, plaintiffs fail to allege a sufficient degree of similarity to sustain a cause of action.

In the complaint, the Norwood plaintiffs allege that they have been deprived of equal protection:

> Compared with other similar situations involving other property owners in the Town of Hancock, plaintiffs Norwood have been adversely selectively treated.

The Norwood plaintiffs' portion of the complaint does not refer to Joel May. Because "[t]he totality of [p]laintiffs' allegations regarding[their] Equal Protection claim is a conclusory assertion, without any detail", the claim is subject to dismissal. *See Dellutri v. Vill. of Elmsford,* 2012 WL 4473268, at *15 (S.D.N.Y.2012) (the plaintiff alleged that the defendant differed in its "treatment to other similarly situated property owners."). In plaintiffs' opposition to the within motion, counsel states, "[p]laintiffs Norwood were treated differently from the Mays, who are similarly situated in that they won property in the same local jurisdiction". Even assuming the Court accepted the assertions regarding Mr. May contained in the Norwood plaintiffs' opposition to this motion, plaintiffs allegations, are insufficient. Plaintiffs do not allege Joel May or the Mays applied for, and were denied, a building permit, under similar circumstances. Possible comparators for the treatment alleged by the plaintiffs herein may be other residents who applied for permits and whose complaints were treated differently, but the Norwood plaintiffs do not identify any such people or allege their existence. *See Caldarola v. Town of Smithtown,* 2010 WL 6442698, at *9 (E.D.N.Y.2010). The Norwood plaintiffs fail to allege that defendants permitted other landowners with substantially similar properties to develop their land without the need for "prep work" prior to receiving a building permit. Plaintiffs' conclusory statements that defendants acted maliciously and with an intent to harm plaintiffs fail as a matter of law. *See Grossi,* 2009 WL 4456307, at *9.

Based upon the complaint, even viewing the evidence in a light most favorable to the Norwood plaintiffs, the Court finds that the Norwood plaintiffs have failed to sufficiently allege that they were similarly situated to any property owner.

### 2. Orlowski plaintiffs

In the complaint, the Orlowski plaintiffs allege:

> At this Court appearance, the plaintiffs Orlowski indicated to defendant Salvatore that the same onerous

requirements did not apply to the next-door neighbor of the plaintiffs, Joel May, who installed a manufactured home without a permit in 2008, connected it to utilities without a building permit, and has occupied it since then without a certificate of occupancy.

\* \* \*

**\*12** Compared with other similar situations involving other property owners in the Town of Hancock, plaintiffs Orlowski have been adversely selectively treated.

Assuming the allegations in the complaint as true, the Court finds that the Orlowski plaintiffs have sufficiently plead that they were similarly situated to May. However, upon review of the complaint, the Court finds that plaintiffs have failed to establish the second element necessary for an equal protection claim. Plaintiffs' allegations with respect to "malicious or bad faith intent to injure" are wholly conclusory. Plaintiffs allege:

> As a result of the actions of defendant Salvatore in falsely indicating that it was proper for plaintiffs Orlowski to relocate their manufactured home, and then issuing false violations contrary to his specific directions, and willfully, maliciously, selectively, wrongfully and intentionally prosecuting plaintiffs Orlowski in an effort to prevent them from utilizing their manufactured home, in selectively prosecuting plaintiffs Orlowski for relocating a manufactured home while allowing their next door neighbor Joel may to do so openly and without sanction, defendants have deprived plaintiffs Orlowski of a substantial property interest.

*See* Pl. Cmplt at ¶ 17.

However, plaintiffs fail to explain Salvatore's motive. *See Laidlaw Energy and Envtl., Inc. v. Town of Ellicottville, New York,* 2011 WL 4954881, at \*11 (W.D.N.Y.2011) (the plaintiff's complaint was filled with allegations regarding the defendant's illicit motives but an economic interest did not equate to malicious motives nor were the allegations

compatible with an intention to injure the plaintiff). Without more than mere conclusory allegations, this does not suffice to establish an intent to harm plaintiffs.

### 3. Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading shall be freely given when justice so requires. *See Livingston v. Piskor,* 215 F.R.D. 84, 85 (W.D.N.Y.2003). "Absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 283 (2d Cir.2000) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). In their opposition to defendants' motion, plaintiffs seek leave to amend the complaint. *See* Dkt. No. 12, p. 14. Plaintiffs did not file a cross motion nor did they file a proposed amended complaint. "While the Court is skeptical that plaintiffs can cure the deficiencies, the Court finds it would not be futile to permit plaintiffs the opportunity to amend other portions of their pleading ." *MacPherson v. Town of Southampton,* 738 F.Supp.2d 353, 375 (E.D.N.Y.2010) (the plaintiffs' opposition papers contain a general request for "an opportunity to amend their pleading as Rule 15 permits, in the event that the Court finds anything lacking."). If the Norwood plaintiffs are able to allege that similarly situated property owners were treated differently, naming such owners, and that they were treated differently as a result of malice, bad faith or intentional discrimination, the Norwood plaintiffs could allege an equal protection claim sufficient to pass Rule 12(b)(6) muster. Accordingly, the Norwood plaintiffs' are granted leave to replead their equal protection claim only. *See A.B. C. Home Furnishings, Inc. v. Town of East Hampton,* 947 F.Supp. 635, 647 (E.D.N.Y.1996).

**\*13** With respect to the Orlowski plaintiffs, since there is no evidence of undue prejudice to defendants or dilatory motives by plaintiffs, the Court grants plaintiffs' motion to amend their complaint. Plaintiffs' amended complaint may not add any additional claims, but simply include additional facts in support of their arguments on the equal protection claim.

### D. Norwood's Request for Declaratory Relief
Defendants argue that this Court lacks subject matter jurisdiction over the Norwood plaintiffs' request for

declaratory relief because plaintiffs failed to commence an Article 78 proceeding in state court within the applicable statute of limitations. Plaintiffs do not present any argument in support of this claim but assert, "these claims [ ... ] are properly made, however, [plaintiffs] respectfully leave determination of this portion of the complaint within the sound discretion of this Honorable Court". Because plaintiffs fail to sufficiently respond to defendants' arguments for the dismissal of this claim, defendants' burden with regard to those arguments is modest. *See Douglas v. New York State Adirondack Park Agency,* 2012 WL 3999763, at *30 (N.D.N.Y.2012).

Article 78 affords meaningful and constitutionally-adequate post-deprivation due process. *C.C.S.comUSA, Inc. v. Gerhauser,* 2012 WL 1118625, at *7 (E.D.N.Y.2012) (citing *inter alia Manza v. Newhard,* 2012 WL 917286, at *2 (2d Cir.2012)* (noting that Article 78 provided plaintiff with adequate post-deprivation due process)); *see also Hampton Bays,* 127 F.Supp.2d at 381 (E.D.N.Y.2001) (availability of Article 78 proceeding precluded procedural due process claim arising from denial of building permit). A proceeding pursuant to N.Y.C.P.L.R. Art. 78 is available to challenge whether an ordinance was enacted in accordance with the proper procedures. *Save Pine Bush, Inc. v. City of Albany,* 70 N.Y.2d 193, 202, 518 N.Y.S.2d 943, 512 N.E.2d 526 (1987). The statute of limitations for Article 78 proceedings is four months. N.Y.C.P.L.R. § 217; *Erie Boulevard Triangle Corp. v. City of Schenectady,* 250 F.Supp.2d 22, 36 (N.D.N.Y.2003) (citing *Matter of Save the Pine Bush v. City of Albany,* 70 N.Y.2d 193, 203, 518 N.Y.S.2d 943, 512 N.E.2d 526 (1987)).

In the Third Cause of Action, the Norwood plaintiffs seek a judgment declaring that plaintiffs are entitled to a building permit and Certificate of Occupancy. Plaintiffs claim that Salvatore improperly ordered plaintiffs to perform work in anticipation of a building permit in an effort to advance his "racist agenda." The claim for declaratory judgment is, "an inappropriate vehicle" because plaintiffs are not challenging the validity of any portion of the Code. *See Sandy Hollow Assoc. LLC v. Inc. Vill. of Port Washington N.,* 2010 WL 6419570, at *24–26 (E.D.N.Y.2010) (citing *Janiak v. Town of Greenville,* 203 A.D.2d 329, 331, 610 N.Y.S.2d 286 (2d Dep't 1994) (declaratory judgment action is the appropriate vehicle for bringing a challenge that is "clearly legislative in nature, as evinced by its general applicability, indefinite

duration and formal adoption")). Since plaintiffs' claim is that Salvatore acted beyond the scope of his authority under the Code, the proper forum for plaintiffs' claims was an Article 78 proceeding in the appropriate New York State Supreme Court. *Id.* (citing N.Y. C.P.L.R. § 7803); *see also Trager v. Town of Clifton Park,* 303 A.D.2d 875, 877, 756 N.Y.S.2d 669 (3d Dep't 2003) (claim alleging that "defendant illegally and arbitrarily imposed, and then increased, certain municipal fees" "should have been challenged in a CPLR article 78 proceeding"). In the complaint, the Norwood plaintiffs allege that Salvatore demanded that they perform "prep work" in July 2009 and that he reiterated those demands in September 2009. Plaintiffs' time to bring an Article 78 proceeding has expired. Because plaintiffs did not challenge Salvatore's exercise of authority within four months, plaintiffs are now barred from alleging such claims here.

**\*14** Defendants' motion to dismiss the Norwood plaintiffs' third cause of action for declaratory relief is granted.

### E. Orlowski Plaintiffs' Claim for Malicious Prosecution

Defendants vaguely argue that the Orlowski plaintiffs' malicious prosecution claim must be dismissed because it is barred by the applicable statute of limitations. As noted *supra,* plaintiffs failed to present any clear argument in support of this claim.

Initially, the Court notes that plaintiffs' malicious prosecution claims are ambiguous and it is unclear whether the claim is asserted pursuant to federal and/or state law. In the complaint, the Orlowski plaintiffs' third cause of action is for "malicious prosecution pursuant to 42 USC 1983". However, in their opposition to defendants' motion to dismiss, the Orlowski plaintiffs allege that their "state law claim" for malicious prosecution is "properly made". While neither party presents any cohesive argument in support or in opposition to this claim, the Court, upon it's own independent review, finds that plaintiffs' malicious prosecution claim, regardless of how it is plead, is subject to dismissal.

In order to state a viable claim for malicious prosecution in New York, a plaintiff must show: (1) the initiation and continuation of criminal process against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) the lack of probable cause for commencing the

proceeding; and (4) actual malice as a motivation for the defendant's actions. *See Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir.2003). In addition, to prevail upon a Section 1983 malicious prosecution claim, a plaintiff must also show that there was a Fourth Amendment "seizure." *Washington v. Cnty. of Rockland,* 373 F.3d 310, 316 (2d Cir.2004). To satisfy the constitutional element, plaintiff must show a seizure or other "perversion of proper legal procedures" implicating plaintiff's personal liberty and privacy interests under the Fourth Amendment. *Id.*

Here, plaintiffs § 1983 malicious prosecution claim is insufficient because plaintiffs failed to plead the seizure element. The Second Circuit has held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment 'seizure.'" *Dellutri v. Vill.of Elmsford,* 2012 WL 4473268, at *12 (S.D.N.Y.2012) (citing *Burg v. Gosselin,* 591 F.3d 95, 98 (2d Cir.2010)). Some courts have held that a criminal process involving multiple court appearances effects a seizure under the Fourth Amendment. *Id.* (citations omitted). "However, the weight of district court authority in circumstances [ ... ] involving a plaintiff charged with non-felony offenses who was neither arraigned nor physically detained but who might have made a number of court appearances, counsels against finding a constitutional injury." *Id.* (citation omitted); *see also Manbeck v. Micka,* 640 F.Supp.2d 351, 370 (S.D.N.Y.2009) (finding that a seizure had not occurred where plaintiff had not been detained at any point after she had been "issued appearance tickets to appear in Town Justice Court to answer misdemeanor charges of violations of the Town's Zoning Laws" and had a civil jury trial on the alleged violations); *see also Subirats v. D'Angelo,* 938 F.Supp. 143, 149 (E.D.N.Y.1996) (the plaintiff was issued two summonses to appear in a state court as a result of his alleged violation of the Huntington Town Code).

**\*15** Here, not only have plaintiffs failed to plead a "seizure" to satisfy the constitutional element, plaintiffs have failed to specify the number of court appearances made in connection with the charge. *See Dellutri,* 2012 WL 4473268 at *12 (the plaintiff did not identify the number of court appearances he made in connection with his trial). There is no evidence that plaintiffs were required to post bail, or that their ability to travel was limited. Given the vague allegations in the complaint, the Court grants

defendants' motion to dismiss plaintiffs' 1983 claim for malicious prosecution.

To the extent that plaintiffs intend to assert a claim for malicious prosecution under New York State law, that claim is also subject to dismissal. The statute of limitations under New York law for malicious prosecution is one year. *See* N.Y. CPLR § 215(3); *see also Brown v. Seniuk,* 2002 WL 32096576, at *3 (E.D.N.Y.2002) (the Statute of Limitations for actions for malicious prosecution is three years under 42 U.S.C. § 1983, and one year under New York state law). The cause of action accrues when there is a favorable termination of criminal proceedings against the plaintiff. *Baggett v. Town of Lloyd,* 2011 WL 4565865, at *4 (N.D.N.Y.2011) (citing *Roman v. Comp USA, Inc.,* 38 A.D.3d 751, 832 N.Y.S.2d 270 (2d Dep't 2007)).

In this matter, plaintiffs allege that they were found "not guilty" after a trial on October 25, 2010. Therefore, because more than one year elapsed between the termination of the proceedings and the filing of the complaint, plaintiffs state law claim for malicious prosecution is untimely and must be dismissed.

**F. Qualified Immunity**

Defendants claim that dismissal is warranted based upon qualified immunity. "The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Mollica v. Volker,* 229 F.3d 366, 370–71 (2d Cir.2000) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting [the] officials was clearly established but was violated, the officials will nonetheless be entitled to qualified immunity 'if ... it was objectively reasonable for

them to believe their acts did not violate those rights.' " *Zellner v. Summerlin,* 494 F.3d 344, 367 (2d Cir.2007) (quotation and other citation omitted).

**\*16** The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner,* 494 F.3d at 367 (citing *Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir.2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for an official to believe that his conduct did not violate a clearly established right, i.e., whether officials of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that ... it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case." *Id.* (quotation and other citations omitted). If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman,* 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe,* 332 F.3d 68, 81 (2d Cir.2003) (quotation omitted); *see also Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995) (quotation omitted).

Having carefully considered the present record, the Court is not well-positioned at this early stage to dismiss plaintiff's claims on the basis of qualified immunity. The Court finds that "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee,* 332 F.Supp.2d 659, 666 (S.D.N.Y.2004). For the Court to find that defendants are entitled to qualified immunity, it would have to engage in improper credibility determinations, which it is unwilling to do. *See Robison v. Via,* 821 F.2d 913, 923–24 (2d Cir.1987).

## CONCLUSION

**IT IS HEREBY**

**ORDERED** that defendants' motion to dismiss plaintiffs' complaint (Dkt. No. 8) is **GRANTED IN PART AND DENIED IN PART AS FOLLOWS;** it is

**ORDERED,** that defendant Town of Hancock's motion to dismiss plaintiffs' complaint due to insufficient service is **DENIED;** it is further

**ORDERED,** that defendant Salvatore's motion to dismiss plaintiffs' claims against him in his official capacity, for lack of personal jurisdiction, is **DENIED;** it is further

**ORDERED,** that defendant Salvatore's motion to dismiss plaintiffs' claims against him in his individual capacity, for lack of personal jurisdiction, is **GRANTED;** it is further

**ORDERED,** that defendants' motion to dismiss Norwood plaintiffs' substantive due process claims is **DENIED;** it is further

**\*17 ORDERED,** that defendants' motion to dismiss Orlowski plaintiffs' substantive due process claims is **GRANTED;** it is further

**ORDERED,** that defendants' motion to dismiss Norwood plaintiffs' equal protection claims is **GRANTED with leave to amend as discussed** *supra;* it is further

**ORDERED,** that defendants' motion to dismiss Orlowski plaintiffs' equal protection claims is **GRANTED with leave to amend as discussed** *supra;* it is further

**ORDERED,** that defendants' motion to dismiss Norwood plaintiffs' third cause of action for declaratory relief is **GRANTED;** it is further

**ORDERED,** that defendants' motion to dismiss the Orlowski plaintiffs' malicious prosecution claims is **GRANTED;** it is further

**ORDERED,** that defendants' motion to dismiss the complaint based upon qualified immunity is **DENIED;** it is further

**ORDERED,** that plaintiffs shall file and serve their amended complaint with respect to equal protection claims only, consistent with this Order, within fourteen days of the date of this Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1499599

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4046780
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jorge Tirse, Plaintiff,

v.

David Gilbo in his official capacity as a Lieutenant
in the Johnstown Police Dep't; Johnstown Police
Dep't; Gloversville Police Dep't; Donald Vandeusen
in his official capacity as the Chief of Police of
the Gloversville Police Department; Louise Sira
in her official capacity as District Attorney of
the County of Fulton; John P. Sira, Jr., in his official
capacity as a Captain in the Gloversville Police
Dep't; Jesse Ashdown in his official capacity as a
Special Prosecutor and Assistant District Attorney
in the County of Saratoga District Attorney's Office;
Fulton County; Mark Gifford in his official capacity
as the Chief of Police of the Johnstown Police
Dep't; and Darryl Bazan in his official capacity
as a New York State Police Investigator in the
Bureau of Criminal Investigation, Defendants.

6:15-CV-0987 (GTS/ATB)
|
Signed 07/27/2016

**Attorneys and Law Firms**

JORGE TIRSE, 53 Park Street, Gloversville, New York
12078, Plaintiff Pro Se.

MURPHY, BURNS, BARBER & MURPHY, LLP,
226 Great Oaks Blvd., OF COUNSEL: THOMAS K.
MURPHY, ESQ., STEPHEN M. GROUDINE, ESQ.,
Albany, New York 12203, Counsel for Defendants David
Gilbo, Johnstown Police Dept., and Mark Gifford.

LEMIRE JOHNSON, LLC, P.O. Box 2485, 2534 Route
9, OF COUNSEL: APRIL J. LAWS, ESQ., GREGG T.
JOHNSON, ESQ., Malta, New York 12020, Counsel for
Defendants Louise Sira, Donald VanDeusen, Gloversville
Police Dept., John P. Sira, Jr., Jesse Ashdown, and Fulton
County.

ERIC T. SCHNEIDERMAN, 615 Erie Blvd. West, Suite
102, OF COUNSEL: KEVIN M. HAYDEN, ESQ.,

Assistant Attorney General, Syracuse, New York 13204,
GLENN T. SUDDABY, Chief United States District
Judge, Attorney General for the State of New York,
Counsel for Defendant Darryl Bazan.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Jorge Tirse ("Plaintiff") against the
County of Fulton, Louise Sira in her official capacity
as the District Attorney for the County of Fulton
(collectively "County Defendants"), the Gloversville
Police Department, Donald VanDeusen in his official
capacity as the Chief of Police of the Gloversville Police
Department, John P. Sira, Jr., in his official capacity as
a Gloversville Police Captain (collectively "Gloversville
Defendants"), Jessie Ashdown in his official capacity as
a special prosecutor and an Assistant District Attorney
for the County of Saratoga ("Defendant Ashdown"),
the Johnstown Police Department, Mark Gifford in his
official capacity as the Chief of Police of the Johnstown
Police Department, David Gilbo in his official capacity
as a Lieutenant in the Johnstown Police Department
(collectively "Johnstown Defendants"), and Darryl Bazan
in his individual and official capacity as a New York State
Police Investigator ("Defendant Bazan"), are Defendants'
respective motions to dismiss Plaintiff's Complaint (Dkt.
No. 1) for failure to state a claim upon which relief can
be granted, pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt.
Nos. 11, 14, 26, 27, 30). For the reasons set forth below,
Defendants' motions are granted.

**I. RELEVANT BACKGROUND**

Generally, liberally construed, Plaintiff's Complaint
alleges as follows. On November 29, 2011, Plaintiff's
business was closed due to a civil dispute with his landlord,
Joseph Andrews. (Dkt. No. 1, ¶ 1 [Pl.'s Compl.].) On
the same day, Plaintiff was given a notice from the
Johnstown Police Department not to trespass on the
property. (*Id.*, ¶ 3.) On December 1, 2011, Plaintiff went
to the Johnstown Police Department to file a complaint
against Mr. Andrews and Mr. Andrews's friend, "Sgt.
Stevens," for not allowing Plaintiff to access the property
and for threatening to arrest him even though he had
a lease with Mr. Andrews. (*Id.*, ¶ 2.) While at the
police department, Plaintiff was interviewed by Defendant

Gilbo, who secretly recorded the interview. (*Id.*, ¶ 4.) In that interview, Plaintiff described everything that had happened. (*Id.*) The interview lasted nine minutes and 32 seconds; however, Defendants Gilbo and Bazan conspired to edit the video so it would show only three minutes of the interview. (*Id.*, ¶¶ 4-5, 31, 34.) The unedited video would have constituted proof that Plaintiff had not committed a crime; but, because it was edited, it depicted Plaintiff admitting to a crime that he never committed. (*Id.*, ¶ 7.) The video was later used in Plaintiff's criminal prosecution. (*Id.*, ¶ 6.)

On December 7, 2011, Plaintiff commenced a breach-of-contract action against Mr. Andrews in New York State Supreme Court, Fulton County. (*Id.*, ¶ 10.) The following day, Mr. Andrews filed a criminal complaint against Plaintiff, alleging that Plaintiff had forged his signature on the lease. (*Id.*, ¶ 11.) This was a false accusation, evidenced by the fact that Plaintiff had sent the lease to the New York State Liquor Authority on November 23, 2011, one week before Mr. Andrews prohibited Plaintiff from entering the premises. (*Id.*, ¶ 13.) On January 13, 2012, Plaintiff was falsely arrested by Defendant Bazan for felony forgery. (*Id.*, ¶¶ 14-15.) During Plaintiff's criminal and civil proceedings, he was advised by the court and Defendant Ashdown that, if Plaintiff dropped his civil suit against Mr. Andrews, the criminal charges against him would be withdrawn. (*Id.*, ¶¶ 16-17.) Defendant Ashdown was assigned as a special prosecutor to handle Plaintiff's criminal prosecution due to Defendant Louise Sira's relationship with Mr. Andrews. (*Id.*, ¶ 18.) Plaintiff alleges that the forgery charge was a "trump charge" to use as leverage against him and to coerce him into dismissing his civil action against Mr. Andrews. (*Id.*, ¶¶ 18-21.)

**\*2** Furthermore, "in-house police reports" generated by the Gloversville Police Department were used in bad faith and to maliciously prosecute Plaintiff. (*Id.*, ¶¶ 22, 26-27.) Plaintiff alleges that Defendant John Sira conspired in Plaintiff's malicious prosecution by forwarding these in-house police reports to Gerard McAuliffe, Mr. Andrews's attorney, who in turn sent them to Defendant Ashdown. (*Id.*, ¶¶ 22, 24, 26.) Defendant John Sira knew that using or sharing these in-house documents violated federal, state, and local laws. (*Id.*, ¶ 29.) Defendant John Sira is married to Defendant Louise Sira. (*Id.*, ¶ 28.)

On August 15, 2012, Plaintiff received a copy of the video that recorded his interview with Defendant Gilbo. (*Id.*, ¶ 30.) Defendant Ashdown also received a copy of this video but claims he never watched it. (*Id.*, ¶ 33.) Plaintiff had difficulty viewing the video because it was saved under the editing software used by the police department. (*Id.*, ¶ 35.) Plaintiff went to the Johnstown Police Department and received assistance from an officer in accessing the videotape. (*Id.*) When Plaintiff finally viewed the videotape, he noticed that it did not end correctly. (*Id.*, ¶ 36.) As a result, Plaintiff made a Freedom of Information Law ("FOIL") request for the entire videotape, which was denied by Defendant Gilbo. (*Id.*) Plaintiff spoke with Defendant Gifford regarding the matter, including the fact that the videotape had been tampered with and had been done so out of malice. (*Id.*, ¶ 37.) Defendant Gifford told Plaintiff that he "shouldn't of [done] what [he] did" and hung up the telephone. (*Id.*) Plaintiff left several messages for Defendant Gifford but they were never returned. (*Id.*, ¶ 38.) Plaintiff also contacted public officials, such as the local Mayor, regarding the issue but to no avail. (*Id.*, ¶¶ 39-40, 43.) Plaintiff eventually sent the videotape to be analyzed and the results confirmed that it had been edited and tampered with. (*Id.*, ¶ 40.)

Based upon the foregoing allegations, the Complaint asserts the following eight causes of action: (1) a claim that Defendants maliciously abused their power by using legal process to accomplish some ulterior purpose outside the legitimate ends of process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (2) a claim that Defendants deliberately abused legal process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (3) a claim that Defendants intentionally inflicted emotional distress on Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (4) a claim that Defendants falsely arrested Plaintiff and deprived him of his constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; (5) a claim that Defendants maliciously prosecuted Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (6) a claim that Defendants conspired to violate Plaintiff's constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1985; (7) a claim that Defendants refused or neglected to prevent Plaintiff's constitutional rights from being violated in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; and (8) a

claim that Defendants Gifford and VanDeusen failed to train, supervise, and discipline their subordinates in their respective police departments in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. (*Id.* at 9-16.)


## II. PARTIES' BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS

### 1. Defendants' Memoranda of Law in Chief on Their Respective Motions to Dismiss

#### a. The County Defendants' Memorandum of Law in Chief

**\*3** Generally, in their memorandum of law, the County Defendants assert thirteen arguments with regard to Plaintiff's claims against them. (Dkt. No. 11, Attach. 5 [Cty. Defs.' Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity because (a) she acted within the scope of her duties in initiating the criminal prosecution against Plaintiff, and (b) she recused herself from the criminal prosecution itself. (*Id.* at 5-7.)

Second, the County Defendants argue that Plaintiff's claims for abuse of process, false arrest, and conspiracy are time-barred by New York's three-year statute of limitations for personal injury. (*Id.* at 7.)

Third, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1981 because it does not allege that Plaintiff is a member of a racial minority or that Defendants discriminated against Plaintiff on the basis of his race. (*Id.* at 9.)

Fourth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1985 because it does not allege that they acted with racial animus toward Plaintiff. (*Id.* at 10-11.)

Fifth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1986 because (a) it does not allege facts indicating that they had any involvement in Plaintiff's criminal prosecution, and (b) a viable § 1985 claim is a prerequisite for an actionable § 1986 claim. (*Id.* at 11.)

Sixth, the County Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim must be dismissed because the Complaint fails to allege facts plausibly suggesting that they violated his constitutional rights. (*Id.* at 9-10.)

Seventh, the County Defendants argue that Plaintiff's malicious abuse of power and abuse of process claims must be dismissed because the Complaint fails to allege facts plausibly suggesting that they acted with malice and/or that they attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 12-14.)

Eighth, the County Defendants argue that Plaintiff's false arrest claim must be dismissed because (a) the New York Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting any involvement by the County Defendants in Plaintiff's arrest in that Plaintiff alleges that he was arrested by the New York State Police following an investigation by the Johnstown Police Department and then prosecuted by a special prosecutor from Saratoga County (i.e., Defendant Ashdown). (*Id.* at 14-15.)

Ninth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a malicious prosecution claim against them because (a) the Complaint alleges that Plaintiff's criminal proceeding was initiated by the New York State Police as well as Defendant Ashdown and not the County Defendants, (b) Plaintiff did not receive a favorable termination of the criminal charges against him, and (c) the New York Court of Claims has already determined that there was probable cause to arrest him. (*Id.* at 15-16.)

Tenth, the County Defendants argue that Plaintiff's conspiracy claim must be dismissed because the Complaint fails to allege facts plausibly suggesting a "meeting of the minds" between the County Defendants and the other Defendants regarding an agreement to conspire against Plaintiff. (*Id.* at 16-17.)

**\*4** Eleventh, the County Defendants argue that Plaintiff's state law claim for intentional infliction of emotional distress must be dismissed because (a) Plaintiff never served them with a notice of claim, and (b) the Complaint fails to allege facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 18-19.)

Twelfth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a *Monell* claim because it does not cite to and/or describe any Fulton County policy or custom that allegedly caused him a constitutional deprivation. (*Id.* at 20.)

Thirteenth, and finally, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because (a) she recused herself from Plaintiff's criminal investigation and prosecution, and (b) the New York Court of Claims has determined that there was probable cause to arrest Plaintiff and, therefore, Defendant Louise Sira did not violate any of his clearly established rights. (*Id.* at 21-22.)

### b. The Gloversville Defendants' Memorandum of Law in Chief

The Gloversville Defendants have substantially restated all of the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 14, Attach. 3, at 5-17, 22-23 [Gloversville Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Gloversville Defendants assert.

First, the Gloversville Defendants argue that governmental immunity, which shields public entities from liability for discretionary actions taken during the performance of governmental functions, bars any state law negligence claim asserted against them for the following reasons: (a) responding to a FOIL request is a discretionary act; (b) Plaintiff has failed to allege facts plausibly suggesting that he had a special relationship with any of the Gloversville Defendants, which acts as an exception to governmental immunity; and (c) Plaintiff has not alleged facts plausibly suggesting either (i) the existence of a City policy or identifiable custom under which his alleged injury occurred, or (ii) a causal connection between such policy and a constitutional deprivation. (Dkt. No. 14, Attach. 3, at 18-19 [Gloversville Defs.' Mem. of Law].)

Second, the Gloversville Defendants argue that any claims against them in their individual capacities must be dismissed because the Complaint fails to allege specific facts plausibly suggesting their personal involvement in the constitutional violations alleged. (*Id.* at 19-20.) More specifically, they argue that the only specific allegations regarding Defendant VanDeusen and Defendant John Sira are that Defendant Sira responded to a third-party FOIL request in his capacity as chief FOIL officer for the Gloversville Police Department. (*Id.* at 20.) The Gloversville Defendants argue that Plaintiff's conclusory allegation that Defendant VanDeusen failed to supervise Defendant Sira when he responded to the FOIL request is insufficient to plausibly suggest a constitutional violation or supervisory liability. (*Id.*)

Third, the Gloversville Defendants argue that, in any event, Defendant VanDeusen and Defendant John Sira are entitled to qualified immunity because (a) even though these Defendants did not participate in Plaintiff's criminal investigation, the New York Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting that they violated Plaintiff's clearly established rights, or that they had reason to believe that Plaintiff's rights were being violated when they processed the non-party FOIL request. (*Id.* at 20-22.)

### c. Defendant Ashdown's Memorandum of Law in Chief

**\*5** Defendant Ashdown substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 26, Attach. 3, at 7-21 [Ashdown Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 5-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### d. Defendant Bazan's Memorandum of Law in Chief

Defendant Bazan substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 27, Attach. 3, at 10-20 [Bazan Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### e. The Johnstown Defendants'
### Memorandum of Law in Chief

The Johnstown Defendants substantially restate the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 30, Attach. 3, at 4-7 [Johnstown Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Johnstown Defendants assert.

First, the Johnstown Defendants argue that Plaintiff's claims against the Johnstown Police Department must be dismissed for the following reasons: (a) it is an administrative arm of the City of Johnstown and, therefore, does not have its own legal identity; (b) the County of Fulton is the proper party in interest; and (c) Plaintiff has failed to allege facts plausibly suggesting an official policy, practice or custom that caused his constitutional rights to be violated in order to state a *Monell* claim. (Dkt. No. 30, Attach. 3, at 9-10 [Johnstown Defs.' Mem. of Law].)

Second, the Johnstown Defendants argue that Plaintiff's state law tort claims for intentional infliction of emotional distress and negligence must be dismissed because (a) he failed to serve a notice of claim, and (b) the claims are time-barred by the one-year and ninety-day limitations period. (*Id.* at 10-12.)

Third, the Johnstown Defendants argue that Defendants Gifford and Gilbo are entitled to qualified immunity because the New York Court of Claims has already determined that probable cause existed to arrest Plaintiff. (*Id.* at 12-13.)

### 2. Plaintiff's Opposition Memorandum of Law

### a. Plaintiff's Memorandum of Law in Opposition
### to the County Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to the County Defendants' motion to dismiss. (Dkt. No. 32 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant Louise Sira, Plaintiff argues that she is not entitled to prosecutorial immunity for the following three reasons: (a) she knew that she was not supposed to interfere with Plaintiff's prosecution but did so by reviewing statements made by Defendants, providing Defendant Bazan with a subpoena, and assisting him throughout his investigation; (b) she was aware of the conflict of interest regarding her involvement in the criminal investigation against Plaintiff but continued to assist in the investigation in order to find probable cause to arrest him; and (c) she recused herself only after the criminal investigation had been completed and she had collected sufficient evidence to secure Plaintiff's arrest. (*Id.* at 6-8.)

**\*6** Second, Plaintiff argues that his *Monell* and § 1983 claims against the County of Fulton should not be dismissed for the following reasons: (a) the County violated N.Y. Gen. Mun. Law § 18 because of its numerous monetary contracts with the City of Gloversville and allowing Defendant John Sira to be employed as Captain of the Gloversville Police Department and Louise Sira to be employed as district attorney despite the fact that they are married, which created an inherent conflict of interest; (b) the County allowed Defendant Louise Sira to assist in the criminal investigation against Plaintiff despite the conflict of interest that existed due to her relationship with Mr. Andrews; (c) the County turned a blind eye to these numerous conflicts of interest; and (d) the County is vicariously liable for the actions of Defendant Ashdown because it appointed him as special prosecutor to handle Plaintiff's criminal prosecution. (*Id.* at 8-9.)

