UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

MARK SYFERT,

                              Plaintiff,

                                                    6:17-cv-0578
v.                                                  (GTS/TWD)

CITY OF ROME,

                              Defendant.
————————————————————————————

APPEARANCES:

MARK SYFERT
Plaintiff, *pro se*
422 W. Embargo Street #2
Rome, New York 13440

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

    The Clerk has sent to the Court for initial review the amended complaint in this *pro se*

civil rights action filed by Plaintiff Mark Syfert, pursuant to 42 U.S.C. §§ 1983 and 1985, against

Defendant City of Rome, New York ("City of Rome" and/or "Rome").  (Dkt. No. 9.[1])  Also

before the Court is Plaintiff's motion for appointment of counsel.  (Dkt. No. 10.)

## I.    PLAINTIFF'S ORIGINAL COMPLAINT

    Upon initial review of the original complaint (Dkt. No. 1), the Hon. Glenn T. Suddaby,

Chief United Stated Judge, issued a Decision and Order *sua sponte* dismissing the following

claims with prejudice for failure to state a claim: (1) Plaintiff's malicious prosecution claims;

---

[1]  Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) was granted by the Court in
an Order and Report-Recommendation filed on August 7, 2017.  (Dkt. No. 4.)

(2) Plaintiff's claims for violation of his right to a speedy trial; and (3) Plaintiff's conspiracy claims related to his malicious prosecution and speedy trial claims. (Dkt. No. 8 at 7.[2])

The District Court granted Plaintiff leave to amend the following remaining claims to cure the pleading deficiencies identified in this Court's August 7, 2017, Report-Recommendation:

> (1) Plaintiff's claims based on mistreatment by officials of the City of Rome, claims based on the City of Rome's code enforcement policies and procedures, claims based on the City of Rome's plumbing and plumber licensing policies and procedures, based on events occurring before May 24, 2014;
>
> (2) Plaintiff's conspiracy claims related to the above-referenced time-barred claims; and
>
> (3) Plaintiff's municipal-liability claims pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

*Id*. It was further ordered, *inter alia*, that any amended complaint filed by Plaintiff (1) may only assert claims that Plaintiff has been granted leave to amend and may not assert claims that have been dismissed with prejudice. *Id*. at 7-8.

Plaintiff has timely filed an amended complaint (Dkt. No. 9), which has been referred to the Court for initial review. *See id*. at 8.

## II.    LEGAL STANDARD FOR INITIAL REVIEW

Having previously found that Plaintiff meets the financial criteria to proceed *in forma pauperis*, the Court must consider the sufficiency of the allegation set forth in the amended complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff proceeds *in forma paupers*, "the court shall dismiss the case at any time if the court determines that . . . the

---

[2] Page references to documents identified by docket number are to the page assigned by the Court's electronic filing system.

action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court

must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.   PLAINTIFF'S AMENDED COMPLAINT

The amended complaint is organized into 110 numbered paragraphs, spanning seventeen pages, along with an additional six pages of exhibits. (Dkt. No. 9.) Generally, Paragraphs 1 through 94 provide a narrative of Plaintiff's history and claims, including those that were previously dismissed with prejudice, against the City of Rome and some of its employees from 1984 through 2017. *See id.* at ¶¶ 1-94.

Paragraph 94(b) appears to be excerpts taken from the California Civil Jury Instructions, section 1925, Affirmative Defense—Statute of Limitations—Fraud or Mistake, "Sources and Authorities." *See id.* at ¶ 94(b). Paragraphs 95 through 105, titled "Denied Introducing The Zoning Board Minutes From Apr. 1984 (At a Trial or Any Hearing)," references the Fifth, Sixth,

and Fourteenth Amendments, and among other things, states legal conclusions and commentary regarding fair trials, the right to present a defense, evidentiary rules, due process, and presumption of innocence. *See id.* at ¶¶ 95-105.

Plaintiff's municipal-liability claims pursuant to *Monell* are set forth in Paragraphs 106 and 107:

> 106.    1989 the defendant employed directoroly or by contract people there were incompetent, not properly train, not properly supervise, required job experience, or willingness, to carry out the reassessment of a city of this size without making mistake
>
> 107.    2009 to the present, the defendant allow its employees to be negligent on their duties. Allow they unwillingness to carry out the job they are required to do. Allow its employees to carryout malicious and unconstitutional behavior against innocence citizen they do not favor. Allowing the unsupervised employees to continue with out the qualified training. Allow the untrained, unqualified, lacking the job experience required, to be hired in the first place.

*Id.* at ¶¶ 106-07 (unaltered text, errors in original).

Paragraph 108 quotes, in relevant part, 42 U.S.C. § 1985(3). *Id.* at ¶ 108. Paragraph 109 states, *inter alia*, Rome's employees "directly and indirectly," deprived Plaintiff "of the equal protection of the laws; of equal privileges and immunities under the laws by collectively engaging in a pattern of actions that caused me to be injured in my person and my property, and that deprived me of having and exercising the rights or privileges of a citizen of the United States." *Id.* at ¶ 109. Lastly, Paragraph 110 states, *inter alia*, "Rome prosecuted me for minor offence from Dec. 2013 until March 2016; well beyond the statutory time limits permitted for prosecution." *Id.* at ¶ 110.

Plaintiff attaches the following six exhibits to the amended complaint:

> Exhibit A:  Notice of Claim against City of Rome, New York, stamped "Received" September 29, 2014 (first page only);

> Exhibit B:  October 24, 2014, Letter from the City of Rome, Corporation Counsel denying Plaintiff's Notice of Claim;
>
> Exhibit C:  June 6, 2012, Stop Work Order issued by the City of Rome, Department of Code Enforcement;
>
> Exhibit D:  March 1, 2011, letter issued by City of Rome, Department of Code Enforcement, Plumbing Board, regarding renewal of Master License #95-2;
>
> Exhibit E:  Plaintiff's letter response to the above dated March 3, 2011; and
>
> Exhibit F:  City of Rome's letter response to the above dated March 9, 2011.

*Id*. at 17-23.

Plaintiff's amended complaint is signed and dated, but does set forth the type of relief sought.  (*See* Dkt. No. 9 at 17.)

## IV.    ANLAYSIS

### A.    Claims Dismissed with Prejudice

As set forth above, the District Court ordered, *inter alia*, that any amended complaint filed by Plaintiff may only assert claims that Plaintiff has been granted leave to amend and may not assert claims that have been dismissed with prejudice.  (Dkt. No. 8 at 7.)  Therefore, to the extent the amended complaint repleads Plaintiff's malicious prosecution claims, claims for violation of his right to a speedy trial, and conspiracy claims related to his malicious prosecution and speedy trial claims, all of which were *sua sponte* dismissed with prejudice, such claims are not properly before the Court and will not be considered upon initial review.

### B.    Time-Barred Claims

Upon screening of the original complaint, Plaintiff was granted leave to amend the following remaining claims to cure the pleading deficiencies set forth in the August 7, 2017,

Report-Recommendation: claims based on mistreatment by officials of the City of Rome, claims based on the City of Rome's code enforcement policies and procedures, claims based on the City of Rome's plumbing and plumber licensing policies and procedures, based on events occurring before May 24, 2014, and Plaintiff's conspiracy claims related to the above-referenced time-barred claims. *Id*.

As discussed in the August 7, 2017, Report-Recommendation, claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). In New York, such claims are governed by the general three-year limitations period governing personal injury claims. *Owens v. Okure*, 488 U.S. 235, 251 (1989). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his § 1983 civil rights action within three years of the accrual of each cause of action.

Federal law, however, governs the date when a § 1983 claim accrues. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted); *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002). Although federal law determines when a § 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of [§] 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007).

Upon initial review of the original complaint, the Court found that, all claims, if any, against the City of Rome that accrued before May 24, 2014, were time-barred. (Dkt. No. 4 at 14-17.) In the amended complaint, Plaintiff challenges the accrual date of his claims against the City of Rome. (Dkt. No. 9 at ¶ 10.) Specifically, Plaintiff contends his claims against the City

of Rome accrued on March 14, 2017, the date on which Plaintiff obtained copies of the legal

description of his property located at 422 W. Embargo Street via the Freedom of Information Act

and "found out the full extent of the FRAUD or MISTAKE removing my third floor." (Dkt. No.

9 at ¶ 10). Plaintiff thus argues that any three-year statute of limitations should begin running on

March 14, 2017. *Id*. at ¶ 10.

However, a § 1983 claim accrues—and the limitations period begins to run—"when the

plaintiff has a complete and present cause of action, that is, when the wrongful act or omission

results in damages." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) ("The cause of action

accrues even though the full extent of the injury is not then known or predicable."). Stated

differently, in determining when the statute of limitations begins to run, the "proper focus is on

the time of [wrongful] act, not the point at which the consequences of the act become painful."

*Bailey v. Tricolla*, No. 94-cv-4597 (CPS), 1995 WL 548714, at *3 (E.D.N.Y. Sept. 12, 1995)[3]

(quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)).

According to Plaintiff:

> Starting in 1989, the defendant began reassessment of all property
> [located in the City of Rome] to fair market value. It was expected
> to take three years. (Somewhere around 30,000 properties). My
> house was done Aug. 10, 1989. The mistake was made then.
> Removing my third floor inlaw's apartment. Also removing a
> 100% finish attic in the 2 ½ stores house from my legal description
> of my property dated October 4, 1956 and dated February 7, 1957.

(Dkt. No. 9 at ¶ 9 (unaltered text; errors in original).)

Plaintiff further claims that by letter dated July 16, 2009, Rome's Director of Code

Enforcement informed Plaintiff that "upon his inspection of my property it appears you are using

_____

[3] Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with
*Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

as a three family apartment dwelling.  There is no building permit on record that recognizes this change therefore this is an illegal conversion." (Dkt. No. 9 at ¶ 16.)  At that time, after obtaining permission from the zoning board on May 24, 1984, Plaintiff had three separate utilities.  *Id.* at ¶ 17.  However, to make [the Director of Code Enforcement] happy, [Plaintiff] removed the third floor separate utilities." *Id.*[4]

Thus, to the extent Plaintiff traces all of his "legal problems" due to the "mistake" in the legal description of his property made in 1989, the claims, if any, would have accrued in 1989, and, at the very latest, in 2009, when the City's Department of Code Enforcement informed Plaintiff of the "mistake" in the legal description of his property.  As such, the Court finds Plaintiff's contention without merit, and the statute of limitations should not be tolled on that basis.

Plaintiff has also included an excerpt from the California Civil Jury Instructions, Affirmative Defense—Statute of Limitations—Fraud or Mistake.  *Id.* at ¶ 94(b).  Plaintiff does not, however, offer any reason as to why or how this section would apply to his claims.

Under New York law, "the doctrine of fraudulent concealment prevents a party from fraudulently concealing wrongdoing until after the tolling of the statute of limitations." *Aiken v. Nixon*, 236 F. Supp. 2d 211, 240 (N.D.N.Y. 2002).  "To invoke the doctrine of fraudulent concealment properly [for purposes of seeking an equitable tolling of the statute of limitations], a plaintiff must establish three elements, including: (1) wrongful concealment by defendants [of

---

[4]  Plaintiff notes a copy of the July 16, 2009, letter was attached as an exhibit to his Objection to the August 7, 2017, Report-Recommendation.  (Dkt. No. 9 at ¶ 17; *see* Dkt. No. 6 at 21.)  The July 16, 2009, letter states, in relevant part:  "According to our official city records, the dwelling located at 422 W. Embargo Street has a property classification of Two (2) family residence. Upon inspection of this property form the exterior right of way, it appears to be utilized as Three (3) family apartment dwelling.  Three is no building permit on record that recognizes the change, therefore, it is an illegal conversion."  (Dkt. No. 6 at 21.)

their actions], (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013). "The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004). Here, the Court finds Plaintiff has not plausibly alleged any of the three elements to invoke this doctrine.

Further, although not raised by Plaintiff, having carefully reviewed the amended complaint, the Court discerns no basis to invoke equitable tolling or equitable estoppel in order to salvage what are otherwise patently untimely claims. Under New York law, equitable tolling applies "where a plaintiff has been prevented in some extraordinary way from exercising rights," such that "it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl*, 296 F.3d at 85. In a related but slightly different vein, equitable estoppel is available "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing the lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.3d 76, 85 (2d Cir. 1986); *see also Abbas*, 480 F.3d at 642 (stating that equitable estoppel applies when a "plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action"). Under either doctrine, "[d]ue diligence on the part of the plaintiff in bringing an action . . . is an essential element of equitable relief." *Abbas*, 480 F.3d at 642.

In light of the foregoing and upon review of the amended complaint, the Court finds Plaintiff has not cured the pleading deficiencies identified in the August 7, 2017, Report-

Recommendation. Accordingly, the Court finds Plaintiff is not entitled to tolling and, thus, his claims based on events occurring before May 24, 2014, are time-barred.

Therefore, the Court recommends that Plaintiff's claims based on mistreatment by officials of the City of Rome, claims based on the City of Rome's code enforcement policies and procedures, claims based on the City of Rome's plumbing and plumber licensing policies and procedures, and claims for conspiracy related to any of those claims, based on events occurring before May 24, 2014, be *sua sponte* dismissed for failure to state a claim.

### C.    Claims under 42 U.S.C. § 1985(3)

Upon screening of the original complaint, Plaintiff was granted leave to amend his conspiracy claims. (Dkt. No. 8 at 7.) Plaintiff alleges that the City of Rome violated 42 U.S.C. § 1985(3) by conspiring against him. (Dkt. No. 9 at ¶¶ 108, 109.) "To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). In addition, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Here, the amended complaint does not allege any such animus.

Moreover, 42 U.S.C. § 1985(3) "allows damages whenever two or more 'persons' conspire to violate the civil rights of another." *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979). A municipality is a "person" for the purposes of a § 1985(3) claim only if one of the *Monell* factors, discussed above, applies. *Id.* Here, Plaintiff has not alleged facts plausibly

suggesting that his rights were violated pursuant to an official policy or custom of the City of

Rome.  Further, the "intra-agency conspiracy" doctrine provides that officers, agents or

employees of a single corporate entity are legally incapable of conspiring together.  *Everson v.*

*N.Y. City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (citation omitted); *see* also

*Griffin-Nolan v. Providence Washington Ins. Co.*, No. 5:04-CV-1453 (FJS/GJD), 2005 WL

1460424, at *10-11 (N.D.N.Y. June 20, 2005).

      For these reasons, the Court recommends that Plaintiff's claims under 42 U.S.C. §

1985(3) be *sua sponte* dismissed for failure to state a claim.