Third, Plaintiff argues that his claims for abuse of process, false arrest, and conspiracy are not barred by the three year limitations period for the following reasons: (a) he did not agree to a plea deal on July 5, 2012, but instead the criminal charges against him were dropped on that date and the case was ultimately dismissed on November 28, 2012; (b) he did not have knowledge of the substance forming the basis of his claims because all records were sealed by the N.Y. Supreme Court and he did not have access to them until they were released by the N.Y. Attorney General's Office in the subsequent N.Y. Court of Claims action on July 13, 2013; and (c) he received additional information regarding his claims

during Defendant Bazan's deposition on May 30, 2013. (*Id.* at 14.)

### b. Plaintiff's Memorandum of Law in Opposition to the Gloversville Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts four arguments in opposition to the Gloversville Defendants' motion to dismiss. (Dkt. No. 35 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant John Sira, Plaintiff argues as follows: (a) he conspired with other Defendants and allowed "in-house" police reports to be used in Plaintiff's criminal prosecution, to maliciously prosecute him, and to coerce him into taking a plea deal; (b) he impermissibly sent these "in-house" police reports to Mr. Andrews's attorney, Gerard McAuliffe, at his request so that they could be used against him; and (c) he ordered his subordinates at the Gloversville Police Department to harass Plaintiff and his family. (*Id.* at 6-8.) Because of these actions, Plaintiff argues that Defendant John Sira was forced into an early retirement from the Gloversville Police Department. (*Id.* at 9.)

Second, with respect to Defendant VanDeusen and the Gloversville Police Department, Plaintiff argues that they (a) harassed and discriminated against his family, and (b) willfully ignored Defendant John Sira's unlawful conduct. (*Id.* at 8.)

Third, Plaintiff argues that the Gloversville Defendants are not entitled to qualified immunity because (a) they violated his constitutional rights, (b) Defendant John Sira violated FOIL laws and police department policies, and (c) Defendant John Sira was aware that his conduct was unlawful while Defendant VanDeusen was aware of this conduct as well but failed to intervene. (*Id.* at 12-13.)

Fourth, and finally, Plaintiff argues that his claims are not time-barred for the reasons discussed above in Part II.2.a. of this Decision and Order.

### c. Plaintiff's Memorandum of Law in Opposition to Defendant Ashdown's Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to Defendant Ashdown's motion to dismiss. (Dkt. No. 51 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Ashdown violated his right to due process when Defendant Ashdown impermissibly conditioned any plea agreement to drop the criminal charges against Plaintiff on Plaintiff agreeing to discontinue his civil lawsuit against Mr. Andrews, paying for the locks to be changed on the subject premises, and moving his property out of Mr. Andrew's building. (*Id.* at 10-11.)

**\*7** Second, Plaintiff argues that Defendant Ashdown conspired with Defendant Bazan by using his arrest as leverage to get the civil lawsuit against Mr. Andrews dismissed. (*Id.* at 11.) Furthermore, Plaintiff argues that Defendant Ashdown conspired with Mr. McAuliffe by impermissibly requesting, and receiving, the "in-house" police reports from Mr. McAuliffe, which were then used against Plaintiff in his criminal prosecution. (*Id.* at 11-12.)

Third, Plaintiff argues that Defendant Ashdown is not entitled to prosecutorial or qualified immunity for the following four reasons: (a) Defendant Ashdown violated Plaintiff's constitutional rights on numerous occasions as described above; (b) there was no probable cause to charge Plaintiff with felony forgery, a fact that Defendant Ashdown was aware of; (c) despite the lack of probable cause, Defendant Ashdown maliciously pursued the criminal charge anyway in an attempt to get Plaintiff's civil lawsuit dismissed against Mr. Andrews; and (d) Defendant Ashdown's actions were outside the scope of his duties as prosecutor. (*Id.* at 12-13.)

### d. Plaintiff's Memorandum of Law in Opposition to Defendant Bazan's Motion to Dismiss

Generally, liberally construed, Plaintiff asserts two arguments in opposition to Defendant Bazan's motion to dismiss. (Dkt. No. 50 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Bazan is not entitled to qualified immunity because (a) he tampered with evidence, coerced witness statements, and intentionally ignored exculpatory evidence, and (b) he engaged in unlawful conduct by tampering with evidence. (*Id.* at 10.)

Second, Plaintiff argues that Defendant Bazan tampered with the videotape containing his interview at the police station. (*Id.* at 7, 11, 14.) In addition, Plaintiff argues that the tampering with the videotape, coupled with the tampering of witness statements, negates the probable cause for his arrest. (*Id.* at 11.)

### e. Plaintiff's Memorandum of Law in Opposition to the Johnstown Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to the Johnstown Defendants' motion to dismiss. (Dkt. No. 48 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Gilbo is not entitled to qualified immunity because (a) he violated Plaintiff's constitutional rights by falsifying evidence and submitting it to the court in order to facilitate Plaintiff's malicious prosecution, (b) he did not comply with Plaintiff's FOIL request but instead provided Plaintiff with an edited copy of his video taped interview at the police station, and (c) he has threatened Plaintiff's life for pursuing this matter against him. (*Id.* at 12-13.)

Second, Plaintiff argues that he has alleged facts plausibly suggesting a *Monell* claim because he has alleged that the Johnstown Police Department violated FOIL request laws by tampering with the evidence that he requested. (*Id.* at 11.)

Third, Plaintiff argues that his claim is not time-barred by the three-year statute of limitations period because he first learned on August 14, 2012, that the video taped disk of his interview at the police station was tampered with. (*Id.* at 8.)

### 3. Defendants Respective Reply Memoranda of Law

#### a. The County Defendants' Reply Memorandum of Law

Generally, the County Defendants assert seven arguments in reply to Plaintiff's opposition. (Dkt. No. 37 [Cty. Defs.' Reply Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity for the following reasons: (a) Plaintiff's various admissions and evidence contained in his opposition papers make it clear that Defendant Louise Sira played no role in his prosecution or the decision to arrest him; (b) even if Defendant Louise Sira processed a subpoena before being recused, this conduct was clearly within the scope of her duties in initiating and pursuing a criminal prosecution; and (c) Plaintiff's claim that Defendant Louise Sira conspired with Defendant John Sira is speculative at best. (*Id.* at 2-3.)

**\*8** Second, the County Defendants argue that Plaintiff's § 1983 claims are time-barred because his excuse that he did not have access to his criminal legal file until it was released by the New York Attorney General's Office is not valid for purposes of tolling the limitations period. (*Id.* at 3-4.) More specifically, the County Defendants argue that Plaintiff, as a defendant in a criminal prosecution, had knowledge of the charges against him and was present and acting on his own behalf when the charges were eventually dismissed. (*Id.* at 4.)

Third, the County Defendants argue that Plaintiff's claims under §§ 1981, 1983, 1985, and 1986 should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4-5.)

Fourth, the County Defendants argue that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because (a) he admits that he never served a notice of claim, and (b) he has not alleged facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 5-6.)

Fifth, the County Defendants argue that Plaintiff's *Monell* claim must be dismissed because he has failed to allege facts plausibly suggesting and/or describing a policy or custom that caused his constitutional deprivations. (*Id.* at 6.)

Sixth, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because, even if she did not recuse herself, the Complaint still does not allege facts plausibly suggesting anything that would have informed her that (a) there was insufficient probable cause to arrest Plaintiff, and (b) she acted unlawfully or violated Plaintiff's constitutional rights. (*Id.* at 6-7.)

Seventh, the County Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following two reasons: (a) the documentary evidence submitted by Plaintiff in his opposition papers demonstrate that the County Defendants had nothing to do with his criminal investigation, arrest, and/or prosecution; and (b) his federal claims are time-barred by the applicable statute of limitations. (*Id.* at 7-8.)

### b. The Gloversville Defendants' Reply Memorandum of Law

Generally, the Gloversville Defendants assert six arguments in reply to Plaintiff's opposition. (Dkt. No. 38 [Gloversville Defs.' Reply Mem. of Law].)

First, the Gloversville Defendants argue that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred because, contrary to Plaintiff's argument that he did not have the requisite knowledge regarding these claims until a later date, Plaintiff had knowledge of the charges levied against him (as the defendant in a criminal proceeding) and was present when the criminal charges were eventually dismissed. (*Id.* at 3-4.)

Second, the Gloversville Defendants argue that Plaintiff's §§ 1981, 1983, 1985, and 1986 claims should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4.) Similarly, the Gloversville Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a claim for malicious abuse of power, abuse of process, false arrest, malicious prosecution, and conspiracy for the reasons set forth in their memorandum of law. (*Id.* at 4-5.) In addition, the Gloversville Defendants argue that Plaintiff has failed to make any arguments in opposition to their motion to dismiss demonstrating that they had any involvement in the allegations serving as the basis for these claims. (*Id.* at 5.)

**\*9** Third, the Gloversville Defendants argue that Plaintiff has not opposed their arguments for dismissal of his intentional infliction of emotional distress and negligence claims and has not offered an explanation regarding his failure to serve a notice of claim. (*Id.*)

Fourth, the Gloversville Defendants argue that Plaintiff has not opposed their arguments regarding his failure to allege facts plausibly suggesting the personal involvement of Defendants VanDeusen and John Sira in the alleged constitutional violations. (*Id.* at 6.)

Fifth, the Gloversville Defendants argue that Defendants VanDeusen and John Sira are entitled to qualified immunity and Plaintiff has failed to allege facts plausibly suggesting a *Monell* claim for the reasons stated in their memorandum of law. (*Id.* at 6-7.)

Sixth, the Gloversville Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following reasons: (1) the attachments to Plaintiff's opposition papers demonstrate that the Gloversville Defendants were not involved with Plaintiff's criminal investigation, arrest and/or prosecution; and (2) the statute of limitations regarding the majority of Plaintiff's claims has expired. (*Id.* at 7-8.)

### c. The Johnstown Defendants' Reply Memorandum of Law

Generally, the Johnstown Defendants assert eight arguments in reply to Plaintiff's opposition. (Dkt. No. 47 [Johnstown Defs.' Reply Mem. of Law].)

First, the Johnstown Defendants restate their argument from their memorandum of law that all of Plaintiff's § 1983 claims, with the exception of his malicious prosecution claim, are time-barred and Plaintiff has failed to oppose the dismissal of those claims on this basis. (*Id.* at 2.)

Second, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff's malicious prosecution claim should be dismissed because (a) Plaintiff has failed to allege facts plausibly suggesting that the Johnstown Defendants initiated a criminal proceeding against him, (b) a termination in the interest of justice is not a favorable termination, (c) the N.Y. Court of Claims has already determined that probable cause existed for Plaintiff's arrest, and (d) Plaintiff has failed to allege facts plausibly suggesting either malice or that the Johnstown Defendants attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 2-4.)

Third, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1985, and 1986. (*Id.* at 4-5.)

Fourth, the Johnstown Defendants restate their argument that Plaintiff has failed to allege facts plausibly suggesting the personal involvement of Defendant Gifford in a violation of Plaintiff's constitutional rights and Plaintiff's allegation that Defendant Gifford advised him over the telephone that he " shouldn't of did what [he] did" and hung up is insufficient to state a claim. (*Id.* at 5.)

Fifth, the Johnstown Defendants restate their arguments from their memorandum of law that the claims against the Johnstown Police Department must be dismissed because it is a nonlegal entity and he has failed to allege facts plausibly suggesting a *Monell* claim. (*Id.* at 5-6.)

**\*10** Sixth, the Johnstown Defendants argue that Plaintiff's state law claims must be dismissed because (a) he failed to serve a notice of claim, and (b) they are time-barred by the one-year-and-ninety-day statute of limitations period. (*Id.* at 6-7.)

Seventh, the Johnstown Defendants restate their arguments from their memorandum of law that Defendants Gifford and Gilbo are entitled to qualified immunity. (*Id.* at 7-8.)

Eighth, the Johnstown Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 8-10.)

**d. Defendant Ashdown's Reply Memorandum of Law**

Generally, Defendant Ashdown asserts seven arguments in reply to Plaintiff's opposition. (Dkt. No. 52 [Def. Ashdown's Reply Mem. of Law].)

First, Defendant Ashdown argues that the Court should disregard Plaintiff's opposition papers because they were filed three days after the deadline set by the Court and Plaintiff has not offered any explanation for his delayed filing. (*Id.* at 2.)

Second, Defendant Ashdown argues that, even if the Court considers Plaintiff's opposition papers, he is still entitled to prosecutorial immunity because (a) Plaintiff's admissions and "evidence" contained in his opposition papers demonstrate that Defendant Ashdown acted exclusively within his role as special prosecutor, (b) all activities Plaintiff argues that Defendant Ashdown engaged in were also within the scope of his duties in initiating and pursuing a criminal prosecution, and (c) Plaintiff's continued speculation that Defendant Ashdown acted in concert with law enforcement agents or the other Defendants is speculative at best and does not plausibly suggest a claim. (*Id.* at 2-3.)

Third, Defendant Ashdown restates the argument from his memorandum of law that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred by the statute of limitations. (*Id.* at 3.)

Fourth, Defendant Ashdown restates his arguments from his memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1983, 1985, and 1986. (*Id.* at 4.)

Fifth, Defendant Ashdown argues that Plaintiff has failed to allege facts plausibly suggesting a claim for intentional infliction of emotional distress because (a) any alleged tortious acts by Defendant Ashdown were taken within the scope of his role as special prosecutor, (b) Plaintiff has offered nothing more than conclusory assertions that Defendant Ashdown acted in concert with other Defendants for personal and/or nefarious reasons, and (c) no rational fact-finder could find that Defendant Ashdown engaged in extreme and outrageous conduct. (*Id.* at 5.)

Sixth, Defendant Ashdown argues that he is entitled to qualified immunity for the reasons stated in his memorandum of law. (*Id.* at 5-6.)

Seventh, and finally, Defendant Ashdown argues that, for the foregoing reasons, Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 6-7.)

**e. Defendant Bazan's Reply Memorandum of Law**

Generally, Defendant Bazan asserts four arguments in reply to Plaintiff's opposition. (Dkt. No. 55 [Def. Bazan's Reply Mem. of Law].)

First, Defendant Bazan argues that Plaintiff's opposition papers should not be considered because they were filed after the deadline set by this Court. (*Id.* at 1.)

**\*11** Second, Defendant Bazan argues that Plaintiff has failed to refute the fact that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. (*Id.*)

Third, Defendant Bazan argues that Plaintiff has failed to respond to the arguments that his claims are time-barred and that Defendant Bazan is entitled to qualified immunity. (*Id.* at 2.)

Fourth, and finally, Defendant Bazan argues that Plaintiff should not be given an opportunity to amend his Complaint because (1) any amendments would be futile, (2) Plaintiff has not filed a proposed amended complaint, and (3) there are no meritorious claims that can be asserted against Defendant Bazan. (*Id.*)

## III. RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show [ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

**\*12** Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of

course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 [internal citations and alterations omitted]. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[1] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[2] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not

absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted].[3]

| | |
|---|---|
| 1 | *See Vega v. Artus*, 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases). |
| 2 | *See Rosendale v. Brusie*, 374 Fed.Appx. 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally, ... the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega*, 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases). |
| 3 | It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak*, 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*). |

**\*13** Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint,

or (4) any matter of which the court can take judicial notice for the factual background of the case. [4] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint–to the extent those papers are consistent with the allegations in the complaint. [5]

[4]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135733, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[5]    *See* *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citations omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

## IV. ANALYSIS

**\*14** As an initial matter, the Court must determine what extraneous documents it may consider in deciding Defendants' respective motions. More specifically, Defendants have submitted a decision and order from the New York Court of Claims in a related state court action where Plaintiff sued the State of New York for false arrest and defamation. (Dkt. No. 11, Attach. 4 [N.Y. Court of Claims Op.].) Defendants argue that the Court can take judicial notice of this document. (Dkt. No. 11, Attach. 5, at 3 [Cty. Defs.' Mem. of Law].) In opposing Defendants' respective motions, Plaintiff appears to have submitted all of the exhibits that were filed in that action, including various deposition transcripts. (Dkt. No. 51, Attach. 1.)

As discussed above in Part III of this Decision and Order, there are four circumstances under which the Court may consider materials outside of the pleadings, including documents that the Court may take judicial notice of. State court decisions are clearly public documents that fall under this category. *See Johnson v. Pugh*, 11-CV-0385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (stating that, "[a] court may take judicial notice of matters of

public record, including ... decisions in prior state court adjudications"); *accord*, *Nemeth v. Vill. of Hancock*, 10-CV-1161, 2011 WL 56063, at *1 n.3 (N.D.N.Y. Jan. 7, 2011) (McAvoy, J.) (collecting cases); *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 723 (W.D.N.Y. 2015). Therefore, the Court agrees with Defendants that it may take judicial notice of the decision and order from the New York Court of Claims. However, in so doing, the Court may take judicial notice "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotations and citation omitted).

The Court reaches a different conclusion with respect to the documents submitted by Plaintiff for the following three reasons. First, Plaintiff does not explain how the documents may be properly considered by the Court. Although it is conceivable that they could be considered public documents, Plaintiff admits that not all of the exhibits (without identifying which ones) were properly filed with the New York Court of Claims. (Dkt. No. 51, at 16 [Pl.'s Opp'n Mem. of Law] [stating that "my evidence was not submitted in the right form and was not considered"].) Similarly, the decision and order indicates that the New York Court of Claims did not consider the exhibits submitted by Plaintiff. (Dkt. No. 11, Attach. 4, at 7.)

Second, with respect to the deposition transcripts, the Court finds that they cannot be properly considered as either incorporated by reference or integral to the Complaint. The Complaint neither expressly references the depositions, nor does it bear any indication that they were substantially relied upon in its drafting. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (finding error in district court's decision to consider deposition testimony from an underlying state court action and stating that "[a] complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation"); *see also Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011) (declining to consider deposition transcript because the complaint did not make any reference to it and the plaintiffs did not "purport to have relied on [the] deposition in crafting the allegations").

Third, in any event, the Court has reviewed the exhibits submitted by Plaintiff and it is apparent that, even if the Court were to consider them, they are immaterial to the Court's adjudication of Defendants' respective motions.

**\*15** Having resolved this issue, the Court now turns to its analysis of the issues raised in Defendants' respective motions.

### A. Whether Plaintiff's Malicious Prosecution Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See*, *supra*, Part II of this Decision and Order. To those reasons, the Court adds the following analysis.

"To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (internal quotation marks omitted). "In addition, the Court of Appeals requires that in order 'to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Brandon*, 705 F. Supp. 2d at 272 (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 [2d Cir. 2004]).

As discussed above, Defendants argue that this claim should be dismissed because (1) the dismissal of Plaintiff's criminal proceeding in the interest of justice is not a termination in his favor, and (2) the New York Court of Claims has determined that there was probable cause for Plaintiff's arrest. With respect to the first argument, it is true that the Second Circuit has held that "[a] dismissal 'in the interest of justice' under [N.Y. Crim. Proc. Law § 170.40] cannot provide the favorable termination required as the basis for a claim of malicious prosecution." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed.Appx. 672, 674 (2d Cir. 2009) (internal quotations omitted); *accord*, *Murphy v. Gibbons*, 13-CV-1433, 2014 WL 4828126, at *6 (N.D.N.Y. Sept. 29, 2014) (Sharpe, C.J.). However, other courts in this Circuit have recognized that, in *Cantalino v. Danner*, 96 N.Y.2d 391 (N.Y. 2001), the New York Court of Appeals rejected this proposition

as a *per se* rule. *See Guzman v. U.S.*, 11-CV-5834, 2013 WL 543343, at *8 (S.D.N.Y. Feb. 14, 2013) (stating that, "[b]ecause *Lynch* relies on *Hygh*, it appears that the Second Circuit overlooked the Court of Appeals' clarification of the law in *Cantalino*. Indeed, even after the Second Circuit decided *Lynch*, other judges [in this Circuit] have seen fit to apply the rule of *Cantalino*."); *see also Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 160 (E.D.N.Y. 2014) (collecting cases). Indeed, in *Cantalino*, the New York Court of Appeals explained that, while "there are circumstances where a dismissal in the interest of justice is inconsistent with innocence because it represents mercy requested or accepted by the accused," the Court's past decisions did "not establish a *per se* rule that a dismissal in the interest of justice can never constitute a favorable termination. Rather ... the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Cantalino*, 96 N.Y. 2d at 396-97.

**\*16** The Court need not linger on this issue, however, because it agrees with Defendants' second argument: that dismissal of Plaintiff's malicious prosecution claim is warranted on the grounds that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. *See Martin v. Cty. of Nassau*, 692 F. Supp. 2d 282, 293 (E.D.N.Y. 2010) ("[T]he Court takes judicial notice of the fact that another court has already found probable cause for the plaintiff's arrest."). Although Plaintiff appears to contest this determination in his opposition papers, he is collaterally estopped from doing so. Specifically, "[t]he doctrine of collateral estoppel, or issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Sahni v. Legal Servs. of the Hudson Valley*, 14-CV-1616, 2015 WL 4879160, at *3 (S.D.N.Y. Aug. 13, 2015). "[I]nferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state determinations." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Austin v. Downs, Rachlin & Martin*, 270 Fed.Appx. 52, 53-54 (2d Cir. 2008). Similarly,

under New York law, federal courts must give preclusive effect to state court judgments "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in an earlier action." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002).

Here, the N.Y. Court of Claims dismissed Plaintiff's false arrest claim as a matter of law, finding that "Claimant fails to raise any genuine issues of material fact which illustrate that Investigator Bazan lacked probable cause to believe that a crime had been committed." (Dkt. No. 11, Attach. 4, at 6.) The Court of Claims then held that, because "Claimant's arrest is privileged ... Defendant is entitled to summary judgment dismissing the cause of action alleging false arrest." (*Id.* at 7.) A lack of probable cause is a necessary element of claims for false arrest and malicious prosecution. Furthermore, Plaintiff had a full and fair opportunity to litigate the issue of probable cause through the summary judgment motion filed in the N.Y. Court of Claims. *See Tobias v. First City Nat'l Bank & Trust Co.*, 709 F. Supp. 1266, 1270 (S.D.N.Y. 1989) (stating that "[a] fully litigated and opposed summary judgment determination can constitute the requisite full and fair opportunity to litigate"). Accordingly, because Plaintiff cannot establish that probable cause was lacking, his malicious prosecution claim is dismissed. *See Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (state court decision collaterally estopped plaintiff from relitigating the lawfulness of his arrest via § 1983 claim); *Boomer v. Bruno*, 134 F. Supp. 2d 262, 268-69 (N.D.N.Y. 2001) (Kahn, J.) (dismissing § 1983 malicious prosecution claim where state court previously determined the issue); *Graebe v. Falcetta*, 726 F. Supp. 36, 38 (E.D.N.Y. 1989) (giving preclusive effect to probable cause determination in underlying state court action when dismissing subsequent § 1983 malicious prosecution claim).

### B. Whether Plaintiff's § 1983 Claims for "Malicious Abuse of Power,"[6] Malicious Abuse of Process, and False Arrest Are Time-Barred

[6]     Although Plaintiff titles this claim as "Malicious Abuse of Power," it is clear from a reading of the substantive allegations that this is a claim for malicious abuse of process. (Dkt. No. 1, at 9 [Pl.'s Compl.].)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See*, *supra*, Part II of this Decision and Order. To those reasons, the Court adds the following analysis.

"Under New York law, the statute of limitations for § 1983 claims, including false arrest and malicious abuse of process, is three years." *Anderson v. Cty. of Putnam*, 14-CV-7162, 2016 WL 297737, at *2 (S.D.N.Y. Jan. 22, 2016). A § 1983 claim accrues "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (stating that a claim accrues under § 1983 "when the plaintiff knows or has reason to know of the injury which is the basis of his action...."). "Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion–typically at arrest–against the plaintiff." *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.); *accord*, *Anderson*, 2016 WL 297737, at *3. Similarly, "[a] claim for false arrest generally accrues on the date of the arrest." *Harrison v. New York*, 95 F. Supp. 3d 293, 327 (E.D.N.Y. 2015).

**\*17** In the present case, the Complaint alleges that Plaintiff was arrested on January 13, 2012. (Dkt. No. 1, ¶ 14 [Pl.'s Compl.].) Plaintiff commenced this action on August 13, 2015, which is three years and eight months after his arrest. Accordingly, Plaintiff's § 1983 claims for false arrest, malicious abuse of power, and abuse of process are time-barred by the applicable statute of limitations.

In any event, the Court would dismiss Plaintiff's false arrest claim because probable cause for his arrest has already been determined by the N.Y. Court of Claims as discussed above in Part IV.A. of this Decision and Order. *See McBride v. Bratton*, 95-CV-9626, 1996 WL 636075, at *3 (S.D.N.Y. Nov. 4, 1996) (Chin, J.), *aff'd*, 122 F.3d 1056 (2d Cir. 1997) (dismissing § 1983 false arrest claim where state court previously determined officers had probable cause to arrest); *accord*, *Brown v. De Fillipis*, 717 F. Supp. 172, 179 (S.D.N.Y. 1989); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (stating that "[p]robable cause is a complete defense to false arrest claims"). With respect to Plaintiff's malicious

abuse of process claim, "[c]ourts in this Circuit appear to be divided on whether the existence of probable cause defeats a claim for malicious abuse of process." *Posner v. City of New York*, 11-CV-4859, 2014 WL 185880, at *7 (S.D.N.Y. Jan. 16, 2014); *see also Deanda v. Hicks*, 137 F. Supp. 3d 543, 576 (S.D.N.Y. 2015); *cf. Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015) (recognizing the confusion surrounding this issue but declining to resolve it). [7] Nevertheless, the Court would dismiss Plaintiff's malicious abuse of process claim for the alternative reason that he has not alleged facts plausibly suggesting that Defendants employed regularly issued legal process to compel performance of some act, with intent to do harm without excuse or justification, in order to obtain a collateral objective that is outside the legitimate ends of the process, for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 11, Attach. 5, at 12-14 [Cty. Defs.' Mem. of Law]; Dkt. No. 14, Attach. 3, at 10-12[Gloversville Defs.' Mem. of Law]; Dkt. No. 26, Attach. 3, at 12-14 [Def. Ashdown's Mem. of Law]; Dkt. No. 27, Attach. 3, at 14-15 [Def. Bazan's Mem. of Law].) For example, while the Complaint generally alleges that Defendants were maliciously motivated to use the "trump" criminal charge to coerce Plaintiff into discontinuing his civil lawsuit against Mr. Andrews (Dkt. No. 1, ¶¶ 16-18 [Pl.'s Compl.] ), it does not plausibly suggest a collateral objective because the allegations plausibly suggest merely a malicious motive. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (explaining that a "malicious motive alone" is not a "collateral objective"); *Perry v. Manocherian*, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) (stating that a "malicious motive alone ... does not give rise to a cause of action for abuse of process" and holding that issuance of a summons and complaint, even if made with the intent to coerce settlement, does not constitute abuse of process).

7    The Court notes that, in *Jones v. J.C. Penny's Dep't Stores Inc.*, 317 Fed.Appx. 71 (2d Cir. 2009), the Second Circuit, in a non-precedential summary order, indicated its support for the interpretation that probable cause is a complete defense to an abuse of process claim. *Jones*, 317 Fed.Appx. at 74 (holding that "[t]he conclusion that [the plaintiff] could not prevail on her claims that the officers lacked probable cause for her arrest ... required dismissal of her ... claims of abuse of process"). Under *Jones*, Plaintiff's malicious abuse of process claim would clearly fail because, as discussed above in Part IV.A. of this

Decision and Order, probable cause for Plaintiff's arrest has already been established. At the very least, Defendants would be entitled to qualified immunity based on this ground.

**C. Whether Plaintiff's Conspiracy Claim Under §§ 1983 and 1985 Should Be Dismissed**

**\*18** After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below

**1. Conspiracy Claim Under § 1983**

"To establish a § 1983 conspiracy, plaintiff must prove '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.' " *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 [2d Cir. 1999]). "In addition, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (internal quotations omitted); *accord, Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). Finally, "a § 1983 conspiracy fails as a matter of law where there is no underlying constitutional violation." *Mitchell*, 786 F. Supp. 2d at 564; *accord, Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) (Suddaby, J.).

Here, Plaintiff's § 1983 conspiracy claim is dismissed because his underlying constitutional claims for false arrest, malicious prosecution, abuse of process, and malicious abuse of power have been dismissed. In any event, the Court agrees with Defendants that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy.

**2. Conspiracy Claim Under § 1985**

"To avoid dismissal of a § 1985 claim, a plaintiff must demonstrate: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) a person is either injured in his person or property or deprived of any right of a citizen of the United States; and (5) the conspiracy is motivated by some racial or perhaps otherwise invidious discriminatory animus." *K.W. ex rel. Brown v. City of New York*, 275 F.R.D. 393, 399 (E.D.N.Y. 2011).

Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed. *See Alston v. Sebelius*, 13-CV-4537, 2014 WL 4374644, at \*18 (S.D.N.Y. Sept. 2, 2014) (stating that, "given that plaintiff has failed to allege an underlying claim for a constitutional violation, his conspiracy claim under Section 1985 cannot stand."). In addition, the Court agrees with Defendants that the Complaint is devoid of any facts plausibly suggesting that their alleged actions were motivated by racial or discriminatory animus or that Plaintiff is a member of a protected class.

**D. Whether Plaintiff's Claim for "Refusing or Neglecting to Prevent" Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the following two reasons.

**\*19** First, the Court construes this claim as an attempt to bring a claim under 42 U.S.C. § 1986. *See Bromfield v. Lend-Mor Mortg. Bankers Corp.*, 15-CV-1103, 2016 WL 632443, at \*6 (D. Conn. Feb. 17, 2016) (reading *pro se* plaintiff's claim that defendants "violated [her] constitutionally protected Rights by refusing or neglecting to prevent deprivation of [her] rights under Color of Law" as a claim under § 1986).

Second, because Plaintiff's § 1985 claim is dismissed, his § 1986 claim must also be dismissed. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (stating that "[a] claim under Section 1986 ... lies only if there is a viable conspiracy claim under 1985"); *accord, Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 361 (N.D.N.Y. 2015) (Suddaby, J.).

### E. Whether Plaintiff's *Monell* Claim Against the Johnstown Police Department and Gloversville Police Department Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for each of the two reasons set forth below.

First, because the Court has dismissed Plaintiff's underlying constitutional claims, his *Monell* claim must also be dismissed. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct"); *accord, Grega v. Pettengill*, 123 F. Supp. 3d 517, 556 (D. Vt. 2015).

Second, in any event, police departments are not municipalities or "persons" within the meaning of § 1983. *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (holding that, "[b]ecause a municipal police department is not an independent legal entity, it is not subject to suit under [§] 1983") (collecting cases). Accordingly, Plaintiff's *Monell* claim is dismissed on this additional basis.

### F. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Supervisory Liability Claim Against Defendants Gifford and VanDeusen

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 30, Attach. 3, at 7-8 [Johnstown Defs.' Mem. of Law]; Dkt. No. 14, Attach. 3, at 19-20 [Gloversville Defs.' Mem. of Law].). In addition to those reasons, the Court adds the following two points.

First, this claim is dismissed on the basis that Plaintiff cannot demonstrate an underlying constitutional violation because his claims have been dismissed. *See Lacey v. Yates Cty.*, 30 F. Supp. 3d 213, 227 (W.D.N.Y. 2014) (stating that, "[a]s a threshold matter, where a plaintiff has not established any underlying constitutional violation, [he] cannot state a claim for § 1983 supervisory liability") (internal quotations omitted); *accord, Lawrence v. Evans*, 136 F. Supp. 3d 486, 491 (W.D.N.Y. 2015).

Second, even if the merits of Plaintiff's claim were considered, the Court notes that the only allegation regarding Defendant VanDeusen's personal involvement in this matter is his failure "to train, supervise and discipline Captain Sira for his conflicted and malice acts[,]" (Dkt. No. 1, ¶ 46 [Pl.'s Compl.] ), which is wholly conclusory and insufficient to plausibly suggest his personal involvement in a constitutional violation. *See Davis v. Cty of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (stating that "[a] complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."); *Tricoles v. Bumpus*, 05-CV-3728, 2006 WL 767897, at *4 (E.D.N.Y. Mar. 23, 2006) ("Courts have dismissed § 1983 ... claims where a complaint merely asserts bare conclusory statements that a defendant supervisor failed to supervise or train ...."); *Pravda v. City of Albany*, 956 F. Supp. 174, 182 (N.D.N.Y. 1997) (Scullin, J.) (granting defendants' motion for judgment on the pleadings, where *pro se* plaintiff's "conclusory allegations" that county jail superintendent and county sheriff were responsible for setting county policy and supervising corrections officers involved in abuse were "insufficient to establish the personal involvement of these individual Defendants in Plaintiff's alleged constitutional deprivations").