      **D.**    **Municipal Liability Claims**

      Upon screening of the original complaint, Plaintiff was granted leave to amend his

municipal liability claims pursuant to *Monell*.  (Dkt. No. 8 at 7.)  In order "to hold a

[municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is

required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff

to be subjected to (3) a denial of a constitutional right."  *Batista v. Rodriguez*, 702 F.2d 393, 397

(2d Cir. 1983); *accord Zherka v. City of N.Y.*, 459 F. App'x 10, 12 (2d Cir. 2012); *Wray v. City*

*of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40,

44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom

in order to show that the municipality took some action that caused his injuries beyond merely

employing the misbehaving officer.  Second, the plaintiff must establish a causal connection an

'affirmative link' between the policy and the deprivation of his constitutional rights.") (citation

omitted).

      An "official policy or custom" can be shown in several ways: (1) a formal policy

officially endorsed by the municipality; (2) actions taken by government officials responsible for

establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell*, 436 U.S. at 690-91), *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, (1986), and *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Upon review, Plaintiff fails to identify or allege any facts showing the existence of an official policy or custom of the City of Rome that resulted in the deprivation of his constitutional rights.

As set forth above, Plaintiff's alleges:

> 106.    1989 the defendant employed directorly or by contract people there were incompetent, not properly train, not properly supervise, required job experience, or willingness, to carry out the reassessment of a city of this size without making mistake
>
> 107.    2009 to the present, the defendant allow its employees to be negligent on their duties.  Allow they unwillingness to carry out the job they are required to do.  Allow its employees to carryout malicious and unconstitutional behavior against innocence citizen they do not favor.  Allowing the unsupervised employees to continue with out the qualified training.  Allow the untrained, unqualified, lacking the job experience required, to be hired in the first place.

(Dkt. No. 9 at ¶¶ 106, 107.)

However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an

independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Here, Plaintiff's conclusory allegations that the City of Rome failed to properly hire, supervise, and train subordinates, "without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face." *Gray-Davis v. New York*, No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015); *see Hawthorne v. City of Albany*, No. 1:17-CV-00716 (GTS/TWD), 2017 WL 6520774, at *5 (N.D.N.Y. Nov. 14, 2017) (same); *see also Hall v. Smith*, 170 F. App'x 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees).

Because Plaintiff has not cured the pleading deficiencies identified in the August 7, 2017, Report-Recommendation, the Court recommends that Plaintiff's municipal liability claims against the City of Rome be dismissed for failure to state a claim.

Even if Plaintiff's claims could be construed as plausibly alleging a custom or policy, Plaintiff has not pleaded facts plausibly suggesting that he was denied a constitutional right. Liberally construed, Plaintiff alleges the City of Rome violated his rights, "directly and indirectly" to equal protection of the laws. (Dkt. No. 8 at ¶ 109.)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly

situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." *Id*. Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

Plaintiff has not alleged any facts in the amended complaint plausibly suggesting that he was treated differently from similarly situated individuals. Therefore, the Court recommends that Plaintiff's equal protection claim be *sua sponte* dismissed for failure to state a claim.

### E.    Whether to Permit Amendment

In light of the foregoing, the Court recommends that the amended complaint be *sua sponte* dismissed in its entirety for failure to state a claim. Because Plaintiff has already been given the opportunity to amend his complaint, and the allegations in his amended complaint, construed liberally, give no indication that a valid claim might be stated if Plaintiff were given another opportunity to amend, *see Gomez*, 171 F.3d at 795, the Court recommends that the dismissal be with prejudice.

## V.    MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has moved for appointment of counsel. (Dkt. No. 10.) Even if the Court were not recommending dismissal of Plaintiff's amended complaint with prejudice, a more fully

developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied. The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed.

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 9) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 10) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copies of the unpublished decision cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.

---

[5] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: February 12, 2018
          Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

1995 WL 548714

1995 WL 548714
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

John BAILEY, etc., Plaintiff,
v.
Detective Philip TRICOLLA et alia, Defendants.

No. CV–94–4597 (CPS).
|
Sept. 12, 1995.

**Opinion**

MEMORANDUM AND ORDER

SIFTON, Chief Judge.

**\*1** This is a civil rights action brought pro se by plaintiff John Bailey on behalf of himself and his minor daughter Natasha Bailey. The defendants are New York City Police Detective Philip Tricolla, Detective Douglas Hopkins, Detective Ortiz, Detective A. Semioli and an unnamed employee of Channel 9 News, "John Doe." Interpreting plaintiffs' complaint liberally, as required by *Haines v. Kerner,* 404 U.S. 519 (1972), several federal and state claims are stated. Plaintiffs assert claims under 42 U.S.C. § 1983 based on the Fourth, Eighth and Fourteenth Amendments. The following federal claims are asserted by John Bailey on his own behalf: (1) that his Fourth Amendment right was violated when his property was illegally searched and seized by Detectives Tricolla, Semioli, and others, (2) that his Eighth Amendment right was violated when the detectives failed to stop an attack on plaintiff while in their custody, and (3) that his 14th Amendment right to due process was violated when the detectives filed false police reports and perjured themselves testifying at his trial. The following state claims are also asserted: (1) that an unidentified man who reportedly worked for Channel 9 News battered plaintiff John Bailey while he was in the custody of Detectives Tricolla and Hopkins, (2) that the detectives engaged in abuse of process when they filed false police reports concerning plaintiff's conduct, and (3) on behalf of Natasha Bailey, plaintiff John Bailey asserts that Detective Ortiz took her from her mother and used excessive force to do so.

On February 10, 1995, plaintiff moved for leave to amend the complaint to name "Channel 9 Broadcasting Systems, any and all Affiliates and or Sponsor's and Newscasters, and anyone and everyone responsible for the broadcasting of the Channel 9 news story shown on the Channel 9 news on or about June 7, 1991, in which the plaintiff was assaulted both physically then verbally with false slanderous stat[e]ments that implied plaintiff's guilt."

There are two motions to dismiss before the Court. In the first, defendant Detectives Tricolla, Hopkins, Ortiz, and Semioli move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint is barred by the statute of limitations and that the defendants are immune from suit. In the second, defendant "John Doe," a Channel 9 News Reporter, moves to dismiss the complaint on two grounds. First, pursuant to Rule 12(b)(1), defendant Doe argues that this Court lacks subject matter jurisdiction over him because, as a news reporter, "John Doe" is not a "person" within the meaning of 42 U.S.C. § 1983. Second, pursuant to Rule 12(b)(6), Doe asserts that the complaint is barred by the statute of limitations.

On March 29, 1995, this Court received a sworn affidavit and supplementary exhibits from plaintiff John Bailey seeking to establish that his complaint was filed within the statute of limitations. Defendants have not had responded to this material. For the reasons set forth below, defendants' motions to dismiss certain claims based on absolute immunity are granted in part and denied in part. The city defendants' motion to dismiss the remaining claims statute of limitations grounds is denied. Defendant Doe's motion to dismiss the complaint as to himself is granted. Plaintiff's motion to amend the complaint as set forth in their motion is denied. Plaintiffs' motion for the appointment of counsel for the plaintiff Natasha Bailey is granted, and this action is stayed pending the appointment of counsel and guardian ad litem for the minor plaintiff.

BACKGROUND

**\*2** The following facts are taken from the plaintiff's complaint and, for the purposes of this motion, are presumed to be true and are regarded in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232 (1974). Plaintiffs' complaint alleges constitutional injury arising from several incidents. On June 6, 1991,

Bailey v. Tricolla, Not Reported in F.Supp. (1995)
Case 6:17-cv-00578-GTS-TWD   Document 11   Filed 02/12/18   Page 19 of 49
1995 WL 548714

plaintiff John Bailey was arrested by Detective Tricolla and "a great many other Detectives." At the time of the arrest, detectives searched and seized plaintiff's property including a bill of sale for a .25 caliber automatic, firearms, ammunition, a gun registration, a firearms lock box, several keys, two wallets, and other items. Detective Semioli is specifically accused of stealing plaintiff's transit badge and buspass I.D. On the day of plaintiff's arrest, June 6, 1991, Detective Ortiz questioned Natasha Bailey, plaintiff John Bailey's daughter, and took her away from her mother by force. On June 7, 1991, between 2 and 5 a.m. plaintiff was being escorted in handcuffs by Detectives Tricolla and Hopkins through the main lobby of the 71st police precinct when plaintiff was hit by defendant "John Doe," a man he later learned was employed by Channel 9 News. Detectives also are accused of filing false police reports concerning John Bailey and Natasha Bailey and are accused of perjuring themselves when testifying at plaintiff's trial.

In the motion to amend the complaint, plaintiff alleges that these events were broadcast on Channel 9 News on or about June 7, 1991.

## DISCUSSION

### Subject Matter Jurisdiction

Defendant Doe has argued that this court lacks subject matter jurisdiction.[1] Plaintiffs filed their suit under 42 U.S.C. § 1983. Defendant Channel 9 news reporter "John Doe" contends that he is not a "person" within the meaning of § 1983, and that this Court therefore lacks subject matter jurisdiction over him. Defendant cites no case law to support this proposition but relies solely on the plain meaning of the statute.[2] This Court has also found nothing that would lend defendant's position support.

In one § 1983 case involving a journalist, *Fitzpatrick v. Wert,* 432 F.Supp. 601 (W.D.N.Y.1977), inmates sued news reporters who reported and commented on a statement made by the president of a prison guards' union. Plaintiffs alleged that defendant news reporters were involved in a conspiracy to deprive plaintiffs of equal protection under the law. *Id.* at 603. The suit was dismissed as frivolous. The reporters were held not liable under § 1983 because they were engaged in exercising their

constitutionally protected rights. *Id.* However, neither in *Fitzpatrick* nor anywhere else in the extant case law has a court held that journalists were or were not "persons" within the meaning of the statute. The proper issue before the Court is whether defendant "John Doe" was acting "under color of any statute, ordinance, regulation, custom, or usage, of any State...." 42 U.S.C. § 1983. This is an issue more appropriately dealt with as a 12(b)(6) motion to dismiss, since acting under color of state law is an element of pleading a § 1983 cause of action. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Moreover, when a district court has both a 12(b)(1) and 12(b)(6) motion before it, the "preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion." *Jones v. State of Georgia,* 725 F.2d 622 (11th Cir.) (citing *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897 (1981)), *cert. denied,* 469 U.S. 979 (1984). Accordingly, this Court has subject matter jurisdiction over this defendant.

**\*3** As to defendants Detective Philip Tricolla, Detective Douglas, Detective Hopkins, Detective Ortiz, and Detective A. Semioli, this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1343(a) (3) and (4)[3] which specifically provides jurisdiction over § 1983 actions. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 which provides district courts with jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

### City Defendants' Statute of Limitations Defense

Defendants argue that the statute of limitations bars all of plaintiffs' claims except the allegation that detectives perjured themselves at the plaintiff's trial. There are three elements needed to determine whether a claim falls within the statute of limitations: (1) when the period of limitations accrued, (2) how long the period runs for, and (3) whether the period has been tolled by reason of incapacity. Federal law determines when an action accrues. *Morse v. University of Vt.,* 973 F.2d 122, 125 (2d Cir.1992); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920 (1981).

The statutory period for bringing a § 1983 action accrues on the day when plaintiff " 'knows or has reason to know' of the injury which is the basis of his action."

Bailey v. Tricola, Not Reported in F.Supp. (1995)

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 20 of 49

1995 WL 548714

*Pauk v. Board of Trustees,* 654 F.2d 856, 859 (2d Cir.) (quoting *Singleton* ), *cert. denied,* 455 U.S. 1000 (1982). Furthermore, the "proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8 (1991). Plaintiff's claims accrued on different dates. Plaintiff's property was searched and seized on June 6, 1991, at the time of his arrest, and on June 7, 1991, plaintiff was allegedly assaulted by defendant "John Doe" while in the custody of defendant Detectives Tricola and Hopkins. Plaintiff clearly had immediate knowledge of both of these events, and thus any cause of action arising therefrom accrued at that time.

Congress provided no explicit statute of limitations for § 1983 claims. As a result, there was much confusion as to which state limitations statute to apply until the Supreme Court, in *Wilson v. Garcia,* 471 U.S. 261 (1985), decided that the states' general personal injury statute of limitations should be applied to all § 1983 claims. *Id.* at 276. When a state has more that one personal injury statute of limitations, as is the case in New York, § 1983 claims are governed by the state's residual or general personal injury statute of limitations rather that by the statute of limitations for an enumerated intentional tort. *Owens v. Okure,* 488 U.S. 235 (1989). Under New York CPLR § 214, the general personal injury statute of limitations is three years. Therefore, in New York, a plaintiff must commence his § 1983 action within three years of the date the cause of action accrues. *See Perez v. Police Dept. of the City of New York,* 872 F.Supp. 49, 51 (S.D.N.Y.1994).

**\*4** Plaintiff John Bailey signed and notarized his complaint on May 16, 1994. However, the complaint was date-stamped "received" on July 11, 1994, by the Southern District pro se office and stamped as filed with the Southern District of New York on September 13, 1994. In a supplemental affidavit filed on March 29, 1995, plaintiff attests that he prepared and mailed the complaint to the Southern District for filing on May 17, 1994, and requested a return receipt. Plaintiff has annexed to his affidavit a copy of his certified mail receipt, addressed to the U.S. District Court at 40 Centre St., New York, N.Y. and showing post office stamp of May 17, and a copy of the returned receipt, signed and dated May 26, 1994.

Rule 3 of the Federal Rules of Civil Procedure determines when a civil rights action commences. It simply states "[a]

civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3. Incarcerated litigants are afforded more leeway when they file pleadings because of their inability to file papers personally with the clerk of the court. Thus, for example, litigants may file a complaint by handing it to prison authorities, *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (discussing *Houston v. Lack,* 487 U.S. 266 (1988)), *modified by* 25 F.3d 81 (2d Cir.1994); *Lewis v. Richmond City Police Dept.,* 947 F.2d 733, 734 (4th Cir.1991), or may file an appeal in the same manner. *LaBounty v. Adler,* 933 F.2d 121 (2d Cir.1991).

At least one court has held that a return receipt dated within the limitations period suffices to prove receipt by the clerk and therefore filing, even if the clerk's office stamps the pleading "received" or "filed" on later dates. *Cooper v. City of Ashland,* 871 F.2d 104, 105 (9th Cir.1989). Generally, file stamps are far from dispositive of a statute of limitations issue. In *Mays v. New York City Police Dept,* 701 F.Supp. 80, 83 n. 6 (S.D.N.Y.1988), *aff'd,* 888 F.2d 1376 (2d Cir.1989), it was held that "[w]hen a pro se plaintiff's complaint is received by the Court within the statutory period, as here, and official filing is delayed by the Court's consideration of plaintiff's request for leave to proceed *in forma pauperis,* the action will be deemed timely for purposes of the statute of limitations." *See also Salahuddin v. Harris,* 657 F.Supp. 369, 373 n. 3 (S.D.N.Y.1987). The key inquiry is whether the clerk's office had actual control; papers placed in a night depository box after hours on the last day of the limitations period are deemed timely notwithstanding a local rule that such papers would be deemed filed the following day, because the papers placed in the box were held to be in the clerk's "actual possession." *Greenwood v. State of N.Y., Office of Mental Health,* 842 F.2d 636, 639 (2d Cir.1988); *see also Martin v. Demma,* 831 F.2d 69, 71 (5th Cir.1987) (district court's acceptance of date on clerk's stamps as dispositive was error). Plaintiff's production of the post office return receipt showing that his complaint was received at the Southern District clerk's office within the limitations period meets his burden of producing evidence to show that his papers were timely filed sufficient to warrant denial of the motion to dismiss at this time. The denial of this motion is without prejudice if discovery uncovers additional evidence relating to this matter.