### G. Whether Plaintiff's State Law Claim for Intentional Infliction of Emotional Distress Should Be Dismissed

**\*20** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law regarding Plaintiff's failure to serve Defendants' with a notice of claim as required by N.Y. Gen. Mun. Law § 50-e. *See Rivas v. Suffolk Cty.*, 326 F. Supp. 2d 355, 360-61 (E.D.N.Y. 2004) ("The defendants contend that the plaintiff has failed to serve the required notice of claim, and the plaintiff has not denied such contentions in his reply papers. In the absence of such a filing, the plaintiff's tort claim for intentional infliction of emotional distress ... must be dismissed"). In addition, the Court notes that it does not have the authority to consider a motion for leave to file a late notice of claim. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) (collecting cases). Therefore, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

### H. Whether Plaintiff Should Be Afforded Leave to Amend His Complaint

After carefully considering the matter, the Court answers this question in negative for the reasons set forth below.

Generally, *pro se* civil rights litigants, such as Plaintiff, are to be afforded special solicitude in this Circuit. *See, e.g.,* *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted *pro se* or the plaintiff alleges civil rights violations"). As a result, where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

Here, the Court finds that the defects with Plaintiff's claims are substantive, rather than formal, such that any amendments would be futile. More specifically, the Court has found that Plaintiff's claims for false arrest, malicious abuse of power, and malicious abuse of process are time-barred and, therefore, cannot be cured by better pleading. *See* *Mackensworth v. S.S. Am. Merch.*, 28 F.3d 246, 251 (2d Cir. 1994) (finding denial of leave to amend complaint proper on futility grounds because proposed claim would have been barred by the statute of limitations); *Diallo v. Williams*, 04-CV-4556, 2006 WL 156158, at *2 (S.D.N.Y. Jan. 20, 2006) (denying plaintiff's motion to amend to include § 1983 claims as futile where the claims would be barred by the statute of limitations). With respect to Plaintiff's malicious prosecution claim, the Court has found that Plaintiff is collaterally estopped from re-litigating the issue of probable cause for his arrest and,

therefore, cannot establish the necessary elements for his claim.

Finally, because Plaintiff cannot establish an underlying constitutional violation, any amendments to his § 1983 and conspiracy claims would be futile. Similarly, any amendments to Plaintiff's claim for intentional infliction of emotional distress would also be futile because he has failed to serve a notice of claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants Fulton County and Louise Sira's Motion to Dismiss (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendants' Gloversville Police Department, John P. Sira, Jr. and Donald Vandeusen's Motion to Dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant Jesse Ashdown's Motion to Dismiss (Dkt. No. 26) is **GRANTED**; and it is further

**\*21** **ORDERED** that Defendant Darryl Bazan's Motion to Dismiss (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that Defendants Mark Gifford, David Gilbo and Johnstown Police Department's Motion to Dismiss (Dkt. No. 30) is **GRANTED**; and is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**All Citations**

Slip Copy, 2016 WL 4046780

2017 WL 782500
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

The Town of Ramopo, New York; Ellen
Stack; Sean Stack; Patricia Hendrick;
Dan Daly; and Mendel Taub, Plaintiffs,
v.
The Town of Clarkstown by its Town
Board; and John Does "1-5", Defendants.

No. 16 Civ. 2004 (NSR)
|
Signed 02/27/2017

**Attorneys and Law Firms**

Dennis E. A. Lynch, Patrick Andrew Knowles, Feerick
Lynch MacCartney, South Nyack, NY, for Plaintiffs.

Harold Y. MacCartney, Jr., Law Offices of Harold Y.
MacCartney, Jr., Upper Nyack, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

**\*1** Plaintiffs the Town of Ramopo, New York
("Ramopo"), Ellen Stack, Sean Stack, Patricia Hendrick,
Dan Daly, and Mendel Taub (collectively "Plaintiffs")
initiate this action pursuant to 42 U.S.C. §§ 1981,
1982, 1983, and 1985(3), the Fair Housing Act, 42
U.S.C. § 3604(a) and § 3617 ("FHA"), the First
and Fourteenth Amendments to the United States
Constitution, New York Civil Rights Law § 40-c
("NYCRL"), Section 291 of the New York State Human
Rights Law, N.Y. Exec. Law § 291(2) ("NYSHRL"),
and the New York State Constitution, against the
Town of Clarkstown ("Clarkstown") and John Does 1-5
(collectively "Defendants"), alleging claims of interference
with Plaintiff's federal right to interstate and intrastate
travel, right to association, right to equal protection
of the laws, right to assemble, and claims of religious
discrimination and retaliation against Plaintiffs in the
housing context. Defendants have moved to dismiss
the complaint pursuant to either Federal Rule of Civil
Procedure 12(b)(1) or 12(b)(6) on various grounds,
including that the action is procedurally barred by res
judicata or that the causes of action alleged in the
complaint are time-barred by the applicable statutes
of limitations. For the following reasons, Defendants'
motion is GRANTED in part and DENIED in part.

FACTUAL BACKGROUND

The following facts are derived from the Amended
Complaint unless otherwise noted, and are accepted as
true for purposes of this motion.

Since 1940, Ramopo has experienced greater population
growth than Clarkstown. (*Id.* ¶¶ 34-40.) Within Ramopo,
there is also a growing population of individuals
practicing the Jewish faith, and a substantial increase
in the population of Orthodox and Hasidic Jewish
individuals, as compared with a relatively smaller growth
of this subpopulation within Clarkstown. (*Id.* ¶ 41, 42.)
In addition to a substantially more religiously diverse
population, a larger population of more economically
disadvantaged individuals also reside in Ramopo as
compared to Clarkstown. (*Id.* ¶ 44.) Ramopo also differs
from Clarkstown in that it has a larger number of areas
where low income residents reside, and villages consisting
almost entirely of Hasidic families. (*Id.* ¶ 46.)

Defendants have undertaken numerous activities to
prevent Orthodox and Hasidic Jewish individuals from
moving from Ramopo to Clarkstown. (*Id.* ¶ 47.) Plaintiff
alleges that these measures include the closing of Samuel
Road, which connects Ramopo and Clarkstown. (*Id.* ¶
49.) Plaintiff contends that a physical barricade was placed
along the area where Samuel Road intersects Ramopo
and Clarkstown, under the pretext that the closure was
meant to address a concern that cars were exceeding
the speeding limit. (*Id.* ¶ 50.) Clarkstown and other
Defendants did not undertake road safety practices or
provide for traffic enforcement activities before placing
the barrier on Samuel Road. (*Id.* ¶ 51, 52.) The initial
barrier was primarily composed of "plastic with a break-
away chain locking device" which allowed for the passage
of emergency vehicles. (*Id.* ¶ 55.) Later, the plastic
barricades were replaced with cement "jersey barrier"
barricades, which allowed for the passage of emergency
vehicles from Clarkstown to Ramopo with delay caused
by the need to remove the barrier. (*Id.* ¶ 56.)

**\*2** Defendants have also taken other measures to prevent Jewish individuals from traveling to or residing in Clarkstown, including by appearing at town meetings held in Ramopo, and objecting to the development of a multi-family residential facility on the border of Clarkstown, which would provide "affordable and less affluent housing that would attract Orthodox and Hasidic residents." (*Id.* ¶¶ 73, 74.) Clarkstown also passed a moratorium on new construction after the closure of Samuel Road. (*Id.* ¶ 75.) In his November 2015 campaign for re-election as Town of Clarkstown Supervisor, the former Clarkstown Supervisor also emphasized that he was "keeping Clarkstown from Becoming Another Ramopo." (*Id.* ¶ 78.) This slogan was placed in a brochure that publicized that Clarkstown had updated the Town Code and placed a moratorium on new residential construction. (*Id.* ¶ 79.) This literature also depicted a "multi-family housing unit with many children's toys and playground devices ... intended to show areas typically found within ... Ramopo where Hasidic families.... [live]." (*Id.* ¶ 80.)

All of these efforts were part of a discriminatory purpose confirmed by the installation of the "permanent" barrier in 2016. (*Id.* ¶ 81.)

Plaintiffs Ellen Stack, Sean Stack, Patrick Hendrick, and Dan Daly live on Samuel Road, which is located within Ramopo. (Compl. ¶ 25.) Samuel Road traverses both Ramopo and Clarkstown, and previously provided for public travel. (Id. ¶¶ 26, 27.) Ramopo borders the state of New Jersey, and Samuel Road previously served as a means for individual Plaintiffs to travel both intra-New York State within the Towns of Ramopo and Clarkstown, and interstate between New York and New Jersey. (Id. ¶¶ 28, 29.) Public access to Samuel Road also allowed for more expeditious access for emergency and other vehicles. (See id. ¶ 32.)

The County of Rockland and the Village of Chestnut Ridge previously brought litigation to remove the barrier. (*Id.* ¶ 57.) Throughout that litigation, Clarkstown and other Defendants asserted that the barrier provided for access by emergency vehicles that could enter Ramopo through Samuel Road by using a key to open a lock that kept the barrier closed. (*Id.* ¶¶ 58, 59.) After all New York State Court remedies were exhausted "for those wishing to remove the Barrier on Samuel Road," on March 11, 2016, Defendants placed permanent, new

concrete barriers across Samuel Road, affixed to the road with metal stakes so that no emergency vehicles could traverse that portion of the road. (*Id.* ¶ 61.) At that time, a representative of the Defendants told Plaintiff Stack that they were making the closure of Samuel Road "permanent" because no more judicial remedies existed for those who oppose the barrier. (*Id.* ¶ 62.)

The closure of Samuel Road has also had a direct impact upon the general health, safety, and welfare of Ramopo residents on and about Samuel Road; on one occasion, in 2013, an ambulance was unable to pass through Samuel Road to Ramopo due to the barrier and had to reroute, causing a delay in medical assistance to a Ramopo resident who had suffered a stroke. (*Id.* ¶¶ 64, 65.) Prior to the installation of the cement barriers, during the winter months a "pile up" of snow and ice prevented emergency vehicles from passing through the barrier, even if it were open. (*Id.* ¶ 66.) The barrier has also created a virtual dead end on Samuel Road, and has become a location where drugs can be used and sold, "since it is difficult for law enforcement to view such conduct." (*Id.* ¶ 68.) With the closing of Samuel Road, Ramopo residents must also use an alternate route to enter a specific Clarkstown road called Newport Drive; the alternate route has a steep incline that is difficult to drive on during inclement weather. (*Id.* ¶¶ 69, 70.)

Ambulance access to Ramopo through Samuel Road provides for the quickest response time. (*Id.* ¶ 71.) Due to the barrier, an ambulance that intends to traverse Samuel Road must reroute and take a longer route, which increases response time to Ramopo residents. (*Id.* ¶ 72.)

### STANDARD ON A MOTION TO DISMISS

**\*3** Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d

87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

### I. Timeliness of Plaintiffs' Federal Claims

" 'While a statute-of-limitations defense may be raised in a motion to dismiss under [Rule] 12(b)(6), such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (citation omitted). A defendant may raise a pre-answer statute of limitations defense, for example, "[w]here the dates in a complaint show that an action is barred by a statute of limitations." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). Thus, for a Court to grant a motion to dismiss on the basis that the asserted claims are time-barred, there must be no factual question as to whether the alleged violations occurred within the statutory period. *See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 468 (S.D.N.Y. 1999).

### a. Applicable Statutes of Limitations

Plaintiffs bring federal constitutional claims pursuant to §§ 1981, 1982, 1983 and 1985(3), and the FHA. Plaintiff's claims brought pursuant to §§ 1981,[1] 1982, 1983 and 1985(3) are governed by a three-year statute of limitations, and their FHA claims are governed by a two-year limitations period. *See Carvel v. Franchise Stores Realty Corp.*, 08-CV-8938 (JGK), 2009 WL 4333652, at *8 (S.D.N.Y. Dec. 1, 2009) ("the statute of limitations in New York for claims pursuant to 42 U.S.C. §§ 1981–83 & 1985 is three years"); *see also See Clement v. United Homes,*

*LLC*, 914 F. Supp. 2d 362, 370 (E.D.N.Y. 2012) (citing 42 U.S.C. § 3613(a)(1)(A); *Adams v. Han*, 478 Fed. Appx. 686, 687–88 (2d Cir. 2012)) ("to bring claims under ... the Fair Housing Act '[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice.' "). Since Plaintiffs commenced this action on March 17, 2016, their federal claims are time barred unless: (1) their claims under §§ 1981, 1982, 1983 and 1985(3) accrued after March 16, 2013, and their FHA claims accrued after March 16, 2014 or (2) the statute of limitations was tolled.

[1]   The applicable statute of limitations for § 1981 claims is dependent upon whether Plaintiff states a claim under the statute as it was originally passed, or under its 1991 Amendments. *Wright v. City of Ithaca*, 633 Fed.Appx. 63, 64 (2d Cir. 2016) (summary order). Although not clear from the Complaint, because Plaintiffs' § 1981 claim appears to fall within the original language of the statute, a three-year limitations period applies. *Id.*

### b. Application of Statutes of Limitations to Plaintiffs' Claims

**\*4** Defendants argue that a traffic barrier preventing the unimpeded movement of traffic has been in place since late 2012, that all of Plaintiffs' federal claims are predicated upon this fact, and that they are thus time barred. (*See* Defs.' Mem. of Law In Support of Mot. to Dismiss, at 8-9, [hereinafter "Defs.' Mem."], ECF No. 18.) Plaintiffs contend that the harms alleged in the Complaint arise from the "permanent" closure of Samuel Road which occurred in March 2016. (*See* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss, at 15-17, [hereinafter "Pls.' Opp."], ECF No. 20.)

Although the parties dispute the meaning of a "permanent" closure as compared to a "temporary" one, Plaintiffs concede that Samuel Road has been blocked by some form of barrier that has, at the very least, prevented the passage of public vehicular traffic since 2012, though emergency vehicles were permitted to pass. (*See* Pls.' Opp., at 2) ("Defendants' own Motion documents confirm that in 2012 only a 'breakaway barrier' was put across Samuel Road.... That 'breakaway barrier' *allowed emergency vehicles to enter and exit Samuel Road by using a 'key' to*

open the 'gate' across Samuel Road.") (emphasis added); (*id.*) (*citing* George Hoehmann Declaration In Support of Defs.' Mot. to Dismiss, Ex. B, ¶ 27) (indicating in August 2012, a temporary barrier was replaced with *a double-gate with chain and padlock for key distribution to emergency services, but "nevertheless" residents and general public were prohibited from traveling along Samuel Road*) (emphasis added); (*id.*) ("[P]revious litigation did not concern the fact of a 'permanent barrier' blocking Samuel *Road preventing the passage of emergency vehicles* and pedestrians, as is set forth in this Federal Court Litigation") (emphasis added); (*id.*, at 5) (noting prior litigation involved action taken by Defendant Clarkstown in late 2012 pertaining to the replacement of a temporary barrier with a breakaway barrier that *could be opened with keys by emergency service providers*) (emphasis added); (*see also id.*) ("It is *the current inability of emergency vehicles to cross Samuel Road* to and from Ramapo to Clarkstown (and vice versa) that *is an essential part of Plaintiffs' Complaint.*") (emphasis added). Thus, based upon Plaintiffs' own Memorandum, and the way in which it illuminates the factual allegations alleged in Plaintiffs' Complaint, any injuries arising out of the existence of a barrier across Samuel Road impeding public traffic began to accrue in 2012.

i. Accrual

Generally, a cause of action for a discrimination claim accrues " 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.' " *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed.Appx. 672, 674 (2d Cir. 2009) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see Washington v. Cty. of Rockland*, 373 F.3d 310, 319 (2d Cir. 2004) (Sotomayor, J.) (noting, in considering claims under § 1981 and § 1983, that "[a]s with all discrimination claims, plaintiffs' claims accrued when they knew or should have known of the discriminatory action"); *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 371–72 (E.D.N.Y. 2012) (quoting *Dombrowski v. City of New York*, 116 F.3d 465, at *1 (2d Cir. 1997)) ("Claims under the FHA, as well as under §§ 1981, 1982 and 1985, are subject to the discovery rule and thus accrue when a 'plaintiff knows or has reason to know of the injury that serves as the basis for the action.' "). Discovery of the injury and its cause " 'require[ ] only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of

its cause or of the person or entity that inflicted it.... [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.' " *Id.* (citing *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 533 (2d Cir. 1999)).

**\*5** As Defendants correctly point out, though Plaintiffs argue that their claims arise out of alterations made in 2016, preventing the passage of emergency vehicles, many of the factual allegations they allege in support of their claims do appear to pertain solely and specifically to the installation of the initial barrier impeding public traffic, which occurred in 2012. (*See, e.g.*, Compl. ¶¶ 33, 48-49, 68, 69.) In response, Plaintiffs argue in a footnote that the continuing violation doctrine and equitable tolling should apply to toll the limitations periods for those claims relating to the initial installation of the barrier on Samuel Road. (*See* Pl's. Opp., at 17 n.9.)

To the extent that Plaintiffs' claims are based not just on an isolated event, but on an alleged ongoing policy of discrimination, the statute of limitations can be extended under the "continuing violation" theory which "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997). Where Plaintiff alleges a continuing violation that gives rise to a claim of a discriminatory policy, the statute of limitations period begins to run at the end of the "last asserted occurrence." *Clement*, 914 F. Supp. 2d. at 373 (citing *Havens Realty Corp v. Coleman.*, 455 U.S. 363, 363 (1982)).

However, the continuing-violation doctrine is generally disfavored in this Circuit. *In re Johnson*, No. 09-49420, 2014 WL 4197001, at *13 (Bankr. E.D.N.Y. Aug. 22, 2014) (citing *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011)) ("Courts in the Second Circuit and elsewhere 'have been loath to apply the continuing violation doctrine absent a showing of compelling circumstances' ") (internal citations and quotation marks omitted). Furthermore, "[c]haracterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as a 'series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." *Singleton v. City of*

*New York*, 632 F.2d 185, 192 (2d Cir. 1980) *overruled on other grounds by* Roesch v. Otarola, 980 F.2d 850, 853–54 (2d Cir. 1992), *as recognized in* Beberaggi v. N.Y.C. Transit Auth., No. 93–CV–1737, 1994 WL 75144, at *5 (S.D.N.Y. Mar. 9, 1994); *see* Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1157 (2d Cir. 1995) (noting that "when a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run, and the later awareness that the actionable wrong was also part of a conspiracy does not expand the statutory time limit"). Nor can a "continuing violation ... be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999).

As they pertain to the general public, this Court finds that Plaintiffs' first, second, and fourth claims for relief alleging that Defendants interfered with Plaintiffs' federal right to interstate travel, right to intrastate travel, and right to freedom of association,[2] respectively, are all *effects* of the initial installation of a barrier on Samuel Road, a separate and discrete act that prevented one form of public access to Clarkstown. Because Plaintiff became aware of the injury underlying these claims when the initial barrier blocking the passage of public traffic was installed,[3] these claims began to accrue at that time and are therefore barred by the aforementioned statute of limitations, and dismissed with prejudice.[4] To the extent that Plaintiffs' sixth claim, alleging that Defendants violated Plaintiffs' rights under the FHA by making housing "otherwise unavailable because of religion," is based upon the existence of the barrier to public vehicular traffic on Samuel Road, this claim is also dismissed as time-barred for the aforementioned reason,[5] and Plaintiffs' seventh claim, a related FHA claim, is dismissed on the same grounds. To the extent that these FHA claims arise out of timely factual allegations asserted within the Complaint (*see, e.g.*, ¶¶ 78-81) (citing discriminatory acts against individuals of Jewish faith), these claims may remain. Finally, as to Plaintiffs' third claim for relief, which merely asserts that Defendants have violated a variety of Plaintiffs' federal rights, to the extent it is premised upon the existence of a barrier to the motoring public across Samuel Road, these claims are also dismissed as time-barred. *See* Singleton, 632 F.2d at 192-93 ("To permit [plaintiffs] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims ... The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable").

[2] This claim is dismissed as time-barred to the extent it is premised upon the installation of a barrier blocking public vehicular traffic across Samuel Road. The Court notes that Plaintiffs allege Defendants intruded upon Plaintiffs' "right to associate with others for purposes of protected activity" without alleging factual content to this effect. (*See* Compl. ¶ 98.) This bare, conclusory assertion of a violation is insufficient in any event and must therefore be dismissed, without prejudice, to the extent it relates to other allegations in the Complaint.

[3] Plaintiff does not allege that Samuel Road is the only form of access to the Town of Clarkstown from the Town of Ramapo. Even if that were the case, the impediment began in 2012.

[4] Nor does equitable tolling apply, given Defendants' conduct did not conceal Plaintiffs' causes of action with regard to these injuries. *See, e.g.*, Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1158 (2d Cir. 1995) (denying equitable tolling on the basis plaintiff submitted evidence of conspiracy, but not of defendants tangible steps to conceal the nature of activities); Pietri v. N.Y.S. Office of Court Admin., 936 F. Supp. 2d 120, 138 (E.D.N.Y. 2013) ("To avoid dismissal on the grounds of equitable tolling due to Defendants' misconduct, Plaintiff must set forth in his Amended Complaint facts from which the Court could conclude that he was unaware of his cause of action *because of* Defendants misleading conduct.") Indeed, Plaintiff has been aware of the blockage since 2012.

[5] In support of their sixth claim for relief Plaintiffs state "Defendants installation of a Traffic Barrier and other actions complained of herein have had the effect ... of excluding said Plaintiffs from public roads and other areas within the Town of Clarkstown by discriminating against the said Plaintiffs based on religion." (Compl. ¶ 107.)

**\*6** In contrast, claims such as those premised upon the delay in emergency response for Plaintiffs on the Ramapo side of the barrier on Samuel Road may remain.

## II. Res Judicata and Collateral Estoppel

Defendants argue that Plaintiffs' claims are also barred by the doctrines of collateral estoppel and res judicata because they are based on the original installation of a traffic barrier across Samuel Road, which was previously fully litigated and adjudicated on the merits. (*See* Defs.' Mem., at 11.) Specifically, Defendants argue that the issue concerning Clarkstown's right to install and maintain the barrier was litigated by the County and Village of Chestnut Ridge, parties in privity with Plaintiffs, that both the New York State Supreme Court and Appellate Division ruled in Clarkstown's favor, and that Plaintiffs' claims arise out of the same set of facts as those in the previous litigation. (*See* Defs.' Mem. at 11, 15.)

In accordance with the doctrine of res judicata, and pursuant to the Constitution's Full Faith and Credit Clause, "federal courts must accord state court judgments the same preclusive effect as other courts within that state." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Because the prior judgments in question here were issued by New York State Courts, the Court's analysis is governed by New York State law, "which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Id.* However, new claims arising subsequent to a prior action are not barred by res judicata, whether or not they are premised upon facts stemming from the same "course of conduct." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003).

Given Plaintiffs' remaining claims stem from a different "transaction," namely the alteration to the barrier preventing the passage of emergency vehicles, a change that occurred years after the initial installation of the barrier and subsequent to the initiation of prior litigation, these claims could not have been raised in the prior action and are not barred by the doctrine of res judicata. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play"). The Court does not consider the res judicata effect on time-barred claims discussed above.

Under the doctrine of collateral estoppel, a party may not relitigate an issue that was "*clearly raised* in a prior action or proceeding and decided against that party ...,

whether or not the tribunals or causes of action are the same." *Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999) (internal quotation marks and citations ommitted). For the doctrine to apply, the issues raised in the second action must be identical, or substantially similar. *Zherka v. City of N.Y.*, 459 Fed.Appx. 10, 13 (2d Cir. 2012). As to claims not dismissed pursuant to this Order, the Court finds the issues raised, which pertain to the installation of the new barrier in 2016 and discriminatory acts by Defendants, are distinct from those raised in the state court actions.

**\*7** On this basis, Plaintiffs remaining claims are not barred by the doctrines of res judicata or collateral estoppel.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims are resolved as follows.

The following claims are DISMISSED with prejudice to the extent they are premised upon the imposition of a barrier blocking the passage of public traffic across Samuel Road:

- Claim for interference with federal right to intrastate travel and interstate travel;

- Claims arising under 42 U.S.C. §§ 1981, 1982, 1983 and 1985(3) [6];

- Fair Housing Act Claims;

- Claim based on First Amendment right to freedom of association.

Additionally, First Amendment freedom of association claims based on alternate theories are dismissed without prejudice.

[6]    As Defendants argument regarding the sufficiency of Plaintiffs' §§ 1983, 1985 and other claims are all premised upon the erection of the initial barrier in 2012, and claims premised upon the initial installation of the barrier have been dismissed as time-barred, these arguments are deemed moot. (*See, e.g.*, Defs.' Mem., at 17-20.) Defendants do not address Plaintiffs' state law claims.

Plaintiff shall have until March 28, 2017 to amend the Complaint as to those claims that are dismissed without prejudice. Plaintiffs shall ensure that they allege sufficient factual content to support their remaining claims, and conform with this Opinion for clarity. If Plaintiff elects to file an amended complaint, Defendants shall have until April 28, 2017 to move or file responsive pleadings. If Plaintiff does not file an amended complaint, Defendants shall have until sixty days from the date of this Order to file responsive pleadings, An initial case management and scheduling conference pursuant to Fed.R.Civ.P. 16 is scheduled for April 27, 2017 at 10:30 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed.R.Civ.P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 16.

SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 782500

---

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 213243
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

[Adam Lopez](), Plaintiff,

v.

City of New York, New York City Police
Department, Unnamed Nypd Officers, Defendants.

15 Civ. 1650 (NRB)
|
Signed January 10, 2017

**Attorneys and Law Firms**

[Carlos Gonzalez](), Gonzalez Law Associates, New York,
NY, for Plaintiff.

Peter John Fogarty, New York City Law Department-
Special Federal Litigation Div, New York, NY, for
Defendants.

### MEMORANDUM AND ORDER

[NAOMI REICE BUCHWALD](), UNITED STATES
DISTRICT JUDGE

**\*1** Plaintiff Adam Lopez ("Lopez") filed this action
against defendants the City of New York (the "City"),
the New York City Police Department ("NYPD"), [1]
and unnamed NYPD officers (the "Unnamed Officers"),
alleging false arrest, malicious prosecution, excessive
force, and Monell liability under [42 U.S.C. § 1983](). The
City moves for judgment on the pleadings pursuant to
[Federal Rule of Civil Procedure 12(c)]() on the grounds that
(1) the false arrest and excessive force claims are time-
barred against any purported individual defendants; (2)
the malicious prosecution claim fails because Lopez did
not receive a favorable termination, has not alleged that
defendants initiated the prosecution or otherwise played
an active role in it, and has not alleged that the prosecution
was malicious; and (3) the Monell claims fail because
Lopez does not sufficiently allege a custom or policy
resulting in the purported constitutional violations. For
the following reasons, the motion is granted.

1    Chapter 17, Section 396 of the New York City
Charter provides, "All actions and proceedings for
the recovery of penalties for the violation of any law
shall be brought in the name of the city of New York
and not in that of any agency, except where otherwise
provided by law." The NYPD is accordingly a non-
suable entity, and the claims against it are dismissed.
See, e.g., [5 Borough Pawn, LLC v. City of New York,
640 F. Supp. 2d 268, 284 (S.D.N.Y. 2009)]().

### I. Background

The complaint, filed on March 3, 2015, alleges that "[o]n
or about March 14, 2012, Plaintiff was arrested without
cause for Criminal Sale of a Controlled Substance, and
was subsequently incarcerated for 2 days." Compl. ¶ 6.
It further alleges, "The matter was eventually dismissed.
On the date of the incident there was a separately arrested
possessor of the controlled substance who repeatedly
indicated that she had not purchased the substance from
Plaintiff Lopez." Id. ¶ 7. Lopez alleges that probable cause
was lacking for his arrest, incarceration, and prosecution.
Id. ¶¶ 14, 20. He further alleges "that Officers [sic]
excessive force against Plaintiff In [sic] that he was cuffed
very tightly, over Planitffs [sic] complaints, and was
caused physical harm due to the Plaintiff [sic]." Id. ¶ 23.

The complaint also contains fairly generic Monell
allegations such as the following:

- "Defendant City of New York ("City") failed to
properly train their police department employees
on the proper procedures for conducting an
investigation and arrest. Furthermore, we allege
that it is Department policy to make arrests where
allegations of criminality take place, as such all
members employed by said department in a position/
capacity to arrest any other individual would/should
properly be trained by the department to perform
said duty in a just and proper manner. We also allege
that it is the general practice of the Department to
fully investigate any and all matters before them, and
do so in a proper and judicious manner, the failure
to have done so in this matter is a breach of the
aforementioned implied, and direct, policy of this
department." Id. ¶ 10.

**\*2** - "Defendant City also allowed a policy or custom
to be implemented and carried out, or practiced
within its police department, to wit, using whatever
means possible to arrest and prosecute individuals for

various offenses, while being indifferent to whether or not there was probable cause or a factual basis for the belief that the person committed the crime." Id. ¶ 11.

● "Defendant City knew or should have known that this type of conduct, custom, unwritten policy, or practice was taking place in their police department. This practice directly led to the false arrest and false imprisonment, of Mr. Lopez for an offense that he did not commit." Id. ¶ 12.

The City filed an answer on September 28, 2015. After a mediation session under Local Rule 83.10 that did not result in settlement, the City made the instant motion. Lopez, through his attorney, filed a half-page, not entirely responsive brief in opposition. At no point, even in opposition to this motion, has Lopez sought to amend his complaint to name the Unnamed Officers.

## II. Legal Standard

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). We thus construe the complaint liberally, accept its factual allegations as true, and draw all reasonable inferences in plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The assumption that allegations contained in the complaint are true is "inapplicable to legal conclusions." Id.

In evaluating the sufficiency of a complaint, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010), as well as "matters of which judicial notice may be taken," Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). We may take judicial notice of a "document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Int'l Star Class Yacht

Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted).

## III. Discussion

The City argues that (1) the false arrest and excessive force claims are time-barred against any purported individual defendants; (2) the malicious prosecution claim fails because Lopez did not receive a favorable termination, has not alleged that defendants initiated the prosecution or otherwise played an active role in it, and has not alleged that the prosecution was malicious; and (3) the Monell claims fail because Lopez does not sufficiently allege a custom or policy resulting in the purported constitutional violations.

### A. Unnamed Officers

More than a year after filing this lawsuit, and even though the City disclosed the name of the arresting officer in its initial disclosures, served on October 20, 2015, Lopez has failed to amend or even seek leave to amend his complaint to name any of the Unnamed Officers. It is undisputed that more than three years have passed since Lopez's false arrest and excessive force claims accrued, on March 14, 2012 and March 15, 2012, respectively. See, e.g., Perez v. Johnson, No. 07 Civ. 3761 (NRB), 2008 U.S. Dist. LEXIS 56278, at *5, 2008 WL 2876546 (S.D.N.Y. July 22, 2008) (excessive force claim accrues when the force is used); Wallace v. Kato, 549 U.S. 384, 389-90 (2007) (limitations period on false arrest claim begins to run upon arraignment). The three-year statute of limitations on both causes of action has therefore run. See N.Y. C.P.L.R. § 214(5); Owens v. Okure, 488 U.S. 235, 249-51 (1989); Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).

**\*3** Even if plaintiff were to seek leave to amend to name the Unnamed Officers, the attempt would be futile, because the claims would not relate back to the filing of the complaint, and would therefore be untimely. "[I]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued. Thus, such an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met." Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 468 (2d Cir. 1995) (citations, internal quotation marks, and alterations omitted), modified, 74 F.3d 1366 (2d Cir. 1996).

We now turn to a discussion of whether the specifications of Rule 15(c) have been met.

First, relation back is unavailable here under Rule 15(c) (1)(C). See Sewell v. Bernardin, 795 F.3d 337, 342 (2d Cir. 2015); Hogan v. Fischer, 738 F.3d 509, 517-18 (2d Cir. 2013) ("This Court's interpretation of Rule 15(c)(1) (C) makes clear that the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity' [within the meaning of the rule].").

Moreover, relation back is also not possible under Rule 15(c)(1)(A). [2] Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). As indicated above, New York law provides the applicable statutes of limitations for an action under Section 1983. Owens, 488 U.S. at 249-51; Patterson, 375 F.3d at 225; see also N.Y. C.P.L.R. § 214(5). Section 1024 of the New York CPLR provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. 1024. When seeking to use CPLR 1024 and amend its complaint to relate claims against a previously unknown party back to the complaint's filing for statute of limitations purposes, "a party must meet two requirements," including, in relevant part, "the party must 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name.' " Hogan, 738 F.3d at 519 (quoting Bumpus v. N.Y. City Transit Auth., 66 A.D.3d 26, 30, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)). Here, as explained above, the relevant statutes of limitations ran on March 14, 2015 and March 15, 2015. Lopez did not file this lawsuit until March 6, 2015. The record contains no indication that Lopez took any steps to ascertain the identities of the Unnamed Officers before the limitations periods ran. Moreover,

even after the City disclosed the arresting officer's name in its initial disclosures, on October 20, 2015, Lopez did not even seek to amend his complaint. Accordingly, Lopez did not "exercise due diligence, prior to the running of the statute of limitations," to identify the Unnamed Officers. Id.

[2] We note the Corporation Counsel's failure to cite to this subsection of Rule 15 despite its clear relevance.