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 21 of 49

1995 WL 548714

Alleged False Police Reports and Perjured Testimony

**\*5** Plaintiff also claims that defendant detectives filed false police reports and lied while testifying at his trial. Even if timely filed, these claims cannot withstand a motion to dismiss.

Generally, police officers have available a defense of only qualified immunity. *Pierson v. Ray,* 386 U.S. 547 (1967). However, defendant detectives are correct that officers serving as witnesses have absolute immunity from civil liability for their testimony. *Briscoe v. LaHue,* 460 U.S. 325 (1983). As the Supreme Court held in *Briscoe,* "the common law provided absolute immunity from subsequent damages liability for all persons— governmental or otherwise—who were integral parts of the judicial process." *Id.* at 335. Section 1983 does not abrogate this traditional immunity. Examining the legislative history of the Ku Klux Klan Act of 1871, 17 Stat. 13 (now codified at 42 U.S.C. §§ 1983 and 1985, *inter alia* ), the Supreme Court found nothing to "support petitioners' contention that Congress intended to provide a § 1 damages remedy against police officers or any other witnesses." *Id.* at 341. The Court specifically noted that, although "some defendants might indeed be unjustly convicted on the basis of knowingly false testimony by police officers ... the alternative of limiting the official's immunity would disserve the broader public interest." *Id.* at 345. In light of *Briscoe,* defendant detectives are absolutely immune from this § 1983 action with respect to their testimony at plaintiff's trial.

Plaintiff's allegations that the police officers filed false police reports against him also fails to state a claim. "[T]he mere filing of the false police reports, by themselves and without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." *Landrigan v. City of Warwick,* 628 F.2d 736, 744–45 (1st Cir.1980). Plaintiff's claims could be cast as a cause of action for malicious prosecution. Allegations of malicious prosecution do not ordinarily state a claim under § 1983. *Easterhouse v. Felder,* 910 F.2d 1387, 1407 (7th Cir.1990), *cert. denied,* 498 U.S. 1067 (1991); *Gunderson v. Schueter,* 904 F.2d 407, 409 (8th Cir.1990); *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The filing of false police reports may bring a claim for malicious prosecution within the scope of § 1983. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). However, an essential element of such

a claim is that the proceeding must terminate in plaintiff's favor, and plaintiff has not alleged this key fact. *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994). If plaintiff were convicted but believes that he was wrongly convicted, his proper remedy is not a claim for damages but rather an appeal, a collateral attack in state court, or a habeas petition in federal court. Plaintiffs thus have no cognizable § 1983 claim for the alleged filing of false reports. [4]

**\*6** Since the only other argument advanced by the city defendants is the statute of limitations and since that argument fails as noted above, their motion to dismiss the complaint is granted only with respect to the alleged false reports and false testimony and is denied in all other respects.

Claims Against Defendant "John Doe"

The "under color" of law provision of § 1983 does not require that the defendant be an officer of the State. *Dennis v. Sparks,* 449 U.S. 24 (1980). However, for the conduct of a private party to fall within the "under color" language, that conduct must be supported by state action, usually in the form of a conspiracy. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 163 (1970) (defendant restaurant owner who refused to serve Caucasian woman in the company of African American students was acting under color of law within the meaning of § 1983 because of his participation in a conspiracy with local police to deprive plaintiff of her rights). State support which transforms private action into state action may take many forms. In plaintiff's case, the only support given to "John Doe" was the inaction of the detectives who witnessed the battery. This level of support, if it can be called support at all, cannot qualify as state action because the complaint fails to allege that the attack was the result of a joint venture with the detectives. *See United States v. Price,* 383 U.S. 787 (1966). In *Price,* private actors charged with conspiring with local police to injure three men came within the scope of the statute because the private persons acted as willful participants in a joint activity with the state or its agents. *Id.* at 794. The Second Circuit has repeatedly held that § 1983 conspiracy claims must "contain more than mere conclusory allegations ... [and that] a plaintiff should not plead mere evidence; he should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy.' " *Dwares v. City of New York,* 985 F.2d

94, 99–100 (2d Cir.1993) (quoting 2A Moore's Federal Practice ¶ 8.17[6], at 8–109 to 8–110 (2d ed. 1992)).

Even though pro se complaints are read very broadly under *Haines,* the Court is nevertheless limited to addressing the face of a pleading. *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985). A claim of conspiracy between defendant detectives and defendant Channel 9 news reporter cannot be inferred from the facts presented in the complaint, and the complaint is dismissed as to this John Doe defendant.

Plaintiff's state law claims against defendant Doe are also dismissed Under any reading of the complaint, these claims can only be for assault, libel, or some other intentional tort. The state law claims are subject to New York's one-year statute of limitations for intentional torts, CPLR § 215, rather than the three-year period for negligence actions or § 1983 claims. This period has clearly expired as to all claims against Doe. Accordingly, the complaint is dismissed as to defendant Doe.

**\*7** For similar reasons, plaintiff's motion to amend the complaint is also denied. The amendment seeks to name Channel 9 Broadcasting Systems and others as defendants in a slander or libel action. These actions are also subject to the one-year statute of limitations. Since the proposed amendment would be futile, plaintiff's motion is denied.

Natasha Bailey

Natasha Bailey is represented by her father, plaintiff John Bailey. Under the Federal Rules of Civil Procedure, capacity to sue is determined by the law of the state in which the district court is held. Fed.R.Civ.P. 17(b). Rule 17(b) reads in relevant part: "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile ... [i]n all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held...." Wright and Miller comment on this rule, noting that state law determines the capacity of the guardian as well as the plaintiff: "[a]s has been seen in the preceding sections, the first two sentences of Rule 17(b) deal with an individual suing on his own behalf and with the capacity of corporations. The third sentence of the rule provides that in all other cases capacity to sue or be sued is to be determined by the

law of the state in which the district court is held. This portion of the rule applies principally to individuals who are suing in a representative capacity, including executors and administrators, guardians, trustees, and receivers appointed by a state court." Wright & Miller, Federal Practice and Procedure: Civil § 1565. Under New York law, an infant [5] cannot prosecute an action in person. The Federal Rules of Civil Procedure allow a representative to sue on behalf of an infant. Fed.R.Civ.P. 17(c). However under New York law the infant must appear by a parent who has "legal custody" [6] or guardian ad litem. "Unless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property or, if there is no such guardian, by a parent having legal custody, or, if there is no such parent by another person or agency having legal custody...." N.Y.Civ.Prac.L. & R. 1201 (McKinney 1995). To have legal custody, a parent must have physical custody. *Otero on Behalf of Otero v. State,* 159 Misc.2d 35, 602 N.Y.S.2d 501, 502 (1993). An incarcerated parent cannot have legal custody and therefore may not bring suit on behalf of an infant. *Id.* at 502. Since plaintiff John Bailey is currently incarcerated at Franklin Correctional Facility in Malone, N.Y., he is not competent to bring this action on his daughter's behalf. [7]

For the foregoing reasons defendant Channel 9 news reporter "John Doe's" motion to dismiss is granted. Plaintiffs' claims against the defendant detectives arising out of their testimony at his trial or from the alleged filing of false police reports are also dismissed. Plaintiff's motion to amend the complaint is denied. The claims on behalf of Natasha Bailey are dismissed without prejudice. Plaintiff's applications for appointment of *pro bono* counsel are denied subject to renewal upon a showing sufficient to permit the determination required by *Cooper v. S. Sargenti Co., Inc.,* 877 F.2d 170 (2d Cir.1989), concerning the merits of the case.

**\*8** The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

[1]     Though "John Doe" is not specifically identified in the complaint, process was served on Channel 9 at their offices at 445 Park Avenue, New York City, and was accepted by a person named Brenda Woodman. This Court has received a motion and supporting affidavit filed by attorneys for WWOR (Channel 9)

Bailey v. Tricolla, Not Reported in F.Supp. (1995)

1995 WL 548714

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 23 of 49

on behalf of "John Doe." The affidavit states that "Defendant 'John Doe,' Channel 9 News Reporter, respectfully requests that this court dismiss plaintiff's Complaint." The defendant has not raised objections to either service or personal jurisdiction but, instead, to subject matter and to the merits of the case. By filing this motion, then, he has consented to personal jurisdiction.

2    The statute reads in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress." 42 U.S.C. § 1983 (1988).

3    "(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ...
    (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
    (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

4    The Court declines to consider the instant complaint as a habeas petition under 18 U.S.C. § 2254, because it is impossible to determine whether the claims were

properly exhausted. If Bailey intends to seek habeas relief, he should file an appropriate petition.

5    An infant is defined as a "person who has not attained the age of eighteen years." N.Y.Civ.Prac.L. & R. 105 (McKinney 1994).

6    See Villafane v. Banner, 87 Misc.2d 1037, 387 N.Y.S.2d 183 (1976).

7    Generally, no statute of limitations will run against an infant until he or she attains the age of 18, the age of majority in New York. Section 208 of the NYCPLR in pertinent part reads, "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies...." However, in an action for personal injuries sustained by the infant, the statute of limitations does not bar the adult representative from bringing suit on behalf of the infant. Hilburger v. Cottman, 196 Misc. 106, 91 N.Y.S.2d 721 (1949) ("to compel an infant ... to await h[er] majority before bringing an action because [s]he had failed to act within the generally prescribed statutory period would create an anomalous situation ... an infant's right of action is continuing and suit may be brought at any time during his minority."). Here, since John Bailey cannot legally represent Natasha because of his incarceration, another representative is required.

**All Citations**

Not Reported in F.Supp., 1995 WL 548714

    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Harrison v. New York, E.D.N.Y., March 20, 2015

2005 WL 1460424
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edward P. GRIFFIN-NOLAN, Plaintiff,

v.

PROVIDENCE WASHINGTON INSURANCE
COMPANY and Howard Blute, in his
Individual Capacity as Manager for the
Business Development Executives at
Washington Insurance Company, Defendants.

No. 504CV1453FJSGJD.
|
June 20, 2005.

**Attorneys and Law Firms**

Chamberlain, D'Amanda, Oppenheimer & Greenfield
LLP, The Galleries of Syracuse, Syracuse, New York, for
Plaintiff, Mairead E. Connor, of counsel.

City of Syracuse Corporation Counsel, Syracuse, New
York, for Defendants, David H. Walsh, IV, of counsel.

**Opinion**

MEMORANDUM-DECISION AND ORDER

SCULLIN, Chief J.

I. INTRODUCTION

**\*1** Plaintiff's complaint asserts (1) a 42 U.S.C. §
1983 cause of action for false arrest and denial of
First Amendment rights against Defendants City of
Syracuse ("City"), Mullen, and Hennessey, alleging that
Defendants arrested him for speaking to Defendant
officers about their conduct in arresting a third-party; (2)
a § 1983 cause of action for false arrest and denial of
First Amendment rights against all Defendants, alleging
that they arrested him because they believed he might file
a complaint of police misconduct; (3) a § 1983 cause of
action for failure to train against Defendant City, alleging
that Defendant City acted with deliberate indifference in

failing to train its officers with respect to what constitutes
the crime of obstruction of justice and how to handle
the public; (4) a § 1985(3) cause of action against all
Defendants for conspiracy to deprive him of the equal
protection of the law and his equal privileges and
immunities, alleging that Defendants conspired to so
deprive him out of animus for his attempt to prevent
them from injuring a third-person on the basis of that
third-person's race or color; (5) a common law false arrest
claim against all Defendants; (6) a common law false
imprisonment claim against Defendants Mullen, Cecile,
and City; (7) a common law malicious prosecution claim
against all Defendants; (8) a common law libel claim
against Defendant Hennessey, alleging that he made false
statements in his Complaint Information; and (9) a claim
for attorney's fees pursuant to 42 U.S.C. § 1988.

Based upon these claims, Plaintiff seeks (1) declaratory
relief with respect to all causes of action, (2) injunctive
relief with respect to all causes of action other than those
made pursuant to § 1983, (3) compensatory damages,
(4) exemplary or punitive damages, and (5) costs,
disbursements, and legal fees.

Currently before the Court is Defendants' motion to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(5)
and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

[1]    Defendants' motion to dismiss does not address
       Plaintiff's claim for attorney's fees pursuant to 42
       U.S.C. § 1988.

II. BACKGROUND[2]

[2]    Given the procedural posture of this case, the Court
       assumes the truth of the allegations in Plaintiff's
       complaint.

On the evening of December 16, 2003, Plaintiff was
working as a licensed massage therapist at his booth
in the Carousel Center mall. *See* Dkt. No. 1 at ¶ 10.
Around 8:00 p.m. of that evening, he saw a "Hispanic
man of color" ("Paredes") walking toward him and
noticed a mall security officer pointing Paredes out to
Defendants Hennessey and Mullen. *See id.* at ¶ 11.
When Defendant Hennessey tried to stop Paredes by
placing his hand on Paredes' chest, Paredes spat on the
floor and continued shouting that he was going to kill
someone. *See id.* at ¶ 12. Defendant Hennessey then took

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

Paredes behind Plaintiff's booth, told him to show some respect, and smashed his back and head against a concrete pillar. *See id.* at ¶¶ 13-14. Paredes then either pushed or kicked at Defendant Hennessey, at which point they both tumbled and knocked over Plaintiff's booth. *See id.* at ¶¶ 15-16. With Paredes face-down on the floor, Defendant Hennessey placed his knee in Paredes' back and began punching him in the back. *See id.* at ¶¶ 18-19. Defendant Mullen then also placed his knee in Paredes' back and began punching him in the back and sides. *See id.* at ¶ 21. Defendant officers each hit Paredes six or more times after they had subdued him. *See id.* at ¶ 22.

**\*2** Plaintiff crouched by Defendant officers and told them that they had gone over the top and were out of control. *See id.* at ¶ 24. Defendant Mullen told Plaintiff to get back, and Plaintiff complied. *See id.* at ¶¶ 26-27. After Defendant officers continued to punch Paredes in the back, Plaintiff again told them that they were over the top. *See id.* at ¶¶ 28-29. Defendant Mullen told Plaintiff that, if he did not stop, he would be arrested for Obstructing Governmental Administration. *See id.* at ¶ 30. Plaintiff stopped speaking to Defendant officers, and they pulled Paredes up and led him away. *See id.* at ¶¶ 31-32.