New York law also allows relation back under CPLR 203, using a standard somewhat similar to the FRCP 15(c) (1) (C) standard. See Buran v. Coupal, 87 N.Y.2d 173, 177, 661 N.E.2d 978, 981 (1995). "Under this standard, the three conditions that must be satisfied in order for claims against one defendant to relate back to claims asserted against another are that: (1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." Id. at 178, 661 N.E.2d at 981 (holding, however, that the "mistake" need not be excusable) (internal quotation marks omitted). It can hardly be said that all these preconditions have been meet here, but even assuming that relation back could still be viable here under New York law despite the lack of due diligence required under CPLR 1024, Lopez's failure to timely name the Unnamed Officers is, in particular, not a "mistake" that qualifies for relation back. See Strada v. City of New York, No. 11-CV-5735 MKB, 2014 WL 3490306, at *8-9 (E.D.N.Y. July 11, 2014) (holding same where plaintiff inexplicably failed to amend to name unnamed defendants even after learning their identities); Bumpus, 66 A.D.3d at 32-34, 883 N.Y.S.2d at 104-07 (noting methods a plaintiff can use to ascertain the identities of unknown defendants before limitations period runs); Tucker v. Lorieo, 291 A.D.2d 261, 262, 738 N.Y.S.2d 33, 36 (1st Dep't 2002) (relation back not available where plaintiff failed to take steps to ascertain unnamed defendant's identity before filing original summons and complaint).

**\*4** Based on the above discussion, this case falls within the category of cases where leave to amend under Rule 15(a)(2) "should generally be denied in instances of

futility, undue delay, bad faith or dilatory motive." Burch v. Pioneer Credit Recovery, Inc., 551 F. 3d 122, 126 (2d Cir. 2008). As our analysis explains, amendment here would be futile, and plaintiff has inexcusably delayed by failing to move for leave to amend even now. Accordingly, the false arrest and excessive force claims are time-barred as against the Unnamed Officers, and they are dismissed.

### B. Malicious Prosecution
"In order to sustain a claim for malicious prosecution, [plaintiff] must demonstrate, among other things, that the prosecution terminated in his favor." Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001). Here, plaintiff concedes that the charges against him were dismissed pursuant to an adjournment in contemplation of dismissal ("ACD") that he received. Pl.'s Opp. Br.; see also Decl. of Peter J. Fogarty in Support of Def.'s Mot., Exs. C (Criminal Court documents indicating ACD), D (Lopez's 50-h Hearing testimony that he received an ACD). It is black letter law that, under New York law, "an adjournment in contemplation of dismissal is not considered to be a favorable termination." Id.; Smith-Hunter v. Harvey, 95 N.Y.2d 191, 196-97, 734 N.E.2d 750, 753-54 (2000). Therefore, Lopez's malicious prosecution claim fails, and we need not address the City's other arguments regarding this claim.

### C. Monell Claims
Lopez's Monell claims fail for two, independent reasons. First, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (internal quotation marks omitted) (alteration in original). As discussed above, Lopez has failed to state any claim with respect to any of the Unnamed Officers.

Second, Lopez's Monell-specific allegations are insufficient to state a claim. Establishing the liability of a municipality under Section 1983 "requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013). "The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support,

at least circumstantially, such an inference." Bradley v. City of New York, No. 08-CV-1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-9, 2009 WL 1703237 (E.D.N.Y. June 18, 2009) (internal quotation marks omitted); see also Littlejohn v. City of New York, 795 F.3d 297, 315 (2d Cir. 2015) (affirming dismissal of Monell claim premised on merely conclusory allegations of a custom or policy).

Here, the complaint's allegations of a City custom or policy resulting in the alleged constitutional violations are boilerplate and conclusory. See, e.g., Compl. ¶¶ 10 (City "failed to properly train their police department employees on the proper procedures for conducting an investigation and arrest"), 11 ("Defendant City also allowed a policy or custom to be implemented and carried out, or practiced within its police department, to wit, using whatever means possible to arrest and prosecute individuals for various offenses, while being indifferent to whether or not there was probable cause or a factual basis for the belief that the person committed the crime."), 17 (erroneously referring to alleged policies and customs of "Defendant City of Mount Vernon"). These allegations are insufficient to support an inference that the City in fact had a policy or custom that resulted in the alleged violations. See Littlejohn, 795 F.3d at 315; Bradley, 2009 U.S. Dist. LEXIS 51532, at *8-9, 2009 WL 1703237 (dismissing Monell claim based on similarly conclusory allegations); Cuevas v. City of New York, No. 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *12, 2009 WL 4773033 (same).

**\*5** Plaintiff's counsel's effort to salvage his Monell claim by citing to Floyd v. City of New York, 08-cv-1034 (SAS) (S.D.N.Y. filed Jan. 31, 2008), is misplaced and unavailing. Floyd only concerned stop-and-frisk policies, which are not at issue here.

Accordingly, Lopez's claims against the City fail.

### IV. Conclusion
The City's motion is granted in its entirety. The case is hereby dismissed.

### SO ORDERED.

### All Citations

Slip Copy, 2017 WL 213243

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4459059
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

William BUSSEY, Plaintiff,

v.

Christopher DEVANE, Kathleen Rice, Judge
Ferrell, Hempstead Police Department, the
Officer On My Felony Complaint, Defendants.

No. 13–CV–3660(JS)(WDW).
|
Aug. 16, 2013.

**Attorneys and Law Firms**

William Bussey, East Meadow, NY, pro se.

No appearance for Defendants.

**Opinion**

SEYBERT, District Judge.

 **\*1** Presently pending before the Court is the Complaint
brought by incarcerated plaintiff William Bussey
("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983")
against his criminal defense attorney, Christopher Devane
("Devane"), Nassau County District Attorney Kathleen
Rice ("D.A.Rice"), Nassau County District Court Judge
Tricia Ferrell ("Judge Ferrell"), the Hempstead Police
Department ("Police Department"), and the unidentified
Hempstead police officer who filed the felony complaint
against Plaintiff ("P . O. John Doe" and collectively,
"Defendants"). Accompanying the Complaint is an
application to proceed *in forma pauperis.* Upon review
of the declaration in support of the application to
proceed *in forma pauperis,* the Court determines that
Plaintiff's financial status qualifies him to commence
this action without prepayment of the filing fee. *See*
28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to
proceed *in forma pauperis* is GRANTED. However,
for the reasons that follow, all claims against Devane,
D.A. Rice, Judge Ferrell, and the Police Department are
DISMISSED WITH PREJUDICE. Plaintiff's speedy trial
and malicious prosecution claims against P.O. John Doe
are DISMISSED WITHOUT PREJUDICE. Plaintiff's
false arrest claim against P.O. John Doe may proceed;

however, it is stayed pending the termination of Plaintiff's
state court criminal proceedings.

*BACKGROUND*

Plaintiff's Complaint is difficult to comprehend. It appears
that Plaintiff seeks to challenge his pre-trial confinement
on two discrete pending state court criminal proceedings.
Plaintiff alleges that, on June 10, 2011, he was arrested
and arraigned after P.O. John Doe observed Plaintiff
participate in a $10 marijuana drug transaction on June
6, 2011. (Compl.¶ IV.) According to Plaintiff, he is also a
pre-trial detainee on a "D.U.I." charge and claims that the
"courts messed up" and "are trying to put both dockets
together." (Compl.¶ IV.2.) As a result, Plaintiff claims that
he has "90 days in" on his first D.U.I. charge and he has
"yet [to] see[ ] a judge." [1] *Id.* Plaintiff questions why it
is taking so long to prosecute him and surmises that it is
because he is black. (Compl.¶ IV.3.)

[1]     Plaintiff fails to note that a warrant was issued
        for his arrest on June 11, 2012 because he did
        not appear in court as directed while released
        on his own recognizance on the underlying drug
        charges. *See* New York State Unified Court System,
        WebCrims, Case Details–Appearances, available at
        http://iapps.courts .state.ny.us/webcrim_ attorney/
        DefendantSearch (last visited July 25, 2013).

Plaintiff claims that Judge Ferrell "is very unprofessional
& doesn't honor my motions [to dismiss the misdemeanor
complaint, to produce, and to fire my public
defender, Devane]." (*Id.*) Plaintiff claims that his
defense attorney, Devane, is "working with the District
Attorney," (Compl.¶ IV.2) has missed court appearances,
and encouraged Plaintiff to "take eight months with a
felony knowing they didn't have anything & also knowing
I asked for my felony exam." (*Id.* ¶ IV.4.)

For relief, Plaintiff seeks unspecified financial
compensation "for losing [his] job, everyday of
incarceration & mental, physical and emotional
distress." (Compl.¶ V.)

*DISCUSSION*

I. *In Forma Pauperis Applications*

**\*2** Upon review of Plaintiff's declaration in support of his application to proceed *in forma pauperis,* the Court determines that Plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed *in forma pauperis* is GRANTED.

## II. *Application of* 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. *See id.*

Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. *See Sealed Pl. v. Sealed Def.,* 537 F.3d 185, 191 (2d Cir.2008); *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Moreover, at the pleadings stage of a proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010), (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)), *aff'd,* ––– U.S. ––––, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678; *accord Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 128 (2d Cir.2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

## III. *Section 1983*

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ...

> subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983; *accord Rehberg v. Paulk,* ––– U.S. ––––, 132 S.Ct. 1497, 1501–02, 182 L.Ed.2d 593 (2012). To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Rae v. Cnty. of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y.2010) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)). Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v.. Roach,* 165 F.3d 137, 142 (2d Cir.1999); *see also Rosa R. v. Connelly,* 889 F.2d 435, 440 (2d Cir.1989).

**\*3** Here, liberally construed, Plaintiff claims to have been falsely arrested with regard to his June 10, 2011 arrest, maliciously prosecuted, and denied a speedy trial.

### A. *Immunity*

#### 1. *Prosecutorial Immunity*

Plaintiff names D.A. Rice as a defendant. It is wellestablished that prosecutors are entitled to prosecutorial immunity for "performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process,' " including the decision whether not or to commence a prosecution. *Ying Jing Gan v. City of N.Y.,* 996 F.2d 522, 530 (2d Cir.1993) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)); *see also Amaker v. N.Y. State Dep't of Corr. Serv.,* 435 F. App'x 52, 55 (2d Cir.2011). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.' " *Hill v. City of N.Y.,* 45 F.3d 653, 661 (2d Cir.1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994)).

Here, because the claims against D.A. Rice relate exclusively to the prosecution of Plaintiff in New York

State District Court, Nassau County, they are barred by absolute prosecutorial immunity and are DISMISSED WITH PREJUDICE.

### 2. *Judicial Immunity*

Plaintiff also seeks to sue New York State District Judge Ferrell who is allegedly involved with his underlying state court criminal proceedings. As is readily apparent, Judge Ferrell is entitled to absolute judicial immunity. It is well-settled that judges have generally been accorded absolute immunity for damages arising out of judicial acts performed in their judicial roles. *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *see also Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity.").

Here, even liberally construed, Plaintiff alleges no acts performed by Judge Ferrell that fall outside the scope of absolute judicial immunity. Rather, Plaintiff vaguely complains that "Judge Ferrell is very unprofessional & doesn't honor my motions." (Compl.¶ IV.3.) Deciding motions is certainly an act performed within a judge's "judicial capacity" and such determinations are undoubtedly entitled to absolute judicial immunity. Plaintiff's mere dissatisfaction with the judge's decision is insufficient to overcome absolute judicial immunity and, accordingly, his claims against Judge Ferrell are not plausible and are DISMISSED WITH PREJUDICE.

Insofar as Plaintiff seeks to allege that Judge Ferrell and D.A. Rice conspired to delay his trial, his Complaint fails to allege any facts in support of such claim. Moreover, even if Plaintiff pled overt acts to establish a factual basis for his conspiracy claim, it too would fail given that a conspiracy among the judge and the prosecutor in connection with their judicial and prosecutorial functions is still protected by absolute immunity. *See Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987) ("[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity.").

### 3. *Eleventh Amendment Immunity*

**\*4** The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. AMEND. XI. "The reach of the Eleventh Amendment has ... been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens, or by foreign sovereigns .... " *State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (alterations in original) (quoting *W. Mohegan Tribe & Nation v. Orange Cnty.,* 395 F.3d 18, 20 (2d Cir.2004)). Eleventh Amendment immunity also extends to suits for money damages against state officials in their official capacities. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)). [2]

[2]    A narrow exception to this rule exists for official-capacity suits against state officers seeking prospective injunctive relief. *See Will,* 491 U.S. at 71, n. 10. This exception does not apply to the present case given that the only relief sought by Plaintiff is "financial relief." (Compl.¶ V.)

Here, Plaintiff's Section 1983 claims for money damages against the state defendants in their official capacities, namely D.A. Rice and Judge Ferrell, are barred by the Eleventh Amendment and therefore are not plausible. Accordingly, such claims are DISMISSED WITH PREJUDICE.

### B. *Section 1983 Claim Requires Allegation of Action Taken Under Color of State Law*

Plaintiff also names his court appointed criminal defense attorney Devane as a Defendant. [3] As noted earlier, a claim for relief under Section 1983 must allege facts sufficient to establish that the defendant acted under color of state "statute, ordinance, regulation, custom or usage."

42 U.S.C. § 1983; *Rae*, 693 F.Supp.2d at 223. Thus, private attorneys, whether court appointed or employed by the Legal Aid Society, are generally not liable under Section 1983.[4] *See Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." (citing *Housand v. Heiman*, 594 F.2d 923, 924–25 (2d Cir.1979))); *accord Polk Cnty. v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defenders do not act under color of state law); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000) ("[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983."). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotation marks omitted). Given that Devane is alleged to be Plaintiff's defense counsel in the underlying state court criminal proceedings, he is not a state actor. Accordingly, Plaintiff's Section 1983 claim against Devane is not plausible and is thus DISMISSED WITH PREJUDICE.

3    Given Plaintiff's description of Devane as Plaintiff's "public pretender" (Compl. ¶ IV .4) the Court presumes that Devane is a public defender appointed by the Court.

4    Insofar as Plaintiff alleges that Devane conspired with D.A. Rice and Judge Ferrell to deny Plaintiff a speedy trial, this unsupported allegation is far too conclusory to allow judicial review. *See, e.g., Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir.1990) (dismissing claims based on allegations of a conspiracy where plaintiff "relie[d] on diffuse averments bur [did] not provide a factual basis for his claim or plead overt acts indicating the existence of a conspiracy"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy ... cannot withstand a motion to dismiss.").

### C. *Administrative Arm of a Municipality Lacks Capacity to be Sued*

**\*5** "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department; *see also Rose v. Cnty. of Nassau,* 904 F.Supp.2d 244, 247 (E.D.N.Y.2012) (dismissing claims against the Nassau County police department because "[t]he Police Department is an administrative arm of the County of Nassau."); *Mikulec v. Town of Cheektowaga,* 909 F.Supp.2d 214, 227 n. 9 (W.D.N.Y.2012) ("The police department, as an administrative arm of the Town, cannot be sued.").

Insofar as Plaintiff seeks to sue the Police Department, the Court finds that it is an administrative arm of the municipality, namely the Incorporated Village of Hempstead, and therefore lacks the capacity to be sued. Thus, Plaintiff's claims against the Police Department are not plausible and are thus DISMISSED WITH PREJUDICE.

### D. *Claim Against P.O. John Doe*

Though thin, it appears that Plaintiff seeks to allege a Section 1983 claim of false arrest against P.O. John Doe who arrested Plaintiff in June 2011. It is well-established that " '[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause.' " *Williams v. Town of Greenburgh,* 535 F.3d 71, 78–79 (2d Cir.2008) (quoting *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995)). Here, given that Plaintiff is awaiting trial on the charges stemming from the challenged arrest and prosecution, he has not —and cannot—allege that the prosecution terminated in his favor. A conviction would establish probable cause thereby negating his false arrest claims. Accordingly, Plaintiff's false arrest claim against P .O. John Doe is hereby STAYED pending the outcome of Plaintiff's state court criminal proceedings. *Wallace v. Kato,* 549 U.S. 384, 393–94, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." (citations omitted)).

The Clerk of the Court is directed to administratively CLOSE this case.[5] **Plaintiff shall request, in writing, that**

this case be reopened within two (2) weeks of the conclusion of his state court criminal proceedings if so warranted at that time.

5    Given that the statute of limitations for a Section 1983 false arrest claim begins to run at the time "legal process was initiated" against Plaintiff, the Court will stay this claim pending the conclusion of the underlying state court criminal proceedings rather than dismiss it without prejudice. *Wallace,* 549 U.S. at 390–91.

E. *Speedy Trial and Malicious Prosecution Claims*

As noted above, Plaintiff also alleges a violation of his Sixth Amendment right to a speedy trial and that he has been maliciously prosecuted in violation of the Fourth Amendment and/or the Fourteenth Amendment's due process clause. As with his claim for false arrest, in order to adequately plead claims under Section 1983 that he was tried and convicted in violation of his Sixth Amendment right to a speedy trial, Plaintiff must allege that the state court criminal proceedings terminated in his favor. *Montane v. Pettie,* No. 10–CV–4404, 2012 WL 1617713, at *2 (E.D.N.Y. May 8, 2012). Similarly, to adequately plead a cause of action for malicious prosecution under Section 1983, a plaintiff must allege, *inter alia,* that the criminal proceeding terminated in plaintiff's favor. *Boyd v. City of N.Y.,* 336 F.3d 72, 76 (2d Cir.2003); *Rivera v. City of Rochester,* 21 F.Supp.2d 230, 234 (W.D.N.Y.1998).

**\*6** Here, given that Plaintiff's state court criminal proceedings are still pending, he cannot allege that it terminated in his favor. Accordingly, his speedy trial and malicious prosecution claims, as pled, are not plausible and are thus DISMISSED WITHOUT PREJUDICE.

*CONCLUSION*

For the reasons set forth above, the application to proceed *in forma pauperis* is GRANTED, but Plaintiff's claims against Devane, D.A. Rice, Judge Ferrell, and the Police Department are *sua sponte* DISMISSED WITH PREJUDICE. Plaintiff's false arrest claim against P.O. John Doe is STAYED pending the conclusion of the underlying criminal trial, and Plaintiff's speedy trial and malicious prosecution claims against P.O. John Doe are DISMISSED WITHOUT PREJUDICE. The Clerk of the Court shall administratively CLOSE this case. **Plaintiff is ordered to request, in writing, that this case be re-opened within two (2) weeks of the conclusion of his state court criminal proceedings if so warranted at that time .**

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is DENIED for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4459059

---

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1617713
Only the Westlaw citation is currently available.
NOT FOR ELECTRONIC OR PRINT PUBLICATION
United States District Court,
E.D. New York.

Yotuhel MONTANE, Plaintiff,

v.

Det. William PETTIE, and Det.
Edwin Murphy, Defendants.

No. 10–CV–4404 (ARR).
|
May 8, 2012.

**Attorneys and Law Firms**

Yotuhel Montane, Fishkill Correctional Facility, Beacon,
NY, for Plaintiff.

*ORDER*

ROSS, District Judge.

**\*1** On September 22, 2010, Yotuhel Montane
("plaintiff") commenced this *pro se* civil rights action
against, among others, the City of New York, several
assistant district attorneys, and two police detectives.
Dkt. No. 1. By Order dated January 14, 2011, the
court dismissed, without prejudice, plaintiff's malicious
prosecution and speedy trial claims and dismissed from
the case the prosecutors and municipal and state entities
that had been sued. *Id.* The court allowed plaintiff's
remaining false arrest and state law claims to proceed
against Detective William Pettie and Detective Edwin
Murphy ("defendants") but stayed those claims pending
termination of plaintiff s related state court criminal
proceedings. *Id.* On June 14, 2011, plaintiff pleaded guilty
to conspiracy in the second degree. Dkt. No. 24–2. On
July 26, 2011, defendants moved to dismiss the complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt.
No. 23. Plaintiff opposed defendants' motion to dismiss
and requested leave to amend his complaint and add an
additional three defendants. Dkt. Nos. 36–1, 39; *see* Dkt.
No. 37.

On April 6, 2012, the Honorable Lois Bloom, the
United States Magistrate Judge to whom the court had

referred the case for pretrial purposes, issued a Report
and Recommendation ("R & R") recommending that
plaintiff's motion for leave to file an amended complaint
be denied. Dkt. No. 40. No objections have been filed.
Accordingly, the court has reviewed the R & R for clear
error on the face of the record. *See* Advisory Comm.
Notes to Fed.R.Civ.P. 72(b); *accord Edwards v. Town
of Huntington,* No. 05–CV–339, 2007 U.S. Dist. LEXIS
50074, at \*6,2007 WL 2027913 (E.D.N.Y. July 11, 2007);
*McKoy v. Henderson,* No. 05 Civ. 1535, 2007 U.S. Dist.
LEXIS 15673, at \*1,2007 WL 678727 (S .D.N.Y. March
5, 2007). Having reviewed the record, I find no clear error
and adopt the R & R, in its entirety, as the opinion of the
court pursuant to 28 U.S.C. § 636(b)(1).

Because plaintiff shall not be granted leave to amend his
complaint, the only remaining claims are those that are the
subject of defendants' motion to dismiss. For the reasons
stated below, defendants' motion is granted, and the case
is dismissed.

**BACKGROUND** [1]

[1]  The facts are taken from the well-pleaded factual
allegations in the complaint and, to the degree
that it helps clarify the allegations, the proposed
amended complaint; the numerous documents
plaintiff attached to the complaint; and documents
upon which the complaint relies or of which is it
proper to take judicial notice. *See Rothman v. Gregor,*
220 F.3d 81, 88 (2d Cir.2000) ("For purposes of a
motion to dismiss, we have deemed a complaint to
include any written instrument attached to it as an
exhibit or any statements or documents incorporated
in it by reference, ... and documents that the plaintiffs
either possessed or knew about and upon which
they relied in bringing the suit." (internal citations
omitted)); *Pani v. Empire Blue Cross Blue Shield,* 152
F.3d 67, 75 (2d Cir.1998) ("[A] district court may rely
on matters of public record in deciding a motion to
dismiss under Rule 12(b) (6).").

The court has liberally construed plaintiff's complaint as
bringing claims stemming from his arrest and prosecution
for narcotics-related offenses alleged in a criminal
complaint dated July 16, 2009. Dkt. No. 7 at 2–3; Compl.
(Dkt. No. 1) at 39. [2] That criminal complaint asserted
that, between February 2006 and March 21, 2009, in
Brooklyn, New York, plaintiff engaged in conspiracy in

the first degree and, more specifically, that he entered into an agreement to possess four ounces or more of cocaine. Compl. at 39. In the complaint, Detective Pettie averred that he had reviewed phone records and learned that, on February 18, 2009, a phone call was intercepted and recorded between plaintiff and a co-conspirator in which they discussed the sale and purchase of cocaine. Plaintiff was arrested on the conspiracy charge on July 16, 2009, in Miami, Florida. Dkt. No. 39–1 at 1; *see also* Compl. at 58.

2        The complaint and attachments are not consecutively numbered. Accordingly, the court refers to the page numbers assigned by the Electronic Case Filing System.

**\*2** Plaintiff was thereafter indicted in New York State Supreme Court, Kings County. *See* Dkt. No. 7 at 2–3 (taking judicial notice of Indictment No. 03196/2009). On June 14, 2011, plaintiff pled guilty to conspiracy in the second degree, a violation of New York Penal Law § 105.15 and a class B felony, in full satisfaction of the indictment. Dkt. No. 24–2 at 11, 14–15; Dkt. No. 24–3. During his plea allocution, plaintiff admitted the charges; stated that, on ten occasions, "more or less," he had exchanged cocaine with alleged co-conspirator Erik Rodriguez at a price of $31,000 per kilogram; and that the references to cars in the telephone conversation on which he was recorded were, in fact, references to cocaine. Dkt. No. 24–2 at 14–18. In exchange for plaintiff's guilty plea, the People of the State of New York agreed to recommend that plaintiff be sentenced to a prison term of three to nine years. *Id.* at 9.

## DISCUSSION

### I. *Standard of Review*
To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2d Cir.2009). Although still subject to the facial probability standard, a pro se complaint must be construed liberally and is held to less stringent standards than pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167

L.Ed.2d 1081 (2007); *see Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996); *Hidalgo v. Kikendall,* No. 09–Civ–7536, 2009 U.S. Dist. LEXIS 66020, at \*7–8,2009 WL 2176334 (S.D.N.Y. July 22, 2009).

II. *Plaintiff Cannot Maintain an Action for False Arrest*
A § 1983 claim for false arrest requires proof of four elements: (1) the defendant intentionally confined plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003); *Harris v. County of Nassau,* 581 F.Supp.2d 351, 354–55 (E.D.N.Y.2008); *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975). If probable cause exists at the time of arrest, the confinement is privileged. *Jocks,* 316 F.3d at 135; *Martinez v. City of New York,* 340 Fed. Appx. 700, 701 (2d Cir.2009). Thus, the existence of probable cause constitutes a complete defense to a false-arrest claim. *Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir.1999).

A "plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." *Cameron v. Fogarty,* 806 F.2d 380, 388 (1986); *see also, Ostroski v. Town of Southold,* 443 F.Supp.2d 325, 335 (E.D.N.Y.2006) ("[T]he existence of probable cause as a matter of law as to some of the crimes that [plaintiff] was charged on the day of her arrest legitimized the seizure of her person and her subsequent detention."). "The application of this policy is most appropriate where ... the conviction resulted from a voluntary plea of guilty." *Pouncey v. Ryan,* 396 F.Supp. 126, 127 (D.Conn.1975). A claim for false arrest is barred even where the civil rights plaintiff pleaded guilty to a lesser charge pursuant to a plea agreement that dismissed the charges for which plaintiff was arrested. *Hope v. City of New York,* 2010 WL 331678, at \*2 (E.D.N.Y. Jan.22, 2010) ("A valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest, even if the conviction is the result of a guilty plea to a lesser charge than that for which plaintiff was arrested."); *Roundtree v. City of New York,* 778 F.Supp. 614, 619–20 (E.D.N.Y.1991) (holding that guilty plea of disorderly conduct when plaintiff was arrested for possession of cocaine barred § 1983 claim).

**\*3** In this case, plaintiff pled guilty to violating New York Penal Law § 105.15 in satisfaction of the crime

for which he was arrested and charged. Dkt. No. 24–3. During his plea allocution, he admitted to arranging and engaging in the narcotics sales at the center of the charged conspiracy. Plaintiff's guilty plea to this class B felony, even if different from the charges for which he was arrested, necessarily "precludes recovery under § 1983 for false arrest since it establishes that probable cause existed at the time of the arrest." *Allison v. Farrell,* NO. 97–CV–2247 (DAB), 2002 WL 88380, at *4 (S.D.N.Y. Jan.22, 2002); *see also McFadden v. New York,* No. 10–CV–141 (RRM)(CLP), 2011 WL 6813104, at * 4 (E.D.N.Y. Dec. 28, 2011) ("[T]hat plaintiff was ultimately convicted of a lesser charge than that for which he was arrested has been uniformly rejected by courts in this Circuit as the basis for claims of false arrest and malicious prosecution."). Plaintiff therefore cannot recover, notwithstanding his renewed claim of innocence, and his false arrest claim is properly dismissed. Because the court disposes of the claim on this ground, it need not address defendants' alternative arguments for dismissal.

### III. *Plaintiff's Malicious Prosecution and Speedy Trial Claims Are Dismissed with Prejudice*

The court previously dismissed plaintiff's malicious prosecution and speedy trial claims without prejudice. *See* Dkt. No. 7 at 6–7. Defendants now move to have these claims dismissed with prejudice. In order to sustain a claim for malicious prosecution, a plaintiff must allege, *inter alia,* a lack of probable cause and that case terminated in plaintiff's favor. *DiBlasio v. City of New York,* 102 F.3d 654, 657 (2d Cir.1996) (discussing elements of malicious prosecution claim). Plaintiff pleaded guilty in satisfaction to the indictment under which he was prosecuted and has not demonstrated that his conviction has been invalidated. As plaintiff is thus precluded from making a showing of probable cause or termination of the case in his favor, his claim for malicious prosecution fails as a matter of law. *See Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). Plaintiff's claim for the violation of his Sixth Amendment right to a speedy trial, also predicated on 42 U.S.C. § 1983, is similarly not cognizable. *See Davis v. New York,* No. 90 Civ. 6170, 2003 U.S. Dist. LEXIS 5352,2003 WL 1787151 (S.D.N.Y. Apr. 2, 2003) (dismissing speedy trial claim where plaintiff could not show that his conviction had been invalidated).

### IV. *Plaintiff's Remaining State Law Claims Are Also Dismissed*

Plaintiff may not assert pendent state law claims because he has not filed a timely notice of claim as required by New York law. *See* Dkt. 24–4; N.Y. Gen. Mun. Law §§ 50–e, 50–i (requiring that notice of claim be filed within 90 days after the incident giving rise to the claim). "[F]iling a notice of claim is a mandatory condition precedent to suit against New York City and its employees, and failure to comply with this condition is grounds for dismissing a state law cause of action." *Cantave v. New York City Police Officers,* No. 09–CV–2226, 2011 U.S. Dist. LEXIS 34231, at *24,2011 WL 1239895 (E.D .N.Y. Mar. 28, 2011). To the degree that plaintiff seeks leave from this court to serve a late notice of claim, *see* Dkt. No. 24–4, the court lacks jurisdiction to extend the time to serve a notice of claim or to grant permission to file a late notice of claim. N.Y. Gen. Mun. Law § 50–e(7) ("All applications under this section [to extend time for a notice of claim] shall be made to the supreme court or to the county court."); *Sheikh v. City of N.Y., Police Dep't,* No. 05–CV–4718, 2008 U.S. Dist. LEXIS 107049, at *40 n. 13,2008 WL 5146645 (E.D.N.Y. Dec.5, 2008). Accordingly, petitioner's state law claims are dismissed.

### CONCLUSION

**\*4** The court adopts and incorporates the R & R as the opinion of the court. Plaintiff's request for leave to file an amended complaint (Dkt. No. 39) is denied, defendants' motion to dismiss (Dkt. No. 23) is granted, and complaint is dismissed with prejudice. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The clerk of the court is directed to enter judgment accordingly.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 1617713

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4164377
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Royce CORLEY, Plaintiff,
v.
Cyrus R. VANCE, Jr., et al., Defendants.

No. 15 Civ. 1800(KPF).
|
Signed June 22, 2015.

### ORDER TO AMEND

[KATHERINE POLK FAILLA](), District Judge.

**\*1** Plaintiff, proceeding *pro se* and *in forma pauperis,* filed this action under [42 U.S.C. § 1983](), alleging false arrest and other claims arising out of his arrest on state charges. He further seeks to proceed under a pseudonym in this matter. Plaintiff is directed to amend his complaint (the "Complaint") for the reasons set forth below. [1]

[1] Plaintiff filed this complaint in the United States District Court for the Eastern District of New York; that court transferred the matter here. *See Corley v. Vance,* No. 15 Civ. 232 (E.D.N.Y. Mar. 6, 2015).

### STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. [28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)](); *see [Abbas v. Dixon,]()* [480 F.3d 636, 639 (2d Cir.2007)](). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *[Harris v. Mills,]()* [572 F.3d 66, 72 (2d Cir.2009)](), and interpret them to raise the "strongest [claims] that they *suggest," [Triestman v. Fed. Bureau of Prisons,]()* [470 F.3d 471, 474–75 (2d Cir.2006)]() (internal quotation marks and citations omitted) (emphasis in original).

### BACKGROUND

Plaintiff Royce Corley is currently incarcerated at F.C.I. Danbury, having been convicted in this District on federal charges involving sex trafficking of minors and possession of child pornography. *See United States v. Corley,* No. 13 Cr. 48(RPP) (S .D.N.Y. Apr. 21, 2014), *appeal pending,* No. 14–1709 (2d Cir.). [2] In January 2015, Plaintiff filed the Complaint, alleging constitutional violations and violations of the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA"), the Right to Financial Privacy Act ("RFPA"), and the Driver's Privacy Protection Act ("DPPA"). Plaintiff also asserts state law claims over which he asks this Court to exercise diversity and supplemental jurisdiction. Named as defendants are: New York County District Attorney ("DA") Cyrus R. Vance, Jr., and DA's Office personnel David Stuart, John Temples, Greg Weiss, and Elizabeth Pederson; New York Police Department ("NYPD") officers Brian Conroy, Michael Daly, Mark Woods, Jessica Sterling, Giancarlo Cavallo, and Greg Smith; Mayor's Office of Special Enforcement ("OSE") counsel Shari C. Hyman; and various private individuals and entities, including Consolidated Edison ("Con Ed") employees Michael T. Haggerty and Walter Panchyn, Backpage.com, LLC, Sprint Nextel Corp., T–Mobile USA Inc., Facebook Inc., Google Inc., Time Warner Cable Inc. ("TWC"), Research in Motion Ltd. ("RIM"), the Municipal Credit Union ("MCU"), Capital One N.A., JP Morgan Chase Bank N.A., and several John Doe defendants.

[2] On April 21, 2015, following the death of United States District Judge Robert P. Patterson, Jr., the criminal case was reassigned to United States District Judge Alison Nathan. Pending before her is Plaintiff's *pro se* motion for bail pending appeal.