At approximately 9:00 p.m., Defendant Mullen returned to Plaintiff's booth with Defendant Cecile and a mall security guard. *See id.* at ¶ 33. Defendant Cecile told Plaintiff that he understood that Plaintiff had been involved in an incident earlier in the evening and asked Plaintiff to explain what happened. *See id.* at ¶ 34. As soon as Plaintiff began to explain, Defendant Cecile stopped him and asked him whether he understood that he could be arrested. *See id.* at ¶ 35. Defendant Cecile told Plaintiff that, at the time of the incident, it was Defendants Hennessey's and Mullen's call whether to arrest Plaintiff but that, if Plaintiff made a complaint, it would be his call whether to arrest Plaintiff. *See id.* at ¶ 37. After Plaintiff said that he was not sure how the complaint procedure worked, Defendant Cecile showed Plaintiff the patch on his shoulder and said, " 'It's right here with me, right now.' " *See id.* at ¶¶ 38-39. Plaintiff told Defendant Cecile that he did not think that this was the only way to file a complaint. *See id.* at ¶ 40. Defendant Cecile then told Plaintiff that, if he filed a complaint, Defendant Cecile would take him down. *See id.* at ¶ 41. Next, Defendant Cecile told Defendant Mullen, " 'He's not happy. We're going to get a complaint. Take him in,' or words to that effect." *See id.* at ¶ 42. When Plaintiff said that he had things at his

booth that he could not leave unsecured, Defendant Cecile told him that he should have thought of that before. *See id.* at ¶ 44. Upon Defendant Cecile's direction, Defendant Mullen arrested Plaintiff for Obstructing Governmental Administration by giving him an appearance ticket. *See id.* at ¶¶ 45-46.

That same night, Defendant Hennessey submitted a complaint information affidavit in support of Plaintiff's arrest. *See id.* at ¶ 47. The affidavit contained a number of statements that were false and that Defendant Hennessey knew to be false when he made them. *See id.* at ¶¶ 48-49. Plaintiff's counsel filed a motion to dismiss the information for insufficiency. *See id.* at ¶ 51. On January 10, 2004, the Syracuse City Court dismissed the information in its entirety. *See id.* at ¶ 52.[3] In or about November 2004, Carousel Center management informed Plaintiff that he could not set up his booth during the holiday season because it was concerned about potential negative publicity arising from these incidents. *See id.* at ¶ 53.

[3]     It appears to the Court that this dismissal actually occurred on January 14, 2004, and was made pursuant to New York Criminal Practice Law § 170.40. *See* Dkt. No. 9 at Pt. 5.

**\*3** Plaintiff filed the instant action on December 15, 2004. *See* Dkt. No. 1.

## III. DISCUSSION

A. Defendants' motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure

Defendants argue that the Court lacks personal jurisdiction over them because Plaintiff failed to serve them with summonses. The docket sheet contains four affidavits of service that indicate that each Defendant was served with the summons and the complaint sometime between January 12, 2005, and January 26, 2005. *See* Dkt. Nos. 5-8. Perhaps these affidavits are mistaken; Plaintiff's counsel has filed an affidavit stating that Plaintiff personally served summonses and complaints for all Defendants upon Defendants' counsel on February 8, 2005, one day after Defendants filed their motion to dismiss. *See* Dkt. Nos. 9, 14 at ¶ 4. Since Defendants do not address insufficiency of service of process in their reply

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 26 of 49

2005 WL 1460424

memorandum of law, the Court presumes that they were served summonses and are abandoning their motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Regardless, both Local Rule 7.1(a)(2) and common sense dictate that a motion to dismiss for a failure to serve summonses requires a supporting affidavit, which Defendants have not provided. *See* L.R. 7.1(a)(2). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

**B. Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

*1. Standard of review*
In considering a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Hence, dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quotation omitted).

*2. Defendant City's liability for Plaintiff's § 1983 claims*
A municipality may only be held liable under § 1983 when its policies or customs result in a plaintiff's constitutional injury. *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978). The existence of a policy or custom may be inferred when a plaintiff presents evidence that a " 'municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction....' " *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quotation and footnote omitted). Contrary to some earlier Second Circuit cases, there is no heightened pleading requirement for claims of municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167-68 (1993) (rejecting contention that "plaintiff must do more than plead a single instance of misconduct" to state a claim for municipal liability); *contra Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993) (citation omitted). As the Supreme Court noted, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman,* 507 U.S. at 168-69.

*4 Plaintiff's complaint alleges that Defendant City has a policy or custom of threatening those who verbally challenge, or indicate the desire to file a complaint about, police misconduct with Obstructing Governmental Administration and that Defendant City has shown deliberate indifference in failing to train its police officers in how to handle the public while making arrests and failing to train its officers about what constitutes the crime of Obstructing Governmental Administration. *See* Dkt. No. 1 at ¶¶ 55, 64, 71-73. Plaintiff's allegations of municipal liability are directly related to his allegation of personal injury and, if shown to be true according to the evidence, might support a determination of municipal liability. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City for failure to adequately plead municipal liability.

*3. Plaintiff's § 1983 and common law false arrest and false imprisonment claims*

*a. elements of false arrest and false imprisonment*
"The elements of false arrest ... under § 1983 are 'substantially the same' as the elements under New York law." *Boyd v. City of N.Y.,* 336 F.3d 72, 75 (2d Cir.2003) (quotation omitted). The elements of false arrest and false imprisonment claims are identical: " '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *See Curry v. City of Syracuse,* 316 F.3d 324, 335 (2d Cir.2003) (quotation omitted).

The central dispute between the parties is whether the issuance of an appearance ticket constitutes the requisite confinement.

*b. common law false arrest and false imprisonment*
Every New York case of which the Court is aware that has considered whether the issuance of an appearance ticket constitutes confinement has held that the issuance of an appearance ticket, in and of itself, does not constitute confinement for purposes of a common law false arrest or false imprisonment claim. *See Du Chateau v. Metro-North Commuter R.R. Co.,* 253 A.D.2d 128, 129, 132 (1st Dep't 1999) (citations omitted) (police officer escorted plaintiff from train, talked to him, and

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 27 of 49

issued an appearance ticket); *Kramer v. Herrera,* 176 A.D.2d 1241, 1241 (4th Dep't 1991) (citations omitted); *Pozzanghera v. Anderson,* 136 A.D.2d 912, 913 (4th Dep't 1988)* ("Plaintiff's sole contention is that he was detained by the service of an appearance ticket. This did not restrict plaintiff's freedom and, therefore, does not form a basis for his wrongful arrest claim." (citation omitted)); *Pritchett v. State,* 61 A.D.2d 1110, 1110 (3d Dep't 1978); *cf. Reinhart v. Jakubowski,* 239 A.D.2d 765, 766 (3d Dep't 1997) (issuance of criminal summons requiring court appearance insufficient to support false arrest claim); *Vill. of Ellenville v. Searles,* 235 A.D.2d 692, 693 (3d Dep't 1997) (brief traffic stop in order to serve process did not constitute requisite confinement) (citations omitted).

**\*5** Plaintiff contends, however, that his complaint alleges more than the mere issuance of an appearance ticket. Conduct that accompanies the issuance of an appearance ticket certainly can constitute confinement for purposes of a false arrest or false imprisonment claim. *See Wiggins v. Metro-North Commuter R.R. Co.,* 228 A.D.2d 198, 198 (1st Dep't 1996) (police escorted plaintiff off train, questioned him in a railroad police facility, and issued an appearance ticket). Unfortunately, Plaintiff does not specify which of his allegations he believes show that Defendants confined him. The relevant allegations are:

33. Approximately one hour later, at about 9:00 p.m., Officer Mullen returned to Plaintiff's booth with [Sergeant Cecile] and a mall security guard.

34. Sergeant Cecile told Plaintiff that he understood he had been involved in an incident earlier and asked the Plaintiff what happened.

35. As the Plaintiff began to tell him, Sergeant Cecile interrupted Plaintiff and asked if Plaintiff understood that he could be arrested.

36. Plaintiff was quite surprised at this statement as he had complied with Officer Mullen's directive and had not interfered with Paredes' arrest or done anything unlawful.

37. Sergeant Cecile said that right then it was the officer's call, but if they were going to receive a complaint from the Plaintiff, it would be his call whether to arrest Plaintiff.

38. Plaintiff said that he was not sure how the complaint procedure worked.

39. Sergeant Cecile showed Plaintiff the patch on his shoulder and said, "It's right here with me, right now."

40. Plaintiff said that he did not think that was the only way to file a complaint.

41. Sergeant Cecile then told Plaintiff, "I'll tell you right now if you're filing a complaint, I'm taking you down," or words to that effect.

42. Sergeant Cecile told Officer Mullen, "He's not happy. We're going to get a complaint. Take him in," or words to that effect.

43. Plaintiff explained that he had expensive things in his booth that he could not leave unsecured.

44. Sergeant Cecile told Plaintiff that he should have thought of that before.

45. Sergeant Cecile told Officer Mullen to give Plaintiff an appearance ticket, which Officer Mullen did.

*See* Dkt. No. 1 at ¶¶ 33-45. Although Plaintiff alleges that Defendant Cecile threatened to arrest him, the mere threat to arrest does not constitute confinement. *See Blumenfield v. Harris,* 3 A.D.2d 219, 220 (1st Dep't 1957) (citations omitted), *aff'd* 3 N.Y.2d 905 (1957).[4]

4    In articulating his first cause of action, Plaintiff alleges that "[i]n the course of arresting Plaintiff, plaintiff was not free to leave and was confined against his will at the Carousel Center." *See* Dkt. No. 1 at ¶ 58. However, in light of the more specific allegations that Plaintiff made in his statement of facts, this allegation is too vague and conclusory to support a reasonable inference that Defendants confined him.

Accepting all of Plaintiff's allegations as true and drawing every reasonable inference from them, the Court does not find that he has alleged that Defendants took any actions that would constitute confinement for purposes of a common law false arrest or false imprisonment claim. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim.

*c. § 1983 false arrest*

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

**\*6** The question of whether the issuance of an appearance ticket constitutes confinement for purposes of § 1983 is not so clear. Defendants rely upon *Angel v. Kasson,* 581 F.Supp. 170, 177-78 (N.D.N.Y.1983) ("[I]t [is] well settled that the issuance of such tickets under the provisions of N.Y.Crim. Proc. Law § 150.10 does not constitute an arrest." (citation and footnote omitted)). Plaintiff, on the other hand, relies upon *Dorman v. Castro,* 214 F.Supp.2d 299 (E.D.N.Y.2002), which states that,

> [a]lthough this is a close case, the Court finds that Plaintiffs were subject to a "seizure" under the Fourth Amendment. Plaintiffs claim their liberty was restrained because "at the point when the Plaintiffs were informed that they were being issued a Summons" they "were not free to leave until the Plaintiffs had the Summons in hand."

*Id.* at 308 (quotation omitted). *Dorman* goes on to note that "district courts in this circuit that have analyzed *Murphy* [*v. Lynn,* 118 F.3d 938 (2d Cir.1997)], however, have held that the mere issuance of an appearance ticket, without any restraint on travel, is a sufficient restraint of liberty to constitute a 'seizure' under the Fourth Amendment." *Id.* (citing *Kirk v. Metropolitan Trans. Auth.,* No. 99 CV 3787, 2001 WL 258605, \*15 (S.D.N.Y. Mar. 14, 2001); *Kirton v. Hassel,* No. 96 CV 1371, 1998 WL 146701, \*6 (E.D.N.Y. Mar. 25, 1998); *Sassower v. City of White Plains,* 992 F.Supp. 652, 656 (S.D.N.Y.1998)) (other citation omitted). [5]

[5]    Contrary to *Dorman*'s statement, two of the supporting cases it cites do not involve appearance tickets and the third, *Kirk,* involves a desk appearance ticket that the defendant issued after the plaintiff had been arrested and detained. *Kirk,* 2001 WL 258605, \*2-\*4.

*Dorman* and all the supporting cases that it cites rely upon *Murphy. Murphy,* applying *Albright v. Oliver,* 510 U.S. 266 (1994), held that, in order for a plaintiff to establish a § 1983 malicious prosecution claim, he "must show ... that the initiation or pendency of judicial proceedings" resulted in a Fourth Amendment "seizure." *Murphy,* 118 F.3d at 944. The court went on to hold that "[t]he liberty deprivations regulated by the Fourth Amendment are not limited to physical detention." *Id.* at 945. Finally, the court, relying upon Justice Ginsburg's solitary concurrence in *Albright,* held that

while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and *may order him to make periodic appearances,* such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.

*Id.* at 946 (emphasis added).

Like *Murphy,* all three of the supporting cases that *Dorman* cites concern malicious prosecution claims. There is certainly considerable similarity between the analysis of a § 1983 malicious prosecution claim and a § 1983 false arrest claim; both arise out of the Fourth Amendment's protection against unreasonable seizures. However, *Murphy* does not expressly address false arrest claims. Furthermore, there is reason to constrain the application of *Murphy* to the precise issues it addresses. Judge Jacobs, dissenting in *Murphy,* after noting the majority's reliance on Justice Ginsburg's solitary concurrence, pointed out that "[a] probable cause determination is required only for 'those suspects who suffer restraints on liberty *other* than the condition that they appear for trial." ' *Id.* at 953, 955 (quoting *Gerstein [v. Pugh],* 420 U.S. [103,] 125 n. 26, 95 S.Ct. [854,] 869 n. 26 [ (1975) ] (Judge Jacobs' emphasis)) (footnote omitted). In *Sassower,* Judge Lowe noted the novelty of the *Murphy* holding and quoted Judge Jacobs' statement that " 'strange is the majority's holding that [plaintiff] was seized within the meaning of the Fourth Amendment because he was required to appear in court." ' *Sassower,* 992 F.Supp. at 655, 656 (quotation omitted).

**\*7** Although in the context of a malicious prosecution claim *Murphy* would be controlling, given the tenuousness of its reasoning, the Court holds that the issuance of an appearance ticket does not, in and of itself, constitute confinement for purposes of a § 1983 false arrest or false imprisonment claim. Furthermore, since the circumstances surrounding the issuance of the appearance ticket in this case do not present any alternative forms of the restraint of Plaintiff's liberty, the Court grants Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim.

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 29 of 49

*4. Plaintiff's § 1983 First Amendment claims*
Second Circuit First Amendment retaliation case law is, to put it mildly, confusing. There are at least three formulations of the elements of a First Amendment retaliation claim. *See Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) ((1) protected speech or conduct, (2) the defendant's adverse action against the plaintiff, and (3) " 'a causal connection between the protected speech and the adverse action' " (quotation omitted)); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) ((1) conduct that the First Amendment protects that (2) prompts or substantially causes the defendant's action (citations omitted)); *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) ((1) protected speech or conduct that (2) motivates or substantially causes the defendant's action, which action (3) effectively chills the plaintiff's exercise of his First Amendment right (citation omitted)).