The Complaint sets forth the following facts: In 2007, Plaintiff "was informally doing business under the nom de guerre 'Ron Iron' providing advertising and web development services to escort, therapeutic and adult-oriented businesses." (Compl.¶ 22). In 2008, Plaintiff began working as a technician for Con Ed. (*Id.* at ¶ 23). In 2009, an individual who had been convicted of promoting prostitution "vindictively" forwarded to law enforcement false information implicating Plaintiff in illegal activity. (*Id.* at ¶ 26). In consequence, law enforcement: (i) induced a minor to work as a confidential

informant and prostitute to manufacture evidence against Plaintiff; (ii) tampered with advertisements appearing on Backpage.com by "altering 'AdOid' posted by other individuals, or created by the defendants"; and (iii) used fabricated evidence to obtain court orders, subpoenas, and warrants. (*Id.* at ¶¶ 27–29, 39–41). Accordingly, "despite using a warrant, defendants had no probable cause" to obtain access to Plaintiff's accounts, search his apartment and Con Ed office, or seize his cell phones, electronic media, and credit cards. (*Id.* at ¶¶ 46–47).

**\*2** Plaintiff asserts that he "has not been provided with any court orders, subpoenas, warrants or notices in relation to any of these disclosures. [3] (Complaint ¶ 26). Backpage.com is alleged to have "aided and abetted" law enforcement "by granting them unlimited access to password-protected accounts without the proper legal authority," and the other private entity defendants are alleged to have provided law enforcement with Plaintiff's records, e-mails, and instant messages. (*Id.* at ¶¶ 24, 38, 60–62). Plaintiff was indicted in this Court on January 22, 2013. *See* No. 13 Cr. 48 (Dkt.# 1). The state charges were dismissed on February 1, 2013, which Plaintiff characterizes as a favorable termination. (*Id.* at ¶¶ 46). Plaintiff was convicted in this District on April 21, 2014.

[3]    Transcripts filed in Plaintiff's criminal case indicate that the New York County District Attorney's Office obtained Plaintiff's records pursuant to court orders and gave the material to federal prosecutors before the state charges were dismissed. *See United States v. Corley,* No. 13 Cr. 48 (S.D.N.Y. Feb. 28, 2013) (Transcript of Pretrial Conference, Dkt. # 5 at 3; Trial testimony, Dkt. # 43 at 29–32 and 44–45, Dkt. # 45 at 14).

Plaintiff asserts federal claims of false arrest, false imprisonment, malicious prosecution, unlawful search and seizure, malicious abuse of process, conspiracy to violate due process, fabrication of evidence, and violations of the rights to a speedy trial and to privacy, as well as state law claims of negligence, intentional infliction of emotional distress, and fraud. (Compl.¶¶ 72–84). Plaintiff alleges that the private defendants conspired with state actors to violate his constitutional rights and also failed to train their employees properly with respect to releasing customer information. Plaintiff further asserts that the private defendants violated federal statutes that limit disclosure of electronic records and communications. (*Id.* at ¶¶ 60–63). Plaintiff seeks money damages. Plaintiff has

also moved to proceed under a pseudonym, "[g]iven the highly sensitive and personal nature of this suit" involving "the prostitution of minors" and the "risk identification poses for retaliation and further personal embarrassment to Plaintiff and innocent nonparties." (Dkt. # 6 at ¶¶ 4–5).

## DISCUSSION

### A. Rule 8 of the Federal Rules of Civil Procedure

As an initial matter, Plaintiff's complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires a plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief." It is not enough for a complaint to state that the defendant unlawfully harmed the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint must include "factual enhancement" of the plaintiff's legal claims; in other words, a complaint must include some background information about how the defendant harmed the plaintiff. *Id.* (citing *Twombly,* 550 U.S. at 557). The Supreme Court has held that this rule requires a plaintiff to plead a claim that is "plausible" in light of the facts alleged. *Twombly,* 550 U.S. at 570. "[T]o present a plausible claim at the pleading stage, the plaintiff need not show that [his or her] allegations ... are more likely than not true." *Anderson News, LLC v. Am. Media, Inc.,* 680 F.3d 162, 184 (2d Cir.2012). Instead, a complaint must include sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929).

**\*3** The Complaint is not a "short and plain" statement of his claims. Any amended complaint that Plaintiff files must include specific facts explaining what each defendant did or failed to do and how those actions violated his rights. Additionally, Plaintiff must address the substantive deficiencies set forth below.

### B. Section 1983 Claims Implicating the Invalidity of Plaintiff's Conviction

As pleaded, Plaintiff's speedy trial, false arrest, false imprisonment, and malicious prosecution claims are barred because his criminal proceedings were not terminated in his favor. *See Heck v. Humphrey,* 512 U.S.

477, 484–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 48687. Thus, the putative plaintiff's § 1983 claim must be evaluated on the following basis:

> [The Court] must consider whether a judgment in favor of plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the [Court] determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

*Id.* at 487; *see also Duamutef v. Morris,* 956 F.Supp. 1112, 1115–18 (S.D.N.Y.1997).

Plaintiff asserts that the dismissal of the state charges brought against him constitutes a favorable termination. However, Plaintiff was prosecuted federally for the same conduct, and later convicted. Where, as here, "the Federal and State actions are inextricably intertwined and substantially related to one another," the *Heck* rule applies to bar Section 1983 claims based on the dismissed state charges. *Bogle v. Melamed,* No. 09 Civ. 1017(RJD), 2012 WL 1117411, at *3 (E.D.N.Y. Mar.30, 2012) (quoting *Thompson v. Delvalle,* No. 07 Civ. 4691(BSJ), 2010 WL 2505638, at *3 (S.D.N.Y. June 21, 2010)); *cf. Thompson v. Grey,* No. 08 Civ. 4499(JBW), 2009 WL 2707397, at *3 (E.D.N.Y. Aug 26, 2009) (finding false arrest claim barred where second grand jury shown new evidence from subsequent investigation of same crime scene indicted after first grand jury refused to indict); *Peros v. Castano,* No. 01 Civ. 4457(JG), 2002 WL 603042,

at *4 (E.D.N.Y. Mar.22, 2002) (holding that termination is favorable to plaintiff if court's reasons for dismissing the criminal charges are not inconsistent with innocence of the accused, *citing Cantalino v. Danner,* 96 N.Y.2d 391, 395, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001)). In this case, Plaintiff was arrested on federal charges arising out of the same events and conduct underlying the state charges. In this context, the dismissal of the state charges is not a favorable termination. *Thompson,* 2010 WL 2505638, at *3.

**\*4** Given that there has not been a favorable termination, the Court now examines whether any of Plaintiff's Section 1983 claims might be able to proceed notwithstanding the conviction because they do not implicate the validity of that conviction. Plaintiff's Sixth Amendment speedy trial claim necessarily implicates the validity of his conviction. *See Montane v. Pettie,* No. 10 Civ. 4404, 2012 WL 1617713(ARR), at *3 (E.D.N.Y. May 8, 2012); *Davis v. New York,* No. 90 Civ. 6170(MBM), 2003 WL 1787151, at *1 (S.D.N.Y. Apr.2, 2003) (dismissing speedy trial claim where plaintiff could not show that his conviction had been invalidated); *see also Zarro v. Spitzer,* 274 F. App'x 31, 34 (2d Cir.2008) (summary order) (affirming *sua sponte* dismissal of claims raising questions about plaintiff's Sixth Amendment right to counsel because such claims implicate the validity of conviction). That claim is therefore dismissed.

Favorable termination is a prima facie element of a malicious prosecution claim. *See Heck,* 512 U.S. at 484–86. Accordingly, Plaintiff's malicious prosecution claim is dismissed.

Plaintiff may, however, be able to assert certain of his Fourth Amendment claims. In narrow circumstances, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. *Heck,* 512 U.S. at 487 n. 7. "Because of doctrines like independent source and inevitable discovery ... and especially harmless error, ... such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Id.* (citing *Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

To determine if a Section 1983 claim alleging an unlawful search would necessarily imply the invalidity of his conviction, the Court must "ascertain whether plaintiff could have been convicted even if the ... evidence [from the allegedly illegal search were] suppressed[.]" *Bibbins v. Nextel Comm., Inc.,* No. 08 Civ. 5075(CM), 2010 WL 4503120, at *4 (S.D.N.Y. Nov.19, 2010); *see also Zarro, 274 F. App'x at 35–36* (reversing in part the district court's order dismissing plaintiff's claims on *Heck* grounds and holding that plaintiff's illegal search claims would not imply the invalidity of his conviction); *Bogle,* 2012 WL 1117411, at *3; *Jean–Laurent v. Hennessey,* No. 05 Civ. 1105(JFB), 2008 WL 3049875, at *8 (E.D.N.Y. Aug.1, 2008) ("*Heck* does not bar plaintiff's claim for ... unreasonable search and seizure"); *Powell v. Scanlon,* 390 F.Supp.2d 172 (D.Conn.2005) (claims for damages attributable to an allegedly unreasonable search would not necessarily imply the invalidity of a conviction, such as where the "conviction is obtained by independent evidence untainted by the wrongful arrest").

**\*5** Here, the factual record is insufficient to determine whether evidence obtained as a result of the allegedly unlawful arrest was essential to plaintiff's conviction. *See, e.g., Fifield v. Barrancotta,* 353 F. App'x 479, 481 (2d Cir.2009) (summary order) (remanding to the district court to determine the applicability of *Heck* to the appellant's Fourth Amendment claims).[4] However, in this context, "to recover compensatory damages, a § 1983 plaintiff must prove not only that a search was unlawful, but that it caused him actual, compensable injury, which, does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Heck,* 512 U.S. at 487 n. 7 (citing *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)). Plaintiff does not allege that he suffered an actual, compensable injury beyond his conviction and imprisonment. At this early stage, however, Plaintiff's Fourth Amendment claims cannot be dismissed based on *Heck.*

[4]    A review of the criminal docket reveals no litigation regarding the validity of warrants or subpoenas or the admissibility of evidence obtained pursuant to court orders.

## C. Other Constitutional Claims
Plaintiff also asserts that Defendants, several of whom are private actors, conspired to violate his constitutional rights. A plaintiff asserting constitutional violations under Section 1983 must allege a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The Court may dismiss a complaint that fails to allege *state* action. *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975). In addition, to obtain damages, Plaintiff must allege facts showing each Defendant's personal involvement in violating his constitutional rights. *See Patterson v. County of Oneida,* 375 F.3d 206, 229 (2d Cir.2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.").

To state a Section 1983 conspiracy claim, a plaintiff must allege facts showing (i) an agreement between two or more state actors or between a state actor and a private entity (ii) to act in concert to inflict an unconstitutional injury, and (iii) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *see also Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993) ("A private individual may be subject to liability under [Section 1983] if he or she willfully collaborated with an official state actor in the deprivation of the federal right ."); *Deskovic v. City of Peekskill,* 894 F.Supp.2d 443, 465 (S.D.N.Y.2012).

**\*6** Conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that detailed fact pleading is required. *Bender v. City of New York,* No. 09 Civ. 3286(BSJ), 2011 WL 4344203, at *1 (S.D.N.Y. Sept.14, 2011) (quoting *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981)). "Assertions lacking factual foundation ... are merely conclusory allegations and are insufficient to state a claim." *See Jackson v. County of Rockland,* 450 F. App'x 15, 19 (2d Cir.2011) (summary order) (quoting *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 398 (2d Cir.2006)); *Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir.2011) (finding that plaintiff's allegations of conspiracy were "baseless" where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the

minds' among the coconspirators."); *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (dismissing complaint in part because claims were "unsupported, speculative, and conclusory" (internal quotation marks omitted)).

Plaintiff wholly fails to allege specific facts that would plausibly show the existence of an agreement or concerted action among the named Defendants. The Complaint does not describe either the nature of the purported agreement or the specific acts in which Defendants allegedly engaged in furtherance of an agreement. *See Martinez v. Queens Cty. Dist. Atty.,* No. 12 Civ. 6262(RRM), 2014 WL 1011054, at *15 (E.D.N.Y. Mar.17, 2014) (dismissing Section 1983 conspiracy claims against Verizon N.Y. and T–Mobile). Indeed, Plaintiff's allegations against private defendants consist primarily of conclusory accusations that they provided law enforcement with records in response to allegedly invalid court orders, subpoenas, or warrants, or that they illegally ("without proper legal authority") provided access to his account information.

Mere compliance with court orders does not constitute action under color of state law. *See, e.g., Martinez,* 2014 WL 1011054, at *15 ("Plaintiff's bald assertions that there was a conspiracy between state actors and Verizon N.Y. and T–Mobile to illegally wiretap him, without more, are insufficient to plausibly allege that these private defendants were acting under the color of state law."); *Barroga–Hayes v. Susan D. Settenbrino, P.C.,* No. 10 Civ. 5298(RJD), 2012 WL 1118194, at *8 (E.D.N.Y. Mar.30, 2012) (noting that *pro se* plaintiff "suggests erroneously that the issuance of and compliance with" a subpoena transforms private defendants into state actors); *Melnitzky v. HSBC Bank USA,* No. 06 Civ. 13526(JGK), 2007 WL 1159639, at *9 (S.D.N.Y. Apr.18, 2007). Moreover, there are no allegations suggesting that the private defendants knew the subpoenas or other court orders were invalid or had reason to question their validity. *Cf. Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("A search warrant that has been issued by a neutral magistrate is presumptively valid."). Accordingly, these allegations do not state a claim for relief.

**\*7** Additionally, Plaintiff's allegations that the private defendants failed to train their employees properly regarding the release of customer records do not state a claim. As just discussed, Plaintiff alleges no facts suggesting the private Defendants had reason to question

the legality of the court orders under which Plaintiff's information was released. In any event, failure to train is a theory of municipal liability under Section 1983, not of private liability; a "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129 (2d Cir.2004) (citing *City of Canton v. Harris,* 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Monell v. Dep't of Soc. Serus.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There is no analogous failure-to-train theory that would apply to the private defendants and, in any event, Plaintiff has failed to allege facts showing that the private Defendants violated his constitutional rights by releasing his data.

**D. Statutory Claims**

Plaintiff asserts claims for civil damages under federal statutes governing access to wire, oral, and electronic communications. But the cited statutes contain defenses for releasing records pursuant to a court order and/or explicitly provide that such releases do not state a cause of action. The Federal Wiretap Act, 18 U.S.C. § 2520, contains an exception for service providers that assist law enforcement pursuant to a court order, *id.* § 2511(2) (a)(ii), and also provides that a good faith reliance on a court order is a complete defense to civil or criminal charges, *id.* § 2520(d)(1). Both the DPPA, 18 U.S.C. § 2721(b)(1), and the RFPA, 12 U.S.C. § 3402, contain law enforcement exceptions, and the ECPA, 18 U.S.C. § 2703(c)(1), provides that a governmental entity seeking information from a service provider must comply with specific legal process or obtain the subscriber's consent.

Plaintiff alleges not that the private Defendants turned material over without a warrant or subpoena, but that they did so in response to allegedly invalid court orders. However, Plaintiff fails to provide any facts suggesting that the private Defendants either violated the cited statutes or would not be protected under the statutory defenses. Without supporting facts, these allegations do not state a claim for relief.

**E. State Law Claims**

Plaintiff purports to assert state law claims under both the Court's diversity jurisdiction, 28 U.S.C. § 1332, and its supplemental jurisdiction, 28 U.S.C. § 1367. To establish

diversity jurisdiction under Section 1332, the plaintiff must allege to a "reasonable probability," that the claim is in excess of the sum or value of $75,000—the statutory jurisdictional amount. *See Colavito v. N.Y. Organ Donor Network, Inc.,* 438 F.3d 214, 221 (2d Cir.2006). Moreover, diversity of citizenship must be complete; in other words, "no plaintiff and no defendant [may be] citizens of the same State." *Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).

**\*8** For purposes of determining the Court's diversity of citizenship subject matter jurisdiction, a prisoner retains his pre-incarceration domicile, rather than establishing a new domicile where he is incarcerated. *See LoCurto v. LoCurto,* No. 07 Civ. 8238(NRB), 2008 WL 4410091, at \*5 (S.D.N.Y. Sept.25, 2008); *Poucher v. Intercounty Appliance Corp.,* 336 F.Supp.2d 251, 253 (E.D.N.Y.2004); *Waste Recovery Corp. v. Mahler,* 566 F.Supp. 1466, 1468 (S.D.N.Y.1983). *But see Housand v. Heiman,* 594 F.2d 923, 926 n. 5 (2d Cir.1979) (*per curiam* ) (noting prisoner is allowed an opportunity to show that he has satisfied the prerequisites for establishing domicile in his place of incarceration).

Plaintiff is currently incarcerated in Connecticut, but it is not clear where Plaintiff was domiciled before his incarceration or that he intended to change his domicile. All Defendants appear to be citizens of New York. If Plaintiff was domiciled in New York before his incarceration, and he has not manifested an intention to change his domicile, diversity is lacking in this case.

The Court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Martinez v. Simonetti,* 202 F.3d 625, 636 (2d Cir.2000) (directing dismissal of supplemental state-law claims where no federal claims remained). Plaintiff's original pleading fails to state federal claims against the private Defendants. Should Plaintiff's amended complaint fail to remedy the deficiencies discussed in this Order, the Court may decline to exercise its supplemental jurisdiction over any state law claims against the private Defendants and dismiss them from the action entirely.

**F. Motion to Proceed Pseudonymously**
Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties[.]" "This requirement ... serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 188–89 (2d Cir.2008). The use of a pseudonym by a plaintiff in civil litigation "must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. When determining whether a litigant can proceed under a pseudonym, the following nonexhaustive list of factors should be considered:

> [i] whether the litigation involves matters that are highly sensitive and [of a] personal nature[;][ii] whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent nonparties[;] [iii] whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity[;][iv] whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age[;][v] whether the suit is challenging the actions of the government or that of private parties[;][vi] whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court[;][vii] whether the plaintiff's identity has thus far been kept confidential[;] [viii] whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity[;][ix] whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities[;] and [x] whether there

are any alternative mechanisms for protecting the confidentiality of the plaintiff.

**\*9** *Id.* at 190 (internal citations and quotation marks omitted (alterations in original). "[T]his factor-driven balancing inquiry requires a district court to exercise its discretion in the course of weighing competing interests[.]" *Id.*

Plaintiff's conviction is a matter of public record. While arguments may be made as to some of the factors mentioned above, figuratively speaking, the cat is already out of the bag. Moreover, Plaintiff asserts in the Complaint that government officials and entities violated his rights and contributed to an unjust conviction and a miscarriage of justice. Such allegations are a matter of public concern. Accordingly, the Court concludes that the circumstances here are not sufficiently extraordinary to outweigh the presumption in favor of public access. Therefore, Plaintiff's motion is denied, and the Clerk of Court is directed to terminate docket entry 6. [5]

[5]    On May 19, 2015, before the Court ruled on Plaintiff's motion to proceed under a pseudonym, Plaintiff submitted a "complaint supplement" containing personal data. (Dkt.# 13). The Clerk of Court docketed that document as "court view only." The Court will either consider restricting access to individual documents or revisit this issue as needed.

**G. Leave to Amend**
Plaintiff is granted leave to amend the Complaint to detail his claims. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. The naming of John Doe defendants does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should

Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. Plaintiff's amended complaint will completely replace, not supplement, the Complaint; therefore, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. The motion to proceed under a pseudonym is denied without prejudice, and the Clerk of Court is directed to terminate docket entry 6. Plaintiff is directed to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 15–CV–1800 (KPF). An Amended Complaint for Civil Rights is attached to this order for Plaintiff's convenience. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**\*10** SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4164377

2003 WL 1787151
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Samuel DAVIS, Plaintiff,

v.

THE STATE of New York, et al. Defendants.

No. 90 Civ. 6170(MBM).
|
April 3, 2003.

**Attorneys and Law Firms**

Samuel Davis, Attica, NY, Petitioner pro se.

OPINION AND ORDER

MUKASEY, J.

**\*1** Plaintiff, Samuel Davis, moves to restore his complaint to the court calendar. This motion is granted. However, plaintiff's complaint is dismissed on the court's own motion.

In *Davis v. State of New York, et al.,* No. 90 Civ. 6170(MBM), 1991 WL 156351 (S.D.N.Y. Aug. 6, 1991), this court considered Davis' claims, brought under 42 U.S.C. §§ 1983 and 1985, that several persons deprived and conspired to deprive him of his constitutional rights by reason of the lengthy delay in his retrial on charges of murder in the second degree and criminal possession of a weapon in the second degree. I dismissed all of Davis' claims except for his § 1983 claim for monetary damages against defendant Matthew Crosson, and his claims against defendants Lynne Stewart, Stanley Cohen, and Ralph Poynter, who at that time had been served recently and had not yet moved for dismissal. I then placed this action on the court's suspense calendar because Davis was pursuing an appeal that was relevant to whether his remaining claims could go forward.

The New York Supreme Court denied Davis' motion to set aside his verdict, finding that the delay between the first and second trials was "occasioned by the repeated replacements of the defendant's attorney at his request." *People v. Davis,* No. 1797/86, slip op. at 8 (July 25, 1991). This same Court denied Davis' motion to set aside his conviction pursuant to New York Criminal Procedure Law § 440.10, and the New York Supreme Court, Appellate Division, First Department affirmed. *See People v. Davis,* 226 A.D.2d 125, 126, 640 N.Y.S.2d 53, 53 (N.Y.App.Div.1996). Davis then filed a petition pursuant to 28 U.S.C. § 2254 (2000) in this court. Judge McKenna dismissed this petition, *see Davis v. Kelly,* No. 97 Civ. 1653(LMM), 2000 WL 1772794 (S.D.N.Y. Nov. 30, 2000), and the Second Circuit affirmed, *see Davis v. Kelly,* 316 F.3d 125 (2d Cir.2003).

"[A]lthough styled as a § 1983 claim, plaintiff's complaint essentially alleges that he was tried and convicted in violation of his Sixth Amendment right to a speedy trial." *Davis v. State of New York, et al.,* No. 90 Civ. 6170(MBM), 1991 WL 156351, at \*7 (S .D.N.Y. Aug. 6, 1991). The Supreme Court held in *Heck v. Humphrey,* 512 U.S. 477 (1994), that a state prisoner's claim for damages is not cognizable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. *Id.* at 487.

A judgment in favor of Davis on his § 1983 damages claim would necessary imply the invalidity of his conviction or sentence. Because Davis' conviction has not been invalidated, his claim is not cognizable. Therefore, Davis' claim against defendant Crosson is dismissed. For the same reason, Davis' § 1983 claims against Stewart, Cohen, and Poynter are dismissed. Davis' claim that Stewart, Cohen, and Poynter conspired to deprive him of his constitutional right to a speedy trial also is not cognizable here because Davis can show no injury and the issue is barred by the doctrine of collateral estoppel. *See People v. Davis,* No. 1797/86, slip op. at 8 (July 25, 1991) (finding that the delay between the first and second trials was "occasioned by the repeated replacements of the defendant's attorney at his request"). Davis' complaint is dismissed.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 1787151

KeyCite Blue Flag – Appeal Notification

Appeal Filed by FOBBS v. CITY OF NEW YORK, 2nd Cir., July 21, 2017

2017 WL 2656207

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Kim FOBBS, Plaintiff,

v.

The CITY OF NEW YORK, and New York
City Police Department, Defendants.

15-cv-6736 (PKC)

|

Signed 06/19/2017

**Attorneys and Law Firms**

Carlos Gonzalez, Gonzalez Law Associates, New York, NY, for Plaintiff.

MEMORANDUM AND ORDER

P. Kevin Castel, United States District Judge

**\*1** Plaintiff Kim Fobbs brings this action against the City of New York ("City") and the New York City Police Department ("NYPD"), asserting claims under 42 U.S.C. § 1983. Fobbs's complaint alleges violations of her right to a speedy trial, malicious prosecution, infliction of extreme emotional distress, harassment, and municipal liability. Fact discovery in this action has concluded. Defendants now move for summary judgment on all claims. For the following reasons defendants' motion is GRANTED.

BACKGROUND

The following facts are taken from materials submitted in connection with the present motion and are either undisputed or construed "in the light most favorable to the [plaintiff]." Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011). Fobbs, who is represented by counsel, has not submitted a Rule 56.1 statement and in fact, appears to have copied the text of the defendants' Rule 56.1 statement into the fact section of her opposition brief. The Court accepts the facts set forth in defendants' unchallenged statement to the extent they are supported by the record.

See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001)).

Fobbs was arrested by the NYPD on March 24, 2011 on charges of grand larceny and offering a false instrument for filing in connection with her receipt of Section 8 housing benefits from the New York City Housing Authority ("NYCHA"). [1] (Johnson Decl. Ex. G; Criminal Complaint, Johnson Decl. Ex. C). The criminal complaint, sworn out by NYCHA Special Investigator Beth-Ann Permuy, accused Fobbs of failing to report her husband's income on her applications for Section 8 housing vouchers. (Johnson Decl. Ex. C). Fobbs and her husband William Adams were married on May 4, 1992. (Defs.' 56.1 ¶ 2; Johnson Decl. Ex. C). Fobbs began receiving Section 8 housing vouchers in 1996. (Defs.' 56.1 ¶ 1). Using the vouchers, Fobbs rented an apartment located at 370 East 173rd Street in the Bronx. (Id. ¶ 4). Later, she moved to 4005 Dereimer Avenue in the Bronx. (Id. ¶ 5). Fobbs's rent at 4005 Dereimer Avenue was subsidized by the Section 8 program from 2000 to 2009. (Id. ¶ 6).

[1]  The record is unclear as to the exact date of Fobbs's arrest. (Compare NYPD Arrest Report, Johnson Decl. Ex. G listing date of arrest as March 24, 2011), with Compl. ¶ 6 (claiming arrest took place on March 23, 2011), and Defendants' Rule 56.1 Statement ("Defs.' 56.1") ¶ 26 (stating arrest took place March 26, 2011)). However, this discrepancy is immaterial to the Court's summary judgment analysis.

The amount of the subsidy Fobbs received was determined by the number of people in her household as well as each person's employment status and income level. (Id. ¶ 7). In "Affidavits of Income" filed with NYCHA on March 24, 2006, April 12, 2007, April 18, 2008, and February 24, 2009, Fobbs reported that she lived only with her children and grandchildren. (Id. ¶ 18). She did not report living with her husband and did not include his income on her "Affidavits of Income." (Id. ¶¶ 17-18). However, her husband, Adams, listed 4005 Dereimer Avenue as his residence on a New York state driver's license issued in 2004, and on a commercial driver learner's permit issued to him in 2005. (Id. ¶¶ 14-15). Permuy's investigation also revealed that Adams had worked full-time as a New York City bus driver since approximately 2004 where he listed 4005 Dereimer Avenue as his home address. (Id. ¶ 8; Johnson Decl. Ex. C). In addition, W-2 forms issued

by the Metropolitan Transit Authority ("MTA") between 2005 and 2008 listed his residence as 4005 Dereimer Avenue. (Defs.' 56.1 ¶ 11). During that time he earned in excess of $191,000, which was not included in any of the "Affidavits of Income" Fobbs filed with NYCHA. (Id. ¶¶ 18, 23).

 **\*2** Based on this information, Permuy swore out a criminal complaint on March 24, 2011 charging Fobbs with grand larceny and offering a false instrument for filing. (Id. ¶ 22). The criminal complaint states that Fobbs would not have been eligible to receive Section 8 housing vouchers if she had reported her husband's income. (Johnson Decl. Ex. C). As a result of her failure to report her husband's income and presence in the apartment, NYCHA overpaid Fobbs in excess of $36,504 between 2006 and 2009. (Defs.' 56.1 ¶ 24). NYPD officers arrested Fobbs in Dutchess County on March 24, 2011. (Id. ¶ 26; Johnson Decl. Ex. G). These charges were ultimately dismissed on March 19, 2015 upon a motion under New York Criminal Procedure Law ("C.P.L.") § 30.30. (Id. ¶ 29). C.P.L. § 30.30 requires that the state prosecutor be ready for trial within a prescribed period of time depending on the nature of the offenses charged. N.Y. CRIM. PROC. LAW § 30.30. According to Fobbs, the Assistant District Attorneys misrepresented their trial readiness to the court and failed to present witnesses in a timely manner and were therefore unable to move forward with the case. (Compl. ¶ 14; Pl.'s Mem. 10).

During her deposition in this action, Fobbs testified that she and her husband did not live together between 1995 and 2009, and that he lived at his father's house during that time. (Fobbs Deposition, Johnson Decl. Ex. B 15:16-25, 16:10-12). She also explained that Adams only used the 4005 Dereimer address on his driver's license and other official documents so that he could claim head of household status on his tax returns, as he could not do so using his father's address. (Id. 29:14-24).

DISCUSSION

 I. Legal Standard.
Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law...." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law. Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts demonstrating that the non-moving party's claim cannot be sustained, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. In raising a triable issue of fact, the non-movant carries only a "limited burden of production," but nevertheless "must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (internal quotation marks omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted). In reviewing a motion for summary judgment, the Court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate.

 II. Claims Against the NYPD.
The NYPD is not a juridical entity separate from the City of New York. It is a non-suable agency of the City. See N.Y. City Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of city of New York and not in that of any agency, except where otherwise provided by law."). Fobbs's claims against the NYPD must be dismissed. See Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (approving the district court's conclusion that the NYPD is non-suable agency of the City).

 III. Section 1983 Claims.

**\*3** To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). In this case, Fobbs claims that she was: (a) deprived of her rights to a speedy trial, (b) maliciously prosecuted, (c) subjected to extreme emotional distress, and (d) subjected to a conspiracy to harass her. Fobbs also claims that the City is liable for the alleged constitutional violations she suffered. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 696 (1978).

A. Speedy Trial.

The Sixth Amendment guarantees criminal defendants "the right to a speedy ... trial." The right attaches upon either a formal indictment or information or upon the imposition of "the actual restraints imposed by arrest and holding to answer a criminal charge." United States v. Marion, 404 U.S. 307, 320 (1971). Fobbs appears to base her Sixth Amendment claim on the failure of the District Attorney for Bronx County to present and disclose witnesses in a timely manner leading to multiple adjournments of the trial date and ultimately dismissal of the charges pursuant to C.P.L. § 30.30. However, the limitations of C.P.L. § 30.30 are a state statutory standard, and therefore, a violation of section 30.30 is not in itself a violation of the Constitution or federal law, an element of a section 1983 claim. See Jackson v. Marshall, No. 04 Civ. 3915 (WHP), 2008 WL 800745, at \*4 (S.D.N.Y. Mar. 25, 2008) (because the limitations of section 30.30 are statutory, not constitutional, "a violation of § 30.30 cannot be the basis of a § 1983 claim"); Gibriano v. Att'y Gen. of State of New York, 965 F. Supp. 489, 491–92 (S.D.N.Y. 1997) (noting, in the context of a habeas corpus action, "Section 30.30 is a statutory time in which the People of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial."). Rather, the court must determine whether Fobbs has been deprived of her constitutional rights to a speedy trial.

Whether an accused's constitutional right to a speedy trial has been violated is a fact-specific inquiry, which "necessarily compels courts to approach speedy trial cases on an ad hoc basis." Barker v. Wingo, 407 U.S. 514, 530 (1972). In Barker, the Supreme Court identified four factors relevant to a claim under the Speedy Trial Clause: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's demand for a speedy trial, and (4) prejudice to the defendant. Id. No single factor is dispositive to the finding of a speedy trial violation, however, and "courts must still engage in a difficult and sensitive balancing process." Id. at 533.

It appears that Fobbs contends that the District Attorney for Bronx County is responsible for violating her right to a speedy trial. However, the only remaining defendant in this action is the City of New York, and when making a specific decision to prosecute, assistant district attorneys are not City actors. See, e.g., Claudio v. City of New York, 423 F. Supp. 2d 170, 172 (S.D.N.Y. 2006) (alleged misconduct by assistant district attorneys cannot give rise to municipal liability under section 1983 because assistant district attorneys are state actors); Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county"); Brown v. City of New York, 60 N.Y.2d 897, 898-99 (1983) (noting that for the purposes of issue preclusion, the City of New York and the District Attorney "are separate entities"). Therefore, any claims of misconduct by prosecutors in the Bronx County District Attorney's office cannot give rise to municipal liability against Defendant City of New York.

**\*4** Moreover, even if Fobbs had named prosecutors from the Bronx County District Attorney's office in her complaint, these individuals would be entitled to immunity. Prosecutors enjoy absolute immunity from civil liability for actions taken within the scope of their duty to initiate and pursue a prosecution. See Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (quoting Imbler v. Pachtman, 424 U.S. 409, 410 (1976)); Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution ... is immune from a civil suit for damages under § 1983.") (internal citations and quotation marks omitted). The decision to seek an adjournment so as to procure the availability of an important trial witness is part of a prosecutor's traditional function and within the scope of his duty to pursue a prosecution. Therefore, it is not an action for which an assistant district attorney can be held civilly liable under section 1983.

Accordingly, defendants' motion for summary judgment is granted as to Fobbs's speedy trial claims.

**B. Malicious Prosecution.**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment ... and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)). Under section 1983, the plaintiff must also show "that there was ... a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

Defendants move for summary judgment on Fobbs's malicious prosecution claim on the basis that there was probable cause to prosecute her. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Manganiello, 612 F.3d at 161-62 (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)). Plaintiff bears the burden of plausibly alleging all of the elements of a malicious prosecution claim, including that there was a "lack of probable cause for commencing the proceeding." Id. at 161; see Broughton v. State, 37 N.Y.2d 451, 457 (1975) ("Where the plaintiff institutes a malicious prosecution action he must plead the lack of probable cause.").