In an attempt to make sense of this case law, one approach is to distinguish cases according to broad types. The great majority of First Amendment retaliation cases arise in the prisoner and public employee contexts. Less typical are those cases, like the one currently before the Court, in which a private citizen alleges that state actors took some action against him in retaliation for his exercise of his First Amendment rights. Unfortunately, even in this subset of cases, there is disagreement about the elements of the claim. The most recent case in this subset to set forth the elements of a First Amendment retaliation claim is *Dougherty.* In that case, the plaintiff alleged that the defendants had revoked a previously issued building permit in retaliation for his exercise of his First Amendment rights. Although the court indicated that there may have been additional protected speech, it specifically noted the plaintiff's allegation that the permit revocation occurred soon after the defendants' receipt of his opposition papers to their motion to dismiss an action that he had filed in relation to an earlier denial of a permit. *See Dougherty,* 282 F.3d at 91-92. The court held that the circumstances that the plaintiff alleged gave rise to a sufficient inference of a causal relationship between his protected conduct and the defendants' action to withstand a motion to dismiss. *See id.* at 92.

**\*8** The next most recent case in the subset of private citizen plaintiffs is *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98 (2d Cir.2001). *Garcia* involved

a student who claimed that the defendants dismissed him from medical school in retaliation for his exercise of his First Amendment rights. The court followed the same formulation of the elements of a First Amendment retaliation claim as did *Gill* but concluded that the plaintiff's assertions did not satisfy the third element of that formulation. *See id.* at 106-07 (quotation and other citation omitted).

After *Garcia,* the next most recent case in this subset is *Curley.* The facts of that case are more analogous to those of the instant action than are those of either *Dougherty* or *Garcia.* The plaintiff in *Curley* alleged that the defendants arrested him in retaliation for comments that he had made while campaigning for municipal office about a police cover-up and failure to discipline. *See Curley,* 268 F.3d at 72-73. The court found that the defendants were entitled to summary judgment on the plaintiff's First Amendment retaliation claim because the existence of probable cause to arrest him negated the second element of such a claim and because the fact that the plaintiff continued his campaign and later campaigned for another municipal office negated the third, "chilling," element of the claim. *See id.* at 73.

*Curley* is distinguishable from *Dougherty* and *Garcia.* All the Second Circuit cases that the Court has found involving a private citizen plaintiff who alleges that the defendant arrested him in retaliation for his exercise of his First Amendment rights have articulated the same formulation of the elements of a First Amendment retaliation claim as did *Curley. See Kerman v. City of N .Y.,* 261 F.3d 229, 241-42 (2d Cir.2001) (citation omitted); *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (citations omitted). Although it might be difficult to explain the distinction between private citizen arrestee plaintiff cases and the other private citizen plaintiff cases, the distinction is present in the case law. Therefore, the Court will follow the *Curley* formulation of the elements of a First Amendment retaliation claim. [6]

[6]    The only Second Circuit case that Plaintiff cites in support of his First Amendment retaliation claims is *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). *Gagliardi* applies the same formulation of the elements of the claim as does *Dougherty. See id.* at 194 (quotation and other citations omitted). However, *Gagliardi,* like *Dougherty,* is a private

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

citizen zoning dispute case rather than a private citizen arrestee case.

The only challenge [7] that Defendants currently make to Plaintiff's First Amendment retaliation claims is that he fails to allege that they prevented him from filing a compliant, i.e., he fails to allege that Defendants' actions effectively chilled him from exercising his First Amendment rights. However, this challenge reads Plaintiff's claims too narrowly. Two distinct forms of speech are at issue in Plaintiff's first two causes of action. Plaintiff's first cause of action alleges that he verbally complained about Defendants' actions during the course of their arrest of Paredes. From Plaintiff's second cause of action, it may be reasonably inferred that he also desired to file a formal complaint about Defendants' actions after the arrest incident. With respect to the second cause of action, Plaintiff has not alleged that Defendants' actions effectively chilled him from filing a complaint. Therefore, Plaintiff's second cause of action fails to state a First Amendment claim. Accordingly, the Court grants Defendants' motion to dismiss the First Amendment claims in Plaintiff's second cause of action for failure to state a claim.

[7]   It is possible that Plaintiff's conduct in criticizing Defendants' actions during the course of their arrest of Paredes may not be protected activity. If the allegations in Defendant Hennessey's affidavit in support of the complaint information are true, Defendants likely had probable cause to arrest Plaintiff for Obstructing Governmental Administration and, thus, their threat to arrest him on that charge was privileged. *See* Dkt. No. 1 at ¶ 48. However, since Defendants have not raised the issue of whether Plaintiff's conduct was privileged, and the Court must accept the allegations in Plaintiff's complaint as true, the Court cannot address this issue at this time.

**\*9** However, with respect to Plaintiff's first cause of action, the Court finds that it may reasonably infer from the complaint that Defendants' conduct effectively chilled Plaintiff's speech. The relevant allegations are:

24. Plaintiff then crouched down and told the officers that they were "over the top" and that they were "out of control" or words to that effect.

25. Plaintiff did this because the police officers were brutalizing Paredes.

26. Officer Mullen told Claimant to get back.

27. Claimant complied by stepping back.

28. Officers Mullen and Hennessey then continued to punch Paredes on the back after Paredes was subdued.

29. Plaintiff told the officers again that they were "over the top" or words to that effect.

30. Officer Mullen then told the Plaintiff that if he didn't stop, he would be arrested for Obstructing Governmental Administration.

31. Plaintiff stopped speaking to the officers.

*See* Dkt. No. 1 at ¶¶ 24-31. Accordingly, since Plaintiff has sufficiently alleged that Defendants' (or at least Defendant Mullen's) actions effectively chilled his exercise of his First Amendment rights, the Court denies Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim.

### 5. Plaintiff's § 1985(3) claims
Defendants have asserted three bases for the dismissal of Plaintiff's § 1985(3) claims. First, they argue that Plaintiff, as a white person, lacks standing to assert a § 1985(3) claim. Second, they contend that Defendants, as agents or employees of a corporate entity, by definition, may not conspire with one another. Finally, they assert that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

#### i. standing
Despite the age and extensive use of § 1985(3), case law contains little discussion of the question of who has standing to assert a claim under that statute. [8] However, the Court finds that the case law provides sufficient guidance to answer the question currently before it: whether a non-minority person who alleges that he was injured by a conspiracy that aimed to deprive minority persons of the equal protection of the law has standing to assert a § 1985(3) claim.

[8]   The parties have cited conflicting precedents, none of which are binding on this Court. Defendants cite two cases for the proposition that a plaintiff asserting a § 1985(3) claim must himself be a member of a class

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 31 of 49

2005 WL 1460424

that the statute protects: *Puglisi v. Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 692 (S.D.N.Y.1996) (citations omitted); *McLoughlin v. Altman,* No. 92 Civ. 8106, 1993 WL 362407, *6 (S.D.N.Y. Sept. 13, 1993) (citation omitted). Although *McLoughlin* cites *Griffin v. Breckinridge,* [403 U.S. 88, 102,] 91 S.Ct. 1790, 1798 (1971), for the proposition that "a claimant must show, among other things, that she belonged to the type of class that is protected by that statute," *McLoughlin,* 1993 WL 362407, at *6, it does not appear that *Griffin* stands for such a proposition. Likewise, although *Puglisi* discusses several other cases, when it holds "that plaintiff cannot bring this § 1985(3) claim because ... plaintiff is not a member of the class protected by the statute nor a member of the race triggering the alleged racial discrimination[,]" *McLoughlin* is the only case that the court cited that supports this holding. *Puglisi,* 947 F.Supp. at 692.

The cases upon which Plaintiff relies are also suspect. He contends that a white person who has sought to vindicate the rights of members of a racial minority and against whom the defendants conspire has standing to assert a § 1985(3) claim. He cites three primary cases to support this proposition: *Maynard v. City of San Jose,* 37 F.3d 1396, 1403-04 (9th Cir.1994) (citations and footnote omitted); *Pisello v. Town of Brookhaven,* 933 F.Supp. 202, 216 (E.D.N.Y.1996) (citing *Maynard* ); *Bryant v. Polston,* No. IP 00-1064-C-T/G, 2000 WL 1670938, *7 (S.D.Ind. Nov. 2, 2000) (citing *Maynard* ). In *Maynard,* the Ninth Circuit sought to apply the law of that circuit which provided that "[p]laintiffs have standing under Section 1985 only if they can show they are members of a class that the government has determined 'require[s] and warrant[s] special federal assistance in protecting their civil rights.' " *Maynard,* 37 F.3d at 1403 (quotations and other citation omitted). The court reasoned that, because Title VII "grants special protection to whites who are denied association with members of other groups because of an employer's discriminatory practices" and "to all employees-regardless of race-who are subjected to retaliation for assisting in the investigation of discriminatory employment practices," such persons may have standing to assert a § 1985(3) claim. *Id.* (citation omitted). The plaintiff in *Maynard* had alleged that his employer and other defendants had retaliated against him for complaining about discriminatory hiring practices. *See id.* at 1399-1400. Since it does not appear that the Second Circuit has articulated a general statement of the requirement for standing under

§ 1985(3), the Court does not find *Maynard* persuasive.

The Supreme Court has discussed the statute's purpose: "[t]he predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U .S. 825, 836 (1983). This statutory purpose implies that, if a white person who sought to vindicate the rights of members of a racial minority were injured by a conspiracy that aimed to deny members of that racial minority of the equal protection of the laws, he would have standing to assert a § 1985(3) claim.

**\*10** At least two Courts of Appeals have expressly held that a plaintiff asserting a § 1985(3) claim need not himself be a member of a class that the statute protects. *See Cutting v. Muzzey,* 724 F.2d 259, 260 (1st Cir.1984) (holding that a non-Italian had standing to assert a § 1985(3) claim against members of a town planning board who allegedly conspired to deprive Italians of access to housing); *Novotny v. Great Am. Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1244 (3d Cir.1978) (*en banc* ) ("[M]embers of a conspiracy to deprive women of equal rights are liable under § 1985(3) to persons who are injured in furtherance of the object of the conspiracy, whether male or female."), *vacated on other grounds,* 442 U.S. 366 (1979).[9] Although the Second Circuit has not addressed whether a white person may have standing to assert a § 1985(3), the Court finds that, in light of the discussion in *Scott,* the holdings of *Cutting* and *Novotny* are persuasive. Therefore, the Court concludes that the fact that Plaintiff is white does not, in and of itself, bar him from asserting a § 1985(3) claim. Consequently, since Plaintiff has alleged that a conspiracy whose object was to deprive the constitutional rights of a member of a racial minority injured Plaintiff while he was seeking to vindicate those rights, the Court finds that he has adequately alleged standing for his 42 U.S.C. § 1985(3) claim.

9      The Supreme Court vacated *Novotny* because the plaintiff in that case alleged that the conspiracy that injured him had the goal of depriving women of their Title VII rights. The Court held that, because allowing a plaintiff to base a § 1985(3) cause of action upon rights that Title VII created would circumvent the procedural requirement that Congress had built into

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 32 of 49

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)

2005 WL 1460424

Title VII, "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Novotny,* 442 U.S. at 378. Since the Fourth Amendment creates the rights of Paredes of which Plaintiff alleges Defendants conspired to deprive him, the Court's holding does not bar Plaintiff's action.

*ii. intra-corporate conspiracy doctrine*

" 'Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together[ ]' " while acting within the scope of their employment. *Nassau County Employee "L" v. County of Nassau,* 345 F.Supp.2d 293, 304 (E.D.N.Y.2004) (quotations and other citations omitted); *see Crudele v. City of N.Y. Police Dep't,* No. 97 Civ. 6687, 2004 WL 1161174, *5 (S.D.N.Y. May 24, 2004)* (citations omitted). Although courts first applied this doctrine to cases involving public corporations, they have subsequently held that the doctrine is applicable to municipal entities and their officers, agents, and employees. *See County of Nassau,* 345 F.Supp.2d at 304 (citation omitted); *Cameron v. Church,* 253 F.Supp.2d 611, 623 (S.D.N.Y.2003) (quotation omitted). "However, '[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." ' *County of Nassau,* 345 F.Supp.2d at 304-05 (quotation omitted); *see Stoner v. N. Y. City Ballet Co.,* No. 99 Civ. 0196, 2002 WL 523270, *9 (S.D.N.Y. Apr. 8, 2002)* (quotation and other citation omitted).

Individual Defendants are officers of Defendant City. *See* Dkt. No. 1 at ¶¶ 7-9. Plaintiff's allegation that at the time that individual Defendants "conspired to violate Plaintiff's civil rights and committed acts in furtherance of such conspiracy, they were acting as police officers for the City of Syracuse[ ]" is presumably an admission that individual Defendants were acting within the scope of their employment. *See* Dkt. No. 1 at ¶ 79.

**\*11** Nonetheless, Plaintiff contends that the personal interest exception applies. "[T]hat exception applies where 'a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose." ' *Everson v. N.Y. City Transit Auth.,* 216 F.Supp.2d 71, 76 (E.D.N.Y.2002) (quotation and other citation omitted); *see Salgado v. City of N.Y.,* No. 00 Civ. 3667, 2001 WL 290051, *9 (S.D.N.Y. Mar. 26, 2001).* Plaintiff has not alleged that individual Defendants had a personal interest in their alleged conspiracy. *See*

Dkt. No. 1 at ¶¶ 77-83. In his motion papers, Plaintiff concedes that he "does not allege Defendants' personal stake in their bias against Plaintiff or Paredes...." *See* Dkt. No. 15 at 14. However, he contends that he has "allege[d] sufficient facts to infer that the Defendants were motivated by personal gain in silencing Plaintiff about what he witnessed concerning their brutality and/ or misconduct in subduing and arresting Paredes and preventing Plaintiff from filing a complaint about such misconduct." *See id.* at 14-15 (citations omitted). He further argues that "the complaint alleges sufficient facts to infer that Defendants' employment opportunities and interest in not answering a complaint about their misconduct was Defendants' personal stake or interest in participating in the conspiracy." *See id.* at 15. However, since Defendant City arguably has the same general interest, Plaintiff's allegations do not give rise to a reasonable inference that individual Defendants' interests in the alleged conspiracy were distinct from those of Defendant City.

Accordingly, since the intra-corporate conspiracy doctrine applies, the Court grants Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim. [10]

[10]    Since the Court concludes that the intra-corporate conspiracy doctrine applies, it will not address Defendants' alternative argument that Plaintiff's factual allegations are insufficient to state a conspiracy claim.

*6. Plaintiff's common law malicious prosecution claims*

In order to recover for malicious prosecution, a plaintiff must establish four elements: that a criminal proceeding was commenced; that it was terminated in favor of the accused; that it lacked probable cause; and that the proceeding was brought out of actual malice. *Cantalino v. Danner,* 96 N.Y.2d 391, 394-95 (2001) (citations omitted). Defendants argue that a dismissal in the interest of justice of an accusatory instrument pursuant to New York Criminal Practice Law § 170.40 cannot constitute a favorable termination. However, Defendants only cite pre-*Cantalino* case law to support their argument. *Cantalino* directly addressed "whether the dismissal of criminal charges against plaintiff in the interest of justice constituted a termination in her favor." *Id.* at 395. It expressly rejected "a per se rule that

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)
Case 6:17-cv-00578-GTS-TWD   Document 11   Filed 02/12/18   Page 33 of 49
2005 WL 1460424

a dismissal in the interest of justice can never constitute a favorable termination," and held that

> the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused. A case-specific rule is particularly appropriate for dismissals in the interest of justice, since the trial court is required to state on the record its reasons for dismissing the criminal charges....