Although probable cause to arrest and probable cause to prosecute are distinct, see Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999), "a malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." Carson v. Lewis, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999); see Gaston v. City of New York, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) ("Where ... probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution.") (citation omitted); Keith v. City of New York., 641 Fed.Appx. 63, 67–68 (2d Cir. 2016) (summary order) (earlier finding that the officers had arguable probable cause to arrest plaintiff entitled defendants to qualified immunity on malicious prosecution claim unless plaintiff could identify some fact that came to the attention of the police after the arrest but before the prosecution had been initiated that was sufficient to "dissipate" the probable cause at the time of the arrest).

**\*5** "The question of whether or not probable cause [to arrest] existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). There is probable cause to arrest "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. A court "must examine the totality of the circumstances of a given arrest" and judge those circumstances "from the perspective of a reasonable police officer in light of his training and experience." United States v. Delossantos, 536 F.3d 155, 159 (2d Cir. 2008).

As will be shown, the undisputed facts show that there was probable cause to arrest Fobbs for violations of N.Y. Penal Law § 155.35 (grand larceny), and § 175.35 (offering a false instrument for filing) based on the results of Permuy's investigation. Under New York law, "[a] person is guilty of grand larceny in the third degree when he or she steals property" valued at more than three thousand dollars. N.Y. PENAL LAW § 155.35. Permuy's investigation revealed that Fobbs received Section 8 housing vouchers for 4005 Dereimer Avenue between 2006 and 2009. (Defs.' 56.1 ¶ 6). These rental subsidies were determined based on "Affidavits of Income" submitted by Fobbs stating that she lived only with her children and grandchildren. (Id. ¶¶ 7, 18). However, Fobbs's husband, William Adams, listed 4005 Dereimer Avenue as his residence on W-2 forms and multiple driver's licenses during the relevant period of time. (Id. ¶¶ 11, 14-15). Permuy's investigation also revealed that Adams had worked for the MTA as a full-time bus driver since 2004 and had earned in excess of $191,000 between 2005 and 2008. (Id. ¶¶ 8, 23). Had Fobbs

reported this income, she would not have been eligible for the Section 8 housing benefits she received between 2006 and 2009. (Id. ¶ 25). Permuy calculated the value of the housing vouchers Fobbs inappropriately received at $36,504. (Id. ¶ 24). Considering the information available to Permuy, it was reasonable for her to conclude that Adams resided with Fobbs at 4005 Dereimer Avenue and that Fobbs had deliberately concealed her husband's income from NYCHA so as to qualify for rental subsidies she was not entitled to receive. Thus, Permuy had probable cause to believe that Fobbs had committed grand larceny in the third degree by stealing over $3,000 in housing vouchers from NYCHA.

There was also probable cause to arrest Fobbs for offering a false instrument for filing in violation of N.Y. Penal Law § 175.35. "A person is guilty of offering a false instrument for filing in the first degree when ... knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation." N.Y. PENAL LAW § 175.35.

The "Affidavits of Income" Fobbs filed with NYCHA, a public benefit corporation, N.Y. PUB. HOUS. LAW § 401; Dingle v. City of New York, 728 F. Supp. 2d 332, 340 n.150 (S.D.N.Y. 2010) ("It is well settled that the NYCHA is a public corporation."), qualify as "written instruments" under the statute. New York Penal Law § 175.00 defines a "written instrument" as "any instrument or article, ... containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person." N.Y. PENAL LAW § 175.00. Fobbs's "Affidavits of Income" contained written or printed matter, were used to convey information to NYCHA, and were capable of being used to Fobbs's advantage as they determined her eligibility for Section 8 housing benefits. In addition, as was previously discussed, Permuy's investigation revealed evidence establishing probable cause to believe that Fobbs

had intentionally omitted Adams's income from her "Affidavits of Income" so as to receive Section 8 rental subsidies. Therefore, probable cause existed to arrest Fobbs for offering a false instrument for filing in violation of New York Penal Law § 175.35.

**\*6** Finally, it was reasonable for the arresting officers from the NYPD to rely on the information gathered by Permuy in making the arrest. Under the collective knowledge doctrine or fellow officer rule, "an arrest ... is permissible where the actual arresting ... officer lacks the specific information to form the basis for probable cause ... but sufficient information to justify the arrest ... was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001). The critical inquiry is whether the "other" law enforcement officer transmitting the information to the arresting officers possessed information that amounted to probable cause. See id. at 136 ("application of the imputed knowledge doctrine requires that at some point along the line, some law enforcement official ... involved must possess sufficient information to permit the conclusion that a[n] ... arrest is justified."); Mendoza v. City of Rome, 872 F. Supp. 1110, 1116 (N.D.N.Y. 1994) (noting that if a warrantless arrest is challenged, "the government has the burden 'to establish that the officer or agency imparting the information *in fact* possessed the probable cause to act.' ") (quoting People v. Rosario, 78 N.Y.2d 583, 588 (1991)). As discussed above, the information available to Permuy established probable cause to believe Fobbs had committed grand larceny in the third degree and offered a false instrument for filing. Therefore, the NYPD was entitled to rely on this information in arresting Fobbs on both offenses.

"In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). Fobbs fails to establish the existence of evidence uncovered after her arrest that successfully vitiates this probable cause. Even assuming the prosecutors were aware of her claim that her husband did not live with her between 2006 and 2009, that assertion alone is not enough to defeat the defendants' showing of probable cause. Fobbs also cites the fact that her case was never presented to a grand jury as evidence of a lack of probable cause to prosecute her. However, "the prosecutors' failure to

seek a grand jury indictment does not serve as evidence against a finding that probable cause existed to arrest and prosecute Plaintiff; the lack of an indictment merely obligates Defendants to prove the existence of probable cause as an affirmative defense to Plaintiff's claims of false arrest and malicious prosecution. Drummond v. Castro, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (citing Broughton, 37 N.Y.2d at 458). Here, defendants have met this burden and have established that probable cause existed to arrest and prosecute Fobbs.

Fobbs has also failed to present evidence of malice. "Under New York law, malice does not have to be actual spite or hatred, but only a showing 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.' " Lowth, 82 F.3d at 573 (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03 (1978)). A lack of probable cause to prosecute "generally creates an inference of malice." Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003). Fobbs points to no evidence of any improper motive on the part of any individual involved in her prosecution. Her claims that the prosecutor misrepresented his or her readiness for trial, refused to stipulate to the entrance of certain records, and refusal to orally concede a violation of C.P.L § 30.30 do not constitute evidence of malice. As there was probable cause to prosecute Fobbs and she has failed to establish malice on the part of any of the individuals involved in her criminal case, Fobbs's malicious prosecution claim is dismissed.

C. Infliction of Extreme Emotional Distress.
In the introduction to Fobbs's complaint she asserts a claim for "[i]nfliction of extreme emotional distress" under 42 U.S.C. § 1983. (Compl. 1). However, this is the first and only time such a claim is mentioned in the complaint, nor does Fobbs address the issue in her opposition to defendants' motion for summary judgment. Fobbs has failed to come forward with evidence that would preclude summary judgment on this claim, see Anderson, 477 U.S. at 250 (to survive a motion for summary judgment the non-movant "must set forth specific facts showing that there is a genuine issue for trial."), and in any event, the complaint itself fails to state a plausible claim for relief as it is entirely devoid of any factual support for a claim of intentional or negligent infliction of emotional distress. Defendants' motion for summary judgment is granted

as to Fobbs's claim for infliction of extreme emotional distress.

D. Section 1983 Conspiracy.
*7 Fobbs alleges that the police officers and prosecutors involved in her case conspired to harass her in violation of 42 U.S.C. § 1983. [2] A section 1983 conspiracy claim must allege "(1) an agreement between two or more state actors ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello v. Cty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Specifically, a complaint "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (discussing conspiracies under 42 U.S.C. § 1985) (citation omitted).

[2]     In the jurisdiction section of her complaint, Fobbs also cites to 42 U.S.C. §§ 1985 and 1986. (Compl. ¶ 1). However, Fobbs does not make specific allegations under these sections or provide any support for such allegations. To the extent Fobbs intended to bring conspiracy claims under section 1985 or 1986, the Court notes that such claims require allegations of "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action," Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) (citation omitted), which Fobbs has not made.

At the outset, Fobbs's conspiracy claim fails because the Court has already dismissed all of her underlying section 1983 claims. See Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (plaintiffs alleging a section 1983 conspiracy claims must also prove an actual violation of constitutional rights); AK Tournament Play, Inc. v. Town of Wallkill, No. 09 Civ. 10579 (LAP), 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011), aff'd, 444 Fed.Appx. 475 (2d Cir. 2011) ("[A]bsent an underlying constitutional

violation on which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law.") (citing Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001)).

In addition, Fobbs's conspiracy claim consists only of the conclusory allegation that "[o]fficers and prosecutors of the City of New York acted in a conspiracy to harass Fobbs" by "arrest[ing], detain[ing], arraign[ing], and prosecut[ing her]" for a period of approximately three years only to fully have all charges dismissed against her due to the failure of the People to present witnesses, and their deliberate misrepresentations[sic] as to their state of readiness on the matter." (Compl. ¶ 23). Fobbs provides no support for these speculative allegations nor does she point to any evidence in the record that might reveal the existence of an agreement to violate her constitutional rights. The mere fact that multiple people were involved in the events giving rise to Fobbs's complaint does not establish a conspiracy. Accordingly, defendants' motion for summary judgment on the section 1983 conspiracy claim is granted.

E. Monell Claims.

Finally, defendants move for summary judgment on Fobbs's claim that the City of New York is liable for the deprivations of her constitutional rights. A municipality may not be held liable on section 1983 claims solely "by application of the doctrine of *respondeat superior.*" Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). Instead, in order to establish municipal liability, a plaintiff must show that: (1) "a particular municipal action *itself* violates federal law, or directs an employee to do so," Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original), (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," id. at 405, (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," Connick v. Thompson, 563 U.S. 51, 61 (2011), or (4) a municipality's failure to train its employees about their legal duty to avoid violating a citizen's rights amounts to "deliberate indifference," id. In any case, "a plaintiff

must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bryan Cty., 520 U.S. at 404.

*8 In her complaint, Fobbs accuses the City of failing to train "its District [A]ttorneys in the management of a criminal case, and its investigators on proper investigation tactics and reporting." (Compl. ¶ 12). She also alleges that the City tolerated a custom whereby police officers arrested individuals without probable cause. (Id. ¶¶ 12-13). Finally, she claims that District Attorneys are municipal "policy makers" and therefore their misconduct should be imputed to the City for purposes of Monell liability. (Id. ¶ 12).

However, there can be no municipal liability where there are no underlying constitutional deprivations. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). As Fobbs has failed to demonstrate that she has suffered any constitutional injury, her Monell claims against the City of New York under section 1983 fail as a matter of law. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").

Accordingly, defendants' motion for summary judgment is granted as to Fobbs's Monell claims.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. 36) is GRANTED. The NYPD is dismissed as a defendant in this action and all claims against the City of New York are dismissed with prejudice. The Clerk shall enter judgment for the defendant.

SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 2656207

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ramon FLORES, Plaintiff,
v.
Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).
|
Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell, Hauppauge, NY, for defendants Thomas J. Spota III, Linda Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavitta & Contini LLP, Garden City, NY, for defendants Robert C. Mitchell, Edward Vitale, and Douglas O'Connor.

### MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

*1 Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings this action against Suffolk County Executive Steve Levy ("Levy"), Suffolk County District Attorney Thomas J. Spota III ("Spota"), Assistant District Attorneys Linda Kevins ("Kevins"), Dana Brown ("Brown"), and John Scarglato ("Scarglato") (collectively, "defendant prosecutors"), Suffolk County Court Judge Louis J. Ohlig ("Judge Ohlig") (collectively, "County Defendants"), Legal Aid Society Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed" Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor") (collectively, "Legal Aid defendants"), John A. Bray, and Wilma Peterson, alleging malicious prosecution, conspiracy under 42 U.S.C. § 1983,

and deliberate indifference, all arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to Fed.R.Civ.P. 12(c). For the following reasons, defendants' motions are granted.

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint and are not findings of fact by the court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

On February 20, 2003, Flores was arrested in Suffolk County and charged with one count of criminal assault in the second degree and one count of criminal contempt in the first degree. (Compl.¶ 1.) On February 25, 2003, an unidentified man came to see Flores and told him it was not advisable that he testify before the grand jury. (Compl.¶ 3.) The unidentified man stated that he was not an attorney and that he could not answer any additional questions. (Compl.¶ 3.) Later that afternoon, plaintiff appeared before the court and was provided with what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County Court and arraigned on indictment 493-03, which charged plaintiff with: 3 counts of assault in the second degree, 2 counts of criminal contempt in the first degree, aggravated contempt, and menacing. (Compl.¶ 4.) Plaintiff informed the court that he still had no formal attorney of record. (Compl.¶ 4A.) The Court appointed a Legal Aid attorney to represent plaintiff. (Compl.¶ 4B.) After the arraignment, plaintiff complained to Legal Aid attorney Douglas O'Connor that plaintiff was not provided with an attorney at an earlier stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a motion to dismiss would be filed on the grounds that plaintiff was not afforded an opportunity to testify before the grand jury, and that plaintiff was not provided counsel at the time the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his appointed Legal Aid attorney Edward Vitale.

(Compl.¶ 5.) Plaintiff reviewed the proposed motion to dismiss. (Compl.¶ 5.) Plaintiff was unhappy that the motion did not raise the issue of plaintiff's prior lack of representation. (Compl.¶ 5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶ 5.) Vitale became angry with plaintiff and told plaintiff he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitalerequested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

**\*2** On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a loss of actual teeth, when, in fact, it was "broken bridge work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶ 9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired with bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which wasbroken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

**\*3** On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in

the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

### B. Procedural History

On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed an answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

### C. Defendant's Motion to Strike

On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to

explain why she mistakenly described her broken bridge work as her bottom teeth:

> **\*4** The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.
>
> The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.
>
> For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.
>
> When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.
>
> I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must

accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

> In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5** (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra,* based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these

legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and he was directed to file his opposition by September 15, 2008, which plaintiff did do.

### D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing theform of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ")

(quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000));
*accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6** Finally, in connection with a motion to dismiss
under Rule 12(b) (6), as noted above, the Court may
only consider "facts stated in the complaint or documents
attached to the complaint as exhibits or incorporated by
reference." *Nechis,* 421 F.3d at 100; *accord Kramer v.
Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here,
plaintiff appended certain documents to his complaint
and the Court has confined its review to the face of
the complaint and the documents attached thereto by
plaintiff.

## II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must
show: (1) the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws; (2)
by a person acting under the color of state law. 42
U.S.C. § 1983. "Section 1983 itself creates no substantive
rights; it provides only a procedure for redress for the
deprivation of rights established elsewhere." *Sykes v.
James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false
arrest or malicious prosecution, brought under § 1983 to
vindicate the Fourth and Fourteenth Amendment right to
be free from unreasonable seizures, are 'substantially the
same' as claims for false arrest or malicious prosecution
under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134
(2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852
(2d Cir.1996) (false arrest) and citing *Conway v. Vill. of
Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious
prosecution)).

### A. The Legal Aid Attorneys and Ms. Peterson
Plaintiff asserts Section 1983 claims against (1) Ms.
Peterson based upon her allegedly false testimony in
connection with his criminal case; and (2) his Legal Aid
Attorneys for their alleged failure to adequately represent
him in connection with his initial indictment. As discussed
below, the Section 1983 claims against these defendants
fail as a matter of law because (1) none of these defendants
are state actors; and (2) plaintiff's conclusory allegations
of conspiracy between these defendants and state actors
cannot withstand a motion to dismiss. [1]

1

As a threshold matter, there is a substantial question
as to whether plaintiff can proceed at all on a
malicious prosecution claim for his acquitted counts
because they were so closely intertwined with his
counts of conviction and are both felonies. The Court
recognizes that, in contrast to false arrest claims, the
Second Circuit has noted that a conviction on one
claim does not necessarily absolve liability under §
1983 for malicious prosecution as to other criminal
charges which were resolved favorably to plaintiff.
*See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989)
(holding that claim of malicious prosecution on
charge of resisting arrest, of which plaintiff was
acquitted, was not barred by his conviction for
disorderly conduct); *see also Posr v. Doherty,* 944
F.2d 91, 100 (2d Cir.1991) (highlighting "the need
to separately analyze the charges claimed to have
been maliciously prosecuted"). Thus, for the same
reasons in this case, a conviction on assault in the
second degree does not necessarily bar a malicious
prosecution claim on assault in the first degree or
attempted assault in the first degree; rather, the Court
should analyze a number of factors, including the
relative seriousness of the two offenses, "whether
the elements of each charge are different, whether
one charge is a lesser included offense of the other,
and whether the alleged actions were directed at
different people." *Picardo v. N.Y. Police Dep't.,*
No. 98-CV-429 (DLC), 1998 WL 812049, at *3
(S.D.N.Y. Nov. 18, 1998) (citing *Janetka,* 892 F.2d
at 190; *see also Ostroski v. Town of Southold,* 443
F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing
factors). Analyzing the various factors in the instant
case-including that both crimes are felonies (and
thus are both serious crimes), and arose out of the
same incident-the Court concludes that the existence
of probable cause as to the counts of conviction
should preclude a malicious prosecution claim on
the acquitted counts. In fact, as the judge who
presided over the bench trial noted, the basis for the
acquittal on the assault in the first degree (despite
the conviction for assault in the second degree) was
the prosecution's failure to demonstrate serious
injury. Thus, the acquitted charges are "so closely
intertwined with the offense of conviction that there
is no reasonable basis to conclude that the [dismissal
of] these charges is sufficiently distinct to support a
claim of malicious prosecution." *Picardo,* 1998 WL
812049, at *4 (finding conviction on misdemeanor
charge precluded malicious prosecution on felony
assault count arising out of same incident). In any
event, the Court finds that there are numerous other

grounds for dismissal of the case, discussed in detail *infra.*

### (1) State Action Requirement

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

**\*7** In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS) (MLO), 2001 U.S. Dist. LEXIS 7786, at * 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aidattorneys). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she

perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g., Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe,* 460 U.S. at 329-30); *see also Mitchell v. Mid-Erie Counseling Service,* No. 05-CV6169 CJS(P), 2005 WL 1579810, at *3 (W.D.N.Y. June 29, 2005) ( " 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell,* 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello,* 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

### (2) Conspiracy Pursuant to § 1983

**\*8** The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section

1983 conspiracy claim. *See Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York,* No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello,* 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello); Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek,* No. 3:05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981).

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and

the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant['s] meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman,* 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, *Fisk v. Letterman,* 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

### i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See Ciambriello,* 292 F.3d at 324 (dismissing Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g ., Rzayeva v. United States,* 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiffs' vague and conclusory allegations against private 'conspirators' are entirely unclear, unsupported by facts, and insufficient to

substantiate their claims."); *Fiske,* 401 F.Supp.2d at 377 ("Communications between a private and a state actor, without factssupporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also Marion v. Groh,* 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

### ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." *Ciambriello,* 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also Green v. Bartek,* No. 3:05CV1851 (SRU), 2007 WL 4322780, at \*3 (D.Conn. Dec. 7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); *Williams v. Jurow,* No. 05 Civ. 6949(DAB), 2007 WL 5463418, at \*12 (S.D.N.Y.

June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/ or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at \*3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").

**\*11** In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

2    Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous. *See, e.g., Liner v. Goord,* 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous,

malicious, or fails to states [sic] a claim upon which relief may be granted' ") (quoting 28 U.S.C. § 1915(a) & (b)(1)).

### (3) Other Defects in Claims against the Legal Aid Defendants

In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008)* ("[T]here is no federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008)* ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under Section 1983. *See Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as

his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are barred by Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994). [3]

[3]    The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

**\*12** Finally, even assuming *arguendo* that some Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred. With respect to Section 1983 and 1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( Section 1983), *cert. denied,* 538 U.S. 922 (2003); *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) (Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they

existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immunefrom a civil suit for damages under Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at * 12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting *Imbler,* 424 U.S. at 419 n. 13).

However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007 U.S.App. LEXIS 28939, at *3-*4 (2d Cir. Dec. 12, 2007) (quoting *Imbler,* 424 U.S. at 430); *Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at * 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to

support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at \*2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U .S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted). "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a

superceding indictment." 133 F.3d 907 (2d Cir.1997.) The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity. [4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at \*2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the claim of malicious prosecution against [plaintiff] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at \*2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their performance of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

[4]     To the extent that plaintiff is attempting to argue that absolute immunity should not apply because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

**\*15** Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

## C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra.* Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra.*

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute

a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

## D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. [6] As discussed in detail *supra,* it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have Section 1983 liability given the allegations in plaintiff's

complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

6    In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

## III. CONCLUSION

**\*16** For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2008 WL 4394681

    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 947554
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Dominick LAROCCO, Plaintiff,
v.
John JACKSON and James McGeown, Defendants.

No. 10–CV–01651 (NGG)(LB).
|
March 19, 2012.

AMENDED MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, District Judge.

**\*1** Plaintiff Dominick LaRocco, pro se, brings this action against Defendants John Jackson and James McGeown under 42 U.S.C. § 1983. LaRocco alleges that he was the victim of a false arrest and imprisonment, a malicious prosecution, and a conspiracy to commit the former two acts. Defendant Jackson now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion to dismiss is granted. The court also dismisses LaRocco's claim against Defendant McGeown for failure to serve pursuant to Federal Rule of Civil Procedure 4(m).

**I. BACKGROUND**

LaRocco alleges that on or about November 10, 2008, he delivered a dozen roses and a gift to Kristin McGeown at the supermarket where she was working. (Compl. (Docket Entry # 2) at 9.) Later that night, Kristin McGeown filed a police report in which she claimed that LaRocco had made numerous unwelcomed visits to her place of work, sent her letters and gifts, and forcibly grabbed and kissed her. (Id. at 10.) Defendant John Jackson was the officer who took down the report. (Id. at 12.) LaRocco alleges that Defendant James McGeown, Kristin McGeown's father and an NYPD lieutenant, told Jackson, "I want this to stop." (Id. at 13.) The next day, November 11, 2008, Jackson arrested LaRocco on three charges: (1) aggravated harassment in the second degree; (2) stalking in the fourth degree; and (3) harassment in the second degree. (See Arrest Report (Docket Entry # 62–5) at 1–2.) LaRocco posted bail the following day but was

arrested again for a parole violation on November 13, 2008. (Compl. at 13, 15.)

On April 7, 2010, LaRocco filed his instant Complaint pursuant to 42 U.S.C. § 1983, naming the City of New York, Kristin McGeown, John Jackson, and James McGeown as Defendants.[1] He alleges that Defendants subjected him to a false arrest and imprisonment, a malicious prosecution, and a conspiracy to commit the former two acts. (Compl. at 8.) LaRocco seeks monetary damages and a "lifetime order of protection against" the Defendants. (Compl. at 5.)

[1] At the time LaRocco filed his Complaint, he was incarcerated at Rikers Island.

On July 9, 2010, the court dismissed the claims against Kristin McGeown on the grounds that she was not a state actor, and dismissed the claims against the City of New York on the grounds that LaRocco had not shown that a municipal policy or custom had caused a deprivation of his constitutional rights. (See Order of July 9, 2010 (Docket Entry # 7).) Thus, only John Jackson and James McGeown remained as Defendants.

The criminal case that resulted from the alleged false arrest and malicious prosecution had not been resolved at the time LaRocco filed his Complaint. As a result, the present case was stayed pending a final resolution of the criminal matter. (See Order of Apr. 20, 2011 (Docket Entry # 52).) On April 21, 2011, the criminal matter was resolved when LaRocco entered a plea of guilty to the charge of aggravated harassment in the second degree. (See Criminal Appearance History (Docket Entry # 62–6) at 1.[2]) John Jackson then moved to dismiss LaRocco's Complaint. (See Mot. to Dismiss (Docket Entry # 61).)

[2] In the context of a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint or incorporated by reference, and matters of which courts may take judicial notice. See Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir.1999). Judicial notice may be taken of public records. See Barmapov v. Barry, No. 09–CV–03390 (RRM)(RML), 2011 WL 32371, at \*2 n. 3 (E.D.N.Y. Jan. 5, 2011) (taking judicial notice of plaintiff's guilty plea in a false arrest and malicious prosecution case).

**II. STANDARD OF REVIEW**

**\*2** In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" established by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). The court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010) (quoting *Iqbal,* 129 S.Ct. at 1950). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. *Iqbal,* 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 1950. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted). "[T]he submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed–Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (internal quotation marks omitted). Nevertheless, even a pro se complaint may be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570).

### III. DISCUSSION

#### A. Failure to Serve Defendant James McGeown
Magistrate Judge Bloom ordered LaRocco to serve Defendant James McGeown by June 16, 2011. (*See* Order of Feb. 25, 2011 (Docket Entry # 48).) Because LaRocco has failed to do so, the court dismisses the claim against James McGeown pursuant to Federal Rule of Civil

Procedure 4(m).[3] John Jackson is the only remaining Defendant.

[3]      LaRocco acknowledges that he did not serve James McGeown. (*See* Pl. Opp. (Docket Entry # 59) at 25.)

#### B. False Arrest
LaRocco claims that his arrest by Jackson was illegal because it was based on false information and was made as a favor to James McGeown. However, LaRocco's guilty plea on a charge on which he was arrested precludes a determination that the arrest was unlawful.

A § 1983 false arrest claim must allege a deprivation of the plaintiffs Fourth Amendment right to remain free from unreasonable seizures, including the right to remain free from arrest absent probable cause. *Torraco v. Port Auth. of N.Y. & N.J.,* 615 F.3d 129, 139 (2d Cir.2010). "The existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006). "In the Second Circuit, an uncontroverted conviction for the crime of arrest is conclusive evidence that the arresting officer had probable cause to make the arrest." *Barmapov v. Barry,* No. 09–CV–03390 (RRM) (RML), 2011 WL 32371, at \*4 (E.D.N.Y. Jan. 5, 2011) (citing *Cameron v. Fogarty,* 806 F.2d 380, 387–89 (2d Cir.1986)).

**\*3** Although LaRocco pled guilty to only one of the three charges on which he was arrested—all of which are linked to LaRocco's November 10, 2008, interaction with Kristin McGeown—that plea establishes probable cause for the arrest and thus bars LaRocco's claim for false arrest. *See id.* at \*4 n. 5 ("[T]he Second Circuit ... does not require Plaintiff to have been convicted of exactly the same charge for which he was arrested. Th[e] court need only consider whether as a total transaction the activity forming the basis for the arrest is the same as the activity to which plaintiff pleaded guilty." (internal quotation marks, alterations, and citations omitted)); *Johnson v. New York City,* No. 01–CV–1860 (SJF)(VVP), 2004 WL 502929, at \*4 (E.D.N.Y. Jan. 12, 2004); *Allison v. Farrell,* No. 97–CV–2247 (DAB), 2002 WL 88380, at \*4 (S.D.N.Y. Jan.22, 2002). Because LaRocco has failed to show a lack of probable cause for his arrest, his claim for false arrest and imprisonment must be dismissed.

#### C. Malicious Prosecution

LaRocco's Complaint also alleges a claim for malicious prosecution against Jackson. This claim must be dismissed for similar reasons to his false arrest claim.

> In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law. To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination of the proceeding in plaintiff's favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for defendant's actions.

*Manganiello v. New York City,* 612 F.3d 149, 160–61 (2d Cir.2010) (internal quotation marks omitted).

As with LaRocco's false arrest claim, his claim for malicious prosecution fails because LaRocco cannot show a lack of probable cause for commencing the criminal proceedings against him. *See id .* Additionally, LaRocco's unchallenged guilty plea precludes a finding of "termination of the proceedings in [his] favor." *Id.; see also Okoi v. El Al Israel Airlines,* 378 Fed. Appx. 9, 11 (2d Cir.2010) (plaintiff's malicious prosecution claim failed because he pled guilty, even though the charges were later dismissed under a "conditional discharge" agreement). Because two essential elements of LaRocco's claim for malicious prosecution are absent, his claim is dismissed.

**D. Conspiracy**

Finally, LaRocco claims that Jackson conspired with James McGeown to falsely arrest and maliciously prosecute him. Because LaRocco's § 1983 claims for false arrest and malicious prosecution are dismissed, his claim for conspiracy to commit those violations must be dismissed as well. *See Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Pugh v. New York City,* No. 01–CV–0129 (ILG), 2002 WL 398804, at *2 n. 4 (E.D.N.Y. Jan.15, 2002).

**E. Leave to Amend**

**\*4** A court must give a pro se plaintiff leave to amend his complaint if the complaint "gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). LaRocco's Complaint provides no such indication; thus, the court does not grant LaRocco leave to amend his Complaint. However, the court notes that if LaRocco successfully appeals his criminal conviction for aggravated harassment in the second degree, he might be able to cure his currently deficient Complaint. If that occurs, LaRocco is free to file a motion to reopen his case pursuant to Federal Rule of Civil Procedure 60(b).

**IV. CONCLUSION**

LaRocco's § 1983 claims against Defendant Jackson for false arrest and imprisonment, malicious prosecution, and conspiracy are DISMISSED with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). LaRocco's claims against Defendant McGeown are DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 947554

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by Burdick v. Johnson, N.D.N.Y., October 4, 2007

2002 WL 398804
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Jakim PUGH, Plaintiff,
v.
THE CITY OF NEW YORK, Detectives Steven
Chmiel and Louis Scarcella, and Unidentified
New York City Police Officers, Defendants.

No. 01 CV 0129(ILG).
|
Jan. 15, 2002.

MEMORANDUM & ORDER

GLASSER, District J.

**\*1** In this 42 U.S.C. § 1983 action, plaintiff Jakim Pugh
("Pugh") alleges that he was falsely arrested, and subjected
to excessive force during that arrest, by various officers
of the New York City police department. The City of
New York now moves to dismiss certain counts in the
complaint, pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure. [1] For the reasons set forth below, the
City's motion is granted.

[1]    By letter dated August 22, 2001, defendant Detective
       Louis Scarcella ("Scarella") requested that he be
       permitted to join the City's motion to dismiss. The
       Court granted that request on August 31, 2001.

BACKGROUND

On January 9, 2001, Pugh commenced this action. In his
bare-bones complaint, Pugh includes only one paragraph
regarding the alleged constitutional violations he suffered.
That paragraph reads:

>    The plaintiff on January 8,
>    1998 at about 8:00 AM near
>    the intersection of Dumont and
>    Grafton, Kings County, New
>    York was unlawfully seized
>    by defendants, UNIDENTIFIED
NEW YORK CITY POLICE
OFFICERS. After the plaintiff was
unlawfully stopped by the police,
plaintiff was unlawfully assaulted,
searched, handcuffed and arrested.
Plaintiff was physically assaulted,
falsely charged with murder and
unlawfully interrogated. During
the interrogation plaintiff was hit
and threatened by the defendants.
Plaintiff JAKIM PUGH was
imprisoned and brought to a
police precinct and central booking.
Plaintiff JAKIM PUGH was forced
to stay in jail until he was
released for lack of evidence without
appearing in court on January 9,
1998. Defendants CHMIEL and
SCARCELLA were responsible for
the arrest and investigation of the
plaintiff.

(Compl.¶ 13.) Based on the allegations in this paragraph,
Pugh asserts five causes of action, each of which is brought
pursuant to Section 1983:(i) a claim based on the allegedly
false arrest (see id. ¶¶ 14–21); (ii) a claim based on the
allegedly excessive force used during and after the arrest
(see id. ¶¶ 22–27); (iii) a claim based on the defendants'
alleged failure "to intercede to prevent preventable harms
caused by other officers' actions" (see id. ¶¶ 28–31); (iv) a
Monell claim against the city (see id. ¶¶ 32–40); and (v) a
claim tracking the Monell claim, but against the individual
defendants (see id. ¶¶ 41–45).

The City now moves to dismiss a number of the causes
of action asserted in the complaint. First, the City asserts
that the false arrest and excessive force claims must
be dismissed because they are barred by the statute of
limitations. (See Def. Mem. at 4–5.) The City also argues
that, to the extent Pugh has pleaded a conspiracy claim,
that claim must be dismissed because it is inadequately
plead. (See id. at 6–7.) Finally, the City argues that the
claims against it must be dismissed, because Pugh has
failed to allege facts demonstrating that his constitutional
rights were violated as a result of a policy, practice or
custom of the City. (See id. at 7–9.) [2] Pugh has not
opposed the City's motion.

2  The City also argues that the Court should dismiss Pugh's malicious prosecution claim, because no criminal prosecution ever was initiated against Pugh. (*See* Def. Mem. at 5–6.) The complaint, however, nowhere alleges a claim for malicious prosecution.

## DISCUSSION

On a Rule 12(b)(6) motion, the Court must accept as true the factual allegations in the complaint and view the complaint in the light most favorable to the non-moving party. *Bolt Elec., Inc. v. City of N.Y.,* 53 F.3d 465, 469 (2d Cir.1995). Dismissal under Rule 12(b)(6) may only be granted if "it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which entitle her to relief." *Walker v. City of N.Y.,* 974 F.2d 293, 298 (2d Cir.1992) (internal quotations omitted).