**\*12** *Id.* at 396 (internal citation omitted). Unfortunately, in this case, the state court did not state on the record its reasons for dismissing the charges. *See* Dkt. No. 9 at 2. Furthermore, even if the state court had stated its reasons on the record, that record is not part of Plaintiff's pleadings. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's common law malicious prosecution claims for failure to state a claim.

*7. Plaintiff's common law libel claim*

Defendants argue (1) that Plaintiff has failed to comply with New York Civil Practice Law and Rules § 3016(a)'s requirement that a complaint asserting a claim for libel or slander set forth the particular words complained of and (2) that, if the Court dismisses all of Plaintiff's federal claims, it should decline to exercise jurisdiction over his state claims.

Since federal law governs the procedural issues in this case, " 'the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P." ' *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (quotation omitted). Therefore, the heightened pleading requirement of New York Civil Practice Law and Rules § 3016(a) does not apply to this action. *See Silverman v. City of N.Y.,* No. 98-CV-6277, 2001 WL 218943, *8 (E.D.N.Y. Feb. 2, 2001) (quotation and other citation omitted). The allegations of libel in Plaintiff's complaint satisfy Rule 8's requirements of "a short and plain statement of the claim" and "simple, concise, and direct" allegations. Fed.R.Civ.P. 8(a), (e)(1); *see* Dkt. No. 1 at ¶¶ 47-49, 94-96. Furthermore, the Court has not dismissed all of Plaintiff's federal claims. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's libel claim for failure to state a claim.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that Defendants' motion to dismiss Plaintiff's complaint for insufficient service of process is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant City of Syracuse for failure to sufficiently allege municipal liability is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's common law false arrest and false imprisonment claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 false arrest claims for failure to state a claim is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his second cause of action is GRANTED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1983 First Amendment claims in his first cause of action for failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's § 1985(3) claims for failure to state a claim is GRANTED; and the Court further

**\*13** ORDERS that Defendants' motion to dismiss Plaintiff's common law malicious prosecution claims for failure to state a claim is DENIED; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's common libel claim for failure to state a claim is DENIED.

IT IS SO ORDERED. [11]

Case 6:17-cv-00578-GTS-TWD    Document 11    Filed 02/12/18    Page 34 of 49

Griffin-Nolan v. Providence Wash. Ins. Co., Not Reported in F.Supp.2d (2005)
2005 WL 1460424

11    The following claims of Plaintiff remain in this action: (1) § 1983 claims for denial of First Amendment rights against Defendants City, Mullen, and Hennessey, alleging that these Defendants arrested him for speaking to Defendant officers about their conduct in arresting a third-party; (2) § 1983 claims for failure to train against Defendant City; (3) common law malicious prosecution claims against all Defendants; (4) a common law libel claim against Defendant Hennessey; and (5) a claim for attorney's fees pursuant to 42 U.S.C. § 1988.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1460424

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2120518
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lafrancis GRAY–DAVIS;
and Myrell Davis, Plaintiffs,
v.
State of NEW YORK; Paul Rigby, Senior Parole
Officer; Tammy Gronau, Parole Officer; Mr. Green,
Parole Officer; Mr. Maher, Parole Officer; Ms.
Delaney, Parole Officer; Mr. Fregoe, Parole Officer;
Ms. Montford, Supervisor Parole Officer; Robert
Butera, Parole Officer; Anthony I Annucci, Acting
Comm'r of Dep't of Corr. and Cmty. Supervision;
Tinam. Stanford, Chair of Bd. of Parole; Randy W.
Blume, Assist. Comm'r of Onondaga Cnty. Dep't
of Corr.; Timothy H. Cowin, Comm'r of Onondaga
Cnty. Dep't of Corr.; Cnty. of Onondaga; Onondaga
Cnty. Dep't of Corr.; City of Jamesville; City of
Syracuse; Syracuse City Police Dep't; John Doe
Nos. 1–4, Parole Officers; John Doe Nos. 5–
15, Syracuse City Police Officers; and John Doe
16, Chief of Syracuse City Police, Defendants.

No. 5:14–CV–1490 (GTS/TWD).
|
Signed May 5, 2015.

**Attorneys and Law Firms**

Lafrancis Gray–Davis, Syracuse, NY, pro se.

DeRoberts Law Firm, Jeffrey DeRoberts, Esq., of
Counsel, Syracuse, NY, for Plaintiff Myrell Davis.

**Opinion**

### *DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this civil rights
action filed by LaFrancis Gray–Davis and her minor son
Myrell Davis ("Plaintiffs"), against the above-captioned
entities and individuals ("Defendants") arising from two
searches by police and the institution of special conditions
by parole officers between December 2013 and April

2014, is the Report–Recommendation of United States
Magistrate Thérèse Wiley Dancks recommending that
certain of Plaintiffs' claims be dismissed with prejudice,
certain of the claims be dismissed without prejudice (and
with leave to amend as authorized by the Court), and
certain of the claims survive the Court's initial review of
Plaintiffs' Complaint. (Dkt. No. 6.) Plaintiffs have not
filed an objection to the Report–Recommendation and
the deadline in which to do so has expired. (*See generally*
Docket Sheet.)

When *no* objection is made to a report-recommendation,
the Court subjects that report-recommendation to only
a *clear error* review. Fed.R.Civ.P. 72(b), Advisory
Committee Notes: 1983 Addition. When performing such
a "clear error" review, "the court need only satisfy itself
that there is no clear error on the face of the record in
order to accept the recommendation." *Id.: see also Batista
v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y.
July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt
those sections of [a magistrate judge's] report to which no
specific objection is made, so long as those sections are
not facially erroneous.") (internal quotation marks and
citations omitted).

Here, based upon a review of this matter, the Court can
find no clear error in Magistrate Judge Dancks' thorough
Report–Recommendation. (Dkt. No. 6.) Magistrate
Judge Dancks employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. (*Id.*) As a result, the Report–Recommendation is
accepted and adopted in its entirety for the reasons stated
therein.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 6) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are *DISMISSED*
**with prejudice** and **without leave to amend:**

(1) all claims against Defendant State of New York;

(2) all claims against Defendant Onondaga County
Department of Corrections;

(3) all claims against Defendant Syracuse City Police
Department;

(4) Plaintiffs' 42 U.S.C. § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4;

(5) Plaintiffs' claim for violation of their Fifth and Ninth Amendment rights; and it is further

**ORDERED** that the following claims **shall be DISMISSED** with prejudice and without further Order of this Court **UNLESS,** within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiffs file an Amended Complaint correcting the pleading deficiencies referenced in Magistrate Judge Dancks' Report–Recommendation:

*2 (1) Plaintiffs' claims against Defendant County of Onondaga;

(2) Plaintiffs' claims against Defendant Hamlet of Jamesville (a/k/a City of Jamesville);

(3) Plaintiffs' claims against Defendant City of Syracuse;

(4) Plaintiffs' claims against Defendants Butera, Blume, Cowin and John Doe No. 16; and

(5) Plaintiffs' claims against Defendants Annucci and Stanford (**EXCEPT** for their 42 U.S.C. § 1983 claims for money damages against those two Defendants in their official capacities, which claims again are dismissed with prejudice and without leave to amend); and it is further

**ORDERED** that any Amended Complaint that Plaintiffs chose to file shall be a complete pleading, which will supersede their original Complaint in all respects, and may not incorporate any portion of the original Complaint by reference, in accordance with Local Rule 7.1(a)(4) of the District's Local Rules of Practice; and it is further

**ORDERED** that Plaintiffs' remaining claims—i.e., their claims against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford ("Remaining Defendants") for violation of Plaintiffs' First, Fourth and Fourteenth Amendment rights—**SURVIVE** the Court's initial review of the Complaint; and it is further

**ORDERED** that the District Court shall issue summonses, along with copies of the Complaint and

General Order 25, to the United States Marshal for service upon the remaining Defendants; and it is further

**ORDERED** that counsel for the Remaining Defendants shall file a formal response to the surviving claims in the Complaint in accordance with Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiffs shall take reasonable steps to identify Defendant John Doe Nos. 1–15 and, if necessary, make a motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that the Clerk of Court serve a copy of this Decision and Order upon Plaintiff LaFrancis Gray–Davis by regular mail.

*ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Complaint of *pro se* Plaintiff LaFrancis Gray–Davis, on her own and on behalf of her son, Myrell Davis, was received for filing in the Northern District of New York on December 11, 2014, along with an application to proceed *in forma pauperis.* (Dkt. Nos. 1 and 2.) By Order of December 18, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis.* (Dkt. No. 4 at 2–3.) Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of her minor child, Myrell, *see Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel, at least for her minor son. *Id.* at 3. Attorney Jeffrey DeRoberts, Esq. filed a Notice of Appearance on behalf of Myrell Davis on January 8, 2015, thereby removing the impediment to initial review of the Complaint. (Dkt. No. 5.)

**I. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT**

*3 Even when a plaintiff meets the financial criteria for *in forma pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ...

2015 WL 2120518

the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## II. PLAINTIFF'S COMPLAINT

**\*4** Plaintiff met James D. Davis ("Davis") in July of 2009, when he was on parole supervision, and the couple had a child, Myrell Davis, in 2010. (Dkt. No. 1 ¶¶ at 5 and 6.) Davis was violated by parole supervision on September 22, 2011, and Defendant Senior Parole Officer Paul Rigby ("Rigby"), who allegedly had a vendetta against Plaintiff because of her association with Davis, acted to prevent Plaintiff and Davis from being married at the Onondaga County Justice Center in November of 2011. *Id.* at ¶¶ 7–8.)

Plaintiff and Davis were married on November 12, 2012, while Davis was incarcerated, and on July 30, 2013, when Davis was about to be released, Plaintiff was informed by his parole officer, Defendant Ms. Montford ("Montford"), that she and her son and all family members were not permitted to have contact with Davis. *Id.* at ¶¶ 9–10. Included in the special conditions in the Certificate of Release to Parole Supervision signed by Davis on August 6, 2013, was the condition "17. I will not associate in any way or communicate by any means with ... Latesha Dexter and Lafrancis Gray without the permission of the P.O." *Id.* at p. 56. Included in a list of Special Conditions of Release to Parole Supervision in connection with Plaintiff's July 30, 2013, release, signed by Davis on February 24, 2014, were:

13(i): I will have no in person contact, or attempt to contact *Eric Roam, Latesha Dexter and/or LaFrancis Gray–Davis.* Either in person or members of their immediate family by means of letter, telephone, cell

phone, third party, electronic means or any other methods without the knowledge and written permission of my parole officer. Failure to follow this rule is a violation of my parole in an important respect.

13(q): I will have contact with any children in common with *LaFrancis Gray–Davis* if court ordered only.

*Id.* at pp. 58, 60. Depending on Davis' parole officer, Plaintiff and Davis have at times been able to have contact with one another and even share a home. Other times they have not. *Id.* at ¶ 12.

On Christmas Eve or Christmas day of 2013, Defendant parole officers John Doe Nos. 1 through 4 searched Plaintiff's home looking for Davis, whom they had reason to believe was there. *Id.* at ¶ 13. Davis was not in the house, and according to Plaintiff, because he was not paroled to her address and was not supposed to be there, the four Doe Defendants had no probable cause to invade her home and privacy and search her house. *Id.*

On March 11, 2014, at approximately 7:45 p.m., while Plaintiff, with Myrell in the car, was giving Davis a ride home, she was pulled over by Defendant Parole Officers Tammy Gronau ("Gronau"), Mr. Green ("Green"), Mr. Maher ("Maher"), Ms. Delaney ("Delaney"), and Mr. Fregoe ("Fregoe"), along with Defendant Syracuse Police Officers John Doe Nos. 5 though 15. *Id.* at ¶ 14. Defendants Gronau and Green searched Plaintiff's car and found several empty beer cans and a folding knife that Plaintiff claims belonged to her. Defendants also stated that Myrell was not in a child safety seat, which Plaintiff contends is untrue. *Id.* Davis was taken into custody. *Id.* According to Plaintiff, the only reason the vehicle was stopped was that she and her son were with Davis. *Id.*

 **\*5** On April 1, 2014, Plaintiff received a letter from Defendant Randy W. Blume (Blume"), Assistant Commissioner of the Onondaga County Correctional Facility, stating that due to the special conditions prohibiting Davis from having contact with her and her son, he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility unless or until the conditions of parole were removed. *Id.* at ¶ 17.

## III. ANALYSIS

Plaintiff's Complaint contains ten causes of action for violation of Plaintiff and her son's right to privacy and freedom of association under the First Amendment; illegal search and seizure in violation of the Fourth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fifth Amendment; violation of Plaintiff and her son's right to privacy and other rights protected under the Ninth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fourteenth Amendment; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence; supervisory liability, including failure to train, supervise, and control employees, employers, agents and successors; and violation of 42 U.S.C. § 1983. [1] (Dkt. No. 1 at ¶¶ 19–101.) The allegations of wrongdoing by Defendants set forth in each of the causes of action appear to be virtually identical. *Id.*

[1]    42 U.S.C. § 1983 does not create any independent substantive rights, but rather serves as a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

### A. State of New York
Plaintiff has named the State of New York as a Defendant. The only allegations directed to the State in the Complaint are conclusory assertions of supervisory liability. (*See, e.g.,* Dkt. No. 1 at ¶ 23.) Plaintiff's claims against the State are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The bar precludes claims against the State for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Therefore, the Court recommends that the action be dismissed with prejudice as against the State of New York on sovereign immunity grounds.

### B. Municipal Defendants
Plaintiff has named as Defendants the County of Onondaga, City of Jamesville, [2] and the City of Syracuse. The Onondaga County Department of Corrections and Syracuse City Police Department have also been named as Defendants. However, as explained in *Baptista v. Onondaga County Dep. of Corrections,* No. 9:04–CV–0600 (LEK/GHL), 2007 WL 911854, at * 5, 2007 U.S. Dist.

LEXIS 20536, at * 13 (N.D.N.Y. Mar.22, 2007), the County of Onondaga Department of Corrections and the County of Onondaga "are one in the same the County of Onondaga, a municipal corporation of the State of New York ." Furthermore, "[a] police department is an administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (citing *Loria v. Town of Irondequoit,* 775 F.Supp. 599, 606 (W.D.N.Y.1990); *see also Dexter v. City of Syracuse,* No. 5:14–CV–0363 (TJM/DEP), 2014 WL 2611384, at *4, 2014 U.S. Dist. LEXIS 80008, at *11 (N.D.N.Y. June 11, 2014). Therefore, any claims Plaintiff might have against the County of Onondaga Department of Corrections and City of Syracuse Police Department are properly asserted against the County of Onondaga and City of Syracuse, respectively.