### I. *The false arrest and excessive force claims must be dismissed*

**\*2** In New York, the statute of limitations for actions brought pursuant to Section 1983 is three years. *See, e.g., Owens v. Okure,* 488 U.S. 235, 240–41 (1989); *Paige v. Police Dep't of City of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001). Thus, because each of the claims in the complaint is brought under Section 1983, each claim must have been brought within three years from the date it accrued, or else it is barred by the statute of limitations. The City argues that Pugh's false arrest and excessive force claims accrued on January 8, 1998, the date on which Pugh allegedly was falsely arrested and subjected to excessive force. (*See* Def. Mem. at 4–5.) Accordingly, the City asserts that Pugh's false arrest and excessive force claims are barred by the statute of limitations, because he filed his complaint on January 9, 2001, one day too late. (*See id.*)

The City is correct. A Section 1983 claims accrues "when the plaintiff knows or has reason to know of the harm" he has suffered. *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) (quoting *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994)). In general, where an allegedly false arrest does not result in the initiation of a criminal prosecution, a claim of false arrest accrues on the date of the arrest. *See Covington v. City of N.Y.,* 171 F.3d 117, 123 (2d Cir.1999); *Lewis v. N.Y.C. Police Dep't,* No. 99 CIV 0952, 2000 WL 16955, at \*2 (S.D.N.Y. Jan. 10, 2000); *Bezerra v. County of Nassau,* 846 F.Supp. 214, 218–19 (E.D.N.Y.1994). An

excessive force claim accrues on the date the plaintiff was subjected to the allegedly excessive force. *See, e.g ., Pichardo v. N.Y. Police Dep't,* No. 98 CIV 429, 1998 WL 812049, at \*7 (S.D.N.Y. Nov. 18, 1998); *Bezerra,* 846 F.Supp. at 219. In this case, Pugh's false arrest claim accrued on January 8, 1998, the date of his arrest, because no criminal prosecution was initiated against him. Likewise, Pugh's excessive force claim accrued on January 8, 1998, because Pugh was subjected to the allegedly excessive force on that date. (*See* Compl. ¶ 13.) Therefore, because Pugh did not file his complaint until January 9, 2001, his false arrest and excessive force claims are time barred. 3

3  Pugh cannot be heard to complain that it would be unfair to dismiss these claims because his lawsuit was filed one day too late. Numerous courts have granted motions to dismiss where the lawsuit at issue was filed one day beyond the statute of limitations. *See, e.g., Merriweather v. City of Memphis,* 107 F.3d 396, 400 (6th Cir.1997); *Day v. Morgenthau,* 909 F.2d 75, 79 (2d Cir.1990); *Kasler/Cont'l Heller/Fruin Colnon v. United States,* 9 Cl.Ct. 187, 191 (1985).

Accordingly, these claims must be dismissed. 4

4  In his false arrest claim, Pugh makes a passing reference to a conspiracy on the part of the defendants to falsely arrest him. (*See* Compl. ¶ 18.) The City has moved to dismiss this "claim," on the ground that it has been inadequately pleaded. It is not altogether clear to the Court that, notwithstanding his stray reference to a conspiracy, Pugh has attempted to assert a Section 1983 conspiracy claim. But even assuming that Pugh intended to assert such a claim, the City is correct that the "claim" must be dismissed, for two reasons. First, the claim has been insufficiently pleaded, as the City argues. *See Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993) ("complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; [d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct") (internal quotation marks and citations omitted). Furthermore, "[s]ince [Pugh] cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy." *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001).

## II. *The Monell claim must be dismissed*

Pugh also purports to assert a *Monell* claim against the City. A *Monell* claim—arising from the Supreme Court case of *Monell v. Department of Social Services,* 436 U.S. 658 (1978)—is a way to hold a municipality liable under Section 1983 for the conduct of its employees. *See Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993). Such a claim cannot simply be based on a theory of *respondeat superior,* however; rather, a plaintiff "must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Id.* (citations omitted); *accord Perez v. County of Westchester,* 83 F.Supp.2d 435, 438 (S.D.N.Y.2000). "The inference that such a policy existed may arise from 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' ' *Dwares,* 985 F.2d at 100 (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). However,

**\*3** [t]he mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference. Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.

*Id.* (internal citations omitted); *accord Perez,* 83 F.Supp.2d at 438–39.

The allegations in this case are insufficient to establish that the alleged deprivation of Pugh's constitutional rights resulted from a custom or policy of the City. Pugh merely alleges, without any supporting factual allegations, that the City, "as a matter of policy and practice, ha[s] acted with a callous, reckless and deliberate indifference to plaintiffs' [*sic* ] constitutional rights under the constitution and laws of the United States, in that [it] failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens." (Compl. ¶ 34; *see also id.* ¶¶ 35–38.) Because Pugh's complaint does not contain a single factual allegation in support of this conclusory allegation, it must be dismissed. *See Dwares,* 985 F.2d at 101 (allegation that the City "knowingly, recklessly, negligently failed to, and was deliberately indifferent to the need to provide adequate training, monitoring and supervision of the defendant police officers with respect to their obligation to protect citizens engaged in protected First Amendment activity from unlawful and unjustified intrusions on the exercise of those rights" insufficient, without more, to state *Monell* claim); *Perez,* 85 F.Supp.2d at 438–39 (allegation that "[a]t all times hereinafter stated, defendants, their agents, servants and employees, were acting under color of law and pursuant to county policy and custom" insufficient); *Fanelli v. Town of Harrison,* 43 F.Supp.2d 254, 258– 60 (S.D.N.Y.1999) (same); *Kuriakose v. City of Mount Vernon,* 41 F.Supp.2d 460, 466 (S.D.N.Y.1999) (same); *Oparaji v. City of N.Y.,* No. 96 CV 6233, 1997 WL 139160, at \*3 (E.D.N.Y. Mar. 21, 1997) (same). [5]

5     It is unclear from the complaint whether Pugh also asserts his *Monell* claim against individual police officers, in their official capacities, in addition to the City. Nevertheless, to the extent Pugh attempts to do so, the claim must be dismissed as against the individual officers for the same reason that it must be dismissed as against the City. *See Dwares,* 985 F.2d at 100 ("there must be proof of ... a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself").

## CONCLUSION

For the reasons set forth above, the City's motion to dismiss is granted, and Pugh's false arrest and excessive force claims (Counts I and II in the complaint) are dismissed with prejudice. To the extent Pugh alleges a conspiracy claim under Section 1983, that claim also is dismissed with prejudice. Pugh's *Monell* claim (Count IV in the complaint) is dismissed without prejudice.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 398804

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

KeyCite Yellow Flag - Negative Treatment

Distinguished by Harrison v. New York, E.D.N.Y., March 20, 2015

2005 WL 1460424
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edward P. GRIFFIN-NOLAN, Plaintiff,

v.

PROVIDENCE WASHINGTON INSURANCE
COMPANY and Howard Blute, in his
Individual Capacity as Manager for the
Business Development Executives at
Washington Insurance Company, Defendants.

No. 504CV1453FJSGJD.
|
June 20, 2005.

**Attorneys and Law Firms**

Chamberlain, D'Amanda, Oppenheimer & Greenfield
LLP, The Galleries of Syracuse, Syracuse, New York, for
Plaintiff, Mairead E. Connor, of counsel.

City of Syracuse Corporation Counsel, Syracuse, New
York, for Defendants, David H. Walsh, IV, of counsel.

MEMORANDUM-DECISION AND ORDER

SCULLIN, Chief J.

I. INTRODUCTION

**\*1** Plaintiff's complaint asserts (1) a 42 U.S.C. §
1983 cause of action for false arrest and denial of
First Amendment rights against Defendants City of
Syracuse ("City"), Mullen, and Hennessey, alleging that
Defendants arrested him for speaking to Defendant
officers about their conduct in arresting a third-party; (2)
a § 1983 cause of action for false arrest and denial of
First Amendment rights against all Defendants, alleging
that they arrested him because they believed he might file
a complaint of police misconduct; (3) a § 1983 cause of
action for failure to train against Defendant City, alleging
that Defendant City acted with deliberate indifference in
failing to train its officers with respect to what constitutes

the crime of obstruction of justice and how to handle
the public; (4) a § 1985(3) cause of action against all
Defendants for conspiracy to deprive him of the equal
protection of the law and of his equal privileges and
immunities, alleging that Defendants conspired to so
deprive him out of animus for his attempt to prevent
them from injuring a third-person on the basis of that
third-person's race or color; (5) a common law false arrest
claim against all Defendants; (6) a common law false
imprisonment claim against Defendants Mullen, Cecile,
and City; (7) a common law malicious prosecution claim
against all Defendants; (8) a common law libel claim
against Defendant Hennessey, alleging that he made false
statements in his Complaint Information; and (9) a claim
for attorney's fees pursuant to 42 U.S.C. § 1988.

Based upon these claims, Plaintiff seeks (1) declaratory
relief with respect to all causes of action, (2) injunctive
relief with respect to all causes of action other than those
made pursuant to § 1983, (3) compensatory damages,
(4) exemplary or punitive damages, and (5) costs,
disbursements, and legal fees.

Currently before the Court is Defendants' motion to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(5)
and 12(b)(6) of the Federal Rules of Civil Procedure. [1]

[1] Defendants' motion to dismiss does not address
Plaintiff's claim for attorney's fees pursuant to 42
U.S.C. § 1988.

II. BACKGROUND [2]

[2] Given the procedural posture of this case, the Court
assumes the truth of the allegations in Plaintiff's
complaint.

On the evening of December 16, 2003, Plaintiff was
working as a licensed massage therapist at his booth
in the Carousel Center mall. See Dkt. No. 1 at ¶ 10.
Around 8:00 p.m. of that evening, he saw a "Hispanic
man of color" ("Paredes") walking toward him and
noticed a mall security officer pointing Paredes out to
Defendants Hennessey and Mullen. See id. at ¶ 11.
When Defendant Hennessey tried to stop Paredes by
placing his hand on Paredes' chest, Paredes spat on the
floor and continued shouting that he was going to kill
someone. See id. at ¶ 12. Defendant Hennessey then took
Paredes behind Plaintiff's booth, told him to show some

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

respect, and smashed his back and head against a concrete pillar. *See id.* at ¶¶ 13-14. Paredes then either pushed or kicked at Defendant Hennessey, at which point they both tumbled and knocked over Plaintiff's booth. *See id.* at ¶¶ 15-16. With Paredes face-down on the floor, Defendant Hennessey placed his knee in Paredes' back and began punching him in the back. *See id.* at ¶¶ 18-19. Defendant Mullen then also placed his knee in Paredes' back and began punching him in the back and sides. *See id.* at ¶ 21. Defendant officers each hit Paredes six or more times after they had subdued him. *See id.* at ¶ 22.

**\*2** Plaintiff crouched by Defendant officers and told them that they had gone over the top and were out of control. *See id.* at ¶ 24. Defendant Mullen told Plaintiff to get back, and Plaintiff complied. *See id.* at ¶¶ 26-27. After Defendant officers continued to punch Paredes in the back, Plaintiff again told them that they were over the top. *See id.* at ¶¶ 28-29. Defendant Mullen told Plaintiff that, if he did not stop, he would be arrested for Obstructing Governmental Administration. *See id.* at ¶ 30. Plaintiff stopped speaking to Defendant officers, and they pulled Paredes up and led him away. *See id.* at ¶¶ 31-32.

At approximately 9:00 p.m., Defendant Mullen returned to Plaintiff's booth with Defendant Cecile and a mall security guard. *See id.* at ¶ 33. Defendant Cecile told Plaintiff that he understood that Plaintiff had been involved in an incident earlier in the evening and asked Plaintiff to explain what happened. *See id.* at ¶ 34. As soon as Plaintiff began to explain, Defendant Cecile stopped him and asked him whether he understood that he could be arrested. *See id.* at ¶ 35. Defendant Cecile told Plaintiff that, at the time of the incident, it was Defendants Hennessey's and Mullen's call whether to arrest Plaintiff but that, if Plaintiff made a complaint, it would be his call whether to arrest Plaintiff. *See id.* at ¶ 37. After Plaintiff said that he was not sure how the complaint procedure worked, Defendant Cecile showed Plaintiff the patch on his shoulder and said, " 'It's right here with me, right now.' " *See id.* at ¶¶ 38-39. Plaintiff told Defendant Cecile that he did not think that this was the only way to file a complaint. *See id.* at ¶ 40. Defendant Cecile then told Plaintiff that, if he filed a complaint, Defendant Cecile would take him down. *See id.* at ¶ 41. Next, Defendant Cecile told Defendant Mullen, " 'He's not happy. We're going to get a complaint. Take him in,' or words to that effect." *See id.* at ¶ 42. When Plaintiff said that he had things at his booth that he could not leave unsecured, Defendant Cecile

told him that he should have thought of that before. *See id.* at ¶ 44. Upon Defendant Cecile's direction, Defendant Mullen arrested Plaintiff for Obstructing Governmental Administration by giving him an appearance ticket. *See id.* at ¶¶ 45-46.

That same night, Defendant Hennessey submitted a complaint information affidavit in support of Plaintiff's arrest. *See id.* at ¶ 47. The affidavit contained a number of statements that were false and that Defendant Hennessey knew to be false when he made them. *See id.* at ¶¶ 48-49. Plaintiff's counsel filed a motion to dismiss the information for insufficiency. *See id.* at ¶ 51. On January 10, 2004, the Syracuse City Court dismissed the information in its entirety. *See id.* at ¶ 52. [3] In or about November 2004, Carousel Center management informed Plaintiff that he could not set up his booth during the holiday season because it was concerned about potential negative publicity arising from these incidents. *See id.* at ¶ 53.

[3]    It appears to the Court that this dismissal actually occurred on January 14, 2004, and was made pursuant to New York Criminal Practice Law § 170.40. *See* Dkt. No. 9 at Pt. 5.

**\*3** Plaintiff filed the instant action on December 15, 2004. *See* Dkt. No. 1.

## III. DISCUSSION

**A. Defendants' motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure**

Defendants argue that the Court lacks personal jurisdiction over them because Plaintiff failed to serve them with summonses. The docket sheet contains four affidavits of service that indicate that each Defendant was served with the summons and the complaint sometime between January 12, 2005, and January 26, 2005. *See* Dkt. Nos. 5-8. Perhaps these affidavits are mistaken; Plaintiff's counsel has filed an affidavit stating that Plaintiff personally served summonses and complaints for all Defendants upon Defendants' counsel on February 8, 2005, one day after Defendants filed their motion to dismiss. *See* Dkt. Nos. 9, 14 at ¶ 4. Since Defendants do not address insufficiency of service of process in their reply memorandum of law, the Court presumes that they were

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

served summonses and are abandoning their motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Regardless, both Local Rule 7.1(a)(2) and common sense dictate that a motion to dismiss for a failure to serve summonses requires a supporting affidavit, which Defendants have not provided. *See* L.R. 7.1(a) (2). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

B. Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

*1. Standard of review*
In considering a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Hence, dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quotation omitted).

*2. Defendant City's liability for Plaintiff's § 1983 claims*
A municipality may only be held liable under § 1983 when its policies or customs result in a plaintiff's constitutional injury. *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978). The existence of a policy or custom may be inferred when a plaintiff presents evidence that a " 'municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction....' " *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quotation and footnote omitted). Contrary to some earlier Second Circuit cases, there is no heightened pleading requirement for claims of municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167-68 (1993) (rejecting contention that "plaintiff must do more than plead a single instance of misconduct" to state a claim for municipal liability); *contra Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993) (citation omitted). As the Supreme Court noted, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman,* 507 U.S. at 168-69.

*4 Plaintiff's complaint alleges that Defendant City has a policy or custom of threatening those who verbally challenge, or indicate the desire to file a complaint about, police misconduct with Obstructing Governmental Administration and that Defendant City has shown deliberate indifference in failing to train its police officers in how to handle the public while making arrests and failing to train its officers about what constitutes the crime of Obstructing Governmental Administration. *See* Dkt. No. 1 at ¶¶ 55, 64, 71-73. Plaintiff's allegations of municipal liability are directly related to his allegation of personal injury and, if shown to be true according to the evidence, might support a determination of municipal liability. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City for failure to adequately plead municipal liability.

*3. Plaintiff's § 1983 and common law false arrest and false imprisonment claims*

*a. elements of false arrest and false imprisonment*
"The elements of false arrest ... under § 1983 are 'substantially the same' as the elements under New York law." *Boyd v. City of N.Y.,* 336 F.3d 72, 75 (2d Cir.2003) (quotation omitted). The elements of false arrest and false imprisonment claims are identical: " '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." ' *See Curry v. City of Syracuse,* 316 F.3d 324, 335 (2d Cir.2003) (quotation omitted).

The central dispute between the parties is whether the issuance of an appearance ticket constitutes the requisite confinement.

*b. common law false arrest and false imprisonment*
Every New York case of which the Court is aware that has considered whether the issuance of an appearance ticket constitutes confinement has held that the issuance of an appearance ticket, in and of itself, does not constitute confinement for purposes of a common law false arrest or false imprisonment claim. *See Du Chateau v. Metro-North Commuter R.R. Co.,* 253 A.D.2d 128, 129, 132 (1st Dep't 1999) (citations omitted) (police officer escorted plaintiff from train, talked to him, and issued an appearance ticket); *Kramer v. Herrera,* 176

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

A.D.2d 1241, 1241 (4th Dep't 1991) (citations omitted); *Pozzanghera v. Anderson,* 136 A.D.2d 912, 913 (4th Dep't 1988) ("Plaintiff's sole contention is that he was detained by the service of an appearance ticket. This did not restrict plaintiff's freedom and, therefore, does not form a basis for his wrongful arrest claim." (citation omitted)); *Pritchett v. State,* 61 A.D.2d 1110, 1110 (3d Dep't 1978); *cf. Reinhart v. Jakubowski,* 239 A.D.2d 765, 766 (3d Dep't 1997) (issuance of criminal summons requiring court appearance insufficient to support false arrest claim); *Vill. of Ellenville v. Searles,* 235 A.D.2d 692, 693 (3d Dep't 1997) (brief traffic stop in order to serve process did not constitute requisite confinement) (citations omitted).

**\*5** Plaintiff contends, however, that his complaint alleges more than the mere issuance of an appearance ticket. Conduct that accompanies the issuance of an appearance ticket certainly can constitute confinement for purposes of a false arrest or false imprisonment claim. *See Wiggins v. Metro-North Commuter R.R. Co.,* 228 A.D.2d 198, 198 (1st Dep't 1996) (police escorted plaintiff off train, questioned him in a railroad police facility, and issued an appearance ticket). Unfortunately, Plaintiff does not specify which of his allegations he believes show that Defendants confined him. The relevant allegations are:

33. Approximately one hour later, at about 9:00 p.m., Officer Mullen returned to Plaintiff's booth with [Sergeant Cecile] and a mall security guard.

34. Sergeant Cecile told Plaintiff that he understood he had been involved in an incident earlier and asked the Plaintiff what happened.

35. As the Plaintiff began to tell him, Sergeant Cecile interrupted Plaintiff and asked if Plaintiff understood that he could be arrested.

36. Plaintiff was quite surprised at this statement as he had complied with Officer Mullen's directive and had not interfered with Paredes' arrest or done anything unlawful.

37. Sergeant Cecile said that right then it was the officer's call, but if they were going to receive a complaint from the Plaintiff, it would be his call whether to arrest Plaintiff.

38. Plaintiff said that he was not sure how the complaint procedure worked.

39. Sergeant Cecile showed Plaintiff the patch on his shoulder and said, "It's right here with me, right now."

40. Plaintiff said that he did not think that was the only way to file a complaint.

41. Sergeant Cecile then told Plaintiff, "I'll tell you right now if you're filing a complaint, I'm taking you down," or words to that effect.

42. Sergeant Cecile told Officer Mullen, "He's not happy. We're going to get a complaint. Take him in," or words to that effect.

43. Plaintiff explained that he had expensive things in his booth that he could not leave unsecured.

44. Sergeant Cecile told Plaintiff that he should have thought of that before.

45. Sergeant Cecile told Officer Mullen to give Plaintiff an appearance ticket, which Officer Mullen did.

*See* Dkt. No. 1 at ¶¶ 33-45. Although Plaintiff alleges that Defendant Cecile threatened to arrest him, the mere threat to arrest does not constitute confinement. *See Blumenfield v. Harris,* 3 A.D.2d 219, 220 (1st Dep't 1957) (citations omitted), *aff'd* 3 N.Y.2d 905 (1957). [4]

[4]    In articulating his first cause of action, Plaintiff alleges that "[i]n the course of arresting Plaintiff, plaintiff was not free to leave and was confined against his will at the Carousel Center." *See* Dkt. No. 1 at ¶ 58. However, in light of the more specific allegations that Plaintiff made in his statement of facts, this allegation is too vague and conclusory to support a reasonable inference that Defendants confined him.

Accepting all of Plaintiff's allegations as true and drawing every reasonable inference from them, the Court does not find that he has alleged that Defendants took any actions that would constitute confinement for purposes of a common law false arrest or false imprisonment claim. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim.

*c. § 1983 false arrest*

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

**\*6** The question of whether the issuance of an appearance ticket constitutes confinement for purposes of § 1983 is not so clear. Defendants rely upon *Angel v. Kasson,* 581 F.Supp. 170, 177-78 (N.D.N.Y.1983) ("[I]t [is] well settled that the issuance of such tickets under the provisions of N.Y.Crim. Proc. Law § 150.10 does not constitute an arrest." (citation and footnote omitted)). Plaintiff, on the other hand, relies upon *Dorman v. Castro,* 214 F.Supp.2d 299 (E.D.N.Y.2002), which states that,

> [a]lthough this is a close case, the Court finds that Plaintiffs were subject to a "seizure" under the Fourth Amendment. Plaintiffs claim that their liberty was restrained because "at the point when the Plaintiffs were informed that they were being issued a Summons" they "were not free to leave until the Plaintiffs had the Summons in hand."

*Id.* at 308 (quotation omitted). *Dorman* goes on to note that "district courts in this circuit that have analyzed *Murphy v. Lynn,* 118 F.3d 938 (2d Cir.1997) ], however, have held that the mere issuance of an appearance ticket, without any restraint on travel, is a sufficient restraint of liberty to constitute a 'seizure' under the Fourth Amendment." *Id.* (citing *Kirk v. Metropolitan Trans. Auth.,* No. 99 CV 3787, 2001 WL 258605, \*15 (S.D.N.Y. Mar. 14, 2001); *Kirton v. Hassel,* No. 96 CV 1371, 1998 WL 146701, \*6 (E.D.N.Y. Mar. 25, 1998); *Sassower v. City of White Plains,* 992 F.Supp. 652, 656 (S.D.N.Y.1998)) (other citation omitted). [5]

[5] Contrary to *Dorman*'s statement, two of the supporting cases it cites do not involve appearance tickets and the third, *Kirk,* involves a desk appearance ticket that the defendant issued after the plaintiff had been arrested and detained. *Kirk,* 2001 WL 258605, \*2-\*4.

*Dorman* and all the supporting cases that it cites rely upon *Murphy. Murphy,* applying *Albright v. Oliver,* 510 U.S. 266 (1994), held that, in order for a plaintiff to establish a § 1983 malicious prosecution claim, he "must show ... that the initiation or pendency of judicial proceedings" resulted in a Fourth Amendment "seizure." *Murphy,* 118 F.3d at 944. The court went on to hold that "[t]he liberty deprivations regulated by the Fourth Amendment are not limited to physical detention." *Id.* at 945. Finally, the court, relying upon Justice Ginsburg's solitary concurrence in *Albright,* held that

while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and *may order him to make periodic appearances,* such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.

*Id.* at 946 (emphasis added).

Like *Murphy,* all three of the supporting cases that *Dorman* cites concern malicious prosecution claims. There is certainly considerable similarity between the analysis of a § 1983 malicious prosecution claim and a § 1983 false arrest claim; both arise out of the Fourth Amendment's protection against unreasonable seizures. However, *Murphy* does not expressly address false arrest claims. Furthermore, there is reason to constrain the application of *Murphy* to the precise issues it addresses. Judge Jacobs, dissenting in *Murphy,* after noting the majority's reliance upon Justice Ginsburg's solitary concurrence, pointed out that "[a] probable cause determination is required only for 'those suspects who suffer restraints on liberty *other* than the condition that they appear for trial." ' *Id.* at 953, 955 (quoting *Gerstein [v. Pugh],* 420 U.S. [103,] 125 n. 26, 95 S.Ct. [854,] 869 n. 26 [ (1975) ] (Judge Jacobs' emphasis)) (footnote omitted). In *Sassower,* Judge Lowe noted the novelty of the *Murphy* holding and quoted Judge Jacobs' statement that " 'strange is the majority's holding that [plaintiff] was seized within the meaning of the Fourth Amendment because he was required to appear in court." ' *Sassower,* 992 F.Supp. at 655, 656 (quotation omitted).

**\*7** Although in the context of a malicious prosecution claim *Murphy* would be controlling, given the tenuousness of its reasoning, the Court holds that the issuance of an appearance ticket does not, in and of itself, constitute confinement for purposes of a § 1983 false arrest or false imprisonment claim. Furthermore, since the circumstances surrounding the issuance of the appearance ticket in this case do not present any alternative forms of the restraint of Plaintiff's liberty, the Court grants Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim.

**Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)**

2005 WL 1460424

*4. Plaintiff's § 1983 First Amendment claims*

Second Circuit First Amendment retaliation case law is, to put it mildly, confusing. There are at least three formulations of the elements of a First Amendment retaliation claim. *See Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) ((1) protected speech or conduct, (2) the defendant's adverse action against the plaintiff, and (3) " 'a causal connection between the protected speech and the adverse action" ' (quotation omitted)); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) ((1) conduct that the First Amendment protects that (2) prompts or substantially causes the defendant's action (citations omitted)); *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) ((1) protected speech or conduct that (2) motivates or substantially causes the defendant's action, which action (3) effectively chills the plaintiff's exercise of his First Amendment right (citation omitted)).

In an attempt to make sense of this case law, one approach is to distinguish cases according to broad types. The great majority of First Amendment retaliation cases arise in the prisoner and public employee contexts. Less typical are those cases, like the one currently before the Court, in which a private citizen alleges that state actors took some action against him in retaliation for his exercise of his First Amendment rights. Unfortunately, even in this subset of cases, there is disagreement about the elements of the claim. The most recent case in this subset to set forth the elements of a First Amendment retaliation claim is *Dougherty.* In that case, the plaintiff alleged that the defendants had revoked a previously issued building permit in retaliation for his exercise of his First Amendment rights. Although the court indicated that there may have been additional protected speech, it specifically noted the plaintiff's allegation that the permit revocation occurred soon after the defendants' receipt of his opposition papers to their motion to dismiss an action that he had filed in relation to an earlier denial of a permit. *See Dougherty,* 282 F.3d at 91-92. The court held that the circumstances that the plaintiff alleged gave rise to a sufficient inference of a causal relationship between his protected conduct and the defendants' action to withstand a motion to dismiss. *See id.* at 92.

**\*8** The next most recent case in the subset of private citizen plaintiffs is *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98 (2d Cir.2001). *Garcia* involved

a student who claimed that the defendants dismissed him from medical school in retaliation for his exercise of his First Amendment rights. The court followed the same formulation of the elements of a First Amendment retaliation claim as did *Gill* but concluded that the plaintiff's assertions did not satisfy the third element of that formulation. *See id.* at 106-07 (quotation and other citation omitted).

After *Garcia,* the next most recent case in this subset is *Curley.* The facts of that case are more analogous to those of the instant action than are those of either *Dougherty* or *Garcia.* The plaintiff in *Curley* alleged that the defendants arrested him in retaliation for comments that he had made while campaigning for municipal office about a police cover-up and failure to discipline. *See Curley,* 268 F.3d at 72-73. The court found that the defendants were entitled to summary judgment on the plaintiff's First Amendment retaliation claim because the existence of probable cause to arrest him negated the second element of such a claim and because the fact that the plaintiff continued his campaign and later campaigned for another municipal office negated the third, "chilling," element of the claim. *See id.* at 73.

*Curley* is distinguishable from *Dougherty* and *Garcia.* All the Second Circuit cases that the Court has found involving a private citizen plaintiff who alleges that the defendant arrested him in retaliation for his exercise of his First Amendment rights have articulated the same formulation of the elements of a First Amendment retaliation claim as did *Curley. See Kerman v. City of N .Y.,* 261 F.3d 229, 241-42 (2d Cir.2001) (citation omitted); *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (citations omitted). Although it might be difficult to explain the distinction between private citizen arrestee plaintiff cases and the other private citizen plaintiff cases, the distinction is present in the case law. Therefore, the Court will follow the *Curley* formulation of the elements of a First Amendment retaliation claim. [6]

[6]   The only Second Circuit case that Plaintiff cites in support of his First Amendment retaliation claims is *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). *Gagliardi* applies the same formulation of the elements of the claim as does *Dougherty. See id.* at 194 (quotation and other citations omitted). However, *Gagliardi,* like *Dougherty,* is a private

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

citizen zoning dispute case rather than a private citizen arrestee case.

The only challenge [7] that Defendants currently make to Plaintiff's First Amendment retaliation claims is that he fails to allege that they prevented him from filing a compliant, i.e., he fails to allege that Defendants' actions effectively chilled him from exercising his First Amendment rights. However, this challenge reads Plaintiff's claims too narrowly. Two distinct forms of speech are at issue in Plaintiff's first two causes of action. Plaintiff's first cause of action alleges that he verbally complained about Defendants' actions during the course of their arrest of Paredes. From Plaintiff's second cause of action, it may be reasonably inferred that he also desired to file a formal complaint about Defendants' actions after the arrest incident. With respect to the second cause of action, Plaintiff has not alleged that Defendants' actions effectively chilled him from filing a complaint. Therefore, Plaintiff's second cause of action fails to state a First Amendment claim. Accordingly, the Court grants Defendants' motion to dismiss the First Amendment claims in Plaintiff's second cause of action for failure to state a claim.

[7]  It is possible that Plaintiff's conduct in criticizing Defendants' actions during the course of their arrest of Paredes may not be protected activity. If the allegations in Defendant Hennessey's affidavit in support of the complaint information are true, Defendants likely had probable cause to arrest Plaintiff for Obstructing Governmental Administration and, thus, their threat to arrest him on that charge was privileged. *See* Dkt. No. 1 at ¶ 48. However, since Defendants have not raised the issue of whether Plaintiff's conduct was privileged, and the Court must accept the allegations in Plaintiff's complaint as true, the Court cannot address this issue at this time.

**\*9** However, with respect to Plaintiff's first cause of action, the Court finds that it may reasonably infer from the complaint that Defendants' conduct effectively chilled Plaintiff's speech. The relevant allegations are:

24. Plaintiff then crouched down and told the officers that they were "over the top" and that they were "out of control" or words to that effect.

25. Plaintiff did this because the police officers were brutalizing Paredes.

26. Officer Mullen told Claimant to get back.

27. Claimant complied by stepping back.

28. Officers Mullen and Hennessey then continued to punch Paredes on the back after Paredes was subdued.

29. Plaintiff told the officers again that they were "over the top" or words to that effect.

30. Officer Mullen then told the Plaintiff that if he didn't stop, he would be arrested for Obstructing Governmental Administration.

31. Plaintiff stopped speaking to the officers.

*See* Dkt. No. 1 at ¶¶ 24-31. Accordingly, since Plaintiff has sufficiently alleged that Defendants' (or at least Defendant Mullen's) actions effectively chilled his exercise of his First Amendment rights, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim.

### 5. *Plaintiff's § 1985(3) claims*
Defendants have asserted three bases for the dismissal of Plaintiff's § 1985(3) claims. First, they argue that Plaintiff, as a white person, lacks standing to assert a § 1985(3) claim. Second, they contend that Defendants, as agents or employees of a corporate entity, by definition, may not conspire with one another. Finally, they assert that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

#### i. standing
Despite the age and extensive use of § 1985(3), case law contains little discussion of the question of who has standing to assert a claim under that statute. [8] However, the Court finds that the case law provides sufficient guidance to answer the question currently before it: whether a non-minority person who alleges that he was injured by a conspiracy that aimed to deprive minority persons of the equal protection of the law has standing to assert a § 1985(3) claim.

[8]  The parties have cited conflicting precedents, none of which are binding on this Court. Defendants cite two cases for the proposition that a plaintiff asserting a § 1985(3) claim must himself be a member of a class

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

that the statute protects: *Puglisi v. Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 692 (S.D.N.Y.1996) (citations omitted); *McLoughlin v. Altman,* No. 92 Civ. 8106, 1993 WL 362407, *6 (S.D.N.Y. Sept. 13, 1993) (citation omitted). Although *McLoughlin* cites *Griffin v. Breckinridge,* [403 U.S. 88, 102,] 91 S.Ct. 1790, 1798 (1971), for the proposition that "a claimant must show, among other things, that she belonged to the type of class that is protected by that statute," *McLoughlin,* 1993 WL 362407, at *6, it does not appear that *Griffin* stands for such a proposition. Likewise, although *Puglisi* discusses several other cases, when it holds "that plaintiff cannot bring this § 1985(3) claim because ... plaintiff is not a member of the class protected by the statute nor a member of the race triggering the alleged racial discrimination[,]" *McLoughlin* is the only case that the court cited that supports this holding. *Puglisi,* 947 F.Supp. at 692.