2      The Court takes judicial notice that Jamesville, New York is a hamlet located within the Town of DeWitt, not a city. (*See* http:// www.townofdewitt.com/ LivingDeWitt.aspx last visited on March 24, 2015.)

**\*6** Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012) (citing *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611), *cert. denied,* —— U.S. ——, 134 S.Ct. 125 (2013); *see also Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection an 'affirmative link' between the policy and the deprivation of his constitutional rights.") (citing *Oklahoma v. Tuttle,* 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)) (plurality opinion).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County, the hamlet of Jamesville, or the City of Syracuse which resulted in the deprivation of her and her son's constitutional rights. A municipality may be liable for

deprivation of constitutional rights under § 1983 with regard to policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, Plaintiff's conclusory allegations that Onondaga County, Jamesville, and the City of Syracuse failed to properly hire, supervise, and train subordinates, without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face. *See Trombley,* 550 U.S. at 570; *Hall v. Smith,* 170 F. App'x 105, 108 (11th Cir.2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)

Given the foregoing, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendants County of Onondaga, Jamesville, and the City of Syracuse without prejudice; and be dismissed with prejudice as against the Onondaga County Department of Corrections and the Syracuse City Police Department, given that any claims Plaintiff may be able to plead with regard to the two departments would be properly asserted against the County of Onondaga and City of Syracuse.

## C. Plaintiffs' Official Capacity Claims For Money Damages Against the State Official Defendants

**\*7** Plaintiffs have asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants. (Dkt. No. 1 at p. 9.) The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment has been found to bar official capacity claims for money damages against New York Department of Correctional and Community Supervision ("DOCCS") officials and parole officers. *See Tolliver v. New York State Corrections Officers,* No. 99CIV.9555(JGK), 2000

WL 1154311, at * 2, 2000 U.S. Dist. LEXIS 11531, at *
7 (S.D.N.Y. Aug.14, 2000) ("All of the defendants in this
case are state officials because they are employees of the
New York State Department of Correctional Services.");
*James v. Suffolk County Correctional Facility,* No. 13–
CV–2344 (JFB)(SIL), 2014 WL 4659300, at *4, 2014 U.S.
Dist. LEXIS 131056, at * 10–11 (E.D.N.Y. Sept. 17, 2014)
(official capacity claims for money damages against parole
officers are barred by the Eleventh Amendment).

Therefore, the Court recommends that Plaintiff's § 1983
claims for money damages against Defendants Anthony
J. Annucci ("Annucci"), Acting Director of DOCCS,
Tina M. Stanford ("Stanford"), Chair of the Board
of Parole, and all of the Defendant Parole Officers,
including Defendants John Doe 1 through 4, in their
official capacities be dismissed with prejudice on Eleventh
Amendment grounds.

### D. Supervisory Liability

Defendants Annucci, Stanford, Tim Cowan ("Cowan"),
Commissioner of the Onondaga County Department of
Correction, and John Doe No. 16, Chief of the Syracuse
City Police, have all been sued in their supervisory
capacities by Plaintiff. [3] (*See, e.g.,* Dkt. No. 1 at ¶
23.) [4] In the case of Defendants Annucci and Stanford,
the subordinates include the Defendant Parole Officers,
including Defendants John Doe 1 through 4. (Dkt. No. 1
at ¶ 23.) Blume is identified as Cowan's subordinate. *Id.* In
the case of Defendant John Doe No. 16, the subordinates
include Syracuse Police Officers Defendants John Doe
Nos. 5 through 15. *Id.*

[3]    Plaintiff has recommended dismissal of Plaintiff's
supervisory claims against the municipal Defendants
under *Monell.*

[4]    Plaintiff has repeated the identical conclusory
allegations of supervisory liability against the
Defendants in each of her ten causes of action. (*See*
Dkt. No. 1 at ¶¶ 23, 30, 38, 46, 54, 62, 69, 76, 83, 90.)

The law is clear that "personal involvement of defendants
in alleged constitutional deprivations is a prerequisite
to an award of damages under § 1983." *McKinnon v.
Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because
vicarious liability is inapplicable to ... § 1983 suits,
a plaintiff must plead that each Government-official
defendant, through the official's own individual actions,

has violated the Constitution." *Iqbal,* 556 U.S. at
676. ("Government officials may not be held liable
for the unconstitutional conduct of their subordinates
under a theory of *respondeat superior.*" ). "Holding a
position in a hierarchical chain of command, without
more, is insufficient to support a showing of personal
involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/
RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS
25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing
*McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,*
347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in
the prison chain of command' is insufficient to implicate
a state commissioner of corrections ... in a § 1983
claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210
(2d Cir.1985)). Therefore, "a plaintiff must ... allege a
tangible connection between the acts of a defendant and
the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263
(2d Cir.1986).

**\*8** The Second Circuit has held that personal
involvement by a supervisor necessary to state a claim
under § 1983 maybe found where: "(1) the defendant
participated directly in the alleged constitutional
violation, (2) the defendant, after being informed of
the violation through a report or appeal, failed to
remedy the wrong, (3) the defendant created a policy or
custom under which unconstitutional practices occurred,
or allowed the continuance of such a policy or custom,
(4) the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts, or (5) the
defendant exhibited deliberate indifference to the rights of
inmates by failing to act on information indicating that
unconstitutional acts were occurring." *Colon v. Coughlin,*
58 F.3d 865, 873 (2d Cir.1995).

Plaintiff has alleged that Defendants Annucci, Stanford,
Cowan, and John Doe 16 failed to properly hire, oversee,
supervise, train, and control their subordinates. (Dkt.
No. 1 at ¶ 23.) Vague and conclusory claims that a
supervisory official has failed to provide proper training
and supervision or created a specific policy, without facts
showing personal involvement, are legally insufficient to
state a claim under any of the categories identified in
*Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337,
348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV–
240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S.
Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010)
("Vague and conclusory allegations that a supervisor
has failed to train or properly monitor the actions of

subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (same).

Plaintiff has also parroted each of the *Colon* factors as grounds for supervisory liability. *Id.* "Conclusory statements and formulaic recitations of the Colon factors [that are] wholly unsupported by facts," present no factual support for a supervisory liability claim. *Eldridge v. Kenney,* No. 11–CV–6459–FPG, 2014 WL 2717982, at * 3, 2014 U.S. Dist. LEXIS 84437, at * 2–3 (W.D.N.Y. June 16, 2014).

In light of Plaintiff's failure to allege facts of a nonconlusory nature showing personal involvement by Annucci, Stanford, Cowan, and John Doe No. 16 in the alleged violations of Plaintiff and her son's constitutional rights, the Court recommends that Plaintiff's § 1983 claims be dismissed without prejudice as against those Defendants.

### E. Defendant Butera
Defendant Robert Butera ("Butera") is identified as a Parole Officer in Plaintiff's Complaint. (Dkt. No. 1 at p. 4.) With the exception of Plaintiff's inclusion of Butera's name in the conclusory claims of wrongdoing in each of her causes of action, *id.* at ¶ 23, the Complaint is devoid of factual allegations regarding Butera. As noted above, personal involvement in a constitutional deprivation is a prerequisite to an award of damages under § 1983." *McKinnon,* 568 F.2d at 934; *see also Crichlow v. Fischer,* No. 12–cv–7774 (NSR), 2015 WL 678725, * 9, 2015 U.S. Dist. LEXIS 18812, at * 17 (S.D.N.Y. Feb. 17, 2015) (dismissing defendants from the case upon initial review under 28 U.S.C. § 1915(e) where the plaintiff made no factual allegations regarding personal involvement on their part in the violation of plaintiff's rights). The complete absence of factual allegations of wrongdoing by Bufera warrants dismissal of Plaintiff's state law claims as well. Therefore, the Court recommends that the case be dismissed without prejudice as against Defendant Butera.

### F. Defendant Blume
**\*9** The sole factual allegation in the Complaint against Defendant Blume, the Assistant Director of the Onondaga County Department of Corrections is that he informed Plaintiff that he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility due to the special conditions prohibiting Davis from having contact with her and her son unless and until the condition of parole was removed. *Id.* at ¶ 17. Inasmuch as there are no factual allegations indicating that Blume was doing anything more than complying with special conditions of release to parol supervision that had been imposed by DOCCS, the Court recommends that the case be dismissed without prejudice as against him.

### G. Plaintiff's Ninth Amendment Claim
Plaintiff claims that the Defendants violated her and her son's right to privacy and other rights guaranteed under the Ninth Amendment. (Dkt. No. 1 at ¶¶ 42–49.) The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is a "rule of construction" and does not give rise to "individual rights." *Jenkins v. C.I.R.,* 483 F.3d 90, 92–93 (2d Cir.2007) (Ninth Amendment is not an independent source of individual rights but a rule of construction). Therefore, to the extent Plaintiff is asserting a § 1983 claim for an independent violation of the Ninth Amendment, the Court recommends that the claim be dismissed with prejudice as against all of the Defendants.

### H. Plaintiff's State Law Claims for Negligence and Intentional and Negligent Infliction of Emotional Distress
Plaintiff has included state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence against the Defendants for denying her and her son the benefits that arise from familial association, for subjecting them to the unreasonable search of her home and car, and, in the case of the municipal defendants and Annucci, Stanford, Cowin, and John Doe No. 16, for failing to properly supervise their subordinates.

#### 1. *Intentional Infliction of Emotional Distress*
Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and (4) severe emotional distress." *Bender v. City of N.Y.,* 78 F.3d 787, 790 (2d Cir.1996).

The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001). The Court finds that the allegations in Plaintiff's Complaint do not show conduct making a plausible showing of intentional infliction of emotional distress by any of the Defendants and recommends that the claim be dismissed without prejudice as to all Defendants.

### 2. *Negligence and Negligent Infliction of Emotional Distress*

**\*10** Although Plaintiff has alleged that the Parole Officer and Syracuse Police Department Defendants intentionally and/or negligently denied her and her son's right to association and subjected them to unreasonable searches and seizures, the factual allegations in the Complaint reveal that Plaintiff's claims are premised on intentional not negligent conduct. A claim for negligent infliction of emotional distress maybe established under either (1) the "bystander theory" or (2) the "direct duty theory." *Baker v. Dorfman,* 239 F.3d 415, 421 (2d Cir.2000). Both theories require an act of negligence and physical injury or the threat of danger, either to the plaintiff or to a close family member. *Id.* To recover under the "bystander theory," the plaintiff must be "threatened with physical harm as a result of the defendant's negligence" and "consequently suffer[ ] emotional injury from witnessing the death or serious bodily injury of a member of [his or her] immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1966). To recover under the "direct duty" theory, a plaintiff must suffer an emotional injury from defendant's breach of a duty which unreasonably endangered [his or her] own physical safety." *Id.*

The Court finds that Plaintiff's Complaint fails to allege facts stating a plausible claim for either negligence or negligent infliction of emotional distress against Defendants and recommends that the claim be dismissed without prejudice as against all of the Defendants.

### I. Plaintiff's Surviving Claims

Plaintiff's Complaint asserts claims for violation of her and her son's First Amendment right of liberty in their family life and Fourteenth Amendment due process right to intimate association [5] as a result of the imposition and enforcement of the special conditions of release to

parole supervision that prevent Plaintiff and her son from being with Davis, as well as her Fourth Amendment right to be free from unreasonable searches and seizures in connection with the search of her home in December of 2013 and the traffic stop and search of her car on March 11, 2014. (Dkt. No. 1 at pp. 13, 18, and 41.)

[5]     Plaintiff has also asserted a due process claim under the Fifth Amendment. (Dkt. No. 1 at p. 21.) However, the due process clause of the Fifth Amendment applies only to actions taken by the federal government, not state or local governments. *See Schweiker v. Wilson,* 450 U.S. 221, 227, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *see also Canfield v. Douglas County,* No. 14–cv–00461–KMT, 2014 WL 7186749, at * 5, 2014 U.S. Dist. LEXIS 173224, at * 12–13 (D.Col. Dec.16, 2014) (Fifth Amendment deprivations such as those challenging due process rights to familial association with no allegation of federal involvement are not actionable under the Fifth Amendment).

Mindful of the Second Circuit's instruction to liberally construe a *pro se* plaintiff's pleadings, *see Sealed Plaintiff,* 537 F.3d at 191, the Court recommends that Plaintiff be permitted to pursue her and her son's First, Fourth, and Fourteenth Amendment claims (first, second and fifth causes of action) against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, and John Doe Nos. 1–15.

The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that the case be dismissed with prejudice as against: (1) Defendant State of New York on sovereign immunity grounds; (2) Defendant Onondaga County Department of Corrections on the grounds it is one and the same with Defendant County of Onondaga; and (3) Defendant Syracuse City Police Department on the grounds that it is not an entity capable of being sued; and it is further

**\*11 RECOMMENDED** that the following claims be dismissed with prejudice: (1) Plaintiff's § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4 on

Eleventh Amendment grounds; and (2) Plaintiff's claim for violation of her and her son's Fifth and Ninth Amendment rights for failure to state a claim; and it is further

**RECOMMENDED** that the case be dismissed for failure to state a claim, with leave to file an amended complaint as authorized by the District Court as against Defendants: (1) County of Onondaga; (2) Jamesville; (3) City of Syracuse; (4) Bufera; (5) Blume; (6) Cowin; (7) John Doe No. 16; and (8) Annucci and Stanford (except without leave to amend § 1983 official capacity claims for money damages); and it is further

**RECOMMENDED** that the District Court direct service on Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford of the surviving claims for violation of Plaintiff and her son's First, Fourth, and Fourteenth Amendment rights; and it is further

**RECOMMENDED** that Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford be required to file a formal response to the surviving claims as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**RECOMMENDED** that Plaintiff be directed to take reasonable steps to identify Defendants John Doe Nos. 1–15, and, if necessary, make an appropriate motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. *Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.* Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report–Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**\*12** Dated: March 27, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2120518

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 6520774
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darryl L. HAWTHORNE, Plaintiff,
v.
CITY OF ALBANY, et al., Defendants.

1:17-CV-00716 (GTS/TWD)
|
Signed 11/14/2017

**Attorneys and Law Firms**

DARRYL L. HAWTHORNE, 40 Anne Street, New
York, New York 10038, Plaintiff, pro se.

**Opinion**

### ORDER AND REPORT-RECOMMENDATION

Therese Wiley Dancks, United States Magistrate Judge

## I. INTRODUCTION

**\*1** Plaintiff's amended complaint in this *pro se* civil
rights action brought under 42 U.S.C. § 1983 is before the
Court for initial review. [1] (Dkt. No. 8.) Plaintiff, Darryl L.
Hawthorne, originally commenced this action against the
City of Albany; Albany Police Officers Devin Anderson,
Sean Perkins, and Alex Cheban; and Albany Detectives
John Norris and Tyson Ruecker. [2] (Dkt. No. 1.) Plaintiff
has added Albany Police Sergeant Christ as a Defendant
in his amended complaint. (Dkt. No. 8.)