The cases upon which Plaintiff relies are also suspect. He contends that a white person who has sought to vindicate the rights of members of a racial minority and against whom the defendants conspire has standing to assert a § 1985(3) claim. He cites three primary cases to support this proposition: *Maynard v. City of San Jose,* 37 F.3d 1396, 1403-04 (9th Cir.1994) (citations and footnote omitted); *Pisello v. Town of Brookhaven,* 933 F.Supp. 202, 216 (E.D.N.Y.1996) (citing *Maynard* ); *Bryant v. Polston,* No. IP 00-1064-C-T/G, 2000 WL 1670938, *7 (S.D.Ind. Nov. 2, 2000) (citing *Maynard* ). In *Maynard,* the Ninth Circuit sought to apply the law of that circuit which provided that "[p]laintiffs have standing under Section 1985 only if they can show they are members of a class that the government has determined 'require[s] and warrant[s] special federal assistance in protecting their civil rights.' " *Maynard,* 37 F.3d at 1403 (quotations and other citation omitted). The court reasoned that, because Title VII "grants special protection to whites who are denied association with members of other groups because of an employer's discriminatory practices" and "to all employees-regardless of race-who are subjected to retaliation for assisting in the investigation of discriminatory employment practices," such persons may have standing to assert a § 1985(3) claim. *Id.* (citation omitted). The plaintiff in *Maynard* had alleged that his employer and other defendants had retaliated against him for complaining about discriminatory hiring practices. *See id.* at 1399-1400. Since it does not appear that the Second Circuit has articulated a general statement of the requirement for standing under

§ 1985(3), the Court does not find *Maynard* persuasive.

The Supreme Court has discussed the statute's purpose: "[t]he predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U .S. 825, 836 (1983). This statutory purpose implies that, if a white person who sought to vindicate the rights of members of a racial minority were injured by a conspiracy that aimed to deny members of that racial minority of the equal protection of the laws, he would have standing to assert a § 1985(3) claim.

**\*10** At least two Courts of Appeals have expressly held that a plaintiff asserting a § 1985(3) claim need not himself be a member of a class that the statute protects. *See Cutting v. Muzzey,* 724 F.2d 259, 260 (1st Cir.1984) (holding that a non-Italian had standing to assert a § 1985(3) claim against members of a town planning board who allegedly conspired to deprive Italians of access to housing); *Novotny v. Great Am. Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1244 (3d Cir.1978) (en banc ) ("[M]embers of a conspiracy to deprive women of equal rights are liable under § 1985(3) to persons who are injured in furtherance of the object of the conspiracy, whether male or female."), *vacated on other grounds,* 442 U.S. 366 (1979). [9] Although the Second Circuit has not addressed whether a white person may have standing to assert a § 1985(3), the Court finds that, in light of the discussion in *Scott,* the holdings of *Cutting* and *Novotny* are persuasive. Therefore, the Court concludes that the fact that Plaintiff is white does not, in and of itself, bar him from asserting a § 1985(3) claim. Consequently, since Plaintiff has alleged that a conspiracy whose object was to deprive the constitutional rights of a member of a racial minority injured Plaintiff while he was seeking to vindicate those rights, the Court finds that he has adequately alleged standing for his 42 U.S.C. § 1985(3) claim.

[9]     The Supreme Court vacated *Novotny* because the plaintiff in that case alleged that the conspiracy that injured him had the goal of depriving women of their Title VII rights. The Court held that, because allowing a plaintiff to base a § 1985(3) cause of action upon rights that Title VII created would circumvent the procedural requirement that Congress had built into

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

Title VII, "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Novotny, 442 U.S. at 378*. Since the Fourth Amendment creates the rights of Paredes of which Plaintiff alleges Defendants conspired to deprive him, the Court's holding does not bar Plaintiff's action.

### ii. intra-corporate conspiracy doctrine

" 'Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together[ ]' " while acting within the scope of their employment. *Nassau County Employee "L" v. County of Nassau,* 345 F.Supp.2d 293, 304 (E.D.N.Y.2004) (quotations and other citations omitted); *see Crudele v. City of N.Y. Police Dep't,* No. 97 Civ. 6687, 2004 WL 1161174, *5 (S.D.N.Y. May 24, 2004)* (citations omitted). Although courts first applied this doctrine to cases involving public corporations, they have subsequently held that the doctrine is applicable to municipal entities and their officers, agents, and employees. *See County of Nassau,* 345 F.Supp.2d at 304 (citation omitted); *Cameron v. Church,* 253 F.Supp.2d 611, 623 (S.D.N.Y.2003) (quotation omitted). "However, '[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity.' " *County of Nassau,* 345 F.Supp.2d at 304-05 (quotation omitted); *see Stoner v. N. Y. City Ballet Co.,* No. 99 Civ. 0196, 2002 WL 523270, *9 (S.D.N.Y. Apr. 8, 2002)* (quotation and other citation omitted).

Individual Defendants are officers of Defendant City. *See* Dkt. No. 1 at ¶¶ 7-9. Plaintiff's allegation that at the time that individual Defendants "conspired to violate Plaintiff's civil rights and committed acts in furtherance of such conspiracy, they were acting as police officers for the City of Syracuse[ ]" is presumably an admission that individual Defendants were acting within the scope of their employment. *See* Dkt. No. 1 at ¶ 79.

**\*11** Nonetheless, Plaintiff contends that the personal interest exception applies. "[T]hat exception applies where 'a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose.' " *Everson v. N.Y. City Transit Auth.,* 216 F.Supp.2d 71, 76 (E.D.N.Y.2002) (quotation and other citation omitted); *see Salgado v. City of N.Y.,* No. 00 Civ. 3667, 2001 WL 290051, *9 (S.D.N.Y. Mar. 26, 2001).* Plaintiff has not alleged that individual Defendants had a personal interest in their alleged conspiracy. *See*

Dkt. No. 1 at ¶¶ 77-83. In his motion papers, Plaintiff concedes that he "does not allege Defendants' personal stake in their bias against Plaintiff or Paredes...." *See* Dkt. No. 15 at 14. However, he contends that he has "allege[d] sufficient facts to infer that the Defendants were motivated by personal gain in silencing Plaintiff about what he witnessed concerning their brutality and/ or misconduct in subduing and arresting Paredes and preventing Plaintiff from filing a complaint about such misconduct." *See id.* at 14-15 (citations omitted). He further argues that "the complaint alleges sufficient facts to infer that Defendants' employment opportunities and interest in not answering a complaint about their misconduct was Defendants' personal stake or interest in participating in the conspiracy." *See id.* at 15. However, since Defendant City arguably has the same general interest, Plaintiff's allegations do not give rise to a reasonable inference that individual Defendants' interests in the alleged conspiracy were distinct from those of Defendant City.

Accordingly, since the intra-corporate conspiracy doctrine applies, the Court grants Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim. [10]

[10]   Since the Court concludes that the intra-corporate conspiracy doctrine applies, it will not address Defendants' alternative argument that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

### 6. Plaintiff's common law malicious prosecution claims

In order to recover for malicious prosecution, a plaintiff must establish four elements: that a criminal proceeding was commenced; that it was terminated in favor of the accused; that it lacked probable cause; and that the proceeding was brought out of actual malice. *Cantalino v. Danner,* 96 N.Y.2d 391, 394-95 (2001) (citations omitted). Defendants argue that a dismissal in the interest of justice of an accusatory instrument pursuant to New York Criminal Practice Law § 170.40 cannot constitute a favorable termination. However, Defendants only cite pre-*Cantalino* case law to support their argument. *Cantalino* directly addressed "whether the dismissal of criminal charges against plaintiff in the interest of justice constituted a termination in her favor." *Id.* at 395. It expressly rejected "a per se rule that

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

a dismissal in the interest of justice can never constitute a favorable termination," and held that

> the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused. A case-specific rule is particularly appropriate for dismissals in the interest of justice, since the trial court is required to state on the record its reasons for dismissing the criminal charges....

**\*12** *Id.* at 396 (internal citation omitted). Unfortunately, in this case, the state court did not state on the record its reasons for dismissing the charges. *See* Dkt. No. 9 at 2. Furthermore, even if the state court had stated its reasons on the record, that record is not part of Plaintiff's pleadings. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's common law malicious prosecution claims for failure to state a claim.

*7. Plaintiff's common law libel claim*

Defendants argue (1) that Plaintiff has failed to comply with New York Civil Practice Law and Rules § 3016(a)'s requirement that a complaint asserting a claim for libel or slander set forth the particular words complained of and (2) that, if the Court dismisses all of Plaintiff's federal claims, it should decline to exercise jurisdiction over his state claims.

Since federal law governs the procedural issues in this case, " 'the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P." ' *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (quotation omitted). Therefore, the heightened pleading requirement of New York Civil Practice Law and Rules § 3016(a) does not apply to this action. *See Silverman v. City of N.Y.,* No. 98-CV-6277, 2001 WL 218943, *8 (E.D.N.Y. Feb. 2, 2001) (quotation and other citation omitted). The allegations of libel in Plaintiff's complaint satisfy Rule 8's requirements of "a short and plain statement of the claim" and "simple, concise, and direct" allegations. Fed.R.Civ.P. 8(a), (e)(1); *see* Dkt. No. 1 at ¶¶ 47-49, 94-96. Furthermore, the Court has not dismissed all of Plaintiff's federal claims. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's libel claim for failure to state a claim.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that Defendants' motion to dismiss Plaintiff's complaint for insufficient service of process is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City of Syracuse for failure to sufficiently allege municipal liability is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his second cause of action is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim is GRANTED; and the Court further

**\*13** ORDERS that Defendants' motion to dismiss Plaintiff's common law malicious prosecution claims for failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's common libel claim for failure to state a claim is DENIED.

IT IS SO ORDERED. [11]

**Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)**

2005 WL 1460424

11    The following claims of Plaintiff remain in this action: (1) § 1983 claims for denial of First Amendment rights against Defendants City, Mullen, and Hennessey, alleging that these Defendants arrested him for speaking to Defendant officers about their conduct in arresting a third-party; (2) § 1983 claims for failure to train against Defendant City; (3) common law malicious prosecution claims against all Defendants; (4) a common law libel claim against Defendant Hennessey; and (5) a claim for attorney's fees pursuant to 42 U.S.C. § 1988.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1460424

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2401722
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason IRVINE, Plaintiff,

v.

CITY OF SYRACUSE, et al., Defendants.

No. 5:14–CV–1565.
|
Signed May 19, 2015.

**Attorneys and Law Firms**

Jason Irvine, Auburn, NY, pro se.

### *DECISION and ORDER*

THOMAS J. McAVOY, Senior District Judge.

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, United States Magistrate Judge, for initial review. In his April 22, 2015 Report and Recommendation, Magistrate Judge Peebles recommends that, with the exception of plaintiffs excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, the remaining claims be dismissed with leave to replead. No objections to the Report and Recommendation [dkt. # 9] have been filed, and the time to do so has expired.

## II. DISCUSSION

After examining the record, this Court has determined that the Report and Recommendation is not subject to attack for plain error or manifest injustice.

## III. CONCLUSION

Accordingly, the Court **ADOPTS** the Report and Recommendation [dkt. # 9] for the reasons stated therein. It is hereby

**ORDERED** that with the exception of plaintiffs excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, the remaining claims in this action (including all of those asserted against

defendants Fougnier, Locastro, Walsh, and the City of Syracuse) are **DISMISSED with leave to replead.**

If plaintiff intends to the replead the dismissed claims: (1) he must do so within 30 (thirty) days from the date of this Decision and Order; and, (2) he should heed the law referenced by Magistrate Judge Peebles, especially at pages 20–22 of the Report Recommendation.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

This is an action brought by *pro se* plaintiff Jason Irvine, who is currently a New York State prison inmate, against the City of Syracuse, three employees of the Syracuse City Police Department, and the Onondaga County Sheriff, pursuant to 42 U.S.C. § 1983, claiming that they violated his civil rights. Plaintiffs complaint, together with an accompanying application for leave to proceed *in forma pauperis* ("IFP"), have been forwarded to me for review. For the reasons set forth below, plaintiffs IFP application is granted, and I recommend that plaintiffs claims against Onondaga County Sheriff Kevin Walsh, the City of Syracuse, and Sergeants Brian Fougnier and J.P. Locastro be dismissed with leave to replead.

### I. *BACKGROUND*

Plaintiff commenced this action on December 24, 2014. Dkt. No. 1. The claims set forth in plaintiffs complaint stem from an incident that occurred on May 11, 2013, and the events that followed. *See generally id.* According to the complaint, on that date plaintiff was confronted by two unidentified police officers and was thereafter taken into custody and assaulted. *Id.* at 6–7. While later being processed at police headquarters, plaintiff complained of pain and was escorted by the two officers to Upstate University Hospital ("Upstate"). *Id.* at 7. Although it is not clear from plaintiffs complaint what transpired at the hospital, he alleges that the officers informed him "that their [sic] was nothing wrong with him, and that he was fine in spite of the discharge plan that was denied to him." *Id.* Additionally, although plaintiff contends that defendants Matthew Liadka and Alexander J. Cazzolli, both of whom are Syracuse Police Officers, denied his request for further medical attention, it is not clear from

the complaint whether defendants Liadka and Cazzolli are the officers who escorted plaintiff to the hospital, or if plaintiff requested further medical attention from these individuals while confined either at police headquarters or the Onondaga County Justice Center, where plaintiff was apparently held following his visit to the hospital. *Id.*

**\*2** Plaintiff was again taken to Upstate on May 16, 2013, complaining of pain and swelling. Dkt. No. 1 at 7. Upon examination and testing, it was determined that plaintiff had suffered from pulled muscles, sprained ribs, a chest wall contusion, a swollen spleen, and other injuries as a result of the assault. *Id.*

Plaintiff alleges that defendants Brian Fougnier and J.P. Locastro, both of whom are identified as Syracuse Police Sergeants, "had a duty and obligation to investigate into the matters regarding the assault upon [him]," and that defendant Kevin E. Walsh, the Onondaga County Sheriff, is liable because defendant Walsh "is responsible for all Officers within his jurisdiction." Dkt. No. 1 at 7–8. According to plaintiff, defendant City of Syracuse "is liable for the actions of all of its Officials when their [sic] is a persistent and widespread discriminatory practice[.]" *Id.* at 8.

## II. *DISCUSSION*

### A. *Application to Proceed IFP*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [1] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application is granted. [2]

[1]  The total cost for filing a civil action in this court is $400.00 (consisting of the civil filing fee of $350.00, see 28 U .S.C. § 1914(a), and an administrative fee of $50.00). Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. See 28 U.S.C. § 1915(b)(3).

[2]  Plaintiff is reminded that, although his IFP application is granted, he is still required to pay fees

that he incurs in this action, including copying and/or witness fees.

### B. *Sufficiency of Plaintiff's Claims*

#### 1. *Standard of Review*

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis.*" ).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiffs allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiffs complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar*

*v. United States,* Nos. 99–MC–0304, 99–MC–0408, 1999 WL 1067841, at \*2 (D.Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

\*3 When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for

'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)) (quoting 42 U.S.C. § 1983)). It " 'is not itself a source of substantive rights[,] ... but merely provides 'a method for vindicating federal rights elsewhere conferred[.]' " *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). To state a claim pursuant to section 1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

### 2. *Review of Plaintiff's Claims*

Liberally construed, plaintiff's complaint asserts three causes of action against defendants, including excessive force, a violation of due process, and deliberate medical indifference. *See generally* Dkt. No. 1.

#### a. *Excessive Force*

\*4 Plaintiff's complaint alleges that the defendants violated his right under the Eighth Amendment to be free from cruel and unusual punishment through the use of excessive force. Dkt. No. 1 at 6–7, 9. It is not clear from the complaint, however, who committed the alleged assault against him on May 11, 2013. *Id.* at 6. Plaintiff alleges that the same unidentified officers who assaulted him also escorted him to Upstate the first time and informed him "their [sic] was nothing wrong with him." *Id.* at 6–7. In the next sentence, plaintiff alleges that "[w]hen [he] requested to speak with the Medical Staff, regarding his injuries, he was denied by [defendants] Liadka and Cazzolli [.]" *Id.* at 7. Accordingly, liberally construed, it appears the excessive force claims are asserted against defendants Liadka and Cazzolli,

The Eighth Amendment prohibits punishments that are "incompatible with 'the evolving standards decency that mark the progress a maturing society[,]' or 'involved[s] the unnecessary in wanton infliction of pain[.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) and *Gregg v.*

*Georgia,* 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (citations omitted)). The Eighth Amendment, however, only applies to individuals convicted of a crime. See *Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' " (quoting *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986))). In this case, because plaintiff had not been convicted of a crime at the time of the alleged use of excessive force, the Eighth Amendment does not apply to his excessive force claim. Instead, claims of excessive force during the course of an arrest are analyzed under the Fourth Amendment. *Tenn. v. Garner,* 471 U.S. 1, 7–22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *accord, Graham,* 490 U.S. at 395 (1989) ("Today we make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment[.]"). A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Maxwell v. City of N.Y.,* 380 F.3d 106, 108 (2d Cir.2004) (quoting *Graham,* 490 U.S. at 397). With this standard in mind, and having carefully review plaintiff's complaint, I find that the pleading contains sufficient facts to survive review under section 1915(e). In so ruling, I express no opinion regarding whether the excessive force claim as asserted in the complaint may withstand a properly filed motion to dismiss or for summary judgment.

b. *Due Process*

**\*5** Plaintiff also asserts a due process claim against the defendants, alleging they violated his rights by participating in the use of allegedly excessive force "and/ or covering up the use of excessive force[.]" Dkt. No. 1 at 9. Construed liberally, it appears plaintiff asserts this claim against defendants Liadka and Cazzolli for their participation in the use of force and against unidentified individuals for their alleged concealment of evidence regarding the use of force. Dkt. No. 1 at 7, 9.

The Due Process Clause of the Fourteenth Amendment contains both a substantive and procedural component. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon,* 494 U.S. at 125 (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) ( "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." (quotation marks omitted)). Courts analyzing substantive due process claims must first "identify the constitutional right at stake." *Kaluczky,* 57 F.3d at 211. "Where a [section] 1983 plaintiff alleges a cause of action protected by an explicit textual source of the Constitution, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing that claim." *Id.* (quotation marks omitted).

Plaintiff's claim against defendants Liadka and Cazzolli must fail because, as discussed above in Part II.B.2.a., it is rooted in the Fourth Amendment and does not state a generalized violation of substantive due process. As for plaintiffs claim asserted against the unidentified defendants regarding a "cover[ ] up," even assuming this allegation implicates plaintiffs constitutional rights, it must fail because plaintiff merely alleges that "the defendants ... cover[ed] up the use of excessive force and assault against [him]" without either identifying which individuals, in particular, participated in the cover up or alleging any facts to support this conclusory allegation. Without more, plaintiffs due process claim fails to allege facts plausibly suggesting that any of the named defendants violated plaintiffs due process rights. Accordingly, I recommend that plaintiffs due process claims be dismissed.

c. *Deliberate Medical Indifference*

Plaintiff also asserts a claim of deliberate medical indifference against defendants Liadka and Cazzolli. Dkt. No. 1 at 7. Because at the time plaintiff requested medical attention, he was pretrial detainee, his medical indifference claims are governed by the due process clause of the Fourteenth Amendment. *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000). To state a cognizable deliberate medical indifference claim under the Fourteenth Amendment, a plaintiff must allege facts plausibly suggesting that he "had a serious medical

condition that was met with deliberate indifference." *Cuoco,* 222 F.3d at 106 (quotation marks omitted).

**\*6** In this case, plaintiff alleges that defendants Liadka and Cazzolli denied his request for medical attention after he was taken into custody and complained of pain. Dkt. No. 1 at 7. Plaintiff also alleges that, once he was provided medical treatment, testing revealed that he "suffered from pulled muscles, sprained ribs, a chest wall contusion, swollen spleen, and other injuries due to the assault" by the defendant police officers. *Id.* I find these allegations are sufficient to survive review at this early procedural juncture under section 1915(e), and defendants should be required to respond to this portion of plaintiff's complaint. Once again, in so ruling, I express no opinion regarding whether the medical indifference claim as asserted in the complaint may withstand a properly filed motion to dismiss or for summary judgment.

### d. *Municipal Liability*

Plaintiff's claims against defendant City of Syracuse implicate municipal liability under *Monell v. N.Y. City Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To state a claim against a municipality for a constitutional violation pursuant to section 1983, a plaintiff must allege that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell,* 436 U.S. at 690. A municipality, however, cannot be held liable under section 1983 for the "actions alleged to be unconstitutional by its employees below the policymaking level on the basis of *respondeat superior." Zahra v. Town of Southbold,* 48 F.3d 674, 685 (2d Cir.1995); *see also Monell,* 436 U.S. at 691. To prevail on a section 1983 claim against a municipality, a plaintiff must demonstrate that the policy, ordinance, regulation, or decision adopted by the municipality, and implemented by its employee(s), caused the plaintiffs alleged constitutional deprivation. *Monell,* 436 U.S. at 691–92. This can be shown by establishing either that the policy itself is unconstitutional or that the application of an otherwise unlawful policy is unconstitutional. *Amnesty Am. v. Town of Hartford,* 361 F.3d 113, 125–25 (2d Cir.2004).

In this instance, plaintiff's complaint only alleges in conclusory terms that defendant City of Syracuse promulgated a "a persistent and widespread discriminatory practice[.]" Dkt. No. 1 at 8. Plaintiff has failed to identify a specific practice or policy, however, pursuant to which defendants Liadka and Cazzolli allegedly assaulted him. *Id.* Indeed, quite to the contrary, plaintiff characterizes those officers as "rogue agents with no regard for the rules, policies, or procedures set forth by the City of Syracuse Police Department Operations Manual." *Id.* While it is true that a municipality can be held accountable for the excessive use of force by a police officer upon proof that the municipality's policymakers were "knowingly and deliberately indifferent to the possibility that its police officers were wont" to commit constitutional violations, there are no allegations in plaintiff's complaint in this case that plausibly suggest defendant City of Syracuse possessed that specific knowledge with respect to defendants Liadka and Cazzolli. [3] *See, e.g., Fiacco v. City of Rensselaer, N. Y.,* 783 F.2d 319, 326–27 (2d Cir.1986).

[3]    In addition, it is well-established that a single incident is generally insufficient to raise the inference of the existence of a custom of policy potentially giving rise to admissible liability. *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.W. 163 (1993); *but see Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.1980) (noting that, where a plaintiff alleges excessive force by police, "a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge"). In this instance, plaintiff's allegations fail to support the conclusion that the exception to this general rule should apply.

**\*7** Municipal liability may also attach based upon the failure of a municipality to properly train "its employees where [the governmental agency] acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am.,* 361 F.3d at 129 (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). To establish liability under this theory, however, a plaintiff must identify a particular deficiency in the municipality's training regimen that " 'actually caused' " a constitutional deprivation. *Amnesty Am.,* 361 F.3d at 129 (quoting *City of Canton, Ohio,* 489 U.S. at 390–91); *see also Birdsall v. City of Hartford,* 249

F.Supp.2d 163, 173 (D.Conn.2003). As the Second Circuit has noted,

> [t]he elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability.

*Amnesty Am.,* 361 F.3d at 130. In this instance, plaintiff's complaint does not allege any specific inadequacy in the training protocols of the Syracuse City Police Department, nor does it contain other factual allegations plausibly suggesting that municipality liability is applicable based on a failure-to-train theory. I therefore recommend that plaintiff's *Monell* claim against defendant City of Syracuse be dismissed.

### e. *Remaining Claims Asserted Against Defendants Fougnier, Locastro, and Walsh*

Although plaintiff names defendant Walsh in his complaint, it is not clear what cause of action is being asserted against him. The only allegation in the complaint that involve Sheriff Walsh states that he, "as the County Sheriff [,] is responsible for all Officers within his jurisdiction, and to ensure that they are properly trained and of sound mental health in which to do their duties to the community." Dkt. No. 1 at 7. Whatever the nature of the claim plaintiff has attempted to assert against defendant Walsh may be, it is clear he intends to assert the claim based on Walsh's capacity as the head of the Onondaga County Sheriffs Department. Similarly, to the extent that plaintiffs complaint may be construed as asserting any claims against defendants Fougnier and Locastro, they are based on those individuals' supervisory capacities. Specifically, plaintiff's complaint alleges defendants Fougnier and Locastro are the "immediate supervisors" of defendants Liadka and Cazzolli and "had a duty and obligation to investigate into the matters regarding the assault upon [him] by the Officers." *Id.*

Setting aside the fact that defendant Walsh is the Onondaga County Sheriff and does not supervise police officers employed by the City of Syracuse, it is well established that, as supervisors, defendants Fougnier, Locastro, and Walsh cannot be held liable for damages under section 1983 solely by virtue of their roles as supervisors, nor can their liability be predicated upon *respondeat superior. Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright v. Smith,* 21 F.3d 496, 501 (1994). To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), rev'd on other grounds sub nom. *Ashcroft v. Iqbal,* 556 U.S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

**\*8** In this instance, there are no allegations in plaintiff's complaint suggesting that defendants Fougnier, Locastro, or Walsh participated in or witnessed the use of excessive force, or that, while the event was ongoing, they learned of it but failed to act to protect him from harm. *See generally* Dkt. No. 1. Moreover, because the only facts alleged involving these individuals concerns their roles and obligations as supervisors and are set forth in wholly conclusory fashion, there is no basis for a section 1983 claim against them. *See, e.g., id.* at 9 ("THE PLAINTIFF ALLEGES AGAINST THE DEFENDANTS THAT THEY FAILED IN THEIR SUPERVISORY CAPACITY TO OVERSEE AND SUPERVISE THEIR OFFICERS, AND STAFF ... THROUGH THEIR GROSS NEGLIGENCE [.]"). Under these circumstances I recommend that plaintiffs claims against defendants Fougnier, Locastro, and Walsh be dismissed for lack of personal involvement.

### C. *Whether to Permit Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ( "The court should freely

give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his pleading. Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, J.) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)) *Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J .). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV. *SUMMARY AND RECOMMENDATION*

*\*9* Plaintiff's complaint in this action asserts excessive force claims against two Syracuse Police Officers, Matthew Liadka and Alexander Cazzolli, and derivative claims against Syracuse Police Sergeants Brian Fougnier and J.P. Locastro, as well as Onondaga County Sheriff Kevin E. Walsh and the City of Syracuse, alleging that they were aware of but failed to remedy the constitutional deprivation, and that the violations occurred as a result of a failure to properly train and supervise defendants Liadka and Cazzolli. Having carefully reviewed plaintiff's complaint I conclude that, with the exception of his excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, plaintiffs claims should be dismissed with leave to amend.

Based upon the foregoing, it is hereby

ORDERED that plaintiff's application for leave to proceed in this action *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that, with the exception of his excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, plaintiff's remaining claims in this action, including all of those asserted against defendants Fougnier, Locastro, Walsh, and the City of Syracuse, be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: April 22, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2401722

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2963453
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court,
E.D. New York.

Thomas Anthony SANTAGATA, Jr., Plaintiff,
v.
CITY OF NEW YORK, New York Police
Department, Officers Edgardo Diaz and Ryan
McAvoy, Legal Aid Society, Defendants.

17-CV-3053 (PKC) (CLP)
|
Signed 07/11/2017

**Attorneys and Law Firms**

Thomas Anthony Santagata, Jr., Gouverneur, NY, pro se.

### MEMORANDUM & ORDER

Pamela K. Chen, United States District Judge

**\*1** On April 12, 2017, Plaintiff Thomas Anthony Santagata, Jr., currently incarcerated at Gouverneur Correctional Facility, filed this *pro se* action against Defendants. By Order dated May 15, 2017, the United States District Court for the Southern District of New York transferred the action to this Court. The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). For the reasons stated below, the Complaint is dismissed as to Defendants the City of New York ("the City"), the New York [City] Police Department ("the NYPD"), and the Legal Aid Society.

### BACKGROUND

Plaintiff alleges that he was falsely arrested on November 6, 2014, by NYPD Officer Edgardo Diaz, and that he was again falsely arrested on July 22, 2015, by NYPD Officer Ryan McAvoy. (*See* Complaint ("Compl."), Dkt. 2, at 4-5.) On November 6, 2014, according to Plaintiff's Complaint, Officer Diaz grabbed Plaintiff, who was sitting in his vehicle in his driveway, searched Plaintiff's pockets and his car, and then arrested him after finding one knife on Plaintiff and another in the armrest of

Plaintiff's car. (*Id.* at 4.) Plaintiff also alleges that Officer Diaz "manipulated" evidence by loosening the blade of the knife found in Plaintiff's car and thereby causing Plaintiff to be charged with possession of a gravity knife. (*Id.*)

On July 22, 2015, Plaintiff alleges that Officer McAvoy —who came to his house in response to neighbors' 911 calls complaining about Plaintiff—entered Plaintiff's home without a warrant by breaking down the front door and then arrested Plaintiff. (*Id.* at 5.) The charges related to both arrests were allegedly dismissed. *Id.*

Plaintiff further alleges that the Legal Aid Society committed "legal malpractice" by failing to challenge the civil forfeiture of his vehicle, a 2000 Ford Mustang. *Id.* at 5. He seeks unspecified damages. *Id.*

### STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleading stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In addition, a *pro se* complaint is "to be liberally construed," *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that [it] suggest [s]," *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest") (internal citations and quotations omitted). However, pursuant to the *in forma pauperis* statute, the Court must dismiss a complaint if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Courts generally should not dismiss a *pro se* complaint

without granting the plaintiff leave to amend if a valid claim could be stated. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## DISCUSSION

**\*2** The Court construes the Complaint to assert, under 42 U.S.C. § 1983, claims of false arrest, false imprisonment, unlawful searches and seizure in violation of the Fourth Amendment, fabrication of evidence, and malicious prosecution. The Court also construes the Complaint to assert a claim of municipal liability, *i.e.*, a *Monell* claim, against the City, based on his Section 1983 claims.

### I. Dismissal of *Monell* Claim Against the City

A municipality may be liable under Section 1983 if a municipal "policy or custom" causes "deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege "sufficient factual detail" and not mere "boilerplate allegations" that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). A plaintiff must show the existence of an officially adopted policy or custom that caused injury *and* a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell*, 436 U.S. at 690–94. Here, Plaintiff fails to allege any facts to show that the Defendant officers acted pursuant to any municipal policy or custom. Therefore, Plaintiff's Complaint against the City is dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915A; 1915(e)(2)(B). *See Plair v. City of N.Y.*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard...."); *see also Meehan v. Kenville*, 555 Fed.Appx. 116, 117 (2d Cir. 2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality").

### II. Dismissal of Claims Against the NYPD

Plaintiff's claims against the NYPD must be dismissed because it is not a suable agency of the City. Section

396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C., N.Y. Charter ch. 17, § 396. That provision has been construed to mean that the NYPD is not a suable entity. *See, e.g.*, *Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (NYPD not a suable entity); *Lopez v. Zouvelos*, No. 13 CV 6474 (MKB), 2014 WL 843219, at \*2 (E.D.N.Y. Mar. 4, 2014) (dismissing all claims against the NYPD); *Johnson v. N.Y.C. Police Dep't*, No. 12 CV 5423 (BMC), 2012 WL 5607505, at \*3 (E.D.N.Y. Nov. 15, 2012). For this reason, Plaintiff's claims against the NYPD are dismissed for failure to state a claim. 28 U.S.C. §§ 1915A; 1915(e)(2)(B).

### III. Dismissal of Claims Against the Legal Aid Society

The Legal Aid Society is not a State actor amenable to suit under Section 1983. *See Caroselli v. Curci*, 371 Fed.Appx. 199, 201 (2d Cir. 2010) (summary order); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("a legal aid society ordinarily is not a state actor amenable to suit under § 1983."); *Szabo v Legal Aid Soc'y.*, No. 17-MC-219 (PKC), 2017 WL 1401296, at \*4 (E.D.N.Y. Apr. 19, 2017) (citing cases); *Daniel v. Safir*, 135 F.Supp.2d 367, 374 (E.D.N.Y. 2001). Thus, Plaintiff's claim against the Legal Aid Society is dismissed for failure to state a claim. 28 U.S.C. §§ 1915A; 1915(e)(2)(B).

## CONCLUSION

**\*3** Accordingly, the Complaint, filed *in forma pauperis*, is dismissed as to the City of New York, the New York Police Department, and the Legal Aid Society pursuant to 28 U.S.C. §§ 1915A; 1915(e)(2)(B). No summons shall issue as to these Defendants.

Plaintiff's claims against Police Officer Edgardo Diaz, Shield No. 9558, of the 122th Precinct, and Police Officer Ryan McAvoy, Shield No. 7039, of the 122 Precinct, alleging false arrest, false imprisonment, violation of his Fourth Amendment Right against "unreasonable searches and seizures," and intentional infliction of emotional distress shall proceed. The Clerk of Court is directed to prepare a summons against Police Officers Diaz and McAvoy, and the United States Marshals

Service is directed to serve the summons and complaint upon these defendants without prepayment of fees.

The Clerk of Court is respectfully directed to serve a copy of this Order, a copy of the Complaint, and a copy of the *in forma pauperis* application on the Corporation Counsel for the City of New York, Special Federal Litigation Division. The Clerk of Court is also respectfully directed to mail a copy of this Order to Plaintiff. The case is respectfully referred to the Honorable Cheryl L. Pollak, United States Magistrate Judge, for pretrial supervision.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 2963453

---

  © 2017 Thomson Reuters. No claim to original U.S. Government Works.