[1]   Plaintiff submitted his amended complaint to the
Clerk on October 6, 2017. (Dkt. No. 8.) On November
6, 2017, Plaintiff submitted 179 pages of supplemental
exhibits to the amended complaint. (Dkt. Nos. 12,
12-1, 12-2, 12-3, 12-4, 12-5, and 12-6.) The Court
has treated the supplemental exhibits as a part of
Plaintiff's amended complaint in its initial review.

[2]   Plaintiff has identified Norris and Ruecker as police
officers in both his original and amended complaints.
(Dkt. Nos. 1 at 1; 8 at 1.) However, both Norris and
Ruecker have been identified as detectives with the
Albany Police Department in Plaintiff's submissions.
(Dkt. Nos. 8-2 at 1; 8-3 at 2.)

The claims that survived initial review of Plaintiff's
original complaint pursuant to 28 U.S.C. § 1915(e)(2)
(B)(i)-(iii) are: (1) Plaintiff's Fourth Amendment claims
of unreasonable search and seizure, excessive force, and
false arrest asserted against Anderson and Perkins; (2)
Plaintiff's Fourteenth Amendment due process claim
for deprivation of property asserted against Anderson and
Perkins; and (3) Plaintiff's false arrest claim against
Ruecker. [3] (Dkt. No. 7 at 3. [4])

[3]   On initial review, the Court considered Plaintiff's
claims that Defendants planted evidence and falsified
documents as a part of his claim for false arrest. (*See*
Dkt. No. 4 at 12.)

[4]   Page references to documents identified by docket
number are to the numbers assigned by the CM/ECF
docketing system maintained by the Clerk's Office.

The District Court dismissed Plaintiff's remaining claims
on initial review, including: (1) Plaintiff's malicious
prosecution claim against Anderson and Perkins; (2)
Plaintiff's conspiracy claim against Ruecker; and (3)
Plaintiff's claims against Cheban, Norris, and the City
of Albany. (Dkt. No. 7 at 3.) The claims were dismissed
without prejudice and with leave to amend. *Id.*

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in
forma pauperis*, 28 U.S.C. § 1915(e) directs that when
a plaintiff proceeds *in forma pauperis*, "the court shall
dismiss the case at any time if the court determines that ...
the action ... (i) is frivolous or malicious; (ii) fails to state
a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court
must look to see whether the complaint lacks an arguable
basis either in law or in fact. *Neitzke v. Williams*, 490 U.S.
319, 325 (1989). "An action is frivolous when either: (1)
the factual contentions are clearly baseless such as when
the claims are the product of delusion or fantasy; or (2) the
claim is based on an indisputably meritless legal theory."
*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437
(2d Cir. 1998) (citations and internal quotation marks
omitted). Although extreme caution should be exercised in
ordering *sua sponte* dismissal of a *pro se* complaint before

the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. ANALYSIS OF PLAINTIFF'S AMENDED COMPLAINT

### A. Surviving Claims Against Anderson, Perkins, and Ruecker from Plaintiff's Original Complaint

In his amended complaint, Plaintiff has realleged the unreasonable search and seizure, excessive force, false arrest, and deprivation of property claims against Defendants Anderson and Perkins which survived the initial review of his original complaint. (Dkt. No. 8 at 14-15, 17-20.) Plaintiff has also realleged the false arrest claim against Ruecker that survived initial review. [5] *Id.* at 18-19.

[5]    The elements of a Fourth Amendment false arrest claim under § 1983 are: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

### B. Malicious Prosecution Claims Against Anderson, Perkins, and Ruecker

The elements of a Fourth Amendment malicious prosecution claim under § 1983 are substantially the same as the elements under New York law. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003). To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). In addition, the Second Circuit requires that a plaintiff demonstrate there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013); *see also Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) ("[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.") (internal quotation marks omitted).

**\*3** Plaintiff's malicious prosecution claim against Anderson and Perkins was dismissed on initial review because his original complaint was devoid of allegations showing that Plaintiff had been arraigned on criminal charges, there had been a post arraignment seizure, he

had been prosecuted on the charges, and he had obtained a favorable outcome. (Dkt. No. 4 at 13.) Plaintiff has included an amended malicious prosecution claim against Anderson and Perkins and added a malicious prosecution claim against Ruecker in his amended complaint. (Dkt. No. 8 at 14, 19.)

Plaintiff was arraigned on charges of criminal possession of a controlled substance and false impersonation the day following his arrest. *Id.* at 9. The trespass charge against him was dismissed by the court, and Plaintiff was released on his own recognizance. *Id.* Plaintiff was indicted on charges of criminal possession of a controlled substance in the third degree, a class B felony (N.Y. Penal Law § 220.16.16(1)) and criminal possession of a controlled substance in the fourth degree, a class C felony (N.Y. Penal Law § 220.16.09(1)) on June 19, 2005. (Dkt. No. 8-2 at 30-31.) The false impersonation charge was dismissed before trial. (Dkt. No. 8 at 10.) Plaintiff had a jury trial on the criminal possession charges in April of 2016 and was found not guilty by the jury. *Id.*; Dkt. No. 8-3 at 133-34.

Plaintiff was remanded into custody during the trial because he arrived late for jury selection. (Dkt. No. 8 at 10.) According to Plaintiff, the Judge remanded him because she and the prosecution believed they would have a better chance of having Plaintiff plead guilty if he were in jail and would have a better chance of obtaining a guilty verdict if the jury saw him in a jail jumpsuit. (Dkt. No. 8 at 11.)

The Court finds Plaintiff has alleged facts plausibly stating a claim for malicious prosecution under New York law. It is less clear whether being held in custody during his trial is sufficient for Plaintiff to satisfy the requirement of a post-arraignment seizure for a § 1983 malicious prosecution claim. Nonetheless, given that Plaintiff has adequately plead a state law malicious prosecution claim over which the District Court may elect to exercise supplemental jurisdiction and may be able to establish a malicious prosecution claim under § 1983, the Court recommends that Defendants Anderson, Perkins, and Ruecker be required to respond to Plaintiff's malicious prosecution claims.

### C. John Norris
Norris was named as a Defendant in Plaintiff's original complaint, and the Court recommended dismissal because there were no factual allegations in the complaint

regarding Norris. (Dkt. No. 4 at 16.) In his amended complaint, Plaintiff alleges after he was strip searched at the precinct, Detectives Ruecker and Norris appeared "with sinister looks and smiles on their faces." (Dkt. No. 8 at 8.) They huddled with Anderson and Perkins whispering and the four then came over and told Plaintiff he was being charged with possession of crack cocaine. *Id.* Plaintiff alleges he turned to Anderson and said "you guys never found any drugs on me," and Anderson responded "well unless you have information about drugs or people that's (sic) buying or selling drugs, you're going to jail for drug possession." *Id.* Ruecker and Norris allegedly took Plaintiff for questioning. *Id.* Plaintiff claims Norris told him "the crack we have belongs to you. If you want to change that then you need to give us information about drugs in Albany and down in New York City, and individuals bringing drugs from New York City and other cities/states to Albany." *Id.* at 8-9. According to Plaintiff, he was charged with possession of a controlled substance, false impersonation, and trespass after denying any knowledge about drugs and refusing to be interrogated. (Dkt. No. 8 at 8-9.)

**\*4** Plaintiff has asserted § 1983 claims against Norris for false arrest and malicious prosecution, with both claims involving the alleged planting of drugs and the falsification of documents in completing the DD5 on the confidential informant who allegedly provided the information leading to Plaintiff's arrest. *Id.* at 20. Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings be liberally construed, *see Sealed Plaintiff,* 537 F.3d 191, the Court recommends that Plaintiff's false arrest and malicious prosecution claims against Norris survive *sua sponte* review and require a response.

### D. Sergeant Christ
As noted above, Christ is newly named as a Defendant in Plaintiff's amended complaint. At Plaintiff's criminal trial, Anderson testified Christ was the booking sergeant at the time Plaintiff was brought to the precinct, and any time an officer goes into central booking, he or she has to advise the booking sergeant what is going on. (Dkt. No. 8-3 at 53.) Plaintiff alleges when Christ recognized him from an arrest in 2009, in which Anderson and Perkins had also planted crack cocaine on him and Christ had taken $3,000 from him, Christ allowed Plaintiff to be strip searched and subjected to an anal cavity search at the precinct. (Dkt. No. 8 at 17.) In his amended complaint, Plaintiff claims Christ was present during Plaintiff's strip

and anal cavity searches and was at the precinct during his interrogation. (Dkt. No. 8 at 16.)

According to Plaintiff, Christ not only failed to supervise Anderson, Perkins, Ruecker, and Norris, but joined them in their wrongful conduct, including Plaintiff's false arrest and planting the drugs for which Plaintiff was charged. (Dkt. No. 8 at 16.) Plaintiff further alleges Christ failed to supervise Anderson while he was in the evidence room and while doing drug testing, and Christ documented Plaintiff as having only $776 and kept the remaining $3,224. *Id.*

While recognizing that the factual allegations against Christ are somewhat sparse, the Court nonetheless finds that in light of Plaintiff's *pro se* status and the Court's duty to liberally construe his amended complaint, Christ should be required to respond to Plaintiff's § 1983 claims for false arrest and violation of Plaintiff's due process claim for deprivation of property in connection with the $3,000 he claims was taken by Christ.

### E. Alex Cheban

The Court recommended dismissal of Plaintiff's original complaint against Cheban because the sole factual allegations against him were that he was contacted by Anderson and Perkins to drive Plaintiff to the precinct and patted Plaintiff down before transporting him there. (Dkt. No. 4 at 11.)

Plaintiff's claim against Cheban relates to the alleged discovery of a plastic bag containing crack cocaine under the back seat of the car in which Cheban had transported Plaintiff to the precinct. [6] According to Anderson's trial testimony, he and Perkins did not strip search and conduct an anal cavity search on Plaintiff at Capitol Green as Plaintiff claims. (Dkt. No. 8-3 at 45-49, 74.) Anderson testified that they did search Plaintiff, including checking the several layers of clothing being worn by Plaintiff. *Id.* According to Anderson, while searching Plaintiff at Capitol Green, he saw a part of a plastic bag between Plaintiff's buttocks. *Id.* He then called for Cheban to transport Plaintiff to the precinct where he could be strip searched. *Id.*

[6]   Plaintiff has included allegations in his amended complaint that Cheban began to drive off as Plaintiff was alighting. (Dkt. No. 8 at 6.) However, Plaintiff

has not alleged any injury as a result and has not stated a claim for negligence or an intentional tort.

**\*5** When no plastic bag was found during Plaintiff's strip and anal cavity searches at the precinct, Cheban was called back to the precinct so the car in which Plaintiff had been transported could be searched. *Id.* at 53-55. Anderson testified he found the plastic bag he had seen when he searched Plaintiff underneath the back seat where Plaintiff had been sitting. *Id.* at 56-57. Cheban testified he saw Perkins take the bag of drugs from under the backseat of the car where Plaintiff had been sitting. *Id.* at 99-100. According to Cheban, he checked the interior of the car when he went on duty but did not check the back of the car after Plaintiff got out. *Id.*

Plaintiff claims Cheban was involved in planting the drugs under the back seat. (Dkt. No. 8 at 16.) The Court has construed Plaintiff's planting of drugs allegation as a part of Plaintiff's claim for false arrest against Anderson, Perkins, Ruecker, Christ, and Norris and finds that liberally construed, Plaintiff's amended complaint can be read to state claims for false arrest and malicious prosecution against Cheban for purposes of initial review. *See, e.g.,* Paige-Bey v. City of New York, No. 13-cv-7300 (SLT) (RER), 2016 WL 7217197, at *7-8 (E.D.N.Y. Dec. 12, 2016) [7] (allegations police officer planted evidence and perpetuated false testimony at trial sufficient to meet first element of a malicious prosecution claim at motion to dismiss stage).

[7]   Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Therefore, the Court recommends Plaintiff's false arrest and malicious prosecution claims against Norris survive *sua sponte* review and require a response.

### F. City of Albany

Plaintiff named the City of Albany as a Defendant in his original complaint based upon a claim that the City engaged in negligent hiring, retention, and training of it agents, servants, and employees, including the Defendant members of the Albany Police Department. (Dkt. No. 1 at 6.) The Court recommended dismissal of the claim against the City on the grounds that Plaintiff's complaint was devoid of the requisite factual allegations to support his claim (Dkt. No. 4 at 17-18), and Judge Suddaby adopted the recommendation. (Dkt. No. 7 at 2-3.)

Plaintiff, again relying solely on conclusory assertions, has not corrected the deficiencies in his claim against the City of Albany for negligent hiring, retention, and training. (*See* Dkt. No. 8 at 13.) *See Gray-Davis v. New York,* No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015) (conclusory allegations of failure to properly hire, train, and supervise municipal employees "without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fail to state a claim against [a municipality] that is plausible on its face.")

Plaintiff has added a supervisory liability claim against the City of Albany for the actions of the Defendants. (Dkt. No. 8 at 13.) However, a municipality may not be held liable under § 1983 based on the theory of *respondeat superior, see Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658, 691 (1978), and Plaintiff has failed to allege facts showing the deprivation of his rights was caused by a governmental custom, policy, or usage of the City of Albany. *Id.* at 690-91.

In light of the foregoing, the Court recommends the amended complaint be dismissed against the City of Albany for failure to state a claim. Because Plaintiff has already been given the opportunity to amend his complaint, and the allegations in his amended complaint, construed liberally, give no indication that a valid claim might be stated if Plaintiff were given another opportunity to amend, *see Gomez,* 171 F.3d at 795, the Court recommends that the dismissal against the City of Albany be with prejudice.

**\*6 ACCORDINGLY**, it is hereby

**ORDERED** that the supplemental exhibits to the amended complaint submitted by Plaintiff (Dkt. Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, and 12-6) be added to Plaintiff's amended complaint (Dkt. No. 8) and that the amended complaint and supplemental exhibits together be accepted as the operative pleading in the case; and it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 8) be **DISMISSED WITH PREJUDICE** against Defendant City of Albany; and it is further

**RECOMMENDED** that Defendants Anderson and Perkins be required to respond to Plaintiff's claims for the unreasonable search and seizure, excessive force, false arrest, and malicious prosecution; and his due process claim for deprivation of property alleged in the amended complaint (Dkt. No. 8.); and it is further

**RECOMMENDED** that Defendants Ruecker, Norris, and Cheban be required to respond to Plaintiff's claims for the false arrest and malicious prosecution claims alleged in the amended complaint (Dkt. No. 8); and it is further

**RECOMMENDED** that Defendant Christ be required to respond to Plaintiff's claim for false arrest, and his due claim for deprivation of property alleged in the amended complaint (Dkt. No. 8); and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[8]     If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2017 WL 6520774

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.